## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, individually and on behalf of all others similarly situated, | Case No. 1:05-cv-162 (JJF) |
| Plaintiffs, | |
| v. | |
| WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON, | |
| Defendants. | |
| Dr. Stephen Blau, Individually and On Behalf of All Others Similarly Situated, | |
| Intervenor. | |

[Additional Caption on the Following Page]

## DR. BLAU'S BRIEF IN SUPPORT OF HIS MOTION TO ENFORCE THIS COURT'S STAY ORDER AND TO CONSOLIDATE AND STAY CO-LEAD PLAINTIFF SAMUEL I. HYLAND'S RELATED CIVIL ACTION FILED ON APRIL 6, 2006

**CHIMICLES & TIKELLIS LLP**
Pamela S. Tikellis (#2172)
Robert Davis (#4536)
Daniel J. Brown (#4688)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Demet Basar (of the New York bar)
Adam J. Levitt (of the Illinois bar)

April 18, 2006

435398v3

SAMUEL I. HYLAND,
      Individually and On Behalf of All Others
Similarly Situated,

      Plaintiff,

J.P. MORGAN SECURITIES, INC.,
      A Delaware Corporation,

      Defendant.

Case No. 06-224 (JJF)

## Table of Contents

                                                                                    Page #
INTRODUCTION ............................................................................................................... 1

NATURE AND STAGE OF THE CASE......................................................................... 2

SUMMARY OF ARGUMENT ......................................................................................... 5

STATEMENT OF FACTS ................................................................................................ 5

ARGUMENT...................................................................................................................... 8

I.    THE FILING OF THE SECOND HYLAND ACTION
      CONTRAVENES THE STAY ORDER .................................................................. 8

II.   THE SECOND HYLAND ACTION SHOULD BE
      CONSOLIDATED WITH THE 05-162 ACTION.................................................. 10

III.  UPON CONSOLIDATION, BOTH ACTIONS SHOULD BE
      STAYED DURING THE PENDENCY OF THE ILLINOIS ACTION ................ 12

CONCLUSION................................................................................................................. 14

## TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

*Bechtel Corp. v. Laborers' International Union,*
   544 F.2d 1207 (3d Cir. 1976) ...................................................................................12

*Blake v. Farrell Lines, Inc.,*
   417 F.2d 264 (3d Cir. 1969) ....................................................................................12

*Blau v. Harrison,*
   C.A. No. 04-6592,
   2006 U.S. Dist. LEXIS 9822 (N.D. Ill. Mar. 8, 2006)......................................... *passim*

*In re Data General Corporation Antitrust Litigation,*
   510 F. Supp. 1220 (J.P.M.D.L. 1979)..........................................................................9

*Ex Parte Ashton,*
   231 Ala. 497, 165 So. 773 (Ala. 1936) .......................................................................11

*Green v. Citigroup, Inc.,*
   68 Fed. Appx. 934 (10th Cir. June 25, 2003) ...............................................................9

*Honeywell International Inc. v. Audiovox Communications Corp.,*
   C.A. No. 04-1337,
   2005 WL 2465898 (D. Del. May 18, 2005).................................................................10

*Hyland v. Harrison,*
   C.A. No. 05-162,
   2006 WL 288247 (D. Del. Feb. 7, 2006)............................................................. *passim*

*Lloyd v. Industrial Bio-Test Laboratories,*
   454 F. Supp. 807 (S.D.N.Y. 1978) ......................................................................10, 11

*McGinley v. Houston,*
   No. 03-0563,
   2003 U.S. Dist. LEXIS 14947 (S.D. Ala. Aug. 27, 2003)...........................................10

*In re Persico,*
   362 F. Supp. 713 (E.D.N.Y. 1973) ..............................................................................9

*In re Pusser,*
   123 F. Supp. 164 (D.S.C. 1954)....................................................................................9

435398v3

*Rohm and Haas Co. v. Mobil Oil Corp.*
   525 F. Supp. 1298 (D. Del. 1981).................................................................................10

*Sanders v. Barrett,*
   C.A. No. 05-12660,
   2005 U.S. App. LEXIS 22496 (11th Cir. Oct. 17, 2005)...............................................8

*Shillitani v. United States,*
   384 U.S. 364 (1966)......................................................................................................8

*Spallone v. United States,*
   493 U.S. 265 (1990)......................................................................................................8

*United States v. Rabin,*
   263 F. Supp. 989 (S.D. Fla. 1966) ...............................................................................9

*Waldman v. Electrospace Corp.,*
   68 F.R.D. 281 (S.D.N.Y. 1975) .................................................................................11

## STATUTES AND RULES

Fed. R. Civ. P. 42(a) ........................................................................................................10

PSLRA
   15 U.S.C. §§ 78u................................................................................................. *passim*

Securities Exchange Act of 1934
   Section 14(a) ..................................................................................................................5
   Section 20(a) ..................................................................................................................5

## OTHER AUTHORITIES

Manual For Complex Litigation, Fourth § 21.631 (2004).......................................................11

## INTRODUCTION

Dr. Stephen Blau, Lead Plaintiff in the action styled *Blau v. Harrison, et al.*, Case No. 04 C 6592 (N.D. Illinois) (Hibbler, J.) (the "Illinois Action"), and intervenor in Civil Action No. 05-162 JJF (the "Hyland Action"), by his undersigned counsel, respectfully submits this brief in support of his motion to enforce this Court's February 7, 2006 Order (D.I. 91,[1] the "Stay Order")[2] staying the 05-162 action pending the resolution of the first-filed Illinois Action.

In their most audacious ruse to date, Samuel I. Hyland – but, tellingly, not his co-plaintiff in the Hyland Action, Stephanie Speakman (together the "Hyland Plaintiffs") – and his counsel are attempting *for at least the second time* to circumvent the Stay Order in the 05-162 action,[3] which stymied their patently improper attempt to circumvent the Lead Plaintiff Order in the Illinois Action. This time, Hyland alone has filed a second action in this District[4] that, but for a few cosmetic changes, is almost identical to the Hyland Action and has simultaneously moved before the Judicial Panel on Multidistrict

---

[1] Unless otherwise specified, references to D.I. numbers indicate filings in C.A. No. 05-162.

[2] The Stay Order embodied the Court's rulings in its February 7, 2006 opinion, which, in addition to staying the 05-162, granted Dr. Blau's motion to intervene and denied the Hyland Plaintiffs' motion to enjoin further prosecution of the Illinois Action. *Hyland v. Harrison*, C.A. No. 05-162, 2006 WL 288247, at **7-8 (D. Del. Feb. 7, 2006) (the "Opinion") (D.I. 90). On February 9, 2006, the Court entered a second order (D.I. 93) denying the Hyland Plaintiffs' motions to disqualify Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") (D.I. 65), and to take the deposition of Dr. Blau concerning his adequacy as lead plaintiff (D.I. 84).

[3] As discussed below, on February 17, 2006, concurrently with their motion to reopen and reconsider the Stay Order (D.I. 94), the Hyland Plaintiffs violated the stay by filing a motion to intervene in the Illinois Action (Exhibit A to the Affidavit of Gregory M. Nespole dated March 6, 2006 (D.I. 98)), which was denied in all respects. *Blau v. Harrison,* 2006 U.S. Dist. LEXIS 9822 (N.D. Ill. Mar. 8, 2006).

[4] The second Hyland Action, *Hyland v. J.P. Morgan Securities Inc.*, Civil Action No. 1:06-cv-224, has been assigned to this Court.

435398v7                                          1

Litigation ("MDL Panel") to consolidate the newly constituted "three cases" for pre-trial purposes, with the obvious goal of getting yet another shot at arguing that he and his counsel should be appointed lead plaintiff and lead counsel.[5]

## NATURE AND STAGE OF THE CASE

This Court issued the Stay Order after the Hyland Plaintiffs repeatedly attempted, both before the Illinois Court and this Court, to subvert the Illinois Court's Lead Plaintiff Order. Like the Illinois Court, this Court rejected the Hyland Plaintiffs' spurious claim that Dr. Blau and his counsel should be unseated because they supposedly were inadequate class representatives, and stayed the 05-162 action in favor of the Illinois Action. The Court, moreover, found that the appointment of Dr. Blau as lead plaintiff was "consistent with the procedures of the PSLRA," and ruled that if "the Hyland Plaintiffs wished to challenge [the Illinois Court's] decision, their remedy was not to file a second action in this Court, but to follow the procedures laid out in the PSLRA and contest that decision in the Illinois District Court." *Hyland v. Harrison*, 2006 WL 288247 at *7. The Court further ruled that the interests of the Hyland Plaintiffs in the 05-162 action would be adequately protected by Dr. Blau and his counsel in the Illinois Action. *Id.* at *8.

---

[5] Presumably, Hyland will rely on provisions of the PSLRA requiring that determination of the most adequate plaintiff await the resolution of a motion to consolidate if one is made. 15 U.S.C. §§ 78u-4(a)(3)(B)(ii). That subsection, however, is of no help to Hyland because it does not trump but rather is an integral part of the PSLRA procedures for appointing lead plaintiff – such as the requirement that lead plaintiff motions must be filed within the statutorily mandated period – with which Hyland has not complied, and which was in part, the basis for this Court's refusal to disturb the Illinois Court's Lead Plaintiff Order. At the time of the appointment of Dr. Blau as Lead Plaintiff, there were no other actions to be consolidated and neither Hyland nor Speakman bothered to contest that appointment until the time to do so had run.

The Hyland Plaintiffs promptly filed a motion for reconsideration before this Court that is still pending and, flagrantly disregarding the Stay Order, on February 17, 2006, also filed a motion to intervene in the Illinois Action. Judge William J. Hibbler of the Illinois District Court denied that motion and entirely agreed with this Court:

> [t]his Court is not persuaded that the Hyland Plaintiff's interests are not adequately represented in the Illinois Action. Other than surreptitious filings regarding Dr. Blau's appointment as lead Plaintiff, the Hyland Plaintiffs have failed to demonstrate that Dr. Blau has failed to adequately represent their interests thus far in the proceedings. Indeed, this Court previously determined that Dr. Blau is an appropriate lead Plaintiff.

*Blau v. Harrison,* 2006 U.S. Dist. LEXIS 9822 at *10 (N.D. Ill. Mar. 8, 2006).

*Less than two weeks later, on March 24, 2006, Judge Hibbler upheld Dr. Blau's complaint and denied defendants' motion to dismiss the Illinois Action.*[6] Thus, despite constant interference from plaintiffs here, Dr. Blau and his counsel's aggressive and able representation allowed the class to clear the first hurdle in this $7 billion litigation – surviving a motion to dismiss.

Two weeks after Judge Hibbler's upholding of Dr. Blau's complaint, on April 6, 2006, Hyland filed the second Hyland Action, which he admits is a "related action," in this District arising from precisely the same wrongdoing that underlies the stayed action as well as the Illinois Action. Indeed, in his Motion for Centralization before the MDL Panel, Hyland claims that centralization is proper because there are now three "Related

---

[6] In denying the motion to dismiss, Judge Hibbler limited the class to individuals who held shares on the voting date for the merger, with leave to amend. *Blau v. Harrison,* No. 04-6592, slip op. (N.D. Ill. Mar. 24, 2006) (granting motion to dismiss in part and denying in part) (attached hereto as Exhibit A to the concurrently filed Affidavit of Aya Bouchedid) ("Slip Op."). Lead Plaintiff filed a second amended complaint with a conforming class definition on April 10, 2006.

Actions," which "are all premised on the central allegation that JPMC's former CEO wrongfully rejected a superior merger opportunity solely to entrench himself," which "opportunity was then concealed from JPMC's shareholders when they decided whether or not to vote for the Merger." Br. at 3-4. (D.I. 101). The only differences between the Hyland Action and the second Hyland Action are that: the defendant in the second action is J.P. Morgan Securities Inc. ("J.P.M.S."), a wholly-owned subsidiary of J.P. Morgan, Inc. (J.P. Morgan"), a defendant in the 05-162 action, and that the claims against J.P.M.S. derive from its role as the investment advisor to J.P. Morgan, which issued the misleading proxy statement at issue.[7]

It is obvious that the second Hyland Action is simply a means to get before the MDL Panel in a last ditch attempt to wrest control of this litigation. Without the second case, Hyland would be hard-pressed to argue that a case, such as this, that has been stayed in favor of another case, should be consolidated with that case for pre-trial purposes. Even if they were somehow consolidated, the two potential transferee courts have already rejected Hyland's bid to replace Dr. Blau and his counsel and, in essence, determined that, despite the Hyland Plaintiffs' protests, Illinois is a proper venue for this case. Hyland rejects that and seeks to have the MDL Panel second-guess both this Court and the Illinois Court and transfer the Illinois Action here. It cannot be denied that the second Hyland Action appears to have been brought in bad faith and solely for an improper purpose – to attempt to circumvent the Stay Order.

---

[7] Given the several prior orders of this Court and the Illinois Court, Hyland's admission that the three cases are "premised on [a] central allegation" is tantamount to a concession that Dr. Blau and his counsel are indeed qualified to represent plaintiffs' interests in all "three cases" in the Illinois Action, which is now poised to proceed to discovery.

In its February 7, 2006 Opinion, this Court astutely observed that "Dr. Blau's interest lies in preserving the jurisdiction of the Illinois District Court and recovering for the class of investors he represents." *Hyland v. Harrison,* 2006 WL 288247 at *5. Dr. Blau has made great headway in his goal to secure recovery for the class he represents by successfully defending against the motion to dismiss in that case. In order to continue fulfilling his duties, Dr. Blau respectfully requests that this Court enforce the Stay Order, consolidate the second Hyland Action with the 05-162 action for all purposes, and stay both actions pending the resolution of the Illinois Action.

## SUMMARY OF ARGUMENT

**I.    The Filing of The Second Hyland Action Contravenes The Stay Order**

**II.   The Second Hyland Action Should Be Consolidated With The 05-162 Action**

**III.  Upon Consolidation, Both Actions Should Be Stayed During The Pendency Of The Illinois Action**

## STATEMENT OF FACTS

Because Hyland's efforts to undermine the Lead Plaintiff Order in the Illinois Action have been the subject of extensive briefing before this Court, Dr. Blau respectfully refers the Court to his Brief in Opposition to Plaintiffs' Reconsideration Motion (D.I. 97) for a summary of the facts, and sets forth herein only the relevant facts that have come to light since the filing of that brief.

### The Illinois Court's Denial of Defendants' Motion to Dismiss Dr. Blau's Action

On March 24, 2006, Judge Hibbler denied defendants' motion to dismiss Dr. Blau's claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 arising out of the 2004 stock-for-stock merger between J.P. Morgan and Bank One Corporation ("Bank One"), in which Bank One shareholders received a 14% premium for

their shares. Plaintiff alleged that J.P. Morgan and members of its board of directors failed to disclose in the proxy materials that during the negotiations James Dimon, Bank One's CEO, had offered to do the deal with no premium if he could become the CEO of the merged entity immediately upon consummation of the merger and that William B. Harrison, J.P. Morgan's CEO, rejected that offer.

Defendants sought to dismiss Dr. Blau's claims arguing that the claim was subject to the heightened pleading requirements of the PSLRA and Rule 9(b), which Judge Hibbler rejected. He also rejected defendants' argument that the failure to disclose the no-premium offer was immaterial, despite defendants' claim that there is no requirement that proxy materials disclose negotiating positions. Slip Op. at 11-12. The court found that, while not all factors in a negotiation need be disclosed, the failure to disclose the availability of a more profitable exchange ratio was material.[8]

**The Second Hyland Action**

The claims in both the Hyland Action and the second Hyland Action are based on the disclosures made to stockholders of J.P. Morgan relating to J.P. Morgan's merger with Bank One. In both cases, the proxy statement is alleged to be misleading because it failed to disclose that Dimon made a no premium offer to Harrison, which was rejected and caused harm to J.P. Morgan shareholders. These similarities are reflected in both complaints which contain identical language in most of the 43 pages covering the

---

[8]  The court granted defendants' motion to strike an expert affidavit on this point offered by Dr. Blau and upheld materiality at the pleading.

substantive allegations.[9]   Some of the changes in the new complaint – for example, renaming a section entitled "Harrison's Secret Deal: the Merger of Jupiter and Apollo" in the first complaint as "The Entrenchment Scheme: Merging Jupiter and Apollo" – make it plain that the changes are superficial only.

Not surprisingly, in the first Hyland Action, Hyland and Speakman sued the parties directly responsible for the offending proxy statement, namely J.P. Morgan Chase and its directors.[10]   Despite their Herculean efforts to cast that case as fundamentally different than the Illinois Action, plaintiffs litigated their claims against the primary wrongdoers for over a year without adding any new claims or defendants. It is only after this Court stayed the 05-162 action and Judge Hibbler upheld the Illinois Action that Hyland filed a second action arising from the same exact wrongdoing, naming only J.P.M.S. as a defendant, and asserting claims against it for having advised J.P. Morgan on the deal. Prior to the Stay Order, plaintiffs could have moved to amend their complaint to assert these claims, but did not. The second Hyland Action is the 05-162 dressed up to evade the Stay Order.

---

[9]   Compare the following paragraphs of the substantive allegations section of the Hyland Action Complaint ("HAC") (D.I. 51) with the corresponding ones in the second Hyland Action Complaint ("SHAC"), C.A. No. 1:06-CV-224 (D.I. 2): ¶¶ 55 to 70 HAC with ¶¶ 53 to 75 SHAC; ¶¶ 74 to 145 HAC with ¶¶ 79 to 152 SHAC; ¶¶ 146-148 HAC with ¶¶ 153, 154, 156 SHAC; ¶ 149 HAC with ¶ 157 SHAC; and ¶¶ 150 to 161 HAC with ¶¶ 159 to 168 SHAC.

[10]   Hyland and Speakman also named Dimon as a defendant. Both this Court and the Illinois Court acknowledged that and that the first action asserted claims not asserted in the Illinois Action, and nonetheless refused to disturb Judge Hibbler's Lead Plaintiff Order. *See Hyland v. Harrison*, 2006 WL 228247, at **1 n.2, 8; *see Blau v. Harrison*, 2006 U.S. Dist. LEXIS 9822, at **3 n.2, 10-11.

### ARGUMENT

### I. THE FILING OF THE SECOND HYLAND ACTION CONTRAVENES THE STAY ORDER

By Order dated February 9, 2006, this Court stayed this case "pending the resolution of *Blau v. Harrison, et al.*, an action pending in the United States District Court for the Northern District of Illinois," administratively closed the case, directed the parties to file status reports every six months, and ruled that the parties "may seek to reopen this action upon written request." (D.I. 93). The Court ruled that "a stay will adequately preserve the interests of the Hyland Plaintiffs in this action, while simultaneously allowing their interests to be served in the Illinois Action to the extent their claims are being pressed there." *Hyland v. Harrison*, 2006 WL 288247 at *8.

It is well-established that a court has the inherent power to enforce compliance with its lawful orders. *Spallone v. United States*, 493 U.S. 265, 276 (1990); *Shillitani v. United States*, 384 U.S. 364, 370 (1966). A federal court has the power to enforce its orders by dismissing actions and by way of civil contempt. *See Sanders v. Barrett*, 2005 U.S. App. LEXIS 22496, at *4 (11th Cir. Oct. 17, 2005) (The district court's "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits.") (citing *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983)); *Shillitani*, 384 U.S. at 370 ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.")

While Dr. Blau does not seek to dismiss the second Hyland Action or to hold Hyland in civil contempt at this juncture, Hyland's filing of the second action must be seen for what it plainly is – a calculated attempt to sidestep the Stay Order. If Hyland's true purpose was to assert claims against a new defendant in connection with the J.P.

435398v7                                    8

Morgan and Bank One merger, he would have complied with the Stay Order and made a written application to this Court. But Hyland's *modus operandi*, engineered by his counsel, has always been to seek to circumvent lawful orders issued by one federal court by going to a different federal court.

For example, despite the existence of the Lead Plaintiff Order and despite not having moved for lead plaintiff in the Illinois Action, Hyland and Speakman filed the 05-162 action. When Dr. Blau moved to intervene and stay the 05-162 action, the Hyland Plaintiffs asked this Court to render the Lead Plaintiff Order a nullity by claiming that Dr. Blau and his counsel were inadequate class representatives. After the Court issued the Stay Order and ruled in effect that plaintiffs had relinquished any right to contest the Lead Plaintiff Order by circumventing the PSLRA, the Hyland Plaintiffs sought reconsideration and simultaneously went to the Illinois Court and asked that Court to effectively overturn the Stay Order by allowing them to intervene in the Illinois Action. Now, Hyland has effectively violated the Stay Order again by filing the second Hyland Action, together with a motion to consolidate before the MDL Panel, in a naked and patently improper attempt to get yet more federal judges to sit in review of lawful orders issued by other federal judges.[11]

---

[11]    *See In re Data General Corporation Antitrust Litigation*, 510 F. Supp. 1220, 1226-27 (J.P.M.D.L. 1979) ("The Panel has neither the statutory authority nor the inclination to review decisions of district courts, whether they are transferor or transferee courts."); *see also, Green v. Citigroup, Inc.,* 68 Fed. Appx. 934, 936 (10th Cir. June 25, 2003) (unpublished decision) ("It is axiomatic that one district court has no jurisdiction to review the decision of another district court."); *In re Persico*, 362 F. Supp. 713, 714 (E.D.N.Y. 1973) ("Judges of coordinate jurisdiction do not, except in the most extraordinary situations, have the function of reviewing each other's orders."); *United States v. Rabin*, 263 F. Supp. 989, 990 (S.D. Fla. 1966) (district court lacks jurisdiction to review ruling entered by another district court); *In re Pusser*, 123 F. Supp. 164, 167 (D.S.C. 1954) (court "ha[d] no power or authority to amend, modify or revoke an order of (continued...)

This Court can enforce its Stay Order – as the Illinois Court enforced its Lead Plaintiff Order by denying plaintiffs' intervention motion – by consolidating the two actions and staying both.

## II.    THE SECOND HYLAND ACTION SHOULD BE CONSOLIDATED WITH THE 05-162 ACTION

Consolidation is appropriate where there are common issues of law or fact, and where the benefits of consolidation outweigh potential prejudice to the defendants. *See* Fed. R. Civ. P. 42(a);[12] *Rohm and Haas Co. v. Mobil Oil Corp.* 525 F. Supp. 1298, 1309 (D. Del. 1981).

In order to be consolidated, complaints need not be exactly alike so long as the basic claims are similar enough to make consolidation worthwhile. *Honeywell Intern. Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337, 2005 WL 2465898, at *4 (D. Del. May 18, 2005).    Indeed, complaints can have significant differences and still be consolidated. *Lloyd v. Industrial Bio-Test Labs.*, 454 F. Supp. 807, 812 (S.D.N.Y. 1978) (consolidation of securities cases with different class periods, different securities and different defendants).  But here the cases are virtually the same.

The Hyland Action and the second Hyland Action indisputably involve common

---

(...continued)

another United States District Judge"); *McGinley v. Houston*, No. 03-0563, 2003 U.S. Dist. LEXIS 14947, at *2 (S.D. Ala. Aug. 27, 2003) ("The law does not allow a party to file a 'horizontal appeal' from one district judge to another judge of the same rank").

[12]  Rule 42(a) provides that: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matter in issue in the actions; it may order all of the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

issues of law and fact. Even Hyland admits so in his MDL Panel filing. Among other things, the second Hyland Action alleges that J.P.M.S. aided and abetted J.P. Morgan and its directors in creating and distributing a misleading proxy statement, which necessarily requires proof of the claims in the first Hyland Action – and the Illinois Action – that, J.P. Morgan did in fact distribute a misleading proxy statement. Similarly, both actions require the resolution of the question of whether the alleged omission is material as a matter of law – a question Judge Hibbler resolved in Dr. Blau's favor on the pleadings.

The slightly different class definitions[13] do not preclude consolidation because all claims are based on the same course of conduct. *Lloyd*, 454 F. Supp. at 812. Moreover, Hyland is a plaintiff in both cases and J.P.M.S., the defendant in the second case, is a wholly owned subsidiary of J.P. Morgan, a defendant in the first case. In short, Hyland cannot prove one element of his claims against J.P.M.S. without first having to prove the elements of the claims of the now stayed Hyland Action. Thus, consolidation is entirely appropriate. *Ex Parte Ashton*, 231 Ala. 497, 165 So. 773 (Ala. 1936); Manual For Complex Litigation, Fourth § 21.631 (2004) ("[w]hether consolidation is permissible or desirable will depend in large part on the extent to which the evidence is common.").

Moreover, consolidation of shareholders' suits is favored, especially where the wrongdoing at issue is that of a single issuer of securities. *Waldman v. Electrospace Corp.*, 68 F.R.D. 281, 283 (S.D.N.Y. 1975). Even though the second Hyland Action does

---

[13]  The second Hyland Complaint defines a class as all shareholders who owned stock at the close of market on January 14, 2004 and who *sold* their stock after the merger was announced. The first Hyland Action defines the class as those who (1) *purchased* J.P. Morgan stock between January 14, 2004 and June 25, 2004, (2) as shareholders of record on April 2, 2004 were entitled to vote on the merger, and/or (3) acquired their shares by surrendering Bank One shares in connection with the merger on or about July 1, 2004.

not name J.P. Morgan as a defendant, J.P. Morgan is the issuer of the securities at issue,

the issuer of the proxy statement alleged to be misleading, and, through its directors, is

the primary wrongdoer, with whom Hyland alleges J.P.M.S. conspired. *See* Second

Hyland Action Complaint (D.I. 2) at ¶ 19.

## III.    UPON CONSOLIDATION, BOTH ACTIONS SHOULD BE STAYED DURING THE PENDENCY OF THE ILLINOIS ACTION

This Court held that:

> Consistent with the procedures of the PSLRA, the Illinois
> District Court has appointed Dr. Blau as lead plaintiff and
> approved Wolf Haldenstein to serve as lead counsel in that
> action. If the Hyland Plaintiffs wished to challenge that
> decision, their remedy was not to file a second action in this
> Court, but to follow the procedures laid out in the PSLRA
> and contest that decision in the Illinois District Court.
> Instead, the Hyland Plaintiffs, through their counsel, have
> circumvented this procedure by filing this action and
> presenting their arguments to the Illinois District Court in
> the form of amici curiae briefs.
>
> Nevertheless, the Illinois Court has considered and rejected
> the arguments of the Hyland Plaintiffs concerning the
> appointment of Dr. Blau as lead counsel, including the
> Hyland Plaintiffs' assertion that Dr. Blau did not provide
> them with proper notice under the PSLRA. This Court will
> not second-guess the decisions of the Illinois District Court
> on this matter.

*Hyland v. Harrison,* 2006 WL 288247, at *7-8.

The Court's reasoning is equally applicable to the second Hyland Action which,

for the reasons above, should be consolidated with the first Hyland Action. Accordingly,

it too should also be stayed. *See Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207,

1215 (3d Cir. 1976) (A district court has broad power to stay proceedings); *Blake v.

Farrell Lines, Inc.*, 417 F.2d 264, 266 (3d Cir. 1969) ("the trial judge, under Rule 42(a),

is given the broad authority to 'make such orders concerning proceedings therein as may

tend to avoid unnecessary costs or delay'").

Moreover, this Court ordered the Hyland Action stayed even before "[]either action ha[d] progressed to a substantive review of the merits". *Hyland v. Harrison,* 2006 WL 288247, at *8. Since then, the Illinois District Court has ruled on J.P. Morgan's motion to dismiss the Illinois Action and sustained all of Dr. Blau's claims, allowing the case to go forward and providing further justification for imposing a stay in this second Hyland Action as with the first one.

As has been made abundantly clear by this court, any right Hyland and Speakman had to intervene in the Illinois Action, the only pending action asserting claims related to the merger of J.P. Morgan with Bank One, was foregone when, starting in May 2005, they chose to circumvent the PSLRA. *See Hyland v. Harrison,* 2006 WL 288247, at *7. This Court should not countenance Hyland's bold-faced attempt to circumvent the PSLRA again and to do so by disrespecting the sanctity of the orders of two federal courts.

## CONCLUSION

For the foregoing reasons, Dr. Blau respectfully requests that this Court grant his motion to enforce the Stay Order and to consolidate the first and second Hyland actions, and, upon consolidation, stay both actions pending resolution of the Illinois Action.

Dated: April 18, 2006

**CHIMICLES & TIKELLIS LLP**

Pamela S. Tikellis (#2172)
Robert Davis (#4536)
Daniel J. Brown (#4688)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware  19899
(302) 656-2500

OF COUNSEL:

Demet Basar
Aya Bouchedid
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

Adam J. Levitt
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000

435398v7                                         14

# Exhibit A

LEXSEE 2006 U.S. DIST. LEXIS 9822

Dr. Stephen Blau, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v.
William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John
H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III,
Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and J.P. Morgan Chase & Co.,
Defendants.

No. 04 C 6592

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

*2006 U.S. Dist. LEXIS 9822*

March 8, 2006, Decided

COUNSEL: [*1] For Dr Stephan Blau, individually and
on behalf of all others similarly situated, Plaintiff: Adam
J. Levitt, Wolf, Haldenstein, Adler, Freeman & Herz LLC,
Chicago, IL.; Mary Jane Fait, Wolf, Haldenstein, Adler,
Freeman & Herz LLC (Chicago), Chicago, IL.; Gregory
M Nespole, Jeffrey G. Smith, Wolf Haldenstein Adler
Freeman & Hertz LLP, Chicago, NY.

For American Growth Fund, Inc., Plaintiff: Adam J.
Levitt, Wolf, Haldenstein, Adler, Freeman & Herz LLC,
Chicago, IL.

For Jr William B Harrison, Hans W Becherer, Frank
A Bennack, Lawrence A Bossidy, M Anthony Burns,
Laurence Fuller, Ellen V Futter, William H Gray, Helene
L Kaplan, Lee R Raymond, John R Stafford, Defendants:
Kathleen Lynn Roach, Chante Danielle Spann, Courtney
Ann Rosen, Sidley Austin LLP, Chicago, IL.; Michael
A. Cooper, Sharon L. Nelles, Sullivan & Cromwell LLP,
New York, NY.

For Riley P Bechtel, Defendant: Chante Danielle Spann,
Kathleen Lynn Roach, Sidley Austin LLP, Chicago,
IL.; Michael A. Cooper, Sharon L. Nelles, Sullivan &
Cromwell LLP, New York, NY.

For John H Giggs, Defendant: Kathleen Lynn Roach,
Courtney Ann Rosen, Sidley Austin LLP, Chicago, IL.;
Michael A. Cooper, Sharon L. Nelles, Sullivan [*2] &
Cromwell LLP, New York, NY.

For J.P. Morgan Chase & Company, Defendant: Julie
A. Lepri, JPMorgan Chase, Chicago, IL.; Kathleen Lynn
Roach, Chante Danielle Spann, Courtney Ann Rosen,
Sidley Austin LLP, Chicago, IL.

For Samuel Hyland, Stephanie Speakman, proposed:
Joseph N. Gielata, Wilmington, DE, US.

OPINIONBY: William J. Hibbler

OPINION:

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the motion
of Samuel Hyland and Stephanie Speakman ("Hyland
Plaintiffs") to intervene. Dr. Stephen Blau ("Dr. Blau"),
lead Plaintiff in Dr. Stephen Blau, Individually and on
Behalf of All Others Similarly Situated, vs. William B.
Harrison, Jr., et al., 04 C 6592, currently before this Court
("Illinois Action"), has submitted memoranda in opposi-
tion to this intervention. n1 For the reasons stated below,
the Court DENIES the Hyland Plaintiffs' motion to inter-
vene.

> n1 Other Defendants in the Illinois action are
> Hans W. Becherer, Riley P. Bechtel, Frank A.
> Bennack, Jr., John H. Biggs, Lawrence A. Bossidy,
> M. Anthony Burns, Ellen V. Futter, William H.
> Gray, III, Helene L. Kaplan, Lee R. Raymond, John
> R. Stafford, and J.P. Morgan Chase & Co.

[*3]

BACKGROUND

On October 13, 2004, Dr. Blau filed action in the
United States District Court for the Northern District of
Illinois against Defendants alleging violations of *Section
14(a)* of the Securities Exchange Act of 1934 ("Exchange
Act") in connection with the merger of J.P. Morgan Chase
& Co. and Bank One Corporation. On January 5, 2005,
this Court entered an order appointing Dr. Blau and

American Growth Fund, Inc. ("AGF") lead Plaintiffs and approved Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as lead Counsel. On February 18, 2005, AGF withdrew as lead plaintiff, and Dr. Blau subsequently filed an Amended Complaint.

On March 17, 2005, the Hyland Plaintiffs filed an action in the United States District Court District of Delaware ("Delaware Action") containing claims similar to the allegations in the Illinois Action. n2 Subsequently, counsel for the Hyland Plaintiffs filed several briefs and letters to this Court, characterized as *amici curiae* submissions, requesting that this Court vacate its January 5, 2005 Order appointing Dr. Blau as lead Plaintiff and approving Wolf Haldenstein as lead counsel in the Illinois Action. These submissions further requested [*4] that this Court *sua sponte* transfer the Illinois Action to the Delaware District Court.

> n2 The Delaware Action included an additional defendant, James Dimon, and also contained several additional claims such as: the common law duty of loyalty and duty of disclosure; two based on *Section 10(b)* and *Section 20* of the Exchange Act and three based on *Section 11*, *12(a)(2)*, and *15* of the Securities Act of 1933.

In August 2005, Dr. Blau filed, in the Delaware District Court, a motion to intervene and stay the Delaware Action. On February 7, 2006, the Delaware District Court issued a ruling granting Dr. Blau's motion to intervene and also stayed the Delaware Action until resolution of the Illinois Action. *See Hyland v. Harrison, No. 05-162-JJF, 2006 U.S. Dist. Lexis 5744, 2006 WL 288247 (D. Del. Feb. 7, 2006)*. Following the Delaware District Court's ruling, the Hyland Plaintiffs filed the instant motion.

## DISCUSSION

The Hyland Plaintiffs' motion is brought pursuant to *Federal Rule of Civil Procedure 24(a)(2)* [*5] (Intervention of Right) or, in the alternative, *Fed. R. Civ. Pro. 24(b)(2)*(Permissive Intervention). The Hyland Plaintiffs request to intervene in order to conduct limited discovery on Dr. Blau's status as lead Plaintiff. In sum, the Hyland Plaintiffs request to conduct discovery on whether Dr. Blau is aware of the implications and responsibilities of being lead Plaintiff. The Hyland Plaintiffs point out AGF's withdrawal as Lead Plaintiff, alleging that it resulted from Wolf Haldenstein's failure to adequately notice AGF that it was signing on to be Lead Plaintiff.

In response, Dr. Blau claims that the motion is procedurally defective for several reasons: first, because

the Delaware District Action stayed the Hyland action; next, because this Court has already considered whether Dr. Blau is an appropriate Lead Plaintiff; and lastly, because the motion seeks to have this Court review the Delaware District Court's order to stay the Delaware Action. Notwithstanding the procedural defects, Dr. Blau additionally argues that the Hyland Plaintiff's motion to intervene is untimely and contends that the Hyland Plaintiffs interests are adequately represented [*6] by the lead Plaintiff in the Illinois Action.

### A. Intervention of Right

*Fed. R. Civ. Pro. 24(a)(2)* provides that upon timely application, "anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." The Seventh Circuit has held that four requirements must be satisfied in order to intervene as a matter of right: (1) the application is timely; (2) the applicant has an interest in the property or transaction which is the subject of the action; (3) disposition of the action . . . may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest. *See Security Insurance Company of Hartford v. Schipporeit, Inc., 69 F.3d 1377 (7th Cir. 1995)*. Failure to satisfy even one of these requirements is sufficient to [*7] warrant denial of a motion to intervene as a matter of right. *See N.A.A.C.P. v. New York, 413 U.S. 345, 369, 37 L.Ed. 2d 648, 93 S. Ct. 2591 (1973)*.

Dr. Blau contends that the Hyland Plaintiffs motion is untimely because although the Hyland Plaintiffs were aware of the Illinois action as evidenced by their *amici curiae* filings to this Court, they failed to file a motion to intervene until after the Delaware District Court stayed the Delaware Action. The Hyland Plaintiffs argue that the motion to intervene is timely as it was filed two weeks after the Delaware Action was stayed.

The Hyland Plaintiffs cite *In re Discovery Zone Secs. Litig., 181 F.R.D. 582 (N.D. Ill. 1998)* in support of their contention that their motion is timely. *Discovery Zone*, however, is distinguishable from the facts at hand. *Discovery Zone* entailed a federal securities fraud class action in which McDonald Corporation, who was not a member of the class, filed a motion to intervene after three years of litigation and after a proposed settlement had been announced. *Id. at 586*. During the proceedings, McDonald's, who was Discovery Zone's largest shareholder, [*8] acted as co-counsel to the class counsel and was considered an "absent class member." *Id. at 587*.

Subsequently, class counsel began negotiating a settlement agreement without inclusion of McDonald's claims or damages. *Id.* One month after class counsel and defendants reached a full settlement, explicitly excluding McDonald's claims, McDonald's filed a motion to intervene. *Id. at 588.* In granting the motion to intervene, the *Discovery Zone* Court reasoned that the motion to intervene was timely because it was filed "within a reasonable amount of time after discovering that class counsel was no longer litigating or negotiating on its [McDonald's] behalf. *Id.* At 594.

In the instant case, this Court appointed Dr. Blau lead Plaintiff on January 5, 2005. On May 24, 2005, four months later, counsel for the Hyland Plaintiffs filed an *amici curiae* brief urging this Court to vacate its Order appointing Dr. Blau lead Plaintiff and approving Wolf Haldenstein as lead Counsel. On August 8, 2005, three months after its initial filing and the same month that Dr. Blau filed a motion to intervene in the Delaware Action, the Hyland Plaintiffs [*9] submitted another *amici curiae* memorandum to this Court again advocating that this Court vacate its January 2005 Order appointing Dr. Blau lead Plaintiff. The Hyland Plaintiffs filed their motion to intervene in February 2006, thus, the Hyland Plaintiffs were aware of the Illinois Action at least nine months prior to filing the instant motion to intervene to this Court. In fact, the Hyland Plaintiffs strategically chose not to file an earlier motion to intervene for fear of subjecting their claims to jurisdiction in Illinois. n3 The facts reflect that the Hyland Plaintiffs were aware of Dr. Blau's appointment as lead Plaintiff as early as May 2005. In turn, the Hyland Plaintiffs filed several briefs and letters urging this Court to vacate its Order appointing Dr. Blau lead Plaintiff, but specifically refrained from filing a motion to intervene. The test for timeliness is "essentially one of reasonableness: potential interveners need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995).* The Court finds that the Hyland [*10] Plaintiffs failed to file a motion to intervene within a reasonable time after learning of the Illinois Action. Accordingly, the Court concludes that the Hyland Plaintiffs motion to intervene is untimely.

> n3 In submitting the amicus briefs, Hyland Plaintiff's counsel noted that his "clients proceed as amici curiae but do not wish to intervene or otherwise formally appear in the Illinois Action for fear that doing so might waive their objections to venue."

Additionally, this Court is not persuaded that the Hyland Plaintiff's interests are not adequately represented in the Illinois Action. Other than surreptitious filings regarding Dr. Blau's appointment as lead Plaintiff, the Hyland Plaintiffs have failed to demonstrate that Dr. Blau has failed to adequately represent their interests thus far in the proceedings. Indeed, this Court previously determined that Dr. Blau is an appropriate lead Plaintiff. Further, the Delaware District Court concluded that "a stay will adequately preserve the interests of the Hyland [*11] Plaintiffs in this action, while simultaneously allowing their interests to be served in the Illinois Action to the extent their claims are pressed there." Recognizing the "tug of war" between Dr. Blau and the Hyland Plaintiffs with regard to who will serve as lead Plaintiff, the Court finds no reasonable basis for a finding that Dr. Blau is not capable of adequately representing the class in the Illinois Action.

B. Permissive Intervention

Permissive Intervention, set forth under *Rule 24(b)(2),* provides that, upon timely application, the Court has discretionary authority to permit a nonparty to intervene when "an applicant's claim or defense and the main action have a question of law or fact in common." When considering whether to grant a motion for permissive intervention, the Court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Fed. R. Civ. P. 24(b).* In this case, there is no dispute that the claims alleged by the Hyland Plaintiffs and Dr. Blau share common issues of law and fact. Further, while the motion to dismiss is fully briefed and there has been no dispositive [*12] action in the instant action, the Court does not believe that Dr. Blau would be prejudiced by the Hyland Plaintiffs participation in this action. As noted above, however, the Court finds that the Hyland Plaintiffs' motion to intervene is untimely. Therefore, this motion is denied.

CONCLUSION

For the aforementioned reasons, the Court DENIES the Hyland Plaintiffs' motion to intervene.

IT IS SO ORDERED.

3/8/06
Dated

The Honorable William J. Hibbler

United States District Court.

# Exhibit B

Westlaw.

Slip Copy                                                                                              Page 1

Slip Copy, 2005 WL 2465898 (D.Del.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
HONEYWELL INTERNATIONAL INC., and
Honeywell Intellectual Properties Inc., Plaintiffs,
v.
AUDIOVOX COMMUNICATIONS CORP.,
Audiovox Electronics Corporation, Nikon
Corporation, Nikon, Inc., Nokia Corporation; Nokia
Inc., Sanyo Electric Co., Ltd., and Sanyo North
America Corporation, Defendants.
HONEYWELL INTERNATIONAL INC., and
Honeywell Intellectual Properties Inc., Plaintiffs,
v.
APPLE COMPUTER, INC.; Argus A/K/A Hartford
Computer Group, Inc.; Casio Computer Co., Ltd.;
Casio, Inc.; Concord Cameras; Dell Inc.; Eastman
Kodak Company; Fuji Photo Film Co., Ltd.; Fuji
Photo Film U.S.A., Inc.; Fujitsu Limited; Fujitsu
America, Inc.; Fujitsu Computer Products of
America, Inc.; Kyocera Wireless Corp.; Matsushita
Electrical Industrial Co.; Matsushita Electrical
Corporation of America; Navman NZ Limited;
Navman U.S.A. Inc.; Olympus Corporation;
Olympus America, Inc.; Pentax Corporation; Pentax
U.S.A., Inc.; Sony Corporation; Sony Corporation
of America; Sony Ericsson Mobile Communications
AB; Sony Ericsson Mobile Communications (USA)
Inc.; Toshiba Corporation; and Toshiba America,
Inc., Defendants.
OPTREX AMERICA, INC., Plaintiff,
v.
HONEYWELL INTERNATIONAL INC., and
Honeywell Intellectual Properties Inc., Defendants.
**No. Civ.A. 04-1337-KAJ, Civ.A. 04-1338-KAJ,
Civ.A. 04-1536-KAJ.**

May 18, 2005.

Steven J. Balick, John G. Day, Ashby & Geddes,
Leslie A. Polizoti, Thomas C. Grimm, Morris,
Nichols, Arsht & Tunnell, Karen L. Pascale,

Bouchard, Margules & Friedlander, P.A.,
Wilmington, DE, for Plaintiffs.
Richard L. Horwitz, Philip A. Rovner, David Ellis
Moore, Potter Anderson & Corroon, LLP, William
J. Marsden, Jr., Thomas Lee Halkowski, Tara D.
Elliott, Fish & Richardson, P.C., Paul A. Bradley,
McCarter & English, LLP, Matt Neiderman, Duane
Morris LLP, Donald W. Huntley, Donald W.
Huntley, Esq., Robert J. Katzenstein, Robert Karl
Beste, III, Smith, Katzenstein, & Furlow, Amy
Elizabeth Evans, Cross & Simon, LLC, Chad
Michael Shandler, William J. Wade, Richards,
Layton & Finger, Arthur G. Connolly, III, Francis
DiGiovanni, Connolly, Bove, Lodge & Hutz, John
W. Shaw, Adam Wyatt Poff, Young, Conaway,
Stargatt & Taylor, Wilmington, DE, Barry M.
Graham, Darren M. Jiron, Timothy J. Vezeau,
Robert J. Benson, Avelyn M. Ross, Roderick B.
Williams, Christopher E. Chalsen, Christopher J.
Gaspar, Parker H. Bagley, Steven J. Rizzi, Arthur I.
Neustadt, Carl E. Schlier, Pro Hac Vice, for
Defendants.

*MEMORANDUM ORDER*
JORDAN, J.

Introduction & Background

*1 In these three actions, Honeywell International
Inc., a Delaware corporation, and Honeywell
Intellectual Properties Inc., an Arizona corporation,
(collectively "Honeywell") have asserted that their
rights under U.S. Patent No. 5,280,371, issued
January 18, 1994, (the " '371 patent) have been
infringed. The '371 patent claims a liquid crystal
display ("LCD") apparatus said to provide
enhanced brightness and clarity when compared
with prior art LCDs. (*See* '371 patent, attached to
C.A. No. 04-1338-KAJ Docket Item ["D.I."] 1 at
Ex. 1, col. 1 lines 48-61; col. 6, lines 1-42.) In Civil
Action No. 04-1337-KAJ, Honeywell asserts the
'371 patent against 8 defendants. (C.A. No.
04-1337-KAJ D.I. 39.) In Civil Action No.
04-1338-KAJ, it asserts the same patent against

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2

Slip Copy, 2005 WL 2465898 (D.Del.)
(Cite as: Slip Copy)

another 27 defendants. In Civil Action No.
04-1536-KAJ, Optrex America, Inc., a New York
corporation, ("Optrex") has sued for a declaratory
judgment that it does not infringe Honeywell's
rights under the '371 patent and that the patent is
invalid. (C.A.No. 04-1536-KAJ D.I. 1.)

> FN1. Honeywell chose to file two separate
> suits simultaneously because a conflict of
> interest of one of its law firms prevented
> that firm from representing Honeywell
> against certain of the defendants, and it
> now seeks consolidation of the actions. (
> See C.A. No. 04-1338-KAJ D.I. 135 at n.
> 1.)

Pending before me are several motions bearing on
the management of these cases. Honeywell seeks
consolidation of the actions. (C.A. No.
04-1338-KAJ D.I. 134; C.A. No. 04-1536-KAJ D.I.
14) A third party, Seiko Epson Corporation, a
Japanese company, ("Seiko Epson") seeks to
intervene because it is the original manufacturer of
LCDs said to be the infringing component in some
of the defendants' consumer electronics. (See C.A
No. 04-1337-KAJ D.I. 50; C.A. No. 04-1338-KAJ
D.I. 136 at 7-9); Optrex, another seller of allegedly
infringing LCDs to defendants in the suits filed by
Honeywell, seeks to have its case tried first. (C.A.
No. 04-1536-KAJ D.I. 23.) And several of the
defendants in the actions brought by Honeywell
have filed motions to stay the litigation against them
while Honeywell first tries its infringement claims
against the manufacturers of the LCDs. (See, e.g.,
C.A. No. 04-1337-KAJ D.I. 60, 63, 101, and 112;
C.A. No. 04-1338-KAJ D.I. 95, 158, 161, 181, and
189.)

> FN2. A chart listing the motions filed by
> the parties is appended.

> FN3. Federal Rule of Civil Procedure
> 7(b)(1) provides in pertinent part that, "
> [a]n application to the court for an order
> shall be by motion...." It is the custom and
> expectation of this court that, unless
> otherwise ordered by the court, an

application like Optrex's should be made
by way of formal motion. That expectation
was not met in this instance. Failure to
abide by Rule 7 necessarily brought with it
a failure to abide by Local Rule 7.1.1,
respecting the certification of counsel
required with all non-dispositive motions.
Solely because Optrex's request, which
came by way of a letter, can be readily
disposed of in light of my rulings on the
motions properly made, I have considered
it and address it herein.

On May 16, 2005, I held a consolidated pretrial
conference in these cases pursuant to Federal Rule
of Civil Procedure 16. At that time, I heard
argument on the various motions and issued
preliminary rulings. This Order confirms those
rulings and provides a further explication for them.
For the reasons stated herein, as well as those stated
in open court at the Rule 16 conference, Seiko
Epson's motion to intervene is granted, Honeywell's
motion to consolidate is granted in part, Optrex's
request is granted to the extent stated herein, and
the motions to stay submitted by defendants in the
Honeywell-filed cases are granted. In short,
Honeywell will be required to litigate its
infringement claims in the first instance against the
manufacturers of the accused LCDs, not against the
many customers of those manufacturers who
incorporate the LCDs into their consumer
electronics.

Standard of Review

\*2 Motions to intervene are entrusted to the
discretion of the court. See Kleissler v. U.S. Forest
Service, 157 F.3d 964, 969 (3d Cir.1998) ("We will
reverse a district court's determination on a motion
to intervene as of right if the court has abused its
discretion by applying an improper legal standard
or reaching a conclusion we are confident is
incorrect.") Intervention as of right is governed by
Federal Rule of Civil Procedure 24(a), which states
in relevant part, "[u]pon timely application anyone
shall be permitted to intervene in an action ... (2)
when the applicant claims an interest relating to the
property or transaction which is the subject of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 3

Slip Copy, 2005 WL 2465898 (D.Del.)
**(Cite as: Slip Copy)**

action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." That rule has been interpreted
to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Kleissler,* 157 F.3d at 969.

A district court also generally has broad discretion when deciding whether to consolidate or stay proceedings. *See Bechtel Corp. v. Laborers' International Union,* 544 F.2d 1207, 1215 (3d Cir.1976) ("A United States district court has broad power to stay proceedings."); *Blake v. Farrell Lines, Inc.,* 417 F.2d 264, 266 (3d Cir.1969) ("the trial judge, under Rule 42(a), is given the broad authority to 'make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay' ").

With respect to consolidation, Federal Rule of Civil Procedure 42(a) provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (3d cir.1983) (quotation omitted). When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a

clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

### Discussion

**\*3** These cases are the second set of LCD technology cases to come before this court on a grand scale. The first set, in which the lead case is *Commissariat A L'Energie Atomique v. Samsung, et al.,* C.A. No. 03-484-KAJ (consolidated), involved the plaintiff ("CEA") suing a host of manufacturers, distributors, and retailers of LCDs or products containing them. After sorting through the various motions to stay and to consolidate, I concluded that consolidation of cases against the manufacturer defendants was appropriate because those cases involved common questions of law and fact pertaining to infringement. *See id.,* May 13, 2004 Mem. Order at 5-6. However, I declined to consolidate the cases involving non-manufacturer defendants because no sound reason was given for immediately addressing what could only be the derivative liability of those defendants. *See id.* For that same reason, I stayed the cases against the non-manufacturer defendants, observing, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.* at 7 (quoting *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed.Cir.1990).

I was persuaded then and remain persuaded that large-scale litigation like this requires the business and strategic legal interests of the plaintiff to cede some ground to case management imperatives. It is impracticable to try an infringement case against 40 some defendants or third-party defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4

Slip Copy, 2005 WL 2465898 (D.Del.)
(Cite as: Slip Copy)

litigation. *Cf. Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989) (noting that the " customer suit exception" to the preference for allowing a first-filed action to proceed first is based on "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement").

> FN4. Optrex and Seiko Epson are before the court already. Other LCD manufacturers identified as "Curitel, Philips, Wintek, and Samsung SDI" have been named in a third party complaint (*see* C.A. No. 04-1338-KAJ D.I. 167 at 5), and LCD manufacturers identified as "Arima Display, AU Optronics, CPT, Hannstar, Hitachi, Primeview, Quanta Display, Inc., ST-LCD, TM Display, and Tottori Sanyo" have not been named or appeared in any of the cases to date. (*See id.*)

Honeywell has been frank to say that it deliberately avoided suing the manufacturers to avoid "the complications faced by this Court in the French government's LCD action, C.A. No. 03-484 [i.e., the *CEA* suit]." (C.A. No. 04-1338-KAJ D.I. 147 at 3, ¶ 2.) Honeywell also accurately assesses the several motions to stay and the motion to intervene as an effort by the movants to "recast [Honeywell's lawsuits] as a case against LCD suppliers...." (C.A. No. 04-1338-KAJ D.I. 167 at 5.) What Honeywell fails to appreciate is that, from the perspective of the host of defendants Honeywell has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed. It is not a complication to be resisted.

*4 Thus, Honeywell's motions to consolidate will be granted because the cases certainly do involve common questions of law and fact which make sense to handle for certain purposes on a consolidated basis. *See* Fed.R.Civ.P. 42(a). Whether a single trial against all the non-manufacturer defendants makes sense is a question for another day. For now it is sufficient to order that trial and pretrial activities with respect to the dispute between Honeywell and those

manufacturer defendants presently before the court will be handled on a consolidated basis. Any pretrial activities with respect to Honeywell's claims against the non-manufacturer defendants will also be handled, for the time being, on a consolidated basis. It is likely that the claims against and by the manufacturer defendants will later be separated out for pretrial proceedings as well as a separate trial. As further noted herein, however, there will be some discovery permitted of the non-manufacturer defendants, so all will remain in the case for the time being.

The motion to intervene filed by Seiko Epson will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. Seiko Epson correctly claims that it has met the test for intervention as of right under Rule 24(a). Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

For evidently similar reasons, Optrex has taken affirmative steps to insert itself in this litigation and to have the opportunity to have the dispute over its LCDs heard before the suits against the non-manufacturer defendants are permitted to go forward. As stated at the May 16 conference, I agree that the dispute between Honeywell and the manufacturers should go forward first. To that extent, Optrex's request to proceed with its claims on a priority basis will be granted.

As to the several motions to stay, they too are granted to the extent stated in open court. The non-manufacturer defendants will not be given a complete and immediate stay of all proceedings involving them, because I will permit Honeywell

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 5

Slip Copy, 2005 WL 2465898 (D.Del.)
(Cite as: Slip Copy)

certain limited discovery to learn who the suppliers of LCDs are for the various devices that Honeywell must now specifically identify as accused products. I will otherwise stay the litigation against the non-manufacturer defendants, however, since a stay would not unduly prejudice Honeywell, it will vastly simplify the issues and trial of the case against the manufacturer defendants, and it comes at time when discovery has not even begun and no trial date has been set. *See United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (setting forth test for propriety of a stay). At the appropriate time, a separation of the suits against the manufacturer and non-manufacturer defendants may well be warranted, for ease of case administration.

> FN5. At the case management conference, I granted a defense request that Honeywell be required to identify the products it is accusing of infringement. To date, it has only stated that "[a]t least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by [the named defendants] infringe the '371 patent literally and/or under the doctrine of equivalents...." (C.A. No. 04-1338-KAJ D.I. 1 at ¶ 53.)

*5 At the close of the case management conference, I instructed the parties to confer and provide me with proposed language respecting permissible discovery activities directed at the non-manufacturer defendants during the stay. A further and separate order will be entered following the parties' filing or filings in that regard.

Conclusion

For the reasons stated in open court on May 16, 2005 and herein, it is hereby ORDERED that

(1) Honeywell's motions to consolidate (C.A. No. 04-1338-KAJ D.I. 134; C.A. No. 04-1536-KAJ D.I. 14) are GRANTED to the extent that Civil Action Nos. 04-1337-KAJ, 04-1338-KAJ and 04-1536-KAJ are consolidated for the present for

all purposes, with a consolidated case caption to be suggested by the parties by June 17, 2005;

(2) Seiko Epson's motions to intervene (C.A. No. 04-1337-KAJ D.I. 50 and C.A. No. 04-1338-KAJ D.I. 136) are GRANTED;

(3) Optrex's request to proceed with its dispute in advance of Honeywell being permitted to proceed with its litigation against the non-manufacturer defendants (C.A. No. 04-1536-KAJ D.I. 23) is GRANTED to the extent described herein; and

(4) the several motions to stay (C.A. No. 04-1337-KAJ D.I. 60, 63, 101 and 112; C.A. No. 04-1338 D.I. 95, 158, 161, 181 and 189) are GRANTED to the extent described herein, with a further order regarding the stay to be proposed by the parties no later than June 17, 2005.

HONEYWELL V. AUDIOVOX, ET AL.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 6

Slip Copy, 2005 WL 2465898 (D.Del.)
**(Cite as: Slip Copy)**

| C.A. No 04-1337 | Defendant | Pending Motions |
|---|---|---|
| | Audiovox Communications | 1) Motion to Stay (D.I.112) |
| | Audiovox Electronics | 1) Customer defendants' Motion to Stay (D.I.101) |
| | Nikon Corporation | 1) Motion to Stay (D.I.60) |
| | Nikon Inc. | |
| | Nokia Corporation | 1) Motion for leave to file third party |
| | Nokia Inc. | complaint (D.I.57) |
| | | 2) Motion to Stay (D.I.63) |
| | | 3) Joinder in Toshiba's Motion to Bifurcate filed in C.A. No. 04-1138 at D.I. 164 (D.I.97) |
| | Sanyo Electric Co. | No Motions |
| | Sanyo North America | |
| | Curitel Communications (Third Party Deft) | No Motions |
| | Toshiba Corp. (Third Party Deft) | No Motions |
| | Seiko Epson Corporation (non-party) | 1) Motion to Intervene (D.I.50) |

HONEYWELL V. APPLE COMPUTER, ET AL.

| C.A. No 04-1338 | Defendant | Pending Motions |
|---|---|---|
| | Apple Computer | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164) |
| | | 2) motion to stay (D.I.181) |
| | Argus a/k/a Hartford Computer | 1) motion to stay (D.I.181) |
| | Casio Computer | 1) Joinder (D.I.172) in Toshiba's |
| | Casio Inc. | motion to bifurcate (D.I.164) |
| | Concord Cameras | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164) |
| | | 2) motion to stay (D.I.181) |
| | Dell Inc. | 1) Joinder (D.I.172) in Toshiba's motion to bifurcate (D.I.164) |
| | | 2) motion to stay (D.I.181) |
| | Eastman Kodak | 1) Joinder (D.I.194) in Toshiba's motion to bifurcate (D.I.164) |
| | | 2) motion to stay (D.I.181) |
| | Fuji Photo Film | 1) motion for more definite statement, |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                   Page 7

Slip Copy, 2005 WL 2465898 (D.Del.)
(Cite as: Slip Copy)

| | | |
|---|---|---|
| Fuji Photo Film USA | for stay, and for partial dismissal (D.I. 95) | |
| | 2) motion to transfer (D.I.97) | |
| | 3) brief filed (D.I.156) in support of | |
| | Seiko Epson's motion to intervene (D.I. 136) | |
| | 4) briefs filed (D.I.166, 183) in support | |
| | of Toshiba's motion to bifurcate (D.I. 164) | |
| Fujitsu Limited | 1) Joinder (D.I.172) in Toshiba's | |
| Fujitsu America | motion to bifurcate (D.I.164) | |
| Fujitsu Computer | | |
| Kyocera Wireless | 1) motion to stay (D.I.158) | |
| Matsushita Electrical Industrial | 1) Joinder (D.I.172) in Toshiba's | |
| Matsushita Electrical Corp. | motion to bifurcate (D.I.164) | |
| Navman NZ | 1) motion to stay (D.I.181) | |
| Navman USA | | |
| Olympus Corp. | 1) motion to stay (D.I.161) | |
| Olympus America | | |
| Pentax Corporation | 1) motion to stay (D.I.158) | |
| Pentax USA | | |
| | 2) Joinder (D.I.172) in Toshiba's | |
| | motion to bifurcate (D.I.164) | |
| Sony Corp. | 1) Joinder (D.I.172) in Toshiba's | |
| Sony Corp. Of America | motion to bifurcate (D.I.164) | |
| | 2) motion to stay (D.I.189) | |
| Sony Ericsson Mobile AB | 1) Joinder (D.I.196) in motion to stay | |
| Sony Ericsson Mobile USA | (D.I.158) | |
| Toshiba Corporation | 1) motion to bifurcate (D.I.164) | |
| Toshiba America | no motions | |
| Philips Electronics (3rd pty dft) | no motions | |
| Wintek Electro-Optics (3rd pty dft) | no motions | |
| Optrex America (3rd pty dft) | no motions | |
| Seiko Epson (non-party) | 1) motion to intervene (D.I.136) | |
| PLAINTIFFS-HONEYWELL | 1) motion to consolidate and for stay (D.I.134) | |

OPTREX AMERICA INC. V. HONEYWELL

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 8

Slip Copy, 2005 WL 2465898 (D.Del.)
(Cite as: Slip Copy)

| C.A. No | Defendant | Pending Motions |
|---------|-----------|-----------------|
| 04-1536 | Honeywell International | 1) Motion to consolidate and for stay (D.I.14) |
|         | Honeywell Intellectual | 1) Motion to consolidate and for stay |
|         | Properties | (D.I.14) |

D.Del.,2005.
Honeywell     Intern.     Inc.     v.     Audiovox
Communications Corp.
Slip Copy, 2005 WL 2465898 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:04cv01338 (Docket) (Oct. 6, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit C

Westlaw.

Slip Copy
Slip Copy, 2006 WL 288247 (D.Del.)
(Cite as: Slip Copy)

Page 1

**C**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Samuel I. HYLAND and Stephanie Speakman,
individually and on behalf of all other similarly
situated, Plaintiffs,
v.
William B. HARRISON, Jr., Hans W. Becherer,
Riley P. Bechtel, Frank A. Bennack, Jr., John H.
Biggs, Lawrence A. Bossidy, M. Anthony Burns,
Ellen V. Futter, William H. Gray, III, Helene L.
Kaplan, Lee R. Raymond, John R. Stafford,
Jpmorgan Chase & Co., and James Dimon,
Defendants.
Dr. Stephen BLAU, individually and on behalf of all
others similarly situated, Applicant-in-Intervention
**No. Civ.A. 05-162-JJF.**

Feb. 7, 2006.

Joseph N. Gielata, of Joseph N. Gielata, Attorney at
Law, Wilmington, Delaware, for Plaintiffs.
Jesse A. Finkelstein, and Michael R. Robinson, of
Richards, Layton & Finger, P.A., Wilmington,
Delaware, for Defendants.
Michael A. Cooper, Sharon L. Nelles, and Keith
Levenberg, of Sullivan & Cromwell LLP, New York,
New York, for the Individual Defendants, of counsel.
Nancy E. Schwarzkopf, of Jpmorgan Chase Legal
Department, New York, New York, for J.P. Morgan
Chase & Co., of counsel.
Pamela S. Tikellis, and Robert Davis, of Chimicles &
Tikellis LLP, Wilmington, Delaware, of counsel.
Gregory M. Nespole, of Wolf Haldenstein Adler
Freeman & Herz LLP, New York, New York, Adam
J. Levitt, of Wolf Haldenstein Adler Freeman & Herz
LLC, Chicago, Illinois, for Stephen Blau, of counsel.

*OPINION*

FARNAN, J.
*1 Pending before the Court is the Motion of Dr.
Stephen Blau To Intervene In Order To Further Move
That This Action Be Stayed (D.I.58) and a Motion To
Enjoin Further Prosecution Of *Blau v. Harrison, et
al.* (D.I.68) filed by Plaintiffs, Samuel Hyland and
Stephanie Speakman (the "Hyland Plaintiffs"). For
the reasons discussed, the Court will grant Dr.
Stephen Blau's Motion To Intervene and grant his
request for a stay. The Court will deny as moot the

Hyland Plaintiffs' Motion To Enjoin Further
Prosecution Of *Blau v. Harrison, et al.*

BACKGROUND

On October 13, 2004, Dr. Stephen Blau ("Dr.Blau")
commenced an action in the United States District
Court for the Northern District of Illinois (the
"Illinois Action") alleging that Defendants violated
Section 14(a) of the Securities Exchange Act of 1934
(the "Exchange Act") in connection with the merger
of J.P. Morgan Chase & Co. and Bank One
Corporation. Dr. Blau filed the Illinois Action on
behalf of himself and all holders of common stock of
J.P. Morgan Chase on April 2, 2004 (the record date),
or any time from April 19, 2004 (the proxy date)
through July 1, 2004 (the date the merger was
consummated). Judge William J. Hibbler presides
over the Illinois Action.

> FN1. Defendants in the Illinois Action are
> William B. Harrison, Jr., Hans W. Becherer,
> Riley P. Bechtle, Frank A. Bennack, Jr.,
> John H. Biggs, Lawrence A. Bossidy, M.
> Anthony Burns, Laurence Fuller, Ellen V.
> Futter, William H. Gray, III, Helene L.
> Kaplan, Lee R. Raymond, John R. Stafford,
> and J.P. Morgan Chase & Co.

On January 5, 2005, Judge Hibbler entered an order
appointing Dr. Blau and American Grown Fund, Inc.
("AGF") lead plaintiffs in the Illinois Action and
appointing Wolf Haldenstein Adler Freeman & Herz
LLP ("Wolf Haldenstein") as lead counsel. (D.I.60,
Exh. A). On February 18, 2005, AGF withdrew as
lead plaintiff, and Dr. Blau filed an Amended
Complaint in the Illinois Action.

On March 17, 2005, the Hyland Plaintiffs through
their counsel Joseph N. Gielata, Esquire, filed the
instant action alleging similar claims against the same
Defendants in connection with the J.P. Morgan and
Bank One Merger. Shortly after filing the
Complaint, the Hyland Plaintiffs moved to enjoin an
action filed in the Delaware Chancery Court
involving the same circumstances. Although the
Chancery Court action did not involve federal claims,
the Hyland Plaintiffs argued that the common law
causes of action asserted in the Chancery Court were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 288247 (D.Del.)
(Cite as: Slip Copy)

within this Court's jurisdiction and that the prospect of parallel actions frustrated the purposes of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the Securities Litigation Uniform Standards Act. The Court denied, without prejudice, Plaintiff's Motion For An Injunction Barring The Prosecution Of Relate State Court Actions (D.I.2) concluding that the "harm Plaintiff alleges is speculative, and the Court will not enjoin the state court litigation absent some tangible showing that the co-pending state court proceedings are being used to frustrate an important federal right." (D.I.19). On June 21, 2005, the Court entered an Order (D.I.46) appointing Joseph N. Gielata, Esquire lead counsel in this action, "subject to Defendants reservations" which include, but are not limited to, arguments against class certification. (D.I.31).

> FN2. The Court notes that this case includes an additional defendant, James Dimon, that is not named in the Illinois Action. In addition, this action includes seven claims not asserted in the Illinois Action, two based on the common law duty of loyalty and duty of disclosure, two based on Section 10(b) and Section 20 of the Exchange Act and three based on Sections 11, 12(a)(2), and 15 of the Securities Act of 1933.

> FN3. The Chancery Court action has since been dismissed on the merits, and the plaintiffs have filed an appeal to the Delaware Supreme Court. *In re J.P. Morgan Chase & Co. S'holder Litig.,* 2005 WL 1076069 (Del. Ch. Apr. 29, 2005).

*2 Counsel for the Hyland Plaintiffs learned of the pending Illinois Action and filed several briefs and letters styled as amici curiae submissions urging the Illinois District Court to vacate its order appointing Dr. Blau as lead plaintiff and Wolf Haldenstein as lead counsel and requesting the Illinois District Court to *sua sponte* transfer the action to Delaware. Dr. Blau then filed the instant motion to intervene and stay this action in favor of allowing the first-filed Illinois Action to proceed.

On August 29, 2005, the Illinois District Court held a status conference to discuss the impact of the Hyland Plaintiffs' amici curiae submissions on the Illinois Action. The Illinois District Court stated:

> FN4. Mr. Gielata was not invited to

participate in that status conference.

I received notice of the parties in this action moving to intervene or stay the ... [Hyland] matter. I think we need to resolve that issue as to whether or not we proceed here or proceed there or these matters are so similarly situated that we need to proceed in one forum as opposed to both because clearly some order issued by this Court or by that Court could affect the litigation in other arena.

There is some indication also in the materials that I've reviewed suggesting that the matter should be more properly brought in that Court as opposed to this Court.

None of those issues have been answered to my satisfaction.

(D.I. 69, Exh. A at 2). At the conclusion of the hearing, the Illinois District Court further stated:Let me say that, obviously, the Court has been receiving a great deal of material from Counsel Gielata regarding this matter in the form of an amicus curiae brief and also in the form of letters which have been forwarded to the Court through counsel.

Those materials the Court reviewed, and they raise certain issues with the Court, some of which the Court viewed as sour grapes perhaps, others of which caused the Court to, at least, have some concern about orders entered by this Court which might somehow impact orders entered by that Court or vice versa.

So I did believe that it was necessary for someone to become either-one lawyer to become present here and intervene so I could have that lawyer present and talk what the issues really are or the lawyer here to intervene in that action so that we have one forum where we know this case is going to go forward in and we don't have these ancillary actions all over the place.

Now that counsel has indicated and I have seen your motion to stay the Highland matter in Delaware, that, at least, should bring to fruition a hearing as to which case is going to go forward.

Based upon the filing that have been made by counsel for the Highland plaintiff in the Delaware matter, I will make this order: That based upon the fact that we now have a motion pending to stay that matter in which the issues will be discussed and decided by that Court, I see no need to further entertain motions or writings or materials from Mr. Gielata in this case. I am not going to ... make any further order on his motions regarding the propriety of lead counsel or his other assertions in his papers. The Court here had no information and still has no information which it can base any action on its part to change what the Court

has previously ruled. As far as this Court is concerned, lead counsel remains lead counsel.

*3 Certainly ... there may be other person who might suggest that have a greater interest, for instance, the Highland plaintiff, but that is of no movement [sic] to this Court in that the notices that the Court reviewed were proper, the lead plaintiff has indicated a willingness, and the Court has found that he is a proper lead plaintiff.

The Court is concerned as to the ancillary or the other action in Delaware, but ... it is the Court's belief that that Court can, after hearing these materials regarding the intervention and the movement to stay that action, can rule, and if that ruling results in that action going forward as well as this action, then, I think, the next step is to decide where the actions should go forth, the two actions should go forth simultaneously in a single court as opposed to two, but we're not there because your motion to stay [Dr. Blau's motion to stay the Delaware action] might be, in fact, granted.

(D.I. 69, Exh. A at 10-12).

Following the Illinois District Court's ruling, the Hyland Plaintiffs filed the instant motion to enjoin the Illinois Action. Defendants have refrained from taking a position with respect to "the tug-of-war" between Dr. Blau and the Hyland Plaintiffs for lead plaintiff status, except to file a Memorandum Of Law in response to the Hyland Plaintiffs' motion to enjoin the Illinois Action stating that "Defendants view the claims as wholly devoid of merit and have filed motions to dismiss both pending federal actions in their entirety. Whether the determination of those motions is made by this Court or the District Court in Illinois is of secondary importance to the desirability of having a single determination and avoiding duplicative litigation." (D.I. 75 at 1).

## DISCUSSION

### I. Whether Dr. Blau Should Be Permitted To Intervene In This Action

By his Motion, Dr. Blau, the lead plaintiff in the Illinois Action, moves to intervene in this action pursuant to Federal Rule of Civil Procedure 24. Dr. Blau contends that he is entitled to intervene as a matter of right under Rule 24(a). In the alternative, Dr. Blau contends that permissive intervention is warranted under Rule 24(b). In support of his Motion, Dr. Blau contends that both he and the Hyland plaintiffs have filed legal complaints

premised on the same facts and circumstances, raising similar legal issues and seeking substantially the same relief. Dr. Blau also contends that his intervention will not delay or prejudice the Hyland Plaintiffs. However, Dr. Blau contends that he will suffer undue prejudice if his Motion To Intervene is not granted, because he and his counsel have vigorously investigated the legal issues in the Illinois Action, addressed Defendants' Motion To Dismiss in the Illinois Action and are proceeding under the time frames set forth in the Pretrial Order entered by the Illinois District Court.

In response, the Hyland Plaintiffs contend that Dr. Blau's Motion To Intervene is untimely, because Motions To Dismiss have already been briefed in this Court, and Dr. Blau failed to oppose the Hyland Plaintiffs' motion for appointment as lead plaintiffs even though Dr. Blau was aware of the filing of this motion. The Hyland Plaintiffs also contend that they will be prejudiced if Dr. Blau is permitted to intervene here because (1) this action is substantially underway with briefing completed on Defendants' Motion To Dismiss, (2) Defendants have waived service of process, and (3) discovery efforts have been initiated, including the service of document preservation subpoenas on critical witnesses.

*4 In reply to the Hyland Plaintiffs, Dr. Blau further contends that his intervention is warranted, because Mr. Gielata is not an adequate representative to prosecute this action. Dr. Blau points out that Mr. Gielata did not move for lead plaintiff status in the first-filed Illinois Action and contends that Mr. Gielata is jeopardizing these actions by filing claims that were already dismissed by the Delaware Chancery Court. Dr. Blau also contends that Mr. Gielata has attempted to interfere in the first-filed Illinois Action, while trying to avoid subjecting himself to the jurisdiction of that court by filing amici curiae memorandum containing inflammatory accusations against himself and Wolf Haldenstein, including, among other things, that (1) Wolf Haldenstein plagiarized counts from the complaint filed in the Delaware Chancery Court, (2) provided insufficient notice of the Illinois Action, and (3) used AGF as an "illusory plaintiff" to show a larger financial stake in the action, when AGF did not want to be a party to the Illinois Action and indicated that its involvement in the action was a clerical error.

Federal Rule of Civil Procedure 24 provides:
(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:
(1) when a statute of the United States confers an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In determining whether a motion for intervention is timely, the Court should consider three factors: (1) the stage of the proceeding, (2) prejudice to the parties, and (3) the reason for the delay. *Commonwealth v. Pennsylvania v. Rizzo,* 530 F.2d 501, 506 (3d Cir.1976). The party seeking to intervene bears the burden of demonstrating that intervention is appropriate.

As a threshold matter, the Hyland Plaintiffs contend that Dr. Blau's motion is untimely, because Dr. Blau knew about this action since May 2005, but waited an unreasonable length of time, until August 2005, before filing his Motion To Intervene. In support of their contention, the Hyland Plaintiffs cite three cases: *Delaware Valley Citizens' Counsel for Clean Air v. Pennsylvania,* 674 F.2d 970, 974 (3d Cir.1982), *National Wildfire Fed'n v. Gorsuch,* 744 F.2d 963 (3d Cir.1984) and *In re Fine Paper Anti-Trust Litig.,* 695 F.2d 494 (3d Cir.1982).

*5 The Court has reviewed these cases and finds them to be distinguishable from the circumstances here. For example, in *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* the potential intervenors moved to intervene four years after the action was commenced and twenty months after a consent decree was entered. Similarly, in both

*National Wildfire Fed'n v. Gorsuch* and *In re Fine Paper Anti-Trust Litig.,* intervention was sought after the court had entered a judgment in the case.

By comparison, this case has not progressed as far as the cases cited by the Hyland Plaintiffs, and although a motion to dismiss has been fully briefed, a substantive decision has not yet been issued. Indeed, no final decrees or judgments have been entered on any substantive matters, and the one order that has been entered concerning the appointment of lead plaintiffs and lead counsel was entered on a conditional basis subject to the full exposition of Defendants' reservations at a later date. Given the early stage of this proceeding, the Court is not persuaded that the Hyland Plaintiffs will be prejudiced by the intervention of Dr. Blau. The Court also finds that Dr. Blau filed his motion to intervene within a reasonable time after learning that Mr. Gielata sought to vacate the Illinois District Court's rulings on lead counsel in the Illinois Action. Accordingly, the Court concludes that Dr. Blau's Motion To Intervene is not untimely.

The Hyland Plaintiffs next contend that Dr. Blau's motion to intervene should be denied, because it is not made for a proper purpose. Citing to *Kamerman v. Steinberg,* 681 F.Supp. 206 (S.D.N.Y.1988) and *Lexington Ins. Co. v. Caleco, Inc.,* 2003 WL 21652163, *6 (E.D.Pa. Jan. 25, 2003), the Hyland Plaintiffs contend that a motion to intervene should not be granted for the purpose of seeking to stay the underlying action.

In both *Kamerman* and *Lexington,* the respective plaintiffs sought to stay the respective federal court actions during the pendency of related state court actions. The *Kamerman* and *Lexington* courts denied the respective motions to intervene concluding that the plaintiffs had not demonstrated the requirements of Rule 24(c), i.e. that the intervenors file pleadings setting forth the claims or defenses for which intervention is sought. In reaching this conclusion, the *Kamerman* and *Lexington* courts specifically noted that the potential intervenors had no claims to press against any defendants or any defenses to assert against any plaintiffs, and no intention of litigating the causes of action set forth in the respective federal complaints.

In the Court's view, neither the *Kamerman* decision nor the *Lexington* decision provide a basis to deny Dr. Blau's motion. First, this case does not involve a federal action co-existing with a state court action. Rather, this case involves two co-existing federal

actions. More importantly, Dr. Blau has asserted claims against Defendants, and the Court is not persuaded that Dr. Blau's Motion To Intervene is meant to delay the resolution of those claims, which he has also asserted in the Illinois District Court. Rather, it appears to the Court that Dr. Blau's interest lies in preserving the jurisdiction of the Illinois District Court and recovering for the class of investors he represents. Further, unlike the plaintiffs in *Kamerman* and *Lexington,* Dr. Blau appears to have every intention of pressing his claims, the concern is in which of the two federal district courts those claims will be litigated.

*6 Having concluded that Dr. Blau's Motion is not untimely and is not being pressed for the sole purpose of delay, the Court concludes that Dr. Blau has established that permissive intervention is appropriate. The Illinois Action filed by Dr. Blau is based on the same facts and circumstances as this case, seeks substantially the same relief, and raises similar legal issues. For the reasons discussed in determining the timeliness of Dr. Blau's motion, the Court further concludes that the Hyland Plaintiffs will not be prejudiced by Dr. Blau's intervention. Accordingly, the Court will grant Dr. Blau's Motion For Intervention.

### II. Whether This Action Should Be Stayed In Favor Of Allowing The Illinois Action To Proceed

By his Motion To Stay, Dr. Blau contends that this action should be stayed, because it was brought at an impermissible time and in contravention of the procedures set forth in the PSLRA for appointing lead plaintiff and selecting lead counsel. Dr. Blau points out that the Illinois Action was the first filed action, and Dr. Blau contends that the Hyland Plaintiffs should have moved for appointment as lead plaintiffs in the Illinois Action within the 60 day time period provided for in Section 27(a)(3)(b)(i) of the Securities Act and Section 21D(a)(3)(B)(i) of the Exchange Act. Dr. Blau contends that by filing the instant action, the Hyland Plaintiffs are attempting to overrule the Illinois District Court's determination that Dr. Blau's appointment as lead plaintiff was proper and the notice in the Illinois Action was adequate.

In response, the Hyland Plaintiffs contend that a stay is inappropriate. Specifically, the Hyland Plaintiffs contend that staying this action would expose them, and the class they represent, to (1) reduced recovery due to (a) the absence of certain claims in the Illinois

Action and (b) Wolf Haldenstein's alleged conflict of interest and lack of prosecution of the Illinois Action, (2) the risk that claims will be released in the event that Wolf Haldenlstein settles or voluntarily dismisses the Illinois Action, (3) the harm of having claims litigated in an inconvenient venue where important witnesses cannot be summoned for trial, and (4) the risk of no recovery as a result of service of process issues. The Hyland Plaintiffs also contend that there are significant differences between this action and the Illinois Action, and that a stay of this action would effectively be a dismissal of the claims asserted here.

The Hyland Plaintiffs further contend that the existence of a lead plaintiff order in the Illinois Action is not a basis to stay this action. The Hyland Plaintiffs point out that a lead plaintiff order has also been entered in this case, and the Hyland Plaintiffs contend that the lead plaintiff order in this case does not overrule any orders entered in the Illinois Action. The Hyland Plaintiffs further point out that they have not sought to intervene in the Illinois Action, and Dr. Blau has not sought reargument under Local Rule 7.1.5 or relief under Federal Rule of Civil Procedure 60 from the lead plaintiff order entered in this case.

*7 In addition, the Hyland Plaintiffs contend that, by requesting a stay, Dr. Blau is trying to "sidestep" three issues. Specifically, the Hyland Plaintiffs contend that (1) Dr. Blau failed to commence the Illinois Action in a proper or convenient forum, (2) the Delaware Plaintiffs have a financial interest that exceeds Dr. Blau's financial interest, and (3) Dr. Blau failed to include valuable class claims and substantive allegations in this Illinois Action that have been asserted here.

The power of the Court to stay proceedings is incidental to its inherent power to control the disposition of the cases on its docket. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936) The decision to stay a proceeding lies within the discretion of the Court. In exercising this discretion, the Court "must weigh competing interests and maintain an even balance." *Id.* at 255. The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.*

In determining whether a stay is appropriate in this case, the Court also finds it necessary to consider certain provisions of the PSLRA relating to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 288247 (D.Del.)
(Cite as: Slip Copy)

Page 6

appointment of lead plaintiff. The PSLRA was enacted to end perceived abuses in federal securities actions by eliminating the "race to the courthouse" as the method for selecting lead plaintiffs, and instead requiring the court to choose the most adequate plaintiff to represent the class' interests. Procedurally, the selection of lead plaintiff requires the party who files the initial action to publish notice within 20 days of the filing to inform class members of the pendency of the action, the claims asserted, the class period and their right to file a motion for appointment of lead plaintiff. Within 60 days of the publication of that notice, any member of the putative class may move the court for appointment to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(i). When multiple actions are filed asserting substantially the same claims, only the plaintiff in the first filed action is required to provide notice. 15 U.S.C. § 78u-4(a)(3)(A)(ii).

However, courts have recognized that, in actuality,
The PSLRA did not completely eliminate the "race to the courthouse".... [P]laintiffs who are first to file suit are obligated to provide notice to other purported class members of the asserted claims and the purported class period. Plaintiffs who are first to file, moreover, are in a better position to aggregate plaintiffs in an effort to obtain the largest financial interest in the litigation, an important aspect of the lead plaintiff status.

*In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 215 n. 7 (D.N.J.1999) (citations omitted).

Weighing the parties' interests in light of the facts and circumstances in this case, the Court concludes that this action should be stayed in deference to the first-filed Illinois Action. By the nature of the various filings in this Court, as well as in the Illinois District Court, it is apparent to the Court that the Hyland Plaintiffs and their counsel and Dr. Blau and his counsel are in a "tug of war" over who is going to serve as lead plaintiff and lead counsel. Consistent with the procedures of the PSLRA, the Illinois District Court has appointed Dr. Blau as lead plaintiff and approved Wolf Haldenstein to serve as lead counsel in that action. If the Hyland Plaintiffs wished to challenge that decision, their remedy was not to file a second action in this Court, but to follow the procedures laid out in the PSLRA and contest that decision in the Illinois District Court. Instead, the Hyland Plaintiffs, through their counsel, have circumvented this procedure by filing this action and presenting their arguments to the Illinois District Court in the form of amici curiae briefs.

*8 Nevertheless, the Illinois Court has considered and rejected the arguments of the Hyland Plaintiffs concerning the appointment of Dr. Blau as lead counsel, including the Hyland Plaintiffs' assertion that Dr. Blau did not provide them with proper notice under the PSLRA. This Court will not second-guess the decisions of the Illinois District Court on this matter.

Although it is true that this Court has also entered a lead plaintiff order, the Court's order was entered on a conditional basis. At this juncture, it appears to the Court that neither action has progressed to a substantive review of the merits. Indeed, Motions To Dismiss are fully briefed and pending in both this Court and the Illinois District Court. However, the Illinois District Court has acknowledged that there may be questions concerning whether Illinois is the appropriate venue for the action filed there . In light of these questions and the first-filed status of the Illinois Action, the Court is persuaded that this action should be stayed pending resolution of the Illinois Action. Once the Illinois Action is resolved, the stay can be lifted here, and this action can then proceed to its end. In addition, the Court is not persuaded that the Hyland Plaintiffs will be prejudiced by this decision, because the Illinois District Court has concluded that Dr. Blau and Wolf Haldemstein are appropriate representatives for the class. Thus, the Court concludes that a stay will adequately preserve the interests of the Hyland Plaintiffs in this action, while simultaneously allowing their interests to be served in the Illinois Action to the extent their claims are being pressed there. Accordingly, the Court will grant Dr. Blau's Motion and stay this action pending resolution of the Illinois Action.

> FN5. Although Defendants have not requested a transfer of the Illinois Action, Mr. Gielata has requested a transfer in his amici curiae papers. Dr. Blau suggests that the Illinois District Court has already rejected Mr. Gielata's request for a transfer; however, Judge Hibbler has indicated that these issues were not addressed to his satisfaction.

CONCLUSION

For the reasons discussed, the Court will grant the Motion of Dr. Stephen Blau To Intervene In Order To Further Move That This Action Be Stayed (D.I.58). The above-captioned action will be stayed pending the resolution of the Illinois Action. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 288247 (D.Del.)
**(Cite as: Slip Copy)**

Motion To Enjoin Further Prosecution Of Blau v. Harrison, et al. (D.I.68) will be denied as moot.

An appropriate Order will be entered.

D.Del.,2006.
Hyland v. Harrison
Slip Copy, 2006 WL 288247 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3667125 (Trial Motion, Memorandum and Affidavit) Dr. Stephen Blau's Reply Brief in Opposition to Defendants' Memorandum of Law in Response to Plaintiffs' Motion to Enjoin Further Prosecution of Blau V. Harrison, et Al. (Oct. 14, 2005)

• 2005 WL 3667113 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Plaintiffs' Motion to Enjoin Further Prosecution of Blau V. Harrison, et Al (Oct. 13, 2005)

• 2005 WL 2868093 (Trial Motion, Memorandum and Affidavit) Dr. Blau'S Answering Brief in Opposition to Plaintiffs Samuel I. Hyland and Stephanie Speakman'S Motion to Enjoin Further Prosecution of Blau V. Harrison, Etal. (Oct. 06, 2005)

• 2005 WL 2868097 (Trial Motion, Memorandum and Affidavit) Dr. Blau'S Answering Brief in Opposition to Plaintiffs Samuel I. Hyland and Stephanie Speakman'S Motion to Enjoin Further Prosecution of Blau V. Harrison, et Al. (Oct. 06, 2005)

• 2005 WL 2868099 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Response to Plaintiffs' Motion to Enjoin Further Prosecution of Blau V. Harrison (Oct. 06, 2005)

• 2005 WL 2868102 (Trial Motion, Memorandum and Affidavit) Dr. Blau's Answering Brief in Opposition to Plaintiffs Samuel I. Hyland and Stephanie Speakman's Motion to Enjoin Further Prosecution of Blau V. Harrison, et Al. (Oct. 06, 2005)

• 2005 WL 2868095 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Plaintiffs' Motion to Enjoin Further Prosecution of Blau v. Harrison, et al. (Sep. 22, 2005)

• 2005 WL 2385649 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of their Motion to Dismiss Plaintiffs' Amended Complaint (Aug. 01, 2005)

• 2005 WL 2603673 (Trial Motion, Memorandum and Affidavit) Complaint in Intervention (Aug. 01, 2005)

• 2005 WL 2385527 (Trial Pleading) Plaintiffs'

Answering Brief in Opposition to the Defendants' Motion to Dismiss the Amended Complaint (Jul. 11, 2005)

• 2005 WL 1171953 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiff's Motion for an Injunction Barring the Prosecution of Related State Court Actions (Apr. 07, 2005)

• 2005 WL 1171979 (Trial Motion, Memorandum and Affidavit) Opening Brief in Support of Plaintiff Hyland's Motion for an Injunction Barring the Prosecution of Related State Court Class Actions (Mar. 21, 2005)

• 2005 WL 1171978 (Trial Pleading) Class Action Complaint (Mar. 17, 2005)

• 1:05cv00162 (Docket) (Mar. 17, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit D

LEXSEE 2003 U.S. DIST. LEXIS 14947

**KELLY McGINLEY, et al., Plaintiffs, v. GORMAN HOUSTON, Senior Associate Justice of the Alabama Supreme Court, et al., Defendants.**

**CIVIL ACTION 03–0563–WS–M**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

*2003 U.S. Dist. LEXIS 14947*

**August 27, 2003, Decided**

**PRIOR HISTORY:** *Glassroth v. Moore, 278 F. Supp. 2d 1272, 2003 U.S. Dist. LEXIS 14637 (M.D. Ala., 2003)*

**DISPOSITION:** [*1] Defendants' Motion to Dismiss granted and action dismissed without prejudice.

**COUNSEL:** For Bernard Harwood, Defendant: Charles Brinsfield Campbell, John J. Park, Jr., LEAD ATTORNEYS, Office of the Attorney General, State of Alabama, Montgomery, AL.

For Kelly McGinley, Plaintiff: Brian R. Chavez–Ochoa, LEAD ATTORNEY, Valley Springs, CA.

For Kelly McGinley, Plaintiff: James W. Zeigler, LEAD ATTORNEY, Mobile, AL.

**JUDGES:** WILLIAM H. STEELE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WILLIAM H. STEELE

**OPINION:**

### ORDER

This matter is before the Court on the defendants' Motion to Dismiss (doc. 8) pursuant to *Rules 12(b)(1), 12(b)(3)*, and *12(b)(6) of the Federal Rules of Civil Procedure*.

#### I. Overview.

The defendants have filed a motion asking the Court to dismiss the plaintiffs' lawsuit for several reasons. In light of the immediate and irreparable harm the plaintiffs claim to be facing, the Court has considered the motion on expedited basis to safeguard the rights of all parties.

Upon consideration, the Court concludes that it does not have jurisdiction over plaintiffs' claims. In effect, the plaintiffs are asking the Court to invalidate the injunction entered by the judge (and upheld [*2] by the court of appeals) in the *Glassroth* case. However, the Court lacks the power to do so. The law does not allow a party to file a "horizontal appeal" from one district judge to another judge of the same rank, nor can a district judge overturn the decision of an appellate court in that circuit. The *Glassroth* order will remain in place no matter what this Court does or does not do. That being the case, if the Court were to grant the plaintiffs the relief they seek and order the defendants not to remove the monument, chaos would ensue. The defendants would be forced to choose which of two binding, conflicting court orders to follow. They would be in violation of one of those orders no matter what they did. Under these circumstances, the orderly administration of justice and the respect for the rule of law demand that this Court not exercise jurisdiction over the plaintiffs' claims.

Alternatively, the Court finds that venue is not proper in this District. In other words, the plaintiffs have not satisfied the technical, statutory requirements for bringing this case here, as opposed to the Middle District of Alabama, seated in Montgomery, Alabama. None of the events, occurrences [*3] and property that are relevant to this case happened or may be found in this District. The defendants do not reside in this District. Because the defendants objected to venue on a timely basis, the Court finds that the venue statute entitles them to defend this case in the Middle District, not in the Southern District.

Both the jurisdiction and the venue issues lead to the same result. Accordingly, the Court **grants** the defendants' Motion to Dismiss, and **dismisses** this case **without prejudice.** If they so choose, plaintiffs may refile this case in the Middle District of Alabama immediately. This ruling does not address the merits of the case. The Court offers no opinion as to whether plaintiff's *First Amendment* argument is valid or whether plaintiffs can

establish a constitutional deprivation of any stripe. Those questions are properly addressed to the Middle District of Alabama, in the first instance, and principles of judicial restraint require the Court to refrain from addressing those topics.

In light of the Court's ruling, the hearing on plaintiffs' Application for Temporary Restraining Order that had been set for Wednesday, August 27, 2003 at 3:00 p.m. is [*4] canceled.

## II. Procedural History.

### A. The *Glassroth* Litigation.

On August 1, 2001, Roy S. Moore, Chief Justice of the Alabama Supreme Court, unveiled a 5,280-pound granite monument (the "Monument") in the rotunda of the Alabama State Judicial Building in Montgomery, Alabama. Located directly across from the main entrance of the building, the Monument is shaped like a cube, approximately three feet deep by four feet tall, with two rounded tablets carved into its sloping top. These tablets are engraved with the Ten Commandments, while the sides of the Monument bear quotations "generally proclaiming the primacy of the law of God over the law of the citizenry." (Complaint, at 2.) According to the plaintiffs in this case, "the monument is intended to proclaim the Ten Commandments as the cornerstone of the judicial foundation of this nation and country." (*Id.*)

After the Monument was installed, three practicing attorneys in the Alabama courts – Stephen R. Glassroth, Melinda Maddox, and Beverly Howard – brought two separate actions against Justice Moore pursuant to *42 U.S.C. § 1983*, asserting that placement of the Monument in the rotunda violates [*5] their rights under the *Establishment Clause of the First Amendment*, made binding on the states through the *Fourteenth Amendment to the U.S. Constitution*. These consolidated lawsuits (collectively referred to herein as *Glassroth*) were filed in the U.S. District Court of the Middle District of Alabama, and were assigned to U.S. District Judge Myron Thompson.

Following a seven-day bench trial, Judge Thompson concluded that Justice Moore's fundamental purpose in displaying the Monument was non-secular, and that the Monument's primary effect was to advance religion. *Glassroth v. Moore, 229 F. Supp.2d 1290, 1299, 1304 (M.D. Ala. 2002)*. Based on his determination that the Monument is violative of the *Establishment Clause*, on November 18, 2002 Judge Thompson entered a "declaration that Justice Moore's placement of his Ten Commandments monument in the Alabama State Judicial Building was unconstitutional," and allowed him 30 days to remove it. *Id. at 1319*.

Justice Moore did not remove the Monument in response to Judge Thompson's Order and Judgment of November 18. Accordingly, on December 19, 2002, Judge Thompson entered a "Final Judgment and Injunction" [*6] enjoining and restraining Justice Moore from failing to relocate the Monument by no later than January 3, 2003. *Glassroth v. Moore, 242 F. Supp.2d 1067 (M.D. Ala. 2002)*. On December 23, 2002, upon motion by Justice Moore, Judge Thompson ordered that the permanent injunction be stayed pending appeal to the U.S. Court of Appeals for the Eleventh Circuit. *Glassroth v. Moore, 242 F. Supp.2d 1068, 1070 (M.D. Ala. 2002)*.

Just over six months later, a panel of the Eleventh Circuit affirmed Judge Thompson's order enjoining Justice Moore from failing to remove the Monument from public areas of the Judicial Building. *Glassroth v. Moore, 335 F.3d 1282 (11th Cir. 2003)*. In so doing, the panel specifically held the Monument to be a violation of the *Establishment Clause*. *Id. at 1297*. The Eleventh Circuit concluded its opinion by expressing its expectation that "if he is unable to have the district court's order overturned through the usual appellate processes, when the time comes Chief Justice Moore will obey that order. If necessary the court order will be enforced. The rule of law will prevail." *Id. at 1303*. [*7]

On August 5, 2003, Judge Thompson, having received the appellate mandate of the Eleventh Circuit, entered a "Final Judgment and Injunction," providing in pertinent part that:

> "Having found that defendant Roy S. Moore, Chief Justice of the Alabama Supreme Court, violated the *Establishment Clause of the First Amendment to the United States Constitution* by placing a Ten Commandments monument in the rotunda of the Alabama Judicial Building, ... it is the ORDER, JUDGMENT and DECREE of the Court as follows:
>
> ***
>
> "Defendant Roy S. Moore, his officers, agents, servants, and employees, and those persons in active concert or participation with him who receive actual notice of this injunction, be and they are each ENJOINED and RESTRAINED from failing to remove, by no later than August 20, 2003, the Ten Commandments monument at issue in this litigation from the non-private areas of the Alabama State Judicial Building."

*Glassroth v. Moore,  F. Supp.2d  , 275 F. Supp. 2d 1347, 2003 U.S. Dist. LEXIS 13907, *6 (M.D. Ala. Aug. 5, 2003)*. The Court understands that Justice Moore's direct appeal of Judge Thompson's injunction is ongoing and that he intends to file a [*8] petition for writ of certiorari in the United States Supreme Court. In the interim, however, no court at any level has entered a stay or otherwise excused Justice Moore from full compliance with Judge Thompson's injunction of August 5, 2003.

To date, the Monument has not been removed from the public areas of the Alabama State Judicial Building.

B. The Associate Justices' Order.

On August 21, 2003, one day after the deadline ordered by Judge Thompson for removing the Monument, the eight Associate Justices of the Supreme Court of Alabama entered Order No. 03-01, in which they opined that "the refusal of officers of this Court to obey a binding order of a federal court of competent jurisdiction would impair the authority and ability of all of the courts of the State to enforce their judgments." (Order No. 03-01, at p. 6.) In light of this and other findings, the Associate Justices ordered that "the administrative decision of the Chief Justice to disregard the writ of injunction of the United States District Court for the Middle District of Alabama be, and the same hereby is, COUNTERMANDED" and that the Building Manager for the Judicial Building "take all steps necessary to comply [*9] with the injunction as soon as practicable." (*Id.* at p. 7.)

C. The *McGinley* Action.

On the afternoon of August 25, 2003, plaintiffs Kelly McGinley and Richard C. Dorley–residents of Mobile, Alabama and Tallassee, Alabama, n1 respectively - filed the instant Complaint in this Court, asserting a claim under *42 U.S.C. § 1983* against the Associate Justices of the Alabama Supreme Court, in their official capacities. Plaintiffs contend that the Associate Justices' announced intention of complying with Judge Thompson's injunction "clearly suggests that adherence to the religion of nontheistic beliefs is a prerequisite or an advantage to those seeking justice in Alabama." (Complaint, at P 20.) Plaintiffs further maintain that "removal of the Ten Commandments Monument constitutes an impermissible endorsement of the religion of nontheistic beliefs by the state" and would itself violate plaintiffs' rights under the *Establishment Clause*. (Complaint, at P 21.) n2

> n1 Of course, Mobile lies in the Southern District of Alabama. Tallassee, however, is located in the Middle District of Alabama.

[*10]

> n2 Tellingly, the Complaint also asserts that "display of the Ten Commandments Monument in the Alabama State Judicial Building does not create an excessive entanglement of government with religion." (Complaint, at P 24.) This language strongly suggests that, even though they characterize this case as concerning whether the removal of the Monument violates the *Establishment Clause*, plaintiffs in fact intend to litigate the issue of whether the display of the Monument violates the *Establishment Clause*. Of course, that precise issue has already been decided by Judge Thompson and the Eleventh Circuit in the *Glassroth* litigation.

In their Prayer for Relief, plaintiffs request a permanent injunction requiring defendants "to refrain from and ease *[sic]* any efforts to remove the Ten Commandments Monument." (Complaint, at pp. 8–9.) Along with their Complaint, plaintiffs filed an Application for Temporary Restraining Order (doc. 6) requesting that defendants be restrained from removing the Monument from the rotunda of the Judicial Building, and asserting that in the absence of a temporary [*11] restraining order, defendants will cause the Monument to be moved, as a result of which plaintiffs would sustain irreparable harm. (Application for TRO, at p. 2.) n3

> n3 A fair reading of the Memorandum of Law accompanying the Application for Temporary Restraining Order suggests that the true target of this lawsuit is not the Associate Justices, but rather the injunction entered by Judge Thompson and affirmed by the Eleventh Circuit in *Glassroth*. For example, plaintiffs argue as follows:
>
> > "Here, the federal court in Montgomery has, in effect, respected one religion over another. By forcing out the Ten Commandments and replacing it with nothing (but in reality the nothing is the false god of nontheistic religion), the court has declared that the Lord God shall be removed from the public square and that the false god of nontheistic religion shall be the false god that the Alabama Supreme Court and society shall serve."
>
> (Memorandum in Support of Motion for Temporary Restraining Order, at p. 9.) Thus, it is apparent from the face of their submissions that plaintiffs are ask-

ing this Court for not only an order restraining the Associate Justices, but also one whose effect is to restrain, negate or invalidate Judge Thompson's order, and presumably that of the Eleventh Circuit as well.

[*12]

Upon the filing of this Complaint and in regard for plaintiffs' claimed constitutional deprivation, the Court promptly scheduled a hearing on plaintiffs' Application for Temporary Restraining Order. In a conference call initiated by the Court with participation by counsel for both parties on August 25, the parties agreed to set this matter for hearing on August 27, 2003 at 3:00 p.m.

At approximately 2:00 p.m. on August 26, 2003, defendants filed a Motion to Dismiss, a supporting Memorandum of Law, and an Opposition to the Application for Temporary Restraining Order. n4 The Motion asserts that this Court lacks subject–matter jurisdiction (warranting dismissal under *Rule 12(b)(1), Fed.R.Civ.P.*), that venue does not properly lie in the Southern District of Alabama (warranting dismissal under *Rule 12(b)(3)*), and that the Complaint fails to state a claim upon which relief can be granted (warranting dismissal under *Rule 12(b)(6)*). Upon careful review of the legal issues raised by defendants' Motion, the Court is of the opinion that it should decline to exercise jurisdiction over this dispute and that venue is not proper in this District.

> n4 Being cognizant of plaintiffs' claims of irreparable harm and constitutional deprivations absent immediate relief, the Court has reviewed and considered the Motion to Dismiss on an expedited basis. In so doing, the Court intends to minimize any delay or hardship that plaintiffs might otherwise incur if their Complaint and applications for *Rule 65* relief were held in suspended animation while the Motion to Dismiss is taken under submission.

[*13]

### III. Jurisdictional Issues.

Reducing the claims to their essence, it is apparent that plaintiffs seek an injunction barring defendants from complying with the injunction entered by Judge Thompson of the Middle District of Alabama, and affirmed by the Eleventh Circuit Court of Appeals. n5

> n5 This observation is valid, notwithstanding plaintiffs' framing of their objective as being

merely to prevent defendants from removing the Monument. The Associate Justices' order dated August 21, 2003 plainly reflects that they are ordering the removal of the Monument for the sole purpose of complying with Judge Thompson's injunction, not in furtherance of their personal religious or constitutional viewpoints or other agendas. Indeed, defendants' Motion to Dismiss and related filings make clear that they are "complying with a federal injunction, with which the defendants do not necessarily agree." (Motion to Dismiss, at P 2.) Thus, ordering defendants not to move the Monument and ordering them not to abide by Judge Thompson's injunction are functional equivalents in all respects.

[*14]

A. The Status of the *Glassroth* Injunction.

Despite their strident expressions of dissatisfaction with the outcome of the *Glassroth* litigation to date, plaintiffs cannot ask this Court to reverse, overrule, invalidate or modify the ruling of Judge Thompson. The law is clear that the Court lacks the authority to do so. *See, e.g., Green v. Citigroup, Inc., 68 Fed. Appx. 934, 936 (10th Cir. June 25, 2003)* ("It is axiomatic that one district court has no jurisdiction to review the decision of another district court."); *Carter v. U.S., 733 F.2d 735, 736 (10th Cir. 1984)* (finding that a district court is without jurisdiction to afford relief from a mandatory injunction issued by a federal district court sitting elsewhere); *In re. Persico, 362 F. Supp. 713, 714 (E.D.N.Y. 1973)* ("Judges of coordinate jurisdiction do not, except in the most extraordinary situations, have the function of reviewing each other's orders."); *United States v. Rabin, 263 F. Supp. 989, 990 (S.D. Fla. 1966)* (district court lacks jurisdiction to review ruling entered by another district court); *In re. Pusser, 123 F. Supp. 164, 167 (E.D.S.C. 1954)* [*15] (declaring in response to litigant's request that court revoke another judge's restraining order, "I have no power or authority to amend, modify or revoke an order of another United States District Judge"); *United States v. American Radiator & Standard Sanitary Corp., 388 F.2d 201, 203–04 (3rd Cir. 1967)* (noting that within a single circuit, there is rarely need or justification for one district court to interfere with the course of litigation pending in another); *Johnson v. England, 356 F.2d 44, 52 (9th Cir. 1966)* (deeming it "improper" for one district court to decline to follow prior order made by another district court staying an action in bankruptcy). More generally, an oft–cited principle of law dictates that judges of coordinate jurisdiction ought not overrule each other's decisions. *United States v. Koenig, 290 F.2d 166, 172 (5th Cir. 1961)*; *TCF Film Corp. v. Gourley, 240 F.2d 711, 713–14 (3d Cir. 1957)*; *De Maurez v. Swope, 110 F.2d 564, 565 (9th Cir. 1940)* (commenting

in passing that it is "highly indiscreet and injudicious for one judge of equal rank and power to review identical matters [*16] passed upon by his colleague"). Accordingly, regardless of what action this Court may or may not take in this case, Judge Thompson's injunction will remain in full force and effect, and will continue to be binding on defendants unless and until Judge Thompson or a higher court rules otherwise.

B. The Risk of Conflicting Orders.

This fact places defendants in a most untenable position. After all, "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of United States, Inc., 445 U.S. 375, 386, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980).* It is for the Middle District in the first instance to address the constitutionality of the placement or removal of the Monument. "Until its decision is reserved for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex Corp. v. Edwards, 514 U.S. 300, 313, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)* (quoting *Walker v. Birmingham, 388 U.S. 307, 314, 18 L. Ed. 2d 1210, 87 S. Ct. 1824 (1967)).* [*17] Assuming *arguendo* that the Court were to find in plaintiffs' favor and enjoin defendants from moving the Monument, what are the defendants to do? If they honored this Court's injunction, then they would be in violation of the corresponding injunction entered by Judge Thompson and upheld by the Eleventh Circuit. If they adhered to Judge Thompson's injunction at the expense of this Court's, then they would undoubtedly face contempt sanctions from this Court. In short, defendants would find themselves in the middle of an inter–district game of tug o' war, buffeted by conflicting and countervailing judicial forces in Mobile and Montgomery. Defendants would be in violation of an injunction no matter what they did, and would be forced to decide which of two binding federal orders they wished to flout.

C. Comity and the Orderly Administration of Justice.

Fortunately, our legal system does not foist such a Hobson's choice on litigants. When a party effectively requests that one court grant it relief from an injunction or judgment entered by another court, "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction [*18] of such an action and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there." *Lapin v. Shulton, Inc., 333 F.2d 169, 172 (9th Cir.), cert. denied, 379 U.S. 904, 85 S. Ct. 193, 13 L. Ed. 2d 177 (1964); see also Carter v. Attorney General of United States, 782 F.2d 138, 142 n.4 (10th Cir.*

*1986)* (same); *Treadaway v. Academy of Motion Picture Arts and Sciences, 783 F.2d 1418, 1422 (9th Cir. 1986)* (holding that district court did not abuse discretion in declining to exercise jurisdiction over a request to review another district court's decision, reasoning that "when a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it were reviewing that court's equitable decree"); *Ord v. United States, 8 Fed. Appx. 852, 854 (9th Cir. Apr. 13, 2001)* (where heart of complaint was request that court invalidate an order entered by another court, district court properly dismissed action based on principles of judicial comity, fairness [*19] and efficiency, all underlying the basic rule against horizontal appeals); *Zdrok v. V Secret Catalogue, Inc., 215 F. Supp.2d 510, 515 (D.N.J. 2002)* (declining to disturb judgment entered by district court in Ohio, based on principles of judicial comity, where contrary action would usurp the power of the rendering court, and declining to exercise jurisdiction over independent collateral attack on that basis). n6

n6 A host of other federal courts facing analogous situations have reached similar conclusions. *See, e.g., Green, 68 Fed. Appx. at 936* (finding that district court in Oklahoma properly declined to exercise jurisdiction over lawsuit seeking relief from judgments entered by district courts in Texas, and that action was properly dismissed without prejudice); *Martin–Trigona v. United States, 250 U.S. App. D.C. 272, 779 F.2d 72, 73 (D.C. Cir. 1985)* (affirming denial of leave to file complaints in district court for the District of Columbia where plaintiff sought to be excused from compliance with injunction previously entered against him by District of Connecticut, where considerations of comity, consistency of treatment, and orderly administration of justice require that such argument be directed to the *District of Connecticut); Mann Mfg, Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971)* (district court in one jurisdiction should not seriously interfere with or usurp the continuing power of another district court to supervise its injunction, but should instead decline jurisdiction and remand the parties to the rendering court if a remedy is available there); *American Radiator, 388 F.2d at 203–04 (3d Cir. 1967)* (where one district court is asked to enjoin proceedings in a sister district court, which injunctive relief has already been denied by the sister court, court should stay its hand, as proper procedure for aggrieved parties is to apply to reviewing court, not a coordinate tribunal); *see generally New Orleans Public Service, Inc. v. Majoue, 802 F.2d 166, 167 (5th Cir. 1986)* (district court

should dismiss lawsuit seeking injunction of state court proceedings where suit is improper attempt to seek collateral review of prior remand order entered by district court).

[*20]

Along those lines, a hoary decision from the Fifth Circuit n7 is quite instructive. In *Louisville & N.R. Co. v. Western Union Telegraph Co., 233 F. 82 (5th Cir. 1916)*, a federal district court in Kentucky had enjoined and restrained the appellant from taking possession of the appellee's poles, wires and other telegraphic apparatus located on appellant's property. Unhappy with the outcome in that forum, the appellant filed a separate lawsuit in federal court in Mississippi seeking an injunction ordering the appellee to refrain from maintaining and operating its telegraphic equipment on appellant's property. The Fifth Circuit found that such a claim was not cognizable, reasoning that "we think it is apparent that *the necessary effect of granting the relief which the supplemental bill prayed would be to enable the appellant to do, under the protection of the orders of one court, what it has been forbidden to do by a valid order of another court,* which is in full force and effect. A bill, the object of which is to bring about such a result, is not maintainable." *Id. at 84* (emphasis added).

> n7 Decisions of the Fifth Circuit rendered on or before September 30, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).*

[*21]

These judicial guideposts were echoed more recently in *Feller v. Brock, 802 F.2d 722 (4th Cir. 1986)*, in which the U.S. Department of Labor faced a binding, final injunction issued by a district court in the District of Columbia not to certify certain apple growers in its temporary foreign worker program. In response to that injunction, certain growers who were not parties to the D.C. proceedings and whom the DOL could not certify as a result of the D.C. injunction sued in federal district court in West Virginia seeking a preliminary injunction barring the DOL from refusing to certify them. The West Virginia court granted an injunction. On appeal, the Fourth Circuit reversed on an abuse of discretion standard, reasoning as follows:

> "... Issuance of the preliminary injunction did a grave disservice to the public interest in the orderly administration of justice. Prudence requires that whenever possible, coordinate

courts should avoid issuing conflicting orders ... Whatever its label, there is an underlying policy of judicial administration which counsels against the creation of conflicts such as the one at bar."

*Id. at 727-28.* In light [*22] of this conclusion, the *Feller* court vacated the injunction, strongly suggesting that the district court consider following *Lapin* and declining to exercise jurisdiction over the action given that the plaintiffs could seek redress from the court in D.C. *Feller, 802 F.2d at 728-29.*

A common thread runs through all of these decisions. That theme is the amorphous, ill-defined but still very tangible notion that federal district courts have a responsibility to litigants and to our system of justice not to countermand their brother and sister courts' decisions. An unsuccessful plaintiff ought not be able to flit from one federal trial judge to the next, finally seizing upon a favorable ruling by one judge allowing him to do that which other judges have expressly forbidden him from doing. Likewise, a defendant ought not be impaled on the horns of an intractable dilemma by being ordered to take diametrically opposite action by two lateral courts of co-extensive power and authority. The rule of law demands orderly, consistent administration of justice. In turn, the orderly, consistent administration of justice obliges a district court to respect the ruling of its peer tribunal in [*23] a particular matter, staying its hand by declining jurisdiction rather than creating a risk of conflicting orders in the same matter.

D. Declining to Exercise Jurisdiction.

Considered *in toto*, these concepts militate in favor of the Court declining to exercise jurisdiction over this dispute. Such a result is both just and fair. Despite being cloaked in the garb of an independent action brought by parties separate and distinct from those in *Glassroth*, this case is at its core a thinly veiled attempt to countermand Judge Thompson's injunction. Principles of substantive and procedural law, equity and common sense are fully aligned in prompting the conclusion that such a horizontal appeal cannot and will not be suffered by this Court. n8

> n8 This rationale certainly holds if plaintiffs' complaint is characterized — quite properly, in the Court's view — as an attempt to overturn the injunction entered by Judge Thompson. It rings doubly true if plaintiffs' complaint is viewed — as it reasonably may be — as an inverse appeal of the Eleventh Circuit's opinion affirming Judge Thompson's injunction. *See, e.g., Phelps v. Hamilton, 59 F.3d 1058, 1078 (10th Cir. 1995)* ("A district court can-

not review and reverse a decision of a court of appeals ....").

[*24]

Nor does this result unfairly strip plaintiffs of a remedy for the alleged constitutional deprivations of which they complain. Plaintiffs' remedy, if any exists, lies in Montgomery, not Mobile. They have cited no reason — and the Court is aware of none — why plaintiffs cannot petition the Middle District for relief from the threatened removal of the Monument. The Middle District is the rendering court that ordered defendants to remove the Monument. The Middle District is intimately familiar with the factual and legal issues of the case. The Middle District has continuing jurisdiction over its injunction, and is empowered to reconsider and/or modify that injunction (at least, to the extent permitted by the Eleventh Circuit's opinion in *Glassroth*) if plaintiffs' claims have merit. n9 The Middle District, or a higher court of competent jurisdiction, should be the final arbiter of plaintiffs' dissatisfactions with the effects of Judge Thompson's injunction. This Court simply has no place in that chain of review.

n9 In fact, the Supreme Court has recognized that a court has the power to revisit its own previous decisions in extraordinary circumstances, such as where the initial decision was clearly erroneous and would work a manifest injustice. *Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988).* More importantly, "there is no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen ... The source of the power to modify is of course the fact that *an injunction often requires continuing supervision by the issuing court* and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *System Federation No. 91, Railway Emp. Dept., A.F.L.-C.I.O. v. Wright, 364 U.S. 642, 647, 81 S. Ct. 368, 371, 5 L. Ed. 2d 349 (1961)* (emphasis added).

[*25]

Plaintiffs appear entirely capable of addressing their concerns to Judge Thompson and the Middle District. Yet, rather than pursuing such a course of action, plaintiffs chose to launch what is effectively a collateral attack of Judge Thompson's injunction in this District. In the words of Chief Justice Rehnquist, "this they cannot be

permitted to do without seriously undercutting the orderly process of the law." *Celotex, 514 U.S. at 313.* For these reasons, the Court declines to exercise jurisdiction over this matter. n10 Defendants' Motion to dismiss for lack of jurisdiction pursuant to *Rule 12(b)(1), Fed.R.Civ.P.,* is accordingly granted, and this action is **dismissed without prejudice.**

n10 To be clear, the Court does not suggest that Judge Thompson's injunction is somehow binding on this Court under doctrines of *stare decisis,* law of the case, or otherwise. After all, it is well established that district courts generally are not bound by the decisions of other district courts, whether in the same or other judicial districts or circuits. *See, e.g., Fishman & Tobin, Inc. v. Tropical Shipping & Construction Co., Ltd., 240 F.3d 956, 965 (11th Cir. 2001)* (finding that "the district court cannot be said to be bound by a decision of one of its brother or sister judges"); *Fox v. Acadia State Bank, 937 F.2d 1566, 1570 (11th Cir. 1991).* Rather, the Court's finding is simply that Judge Thompson's injunction is his injunction, and that it is not the role of this Court to review or contradict that injunction when the plaintiffs may reasonably seek redress of their grievances from him, or from the appellate courts responsible for reviewing his decisions. The Court's decision in this regard is rooted in time-honored considerations of judicial comity, fairness and the orderly administration of justice, rather than rigid doctrinal principles such as *stare decisis.*

[*26]

## IV. Venue Issues.

As an alternative ground for dismissing this action, the Associate Justices maintain in their Motion that venue is improper in this District. The Court concludes that the venue analysis yields precisely the same outcome as the comity/administration of justice analysis *supra,* and therefore adopts the following conclusions of law as an alternative ground for its decision to dismiss this action without prejudice.

The Complaint alleges that venue for this action properly lies in this District pursuant to *28 U.S.C. § 1391* for three reasons: (a) plaintiff McGinley resides in Mobile, (b) the Monument is located in the Alabama State Judicial Building and therefore affects all citizens of the State of Alabama, and (c) plaintiff Dorley (who resides in Tallassee, which lies in the Middle District) regularly visits the Judicial Building, sometimes for the purpose of viewing the Monument. (Complaint, at P 3.)

It is well established that venue is not a jurisdictional prerequisite and that it may be waived by a defendant absent timely objection. *See, e.g., Harris Corp. v. National Iranian Radio and Television, 691 F.2d 1344, 1349 (11th Cir. 1982);* [*27] *see also 28 U.S.C. § 1406(b)* ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."). In their Motion to Dismiss, the Associate Justices timely objected that venue in this District is improper; therefore, the Court will consider the merits of that objection at this time.

Federal jurisdiction over this action not being grounded on diversity of citizenship and plaintiffs having invoked no special venue statutes, venue is clearly governed by *28 U.S.C. § 1391(b)*, which provides that in the absence of some other controlling provision venue properly lies only in:

> "(1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or
>
> "(3) a judicial district in which any defendant may be found, if there is no district in which the action may be otherwise brought."

*Id.* [*28] When a defendant raises a timely venue objection, the burden of establishing the propriety of venue rests with the plaintiff. *Rogers v. Civil Air Patrol, 129 F. Supp.2d 1334, 1336 (M.D. Ala. 2001).* On the face of plaintiffs' Complaint, they cannot meet this burden.

The venue analysis under *§ 1391(b)(1)* hinges on the residency of defendants. The limited record before the Court does not reflect where each Associate Justice personally resides; however, that information is unnecessary because they have been sued solely in their official capacities. Where suit is brought against a public official exclusively in his official capacity, that official resides for venue purposes in the district where he performs his official duties. *See, e.g., Taylor v. White, 132 F.R.D. 636, 640 (E.D. Pa. 1990); Republican Party of North Carolina v. Martin, 682 F. Supp. 834, 836 (M.D.N.C. 1988); see generally* 17 *Moore's Federal Practice,* § 110.03[3] (2003). Defendants, as Associate Justices of the Alabama Supreme Court, perform their duties in the Alabama State Judicial Building in Montgomery, Alabama, which is located in the Middle District [*29] of Alabama. As such,

defendants all reside in the Middle District for venue purposes, and venue does not properly lie in this District under *§ 1391(b)(1)*.

With respect to *§ 1391(b)(2)*, the critical inquiry is whether a substantial part of the events or omissions giving rise to the claim occurred in this District or, alternatively, whether a substantial part of the property that is the subject of the action is situated in this District. This action concerns a Monument located in the Middle District of Alabama, and in-house administrative decisions made by state government officials in the Middle District of Alabama. Neither the Complaint nor plaintiffs' accompanying submissions reflect that any events or omissions giving rise to their claims occurred in this District, or that any property that is the subject of this action is situated in this District. In fact, the only link between this District and plaintiffs' lawsuit that appears from the face of the Complaint is the bare fact that plaintiff McGinley resides in this District. Such a showing is manifestly inadequate to establish venue under *§ 1391(b)(2)*. *See, e.g.,* 17 *Moore's Federal Practice* § 110.02[2][b] [*30] (2003) (noting that plaintiff's residence is "no longer relevant to venue" determinations under *§ 1391(b)*). n11

> n11 The Court acknowledges plaintiffs' assertions in the Complaint that venue is appropriate here because the positioning of the Monument in the Alabama State Judicial Building affects all Alabama citizens and because plaintiff Dorley frequents the Monument and the Judicial Building from his residence in the Middle District. However, such contentions miss the mark because they ignore the analytical framework created by *§ 1391(b)* and because plaintiffs offer no explanation why these facts have any legal bearing on the question of venue.

The third and final prong of *§ 1391(b)* allows venue to reside in "a judicial district in which any defendant may be found, if there is no district in which the action may be otherwise brought." *§ 1391(b)(3)*. This provision cannot avail plaintiffs in their quest to establish venue in this District for two distinct reasons. First, no defendants "may be found" in this [*31] District. Second, there clearly is another "district in which the action may otherwise be brought" under both *§ 1391(b)(1)* and *§ 1391(b)(2)*; to-wit, the Middle District of Alabama.

Thus, straightforward application of the general venue statute inexorably confirms that which is already informed by common sense; namely, that this case does not belong in the Southern District of Alabama. It belongs in the Middle District, where all of the defendants reside,

where the *res* that is the subject of the lawsuit (*i.e.,* the Monument) may be found, and where all or virtually all of the events and occurrences on which the litigation is predicated transpired.

It being clear that venue is improper in this District, the question remains as to what action the Court should take in response. By statute, a district court confronted with a case laying venue in the wrong district "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *28 U.S.C. § 1406(a)*. The decision of whether to dismiss the action or transfer it to the Middle District rests in the Court's sound discretion. *See, e.* [*32] *g., First of Michigan Corp. v. Bramlet, 141 F.3d 260, 262 (6th Cir. 1998)*; *Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993)*.

The Court recognizes that the interests of justice typically militate in favor of transferring an improperly filed action, rather than dismissing it. However, considering the totality of the circumstances, the Court is of the opinion that this is one of those atypical cases in which transferring a case to a district where venue is proper may paradoxically harm the plaintiffs' interests to a greater extent than would dismissing it without prejudice. Plaintiffs' submissions have emphasized the time-sensitive nature of their prayer for relief, and the imminence of irreparable harm should the Monument be disturbed from its repose in the rotunda of the Judicial Building. If the Court transfers this case to the Middle District, the administrative process of transferring a case from this District's Clerk's Office to the Middle District's Clerk's Office – with its attendant paperwork and clerical tasks – might take days, during which time plaintiffs would be unable, for all practical purposes, to pursue their claims for relief [*33] in any forum. By contrast, if the Court dismisses the action without prejudice, plaintiffs may refile it in the Middle District as expeditiously as they wish, presumably within hours after the dismissal takes effect. For these reasons, and

out of respect for the specter of constitutional injury that plaintiffs are purporting to confront at any moment, the Court will exercise its discretion under *§ 1406(a)* in favor of dismissing this action without prejudice for improper venue, pursuant to *Rule 12(b)(3), Fed.R.Civ.P.* n12

> n12 Because both the jurisdictional and venue issues raised by the Associate Justices warrant dismissal of this action without prejudice, the Court finds it unnecessary to consider the constitutional issues raised by defendants' Motion (*e.g.,* whether plaintiffs' claims properly state a claim for relief under the *Establishment Clause* of the *First* and *Fourteenth Amendments*). In that regard, the Court acknowledges the "fundamental and longstanding principle of judicial restraint requir[ing] that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Santamorena v. Georgia Military College, 147 F.3d 1337, 1343 (11th Cir. 1998)*. The Court therefore refrains from expressing any opinion as to whether plaintiffs have established a cognizable claim for violation of the *Establishment Clause*.

[*34]

## V. Conclusion.

For all of the reasons set forth herein, defendants' Motion to Dismiss is hereby **granted** and this action is **dismissed without prejudice.** The hearing set for 3:00 p.m. on August 27, 2003 on plaintiffs' Application for Temporary Restraining Order is **canceled.**

**DONE** and **ORDERED** this 27th day of August, 2003.

s/ WILLIAM H. STEELE

UNITED STATES DISTRICT JUDGE

Exhibit E

LEXSEE 2005 U.S. APP. LEXIS 22496

**NIGEL RENARD SANDERS, Plaintiff-Appellant, versus JACKIE BARRETT, VERONICA THOMAS, MRS. CARSON, Defendants-Appellees.**

**No. 05–12660, Non–Argument Calendar**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

*2005 U.S. App. LEXIS 22496*

**October 17, 2005, Decided**
**October 17, 2005, Filed**

**NOTICE:** [*1] NOT FOR PUBLICATION

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of Georgia. D. C. Docket No. 04–01146–CV–JTC–1.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Nigel Renard Sanders (400408), Appellant, Pro se, REIDSVILLE, GA.

**JUDGES:** Before CARNES, MARCUS and WILSON, Circuit Judges.

**OPINION:** Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Nigel Sanders, a prisoner proceeding *pro se,* appeals the dismissal, in part, of his *42 U.S.C. § 1983* civil complaint for failure to comply with an order of the court, and the *28 U.S.C. § 1915A(b)* dismissal, in part, of defendant Fulton County Sheriff Jackie Barrett for failure to state a claim.

Sanders's *§ 1983* claim is based on allegations that two Fulton County jailers, Veronica Thomas and Mrs. Carson, used excessive force and denied him medical care while he was an inmate at Fulton County jail. After conducting a frivolity determination pursuant to *§ 1915A,* the district court dismissed Barrett as a defendant, but determined that Sanders's claims should proceed against Thomas and Carson. The district court ordered Sanders to complete and return a USM 285 form, summons, and initial [*2] disclosures form for each defendant. Nearly five months later, the district court dismissed without prejudice Sanders's action for failure to comply with the court's order to return the required forms.

Sanders argues that the district court erred in dismissing his action for failure to comply with a court order. He states that he complied with the order by attempting to mail the required forms through the Georgia State Prison's indigent postage system, and he further contends that the district court should have notified him of his noncompliance prior to dismissing his action.

We review a dismissal without prejudice under *Federal Rule of Civil Procedure 41(b)* for abuse of discretion. n1 *Dynes v. Army Air Force Exch. Serv., 720 F.2d 1495, 1499 (11th Cir. 1983)* (per curiam). When a dismissal without prejudice does not preclude further litigation, we review the dismissal using a more lenient standard than if the dismissal had resulted in further litigation being time-barred. n2 *McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 556 (5th Cir. Unit A Oct. 1981); Boazman v. Econ. Lab., Inc., 537 F.2d 210, 212–13 (5th Cir. 1976).* [*3] n3

n1 Although the district court's order cited Local Rule 41.2C, which permits dismissal without prejudice for failing to update an address or telephone number, it appears that the district court dismissed the complaint pursuant to either *Fed. R. Civ. P. 41(b)* or Local Rule 41.3A(2) for failure to comply with an order of the court since the district court's reasoning is based on appellant's failure to comply with the court order to return the USM 285 form, summons, and initial disclosures form.

n2 Sanders's earliest allegation is an assault that occurred on August 31, 2003. Each state's tort action for recovery of damages for personal injury supplies the statute of limitations period for a *§ 1983* action. *Wilson v. Garcia, 471 U.S. 261, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985).* In Georgia, that period is two years. *O.C.G.A. § 9-3-33.* The district court dismissed the complaint on April 8, 2005, within the applicable two-year statute of lim-

itations.

n3 In *Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)* (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[*4]

The district court's "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits." *Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983)* (per curiam). The court may dismiss an action *sua sponte* under *Rule 41(b)* for failure to prosecute. *FED. R. CIV. P. 41(b); Lopez v. Aransas County Indep. Sch. Dist., 570 F.2d 541, 544 (5th Cir. 1978)*. Failure to comply with local rules is also grounds for dismissal under *Rule 41(b). Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993)*.

Here, Sanders was informed that failure to comply with the court's order could result in dismissal, and the district court explicitly stated that the dismissal was without prejudice. Although Sanders states that he complied with the court's order by completing the forms and attempting to send them through the Georgia State Prison's indigent postage system, there is no evidence that the forms were ever received by the district court. Furthermore, Sanders received a notice from the prison that the filing containing the forms exceeded the maximum weekly postage allowance [*5] for indigent prisoners' mail. He therefore had an opportunity to inquire into the status of his filing with the prison's mail room. Because the district court warned Sanders that failure to comply with the court's order could result in dismissal, and because the district court dismissed his complaint without prejudice before the expiration of the statute of limitations, we find no abuse of discretion in the dismissal.

Sanders next argues that the district court erred in dismissing former Fulton County Sheriff Barrett for failure to state a claim during a frivolity determination under *§ 1915A*. We review a *sua sponte* dismissal for failure to state a claim under *§ 1915A(b)(1) de novo. Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001)* (per curiam).

Liability of supervisory officials under *§ 1983* cannot be predicated on vicarious liability or *respondeat superior. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)*. Supervisory officials can be liable if they person-

ally participate in the alleged constitutional violation or where there is a "causal connection between actions of the supervising official and the alleged constitutional [*6] deprivation." n4 *Id.* (quoting *Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990))*.

n4 The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences. In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper custom or policy . . . results in deliberate indifference to constitutional rights.

*Hartley, 193 F.3d at 1269* (internal quotations and citations omitted).

Sanders did not allege in his complaint that Barrett personally participated in his alleged deprivations, nor did he allege any causal connection between Barrett's actions and his alleged constitutional deprivation. For the first time [*7] on appeal, Sanders alleges new facts in an attempt to state a claim against Barrett under *§ 1983*. "Appellate courts generally will not consider an issue or theory that was not raised in the district court." n5 *Narey v. Dean, 32 F.3d 1521, 1526 (11th Cir. 1994)* (internal quotation omitted). Sanders could have amended his complaint before the district court dismissed his action against Barrett, but failed to do so. *See Brown v. Johnson, 387 F.3d 1344, 1348–49 (11th Cir. 2004)*. Therefore, the district court did not err in dismissing Sanders's action against Barrett.

n5 Although this Court recognizes five exceptions to this general rule, none apply in the instant case. *See Narey, 32 F.3d at 1526–27*.

Upon review of the district court record and Sanders's brief, we find no reversible error. Because the district court did not err in dismissing appellant's *§ 1983* action or defendant Fulton County Sheriff Jackie [*8] Barrett, we affirm.

**AFFIRMED.**

## CERTIFICATE OF SERVICE

I, Daniel J. Brown, do hereby certify that on this 18th day of April, 2006, I caused

copies of the foregoing Motion, Brief, and Affidavit to be served in the manner indicated

below.

### BY E-FILING:

Joseph N. Gielata, Esq.
501 Silverside Road
Suite 90
Wilmington, DE 19809

Michael Ray Robinson
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

### BY U.S. MAIL:

J.P. Morgan Securities Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

Daniel J. Brown (#4688)