# RICHARDS, LAYTON & FINGER
### A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

MICHAEL R. ROBINSON

DIRECT DIAL NUMBER
302-651-7767
Robinson@RLF.COM

May 5, 2006



**BY HAND**

Honorable Joseph J. Farnan, Jr.
U.S. District Court for the District of Delaware
District of Delaware
844 N. King Street, Room 4209
Wilmington, DE 19801

      Re:    *Hyland v. JPMorgan Securities Inc., et al.,*
                  C.A. 1:05-cv-00162 and C.A. 1:06-cv-224

Dear Judge Farnan:

In accordance with the procedures of the Judicial Panel on Multidistrict Litigation, I enclose a copy of the following documents submitted to the Panel yesterday:

1.      Defendants' Response to Plaintiff's Motion for Transfer of Actions to the District Court of Delaware for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407;

2.      Defendants' Memorandum of Law in Response to Plaintiff's Motion for Transfer of Actions to the District Court of Delaware for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407;

3.      Appendix A to Defendants' Memorandum of Law in Response to Plaintiff's Motion for Transfer of Actions to the District Court of Delaware for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407;

4.      Affidavit of Anthony J. Horan;

Honorable Joseph J. Farnan, Jr.
May 5, 2006
Page 2

     5.     Reasons Why Oral Argument Need Not Be Heard With Respect to Plaintiff's Motion for Transfer of Actions to the District of Delaware for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407;

     6.     Proof of Service; and

     7.     Letter to Michael Beck, Clerk of the Panel.

Respectfully submitted,

Michael R. Robinson (DSBA # 4452)

MRR/mr
Enclosures
cc:     Joseph N. Gielata, Esquire
          Demet Basar, Esquire

# BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                         :
IN RE J.P. MORGAN CHASE & CO                             :    MDL No. 1783
SECURITIES LITIGATION                                    :
                                                         :
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF DELAWARE FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois 60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
(312) 853-7000
*Counsel for Defendants*

Dated: May 4, 2006

Defendants JPMorgan Chase & Co. ("JPMC"), J.P. Morgan Securities Inc. ("JPMSI"), William B. Harrison, Jr., Hans W. Becerer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and James Dimon, respond to plaintiff Samuel Hyland's motion for centralization as follows:

1.    Deny the averments in paragraph 1 of the motion except admit that the actions listed in movant's Schedule of Related Actions purport to assert the claims described in paragraph 1.

2.    Deny the averments in paragraph 2 of the motion except admit that the actions listed in movant's Schedule of Related Actions all relate to the 2004 merger of JPMC and Bank One Corporation.

3.    Admit that the actions listed in movant's Schedule of Related Actions raise common questions of fact and involve common discovery issues.

4.    Deny the averments in paragraph 4 of the motion except admit that Bank One shareholders received an acquisition premium amounting to approximately $7 billion in connection with the merger.

5.    Deny the averments in paragraph 5 of the motion except admit that (i) the *New York Times* reported on the merger on June 27, 2004 and refer the Court to the article for the contents thereof,[1] (ii) complaints based on the *New York Times* article were filed in Delaware Court of Chancery on June 29 and 30, 2004;[2] in the Northern

---

[1]    *See* Landon Thomas Jr., "The Yin, the Yang[,] and the Deal," N.Y. TIMES, June 27, 2004, at C1 (attached as Appendix A to the accompanying memorandum of law).

[2]    *Taylor* v. *Harrison*, No. 531-N (Del. Ch.); *Robins* v. *Harrison*, No. 533-N (Del. Ch.); *Ziegler* v. *Harrison*, No. 534-N (Del. Ch.).

District of Illinois on October 13 and November 18, 2004;[3] and in the District of Delaware on March 17, 2005 and April 6, 2006;[4] and (iii) two lead plaintiffs were appointed in *Blau* v. *Harrison*, No. 04-6592 (N.D. Ill.), one of which withdrew; and (iv) movant Samuel Hyland and Stephanie Speakman were appointed lead plaintiffs in *Hyland* v. *Harrison*, No. 05-0162 (D. Del.), which the District of Delaware has stayed and administratively closed by Orders dated February 7 and 9, 2006.

   6. Admit the averments in paragraph 6 of the motion.

   7. Admit the averments in paragraph 7 of the motion except deny that the District of Delaware is the forum most conducive to the just and efficient conduct of all actions.

   8. Deny the averments in paragraph 8 of the complaint except admit that (i) substantially more of the defendants and anticipated witnesses reside in the metropolitan New York area than in any other state or metropolitan area, (ii) the first-filed suits against most of the defendants were commenced in the Delaware Court of Chancery, and aver that all such actions have been dismissed and the dismissal affirmed by the Delaware Supreme Court,[5] and (iii) JPMC was and is, and pre-merger Bank One was, incorporated in Delaware, and have operated there, and lack sufficient knowledge to admit or deny averments as to movant's residency or the expertise of any potential transferee judge.

---

[3] *Blau* v. *Harrison*, No. 04-6592 (N.D. Ill.); *Arner* v. *Harrison*, No. 04-7477 (N.D. Ill.).

[4] *Hyland* v. *Harrison*, No. 05-0162 (D. Del.); *Hyland* v. *J.P. Morgan Securities Inc.*, No. 06-0224 (D. Del.).

[5] *See In re J.P. Morgan Chase & Co. S'holder Litig.*, No. 531-N, 2005 Del. Ch. LEXIS 51 (Del. Ch. Apr. 29, 2005), *aff'd*, No. 218, 2005, 2006 Del. LEXIS 124 (Del. Mar. 8, 2006).

9.    Deny the averment in paragraph 9 of the motion.

Respectfully submitted,

Jesse A. Finkelstein (Del. Bar No. 1090)
Michael R. Robinson (Del. Bar No. 4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
finkelstein@rlf.com
robinson@rlf.com
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York  10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois  60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

Michael A. Cooper
Sharon L. Nelles
Keith Levenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

Kathleen L. Roach
Courtney A. Rosen
Matthew B. Kilby
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois  60603
(312) 853-7000
*Counsel for Defendants*

Dated: May 4, 2006

# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                       :
IN RE J.P. MORGAN CHASE & CO.                          :   MDL No. 1783
SECURITIES LITIGATION                                  :
                                                       :
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

## DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF DELAWARE FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois 60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
(312) 853-7000
*Counsel for Defendants*

Dated: May 4, 2006

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................................ii

BACKGROUND ..................................................................................................1

ARGUMENT..........................................................................................................3

CONCLUSION........................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Ace Ltd. Sec. Litig.,*
370 F. Supp. 2d 1353 (J.P.M.L. 2005)................................................................7

*In re Air Crash Disaster Near Chicago,*
476 F. Supp. 445 (J.P.M.L. 1979)....................................................................7

*In re Amoxicillan Patent & Antitrust Litig.,*
449 F. Supp. 601 (J.P.M.L. 1978).....................................................................4

*In re Ascot Oils, Inc. Sec. Litig.,*
433 F. Supp. 1118 (J.P.M.L. 1977)....................................................................4

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.,*
408 F. Supp. 2d 1349 (J.P.M.L. 2005)................................................................6

*In re Circular Thermostat Antitrust Litig.,*
370 F. Supp. 2d 1355 (J.P.M.L. 2005)................................................................7

*In re Clark Oil & Refining Corp. Antitrust Litig.,*
364 F. Supp. 458, 459 (J.P.M.L. 1973)..............................................................4

*In re Comm. Money Ctr. Inc. Equip. Lease Litig.,*
229 F. Supp. 2d 1379 (J.P.M.L. 2002)................................................................7

*In re Compression Labs, Inc., Patent Litig.,*
360 F. Supp. 2d 1367 (J.P.M.L. 2005)................................................................7

*In re Delphi Corp. Sec., Deriv., & ERISA Litig.,*
403 F. Supp. 2d 1358 (J.P.M.L. 2005)................................................................6

*In re Doral Fin. Corp. Sec. Litig.,*
398 F. Supp. 2d 1369 (J.P.M.L. 2005)................................................................7

*In re ETS 7-12 Test Scoring Litig.,*
350 F. Supp. 2d 1363 (J.P.M.L. 2004)................................................................7

*In re First Nat'l Bank, Heavener, Okla. Sec. Litig.,*
451 F. Supp. 995 (J.P.M.L. 1978).....................................................................4

*In re Gator Corp. Software Trademark & Copyright Litig,*
259 F. Supp. 2d 1378 (J.P.M.L. 2003)................................................................7

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
    398 F. Supp. 2d 1371 (J.P.M.L. 2005) .................................................................... 7

*In re IBM Antitrust Litig.*,
    302 F. Supp. 796 (J.P.M.L. 1969) ..................................................................... 4-5

*In re Insulin Mfg. Antitrust Litig.*,
    487 F. Supp. 1359 (J.P.M.L. 1980) .................................................................... 5

*In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*,
    149 F. Supp. 2d 931 (J.P.M.L. 2001) ................................................................ 7

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
    No. 531-N, 2005 Del. Ch. LEXIS 51 (Del. Ch. Apr. 29, 2005)
    *aff'd*, No. 218, 2005, 2006 Del. LEXIS 124 (Del. Mar. 8, 2006) .................. 1-2, 8

*In re Laughlin Prods., Inc., Patent Litig.*,
    240 F. Supp. 2d 1358 (J.P.M.L. 2003) ............................................................... 7

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    102 F.3d 1524 (9th Cir. 1996) ........................................................................... 6

*In re Oxycontin Antitrust Litig.*,
    314 F. Supp. 2d 1388 (J.P.M.L. 2004) ............................................................... 6

*In re Scotch Whiskey*,
    299 F. Supp. 543 (J.P.M.L. 1969) .................................................................. 3-4

*In re Sears, Roebuck & Co.*,
    381 F. Supp. 2d 1383 (J.P.M.L. 2005) ............................................................... 6

*In re Xybernaut Corp. Sec. Litig.*,
    403 F. Supp. 2d 1354 (J.P.M.L. 2005) ............................................................... 6

## STATUTES

28 U.S.C. § 1407 (2006) ...................................................................................... 3, 5

## BACKGROUND

On January 14, 2004, JPMorgan Chase & Co. ("JPMC") and Bank One Corp. ("Bank One") announced that they had agreed to a business combination following the unanimous approval of their respective Boards of Directors. The agreement provided that Bank One shareholders would receive a premium that, based on the share price on the date of the agreement, amounted to approximately $7 billion. The companies also announced that JPMC's CEO and Chairman, William B. Harrison, Jr., would continue to hold those positions for two years following the merger and that Bank One's CEO, James Dimon, would serve as President and COO and would succeed Mr. Harrison as CEO within two years, as he did.

Shortly before the merger was scheduled to close, the *New York Times* published a feature article on the merger, which included the following two sentences:

> During the negotiations with Mr. Dimon, [Mr. Harrison] fought hard to give himself the two extra years, to secure a smooth transition, although he may have cost J.P. Morgan shareholders extra money in doing so. Mr. Dimon, always the tough deal maker, offered to do the deal for no premium if he could become chief executive immediately, according to two people close to the deal.

Landon Thomas Jr., "The Yin, the Yang[,] and the Deal," N.Y. TIMES, June 27, 2004, § C at 3-4. (A copy of the entire article is attached as Appendix A.) The *Times* did not elaborate on the claim or name its sources. Within a week, a trio of complaints were filed in the Delaware Court of Chancery accusing JPMC's Board of Directors of breaching its fiduciary duty to shareholders in declining the alleged "offer" to merge at no premium in exchange for replacing JPMC's CEO.

These complaints were dismissed for failure to state a claim. *See In re J.P. Morgan Chase & Co S'holder Litig.*, No. 531-N, 2005 Del. Ch. LEXIS 51 (Del. Ch.

Apr. 29, 2005), *aff'd*, No. 218, 2005, 2006 Del. LEXIS 124 (Del. Mar. 8, 2006). But they found new life in two federal complaints which cut-and-pasted the key allegations of the dismissed state complaints while asserting disclosure claims under the federal securities laws instead of Delaware law. The first of these, *Blau v. Harrison*, No. 04-6592, was filed in the Northern District of Illinois on October 13, 2004 and asserted a proxy-disclosure claim under §14(a) of the Securities Exchange Act. Five months later, movant Samuel Hyland filed a complaint, *Hyland v. Harrison*, No. 05-0162 (hereinafter "*Hyland I*"), in the District of Delaware, later amending the complaint to add plaintiff Stephanie Speakman. Hyland and Speakman were conditionally appointed lead plaintiffs in *Hyland I*; plaintiff Stephen Blau received the identical designation in the Northern District of Illinois action.

Hyland and Speakman never moved for lead-plaintiff status in the Illinois case, but did contest the Northern District of Illinois's appointment of Blau. In response, Blau filed a motion to intervene in the District of Delaware for the purpose of staying *Hyland I* and continuing to litigate in Illinois. Hyland and Speakman parried with a motion asking the District of Delaware to enjoin the litigation in Illinois. The District of Delaware granted Blau's motion to intervene and stayed *Hyland I* pending adjudication of the *Blau* action. *Hyland v. Harrison*, No. 05-0162, 2006 U.S. Dist. LEXIS 5744 at *22 (D. Del. Feb. 7, 2006). *Hyland I* was then administratively closed by Order of the Court dated February 9, 2006.

Two months later, Hyland filed another action based on the same facts as *Hyland I* and *Blau*, but this time naming as defendant J.P. Morgan Securities Inc., a subsidiary of JPMC and the investment bank that advised JPMC and provided a fairness

opinion with respect to the merger. *See Hyland v. J.P. Morgan Securities Inc.*, No. 06-0224 (D. Del.) (hereinafter "*Hyland II*"). Hyland presently seeks centralization of *Hyland I*, *Hyland II*, and *Blau* by this Panel. *Blau* has responded to the new action by filing a motion in the District of Delaware requesting that the Court enforce its February 7 Stay Order by finding the filing of *Hyland II* in contravention of the Stay Order or, alternatively, by consolidating *Hyland I* and *Hyland II*, effectively staying both. That motion is pending.

## ARGUMENT

Although it is unusual that a request for centralization pursuant to Section 1407 originates with a plaintiff, defendants agree that the actions should be centralized in a transferee Court designated by this Panel, given the factual complexity as well as the procedural friction between plaintiffs and attendant burden on defendants. The Southern District of New York, however, is a more appropriate transferee Court than movant's requested forum, the District of Delaware.

## I.    Centralization is Appropriate.

Pursuant to the MDL statute, 28 U.S.C. § 1407(a) (2006), actions may be transferred for coordinated or consolidated pretrial proceedings when (i) they "involv[e] one or more common questions of fact," (ii) transfer will serve "the convenience of parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of such actions." Here there are just three actions, including the stayed *Hyland I.*[1] In *In re Scotch Whiskey*, 299 F. Supp. 543 (J.P.M.L. 1969), the Panel discussed the circumstances

---

[1]    Movant's counsel has obliquely stated that "additional federal lawsuits are anticipated." (*See* Mem. in Support of Mot. for Centralization at 2.)

under which multidistrict treatment is warranted when only a minimal number of actions
are implicated:

> If only one question of fact is common to two or three cases pending in
> different districts there probably will be no order for transfer, since it is
> doubtful the transfer would enhance the convenience of parties and
> witnesses or promote judicial efficiency.  It is possible, however, that a
> few exceptional cases may share unusually complex questions of fact . . .
> (and that) substantial benefit may accrue to courts and litigants through
> consolidated or coordinated pretrial proceedings.

*Id.* at 544 (quoting S. Rep. 454 at 4-5).  With this guidance, the Panel has consolidated as
few as two actions based on the complexity of the factual issues and the anticipated
burden of discovery.  *See, e.g.*, *In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F.
Supp. 458, 459 (J.P.M.L. 1973) (consolidating two actions due to "the greater complexity
of factual issues presented here" than in *Scotch Whiskey*); *In re Ascot Oils, Inc. Sec.
Litig.*, 433 F. Supp. 1118, 1120 (J.P.M.L. 1977) (consolidating two actions that "raise
numerous virtually identical questions of fact" and "share nine common defendants . . .
with the discovery so time-consuming, as to justify transfer"); *In re Amoxicillan Patent &
Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (consolidating three actions
"[b]ecause of the presence of complex factual questions and the strong likelihood that
discovery concerning these questions will be both complicated and time-consuming"); *In
re First Nat'l Bank, Heavener, Okla. Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978)
(consolidating two actions that "arise from the same factual situation and share numerous
complex questions of fact concerning the financial condition and the operation of the
[securities issuer] and concerning the allegedly concerted activities of the various
defendants in connection with the distribution and sale of the bonds" and noting that
"[d]iscovery on these complex factual questions will be time-consuming"); *In re IBM
Antitrust Litig.*, 302 F. Supp. 796, 798-99 (J.P.M.L. 1969) (consolidating three cases that

"require the exploration in depth of wide fields of both technical and economic data" which "will entail the production of a multitude of the same documents").

Here, there is no question as to the commonality of the dispositive questions of fact. The complaints are literally cut-and-pasted from one another. There is also no dispute as to the complexity of the factual issues. The pertinent question is whether "the accompanying discovery will be so time consuming as to justify transfer under Section 1407," *In re Insulin Mfg. Antitrust Litig.*, 487 F. Supp. 1359, 1361 (J.P.M.L. 1980), and all indications thus are that it will be. Indeed, on May 1, the *Blau* plaintiffs served an unusually prolix 48-part *first* request for document production on defendants that seeks all documents in any way bearing on the merger and threatens to make a witness out of any employee of either bank or their financial advisors whose work contributed to the merger. Plaintiff's counsel in each litigation will undoubtedly wish to depose (i) all twelve directors of JPMC who were Board members when the merger agreement was signed and who were named as individual defendants in *Blau* and *Hyland I*, (ii) the pre-merger directors of Bank One, and (iii) the investment advisers to the merging corporations and their counsel in the acquisition.[2]  In addition to being extensive, the document production and pertinent economic data will be identical in each case. Yet, without coordination or consolidation, the procedural tug-of-war between plaintiffs will, undoubtedly, lead to duplication of large scale document-production efforts and multiple depositions, as well as differing rounds of pre-trial briefing on, for example, discovery issues, that could lead to inconsistent discovery obligations for the defendants and their witnesses.

## II.    The Southern District of New York Is the Most Appropriate Transferee Forum.

"[I]n multidistrict litigation cases concerns for judicial economy trump the usual deference to a plaintiff's choice of forum." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 102 F.3d 1524, 1532 (9th Cir. 1996). This Panel customarily designates an appropriate forum based on the following factors:

- The district in which a common defendant is headquartered, *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 408 F. Supp. 2d 1349, 1350 (J.P.M.L. 2005); *In re Xybernaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005); *In re Sears, Roebuck & Co.*, 381 F. Supp. 2d 1383, 1384 (J.P.M.L. 2005), or maintains its principal place of business. *In re Delphi Corp. Sec., Deriv., & ERISA Litig.*, 403 F. Supp. 2d 1358, ____ (J.P.M.L. 2005); *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004). **JPMC and JPMSI are both headquartered and have their principal places of business in New York.**

- The district "likely to be the location of significant discovery," *Cessna*, 408 F. Supp. 2d at 1350, or "a likely source of relevant documents and witnesses." *Xybernaut*, 403 F. Supp. 2d at 1355; *Sears*, 381 F. Supp. 2d at 1384. Here, movant avers that "almost all" parties (Mot. ¶ 8) and "practically every witness" (Mem. at 6) reside in New York. (This is overstated; the accompanying affidavit of Anthony Horan, Secretary to JPMC's Board of Directors, identifies the six individual defendants with offices and/or residences in New York. *See* Horan Aff. ¶ 2.) All current directors of JPMC, including those who were pre-merger directors of Bank One and thus likely witnesses, travel to New York seven times annually for Board meetings. (*See* Horan Aff. ¶ 4.) Movant also concedes that all of the anticipated non-party witnesses so far identified have their respective offices "located in Manhattan." (Mem. at 6-7.) Relevant documents are most likely to be located in New York or Chicago, where each pre-merger bank maintained their central business operations and where the respective CEOs who negotiated the merger on their banks' behalves worked and resided.

---

[2]    Movant's supporting memorandum identifies as prospective witnesses seven investment bankers and twelve lawyers.

- The district favored by "most of the responding parties." *In re Doral Fin. Corp. Sec. Litig.*, 398 F. Supp. 2d 1369, 1370 (J.P.M.L. 2005). **With the instant response, the Southern District of New York is favored by fifteen of the eighteen parties to the various litigations.**

- The district convenient to counsel. *In re Air Crash Disaster Near Chicago*, 476 F. Supp. 445, 449 n.4 (J.P.M.L. 1979). **Here, all parties except Mr. Hyland and Ms. Speakman are represented by law firms or in-house lawyers with their primary offices in New York. The plaintiff's lawyer who argued a motion for reconsideration in the *Blau* action just last week (on April 26) is based in New York.**

- The district having an "accessible" and "metropolitan" location. *E.g.*, *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371 (J.P.M.L. 2005); *In re Circular Thermostat Antitrust Litig.*, 370 F. Supp. 2d 1355 (J.P.M.L. 2005); *In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005*), In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371 (J.P.M.L. 2005); *In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367 (J.P.M.L. 2005*), In re ETS 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363 (J.P.M.L. 2004); *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378 (J.P.M.L. 2003); *In re Laughlin Prods., Inc., Patent Litig.*, 240 F. Supp. 2d 1358 (J.P.M.L. 2003); *In re Comm. Money Ctr. Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1379 (J.P.M.L. 2002); *In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*, 149 F. Supp. 2d 931 (J.P.M.L. 2001). **New York is easily accessible from Delaware and Chicago, and metropolitan.**

Each factor favors assignment of these cases to the Southern District of New York. While movant's papers arguably make the case that the District of Delaware is a more sensible forum than the Northern District of Illinois, movant's arguments apply with even greater force to the Southern District of New York than to the District of Delaware. Moreover, the factors he cites uniquely in favor of Delaware are not pertinent to forum assignment. For example, movant avers that he himself resides in Delaware (Mot. ¶ 8), but if the location of one out of thousands of purported class members carries any weight, it is surely counterbalanced by movant's observation that "[t]he plaintiff in

the Illinois lawsuit resides in New York." (Mem. at 6.) Next, movant's assertion that "[t]he first-filed suits against most of the defendants were commenced in the Delaware Court of Chancery" (Mot. ¶ 8) is unavailing, for those suits no longer are pending, with the Delaware Supreme Court's having affirmed a dismissal for failure to state a claim. *See J.P. Morgan Chase*, 2006 Del. LEXIS 124. Finally, movant argues that "[t]here are state law claims unique to the District of Delaware actions that involve questions of Delaware common law." Each of these questions of Delaware common law is foreclosed by the judgments of the Delaware courts that there was no breach of fiduciary duty. *See J.P. Morgan Chase*, 2005 Del. Ch. LEXIS 51 at *40-*41. The action against JPMSI is not a backdoor around this ruling, for it is axiomatic that one cannot aid and abet a breach of fiduciary duty that never occurred.

New York is the clear choice for the convenience of the parties and the efficient prosecution of the litigation.

# CONCLUSION

For the reasons stated above, the litigations should be transferred to the Southern District of New York for centralized pretrial proceedings pursuant to Section 1407(a).

Respectfully submitted,

Jesse A. Finkelstein (Del. Bar No. 1090)
Michael R. Robinson (Del. Bar No. 4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
finkelstein@rlf.com
robinson@rlf.com
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Michael A. Cooper
Sharon L. Nelles
Keith Levenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc. and Individual Defendants*

May 4, 2006

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois 60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

Kathleen L. Roach
Courtney A. Rosen
Matthew B. Kilby
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
(312) 853-7000
*Counsel for Defendants*

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
IN RE J.P. MORGAN CHASE & CO.        :    MDL No. 1783
SECURITIES LITIGATION                :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# APPENDIX A

### TO

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S
MOTION FOR TRANSFER OF ACTIONS TO THE DISTRICT OF DELAWARE FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO
28 U.S.C. § 1407**

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
*Counsel for Defendants*

DATED: MAY 4, 2006

1 of 2 DOCUMENTS

Copyright 2004 The New York Times Company
The New York Times

June 27, 2004 Sunday
Late Edition - Final

**SECTION:** Section 3; Column 5; SundayBusiness; Pg 1

**LENGTH:** 2453 words

**HEADLINE:** The Yin. the Yang and the Deal

**BYLINE:** By LANDON THOMAS Jr

**BODY:**

STANDING before his most senior executives in a packed room last week. William B Harrison Jr . the chief executive of J P. Morgan Chase. was doing what he loves best: selling a merger  Just eight days remained before the official union of J P. Morgan and Bank One — a combination that will create the world's second-largest financial institution. after Citigroup. bring James Dimon back to Wall Street and cap a long. sometimes painful journey for Mr Harrison

His jacket off. his glasses riding low on his nose, Mr Harrison ranged back and forth behind the lectern for close to 45 minutes  For inspiration. he cited the teamwork of the Detroit Pistons in upsetting the Los Angeles Lakers this year for the N B A  championship; for laughs. he played a 19-year-old video showing David Letterman, then at NBC, breaking into the General Electric building in a vain but hilarious attempt to meet his new boss, John F. Welch Jr , the chief executive of G E  who had just bought NBC

"The Pistons didn't have anyone," Mr Harrison said, his voice rising  "A team beats superstars every time — that's execution  The difference between good and great is going to be execution  Let's be the best  With that, Jamie, I turn it over to you "

Leaping up from his front-row seat. Mr Dimon reached to shake his boss's proffered hand, then pulled his own hand back sharply with a grin  For a few seconds, Mr Harrison's hand remained outstretched as Mr Dimon bounded past him

The gesture was a joke, a playful take on the video. in which Mr Letterman's offered hand was also spurned by security guards — "the G E  corporate handshake," Mr Letterman called it  But while Mr Dimon clearly meant no disrespect for Mr Harrison, a man he often praises as a friend and a business partner. his clumsy prank underscored just how delicate — and unusual — this merger is

Mr Harrison may be the acquirer and the chief executive in name, but it is becoming increasingly clear that Mr Dimon and his posse will call many of the shots  A majority of that group worked with Mr Dimon at Citigroup during his glory days as Sanford I  Weill's No 2

Odd as it may seem. J P. Morgan. the prestigious 200-year-old financial institution that has catered to the Rockefellers and the cream of corporate America. is on the verge of being swallowed by a bank from Chicago with roots in Columbus. Ohio

The merger. which becomes official on Thursday, comes at a difficult time for Wall Street. amid rising interest rates. shrinking trading profits. increased regulatory scrutiny and a wave of lawsuits related to corporate missteps and scandals

All of that puts added pressure on the relationship between Mr Dimon and Mr Harrison and their ability to oversee a smooth transition while generating the profits and the big deals that investors demand

Generally, the chief executive doing the buying — in this case Mr Harrison, who paid $58 billion for Bank One — would be the one burrowing into the nooks and crannies of the acquired business, placing his people in charge and presiding over an exodus of lame-duck executives  That is what happened when Mr Harrison, then the chief executive of Chase Manhattan, bought J P. Morgan in 2000 for $35 billion  Within months, Douglas A  Warner III, the chief executive

The New York Times June 27, 2004 Sunday

of J. P. Morgan, and many of his senior bankers departed, leaving Mr. Harrison and his crew in charge

But this time, it is Mr. Dimon who is doing the heavy lifting. And that is just how Mr. Harrison planned it. Mr. Dimon will plumb the operational depths of the new entity as president and take over as chief executive two years later. That frees Mr. Harrison for other pursuits, like his trip last week to Beijing, where he rubbed shoulders with members of J. P. Morgan's advisory council, including two former secretaries of state, Henry A. Kissinger and George P. Shultz.

THAT is not to say that Mr. Harrison has been detached. He meets with Mr. Dimon daily. He has also led all the bank's in-house leadership training sessions, which he set up in 2002 and modeled after Mr. Welch's highly regarded program at G. E.

So far, the bloody purges that characterize most mergers are lacking. There has been just one significant departure: Donald H. Layton. He was not only a J. P. Morgan man, as vice chairman for risk and finance, but he had also been a member of Mr. Harrison's inner circle since 1991

Mr. Dimon, who has been in New York since early May, recently moved into Mr. Layton's spacious office on the executive floor of J. P. Morgan's headquarters on Park Avenue in Midtown Manhattan and is working 12-hour days as he explores the complex financial institution that he will inherit in two years.

For two men who are expected to work so closely together until then, Mr. Dimon and Mr. Harrison present a striking contrast in styles, personalities and backgrounds

Mr. Harrison, 60, whose father and grandfather were bankers in Rocky Mount, N. C., is an amiable but distant man, who with his soft Southern accent and dignified manner might well have stepped out of a Walker Percy novel. His harder-edged peers sometimes refer to him as the last gentleman on Wall Street, representative of a less rapacious era

He says he was never bent on a Wall Street career. But after he entered the training program at Chemical Bank in 1967, he never returned to North Carolina. Over the next 37 years, his small-town-banker demeanor helped him survive internal battles and a series of mergers to become chief executive of Chase Manhattan in 1999

Mr. Harrison embarked on his own takeover spree, spending more than $41 billion on acquisitions, culminating in the ill-timed merger with J. P. Morgan in 2000, just before the stock market collapsed

Then there is Mr. Dimon, who is 48. His grandfather immigrated from Greece to New York City in 1919 and worked his way up from dishwasher to stockbroker. Mr. Dimon's father, also a broker, is approaching his 50th anniversary at Smith Barney

While Mr. Harrison's Wall Street career may have been accidental, Mr. Dimon's seemed preordained. "I was reading annual reports in high school," he said

It was through his father that he met Mr. Weill, and he went to work for him during Mr. Weill's last days at American Express. He stayed with him as Mr. Weill built his second financial colossus, starting with a second-tier consumer finance company in Baltimore and ending with today's Citigroup

Mr. Dimon's ability to deconstruct balance sheets and cut costs endeared him to Mr. Weill during his spree of takeovers, but it was his deal-making acumen and TV anchorman looks that attracted a cultlike following in the later years. Even now, as Mr. Dimon strides about his new home on Park Avenue, popping unannounced into the offices of surprised executives, his aura remains intact

"The guy is a rock star," said James B. Lee Jr., a vice chairman of J. P. Morgan Chase, as he recounted how Mr. Dimon helped land a big underwriting deal recently, even before the merger becomes official

But the merger gives Mr. Harrison and Mr. Dimon more than a chance to flex larger muscles in the financial arena. It also offers both the promise of redemption

After he was fired by Mr. Weill in a power struggle in 1998, Mr. Dimon abandoned Wall Street. He began his comeback by taking over Bank One; now he will be challenging his former mentor's company for supremacy

Mr. Harrison, for his part, has endured two years of negative publicity as J. P. Morgan's stock plunged to a low of $16, down 70 percent from its high of $52 in early 2001, because of its broad exposure to Enron and imploding telecommunications companies. In Mr. Dimon, he may have found an ideal successor — a Wall Street hero who can recharge J. P. Morgan's flagging reputation among investors

The New York Times June 27, 2004 Sunday

Although his board stood by him through the brutal times, Mr Harrison acknowledged that he had a limited time to turn things around  "If we had gone another year without performing, the board probably would have demanded changes," he said, leaning back in a plush chair in his office  "There is a point at which you can't go on  But in the end, I presume that they liked my leadership "

Mr Harrison sought counsel from a small group of people, most prominently Mr Welch, who had been advising him on a range of matters since 2002  Mr Welch refuses to take any credit for the merger, but he said he spent lots of time on the phone with Mr Harrison as he contemplated combining with Bank One

"He is a strong and principled guy," Mr Welch said of Mr Harrison, by phone from Beijing  "Bill always does the right thing  He was willing to merge the bank and maybe leave earlier than he had planned "

But not too early

During the negotiations with Mr Dimon, he fought hard to give himself the two extra years, to secure a smooth transition, although he may have cost J P Morgan shareholders extra money in doing so  Mr Dimon, always the tough deal maker, offered to do the deal for no premium if he could become chief executive immediately, according to two people close to the deal

When Mr Harrison resisted, Mr Dimon insisted on a premium, which Mr Harrison was able to push down to 14 percent  The two men declined to comment on the specifics of their negotiations

In addition to holding their strategic discussions, Mr Welch and Mr Harrison spent significant time together honing the executive training program at J P Morgan  Mr Welch was particularly impressed with Mr Harrison's use of a group exercise in which senior J P Morgan executives, including Mr Harrison, wrote on a board the personal and professional experiences — the more painful the better — that helped them to evolve as people  "Bill was very good at it," Mr Welch said  "It makes you become simpatico with the guy "

Mr Harrison takes his reputation as a merger connoisseur seriously, and he is sensitive to claims by some analysts that his deals, conducted at the market's peak, did not serve shareholders well

He contends that the merger that created J P Morgan Chase was well executed, but that the new entity struggled "because Enron, telecom and private equity blew up "

"So I would say that all of our mergers have been executed well and that needs to be clarified," he said  "This deal will create a higher standard "

Still, J P Morgan's stock performance remains lackluster, although it has rallied from its lows of two years ago and is now trading at $38

Michael L Mayo, a banking analyst at Prudential Securities, found that since June 1999, when Mr Harrison became chief executive, J P Morgan's stock has fallen a cumulative 6 percent  It ranked last among 17 bank stocks he examined  In third place was Bank One, which has returned 13 percent since Mr Dimon became chief in March 2000

For the most part, investors have applauded the deal  The addition of Bank One's retail bank network is expected to smooth out J P Morgan's earnings, decreasing its exposure to volatile capital markets and bank lending

Investors also hope that Mr Dimon can work his magic again  "The sense on the street is that the day-to-day operations will be run by Jamie," said Robert Maneri, a fund manager at Victory Capital Management in Cleveland, specializing in bank stocks  "We have a lot of faith in him "

Indeed, many major units — including retail banking, credit cards, risk and technology — will be run by Mr Dimon and his team

The two executives who will be in charge of investment banking are from the J P Morgan side, but one of them, Steven D Black, who already held the job, is a longtime friend of Mr Dimon's dating back to the days the two worked for Mr Weill at Smith Barney

Mr Dimon is well aware of the pressures that face him  Every Sunday night, he draws up a list of the most unpleasant things he must do the next day; often, they are sensitive personnel matters  "Making this thing hum is job one right now because that creates other opportunities," he said  "I think we have a fabulous opportunity to make this the best financial service company in the world  But expectations are high  I know that "

The New York Times June 27, 2004 Sunday

If he follows through with the $2 2 billion in cost cuts he has promised. the stock will probably move up, giving him the currency to buy what J P. Morgan now lacks — a brokerage network and a retail banking presence in Europe or in the fast-growing southeastern United States

While analysts expect cost-cutting to drive the stock price. they also warn that J P. Morgan may need to reserve as much as $3 billion to cover litigation over its involvement in the Enron and WorldCom bankruptcies

The stock price is a constant theme in their speeches, but both men say their primary focus now is pulling the two banks together

One recent evening, 200 senior bankers from both companies gathered for a dinner at J P. Morgan's headquarters, capping a day of corporate-integration meetings  As Mr Harrison and Mr Dimon picked at their filet mignon platters, they again found reassurance in Mr Welch, who appeared on multiple screens surrounding the diners "Execute  Get it done," Mr Welch called out to his rapt audience, with his raspy, Back Bay twang, in a recorded video clip

Their dinners finished, Mr Dimon and Mr Harrison stepped up to the lectern for a closing interview, conducted by Mr Lee  "Tell us some personal things about yourselves, Jamie and Bill," Mr Lee said

AFTER a brief pause. Mr Harrison talked about growing up in North Carolina. coming to New York. all the blind dates he went on before marrying at the age of 42 and how his daughters. 11 and 13, greet him when he arrives home in Greenwich, Conn: "Hey. Billy boy  How were things at the office?"

As the crowd roared with laughter. Mr Dimon took his turn  He recalled the reaction of the eldest of his three daughters when he told her that he had been fired from Citigroup "Can I have your cellphone now?  I guess you won't need it." she said

For all their differences — and despite Mr Dimon's jocular gesture that same afternoon — the two looked comfortable on stage. a Wall Street version of a two-man vaudeville act  They finished each other's sentences. knew where to go for the laughs and sounded the same themes about the importance of a unified culture to a successful merger

Then Mr Lee asked the million-dollar question: What about the stock price?

Mr Harrison went first. cautiously  "There is huge upside." he said  "If we start performing. our stock is 45 "

Without hesitation, Mr Dimon raised a grander goal  "If we do our jobs and get the $2 2 billion in cost saves. in five years if the stock is not $100. I will eat my hat.' he said

**URL:** http://www.nytimes com

**GRAPHIC:** Photos: James Dimon, left, incoming president, and William B  Harrison Jr , chief executive of J P. Morgan Chase  (Photo by Chester Higgins Jr /The New York Times)(pg  1)
John F. Welch Jr , the former G E  chief, offered counsel and reassurance about the deal  (Photo by Agence France-Presse)
 Mr Harrison and Mr Dimon, selling the merger to analysts in January  The deal offered both men more than a chance to flex financial muscle  (Photo by Associated Press)(pg  4)

**LOAD-DATE:** June 27. 2004

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
IN RE J.P. MORGAN CHASE & CO.            :    MDL No. 1783
SECURITIES LITIGATION                    :
                                                            :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AFFIDAVIT OF ANTHONY J. HORAN**

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York  10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois  60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois  60603
(312) 853-7000
*Counsel for Defendants*

Dated: May 4, 2006

## AFFIDAVIT

Anthony J. Horan, being duly sworn, deposes and says:

1.    I am the Corporate Secretary of JPMorgan Chase & Co. ("JPMC"). I make this affidavit in support of (i) the Response by Defendants in the above-captioned action to Plaintiffs' Motion for Transfer of Actions to the District of Delaware pursuant to 28 U.S.C. § 1407, and (ii) Defendants' argument that coordination or consolidation of these actions in the United States District Court for the Southern District of New York would further the convenience of parties and witnesses and promote the just and efficient conduct of the actions to a much greater extent than coordination or consolidation in any other district.

2.    The complaints in these actions name as defendants thirteen present and former directors of JPMC, twelve of whom (all but James Dimon) were members of the Board of Directors when JPMC entered into an Agreement and Plan of Merger with Bank One Corp. ("Bank One") dated January 14, 2004. Six of those fourteen present or former directors (Frank A. Bennack, Jr., John H. Biggs, Ellen V. Futter, William B. Harrison, Jr., Helene L. Kaplan and John R. Stafford) maintain offices, residences, or both in the New York metropolitan area. Only one, James Dimon, maintains a residence in the Chicago metropolitan area, but Mr. Dimon, who became Chief Executive Officer of JPMC at the beginning of this year, spends most of the week when not traveling on business at JPMC headquarters in Manhattan. None maintains a residence in Delaware.

3.    Movant's Memorandum in Support of Motion for Centralization identifies nineteen witnesses who acted as financial advisors or legal counsel to JPMC or Bank One in connection with the merger. (*See* Mem. at 6-7.) I am informed and believe that each of the named individuals who are still in their respective positions and

still employed by their respective firms maintains an office, residence, or both in the New York metropolitan area.

4.    The JPMC Board of Directors holds eight regularly scheduled meetings each year. For several years it has been the custom to hold seven of those eight meetings in New York City and the eighth in another location, which changes from year to year.

_____

Anthony J. Horan

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                        :
IN RE J.P. MORGAN CHASE & CO.                           :    MDL No. 1783
SECURITIES LITIGATION                                   :
                                                        :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - -   x
```

**REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD
WITH RESPECT TO PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS
TO THE DISTRICT OF DELAWARE FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York  10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois  60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois  60603
(312) 853-7000
*Counsel for Defendants*

Dated: May 4, 2006

Pursuant to J.P.M.L. R. 16.1(b), defendants JPMorgan Chase & Co. ("JPMC"), J.P. Morgan Securities Inc. ("JPMSI"), William B. Harrison, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., John H. Biggs, Lawrence A. Bossidy, M. Anthony Burns, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, and James Dimon do not object to the Panel's adjudicating plaintiff's motion for centralization without oral argument, because the parties' briefing adequately sets forth the anticipated complexity of the material facts and issues, the factors bearing on the convenience of each forum to the parties and anticipated witnesses, and the other factors pertinent to the Panel's decision whether to centralize and, if so, in which forum it would be appropriate to do so.

Respectfully submitted,

Jesse A. Finkelstein (Del. Bar No. 1090)
Michael R. Robinson (Del. Bar No. 4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
finkelstein@rlf.com
robinson@rlf.com
(302) 651-7700
*Counsel for Defendants*

OF COUNSEL:

Nancy E. Schwarzkopf
JPMORGAN CHASE LEGAL DEPARTMENT
1 Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3585
*Counsel for JPMorgan Chase & Co.*

Michael A. Cooper
Sharon L. Nelles
Keith Levenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-3712
*Counsel for J.P. Morgan Securities Inc.
and Individual Defendants*

Julie Lepri
JPMORGAN CHASE LEGAL DEPARTMENT
10 South Dearborn, 11th Floor
Chicago, Illinois 60603
(312) 732-7354
*Counsel for JPMorgan Chase & Co.*

Kathleen L. Roach
Courtney A. Rosen
Matthew B. Kilby
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
(312) 853-7000
*Counsel for Defendants*

Dated: May 4, 2006

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

```
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   x
                                              :
IN RE J.P. MORGAN CHASE & CO.                 :   MDL No. 1783
SECURITIES LITIGATION                         :
                                              :
                                              :
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   x
```

## PROOF OF SERVICE

I, Michael R. Robinson, Esquire, counsel for Defendants in *Hyland v. Harrison*, C.A. No. 1:05-162-JJF (D.Del.), and *Hyland v. J.P. Morgan Securities, Inc.*, C.A. No. 1:06-244-JJF (D.Del.) certify that on May 4, 2006, in accordance with Rule 5.2 of the rules of Procedure of the Judicial Panel on Multidistrict Litigation, *Defendants' Response to Plaintiff's Motion for Transfer of Actions to the District of Delaware for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, Memorandum of Law and Affidavit of Anthony J. Horan in Support thereof and Reasons Why Oral Argument Need Not Be Heard* were served by Federal Express to the counsel of record and was filed by CM/ECF or mail to the courts on the attached service list:

_____
Michael R. Robinson (#4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
302-651-7700
robinson@rlf.com
*Counsel for Defendants*

Adam Levitt
Wolf Haldenstein Adler Freeman & Herz LLP
55 West Monroe St., Suite 1111
Chicago, Illinois 60603
*Counsel for Stephen Blau in Blau v. Harrison*

Demet Basar
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue, 10th Floor
New York, New York 10016
*Counsel for Stephen Blau in Blau v. Harrison*

Robert R. Davis
Chimicles & Tikellis LLP
P.O. Box 1035
One Rodney Square
Wilmington, Delaware 19899
*Counsel for Stephen Blau in Blau v. Harrison*

Joseph N. Gielata
501 Silverside Road, Suite 90
Wilmington, Delaware 19809
*Counsel for Samuel Hyland in Hyland v. Harrison
   and Hyland v. JP Morgan Securities Inc.*

Clerk of Court
United States District Court
Northern District of Illinois, Eastern Division (via first-class mail)
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, Illinois 60604

Clerk of Court
United States District Court (via CM/ECF)
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware 19801

**Judicial Panel on Multidistrict Litigation - Panel Attorney Service List**

Docket: 1783 - In re JPMorgan Chase & Co. Securities Litigation

Status:  Pending on  / /

Transferee District:          Judge:

Printed on 04/25/2006

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Basar, Demet<br>Wolf Haldenstein Adler Freeman & Herz LLP<br>270 Madison Avenue<br>10 Floor<br>New York, NY 10016 | => Blau, Dr , Stephen* |
| Gielata, Joseph N.<br>501 Silverside Road<br>Suite 90<br>Wilmington, DE 19809 | => Hyland, Samuel l .*; Speakman, Stephanie* |
| Robinson, Michael R.<br>Richards Layton & Finger, P.A.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801 | => Becherer, Hans W *; Bechtel, Riley P.*; Bennack, Jr., Frank A .*; Biggs, John H *; Bossidy, Lawrence A.*; Burns, M. Anthony*; Dimon, James*; Futter, Ellen V *; Gray, III, William H *; Harrison, Jr., William B *; JP Morgan Chase & Co *; JP Morgan Securities, Inc *; Kaplan, Helene L .*; Raymond, Lee R *; Stafford, John R * |

---

Note: Please refer to the report title page for complete report scope and key.

# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

MICHAEL R ROBINSON

DIRECT DIAL NUMBER
302-651-7767
ROBINSON@RLF COM

May 4, 2006

**VIA FEDERAL EXPRESS**

Michael J. Beck
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20002-8004

Re:    MDL-1783: *In re JPMorgan Chase & Co. Securities Litigation*

Dear Mr. Beck:

I enclose for filing Defendants' Response to Plaintiff's Motion for Transfer of Actions to the District of Delaware for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, Memorandum of Law and Affidavit of Anthony J. Horan in support thereof, and Reasons Why Oral Argument Need Not Be Heard.

Very truly yours,

Michael R. Robinson

MRR/mr
Enclosure
cc:    Demet Basar, Esquire (w/enc.)
       Joseph N. Gielata, Esquire (w/enc.)