## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL I. HYLAND and STEPHANIE SPEAKMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>            v.<br><br>WILLIAM B. HARRISON, JR., HANS W. BECHERER, RILEY P. BECHTEL, FRANK A. BENNACK, JR., JOHN H. BIGGS, LAWRENCE A. BOSSIDY, M. ANTHONY BURNS, ELLEN V. FUTTER, WILLIAM H. GRAY, III, HELENE L. KAPLAN, LEE R. RAYMOND, JOHN R. STAFFORD, JPMORGAN CHASE & CO., and JAMES DIMON,<br><br>    Defendants. | Case No. 05-162 (JJF) |

| |
|---|
| Dr. Stephen Blau, Individually and On Behalf of All Others Similarly Situated,<br><br>    Intervenor. |

[Additional Caption on the Following Page]

**DR. BLAU'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION TO ENFORCE THIS COURT'S STAY ORDER IN CASE NO. 05-162 AND TO CONSOLIDATE AND STAY RELATED CASE NO. 06-224**

**CHIMICLES & TIKELLIS LLP**
Pamela S. Tikellis (#2172)
Daniel J. Brown (#4688)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500


**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Demet Basar (of the New York bar)
Adam J. Levitt (of the Illinois bar)                May 9, 2006

SAMUEL I. HYLAND, Individually and On
Behalf of All Others Similarly Situated,

       Plaintiff,

             v.

J.P. MORGAN SECURITIES, INC.,
     A Delaware Corporation,

       Defendant.

Case No. 06-224 (JJF)

## TABLE OF CONTENTS

Page No.

INTRODUCTION .......................................................................................................................1

ARGUMENT..............................................................................................................................3

I.     HYLAND'S ARGUMENTS HERE *AGAINST* CONSOLIDATION ARE
       DIRECTLY CONTRARY TO HIS ARGUMENTS *FOR* CENTRALIZATION
       IN HIS MDL MOTION................................................................................................3

II.    HYLAND'S ARGUMENTS AGAINST CONSOLIDATION ARE
       UNAVAILING .............................................................................................................5

III.   THERE WILL BE NO PREJUDICE FROM STAYING THE SECOND
       HYLAND ACTION IN FAVOR OF THE ILLINOIS ACTION...................................8

CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Borenstein v. Finova Group Inc.,*
  No. 00-619,
  2000 WL 34524843 (D. Ariz. Aug. 30, 2000)..............................................................7

*Borough of Olyphant v. PPL Corp.,*
  153 Fed. Appx. 80 (3d Cir. 2005)..................................................................................9

*Bridgeport Harbour Place I, LLC v. Ganim,*
  269 F. Supp. 2d 6  (D. Conn. 2002)...............................................................................9

*Clopay Corp. v. Newell Companies, Inc.,*
  527 F. Supp. 733 (D. Del. 1981)....................................................................................8

*In re Consolidated Parlodel Litigation,*
  182 F.R.D. 441 (D.N.J. 1998).........................................................................................6

*Consorti v. Armstrong World Industries, Inc.,*
  72 F. 3d 1003 (2d Cir. 1995) ..........................................................................................6

*Dix v. ICT Group, Inc.,*
  No. CS-03-0315,
  2003 WL 22852135 (E.D. Wa. Oct. 20, 2003) ..............................................................2

*Hyland v. Harrison,*
  No. 05-162,
  2006 WL 288247 (D. Del. Feb. 7, 2006).........................................................1, 2, 9, 10

*In re J.P. Morgan Chase & Co. Shareholders Litigation,*
  No. 218,
  2006 WL 585606 (Del. Mar. 8, 2006) ...........................................................................5

*Janovici v. DVI, Inc.,*
  Nos. Civ.A.2:03CV4795, et al.,
  2003 WL 22849604 (E.D. Pa. Nov. 25, 2003) ..............................................................7

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,*
  149 F.R.D. 65 (D.N.J. 1993)...........................................................................................6

*In re Olsten Corp. Securities Litigation,*
   3 F. Supp. 2d 286 (E.D.N.Y. 1998)
   *adhered to,*
   181 F.R.D. 218 (E.D.N.Y. 1998) ..................................................................................6

*Pinkowitz v. Elan Corp., PLC,*
   Nos. 02 Civ. 865 (WK) et al.,
   2002 WL 1822118 (S.D.N.Y. July 29, 2002) ...............................................................6

*Rohm and Haas Co. v. Mobil Oil Corp.*
   525 F. Supp. 1298 (D. Del. 1981).................................................................................6

*Skwortz v. Crayfish Co.,*
   No. 00-6766,
   2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001)..........................................................6, 7

*Waldman v. Electrospace Corp.,*
   68 F.R.D. 281(S.D.N.Y. 1975) ....................................................................................7

*Weisz v. Calpine Corp.,*
   No. 4:02-cv-1200,
   2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ...........................................................6

*Werner v. Satterlee, Stephens, Burke & Burke,*
   797 F. Supp. 1196 (S.D.N.Y. 1992) .........................................................................6, 7

## STATUTES AND RULES

28 U.S.C. § 1407.............................................................................................................4

Fed. R. Civ. Pro. 42(a) ...............................................................................................4, 5

PSLRA
   15 U.S.C. § 78(u) .........................................................................................................1

Securities Exchange Act of 1934
   Section 14(a) .................................................................................................................5
   Section 20(a) .................................................................................................................5

## SECONDARY SOURCE

Eunice A. Eichelberger, J.D., Annotation, *Propriety of Ordering Consolidation*
*Under Rule 42(a) of Federal Rules of Civil Procedure in Actions Involving*
*Patents, Copyrights, or Trademarks*, 82 A.L.R. Fed. 719 §2[a] ........................................8

## INTRODUCTION

Dr. Stephen Blau, Lead Plaintiff in the Illinois Action,[1] and court-approved intervenor in the Hyland Action (No. 05-162 (JJF)), submits this reply memorandum in further support of his motion to enforce this Court's February 7, 2006 Stay Order in the Hyland Action and to consolidate the Second Hyland Action (No. 06-224 (JJF)) with the Hyland Action, and stay it pending the resolution of the first-filed Illinois Action.

Both this Court and the Illinois District Court have ruled that the proper forum for the Hyland Action and the Illinois Action is the Northern District of Illinois, *which, as this Court found, is the only court where a Lead Plaintiff Order was properly entered in accordance with the PSLRA.* *Hyland v. Harrison*, 2006 WL 288247 (D. Del. Feb. 7, 2006), at *7. The Court issued the Stay Order, finding that the Hyland Plaintiffs circumvented the PSLRA and the Lead Plaintiff Order in the Illinois Action by filing the first Hyland Action. The Court further found that if "the Hyland Plaintiffs wished to challenge that decision, their remedy was not to file a second action in this Court, but to follow the procedures laid out in the PSLRA and contest that decision in the Illinois District Court." *Id.*

Notwithstanding the Stay Order, Hyland, without his co-plaintiff in the stayed Hyland Action, filed the Second Hyland Action immediately after the Illinois District Court denied the Hyland Plaintiffs' motion to intervene and upheld Dr. Blau's complaint.[2] Despite superficial differences, the Second Hyland Action is premised on the same conduct underlying the Hyland Action and the Illinois Action. Thus, the reasoning underlying the Stay Order requires that it too

---

[1] Capitalized terms herein have the same meanings ascribed to them as in Dr. Blau's opening brief in support of his motion to consolidate and stay ("Blau Br.").

[2] The Court held that the class should be comprised of shareholders entitled to vote on the merger.

should be stayed in deference to the Illinois Action. That action continues to advance successfully under the stewardship of Dr. Blau, who both Courts agree is an adequate class representative and can properly protect the interests of the Hyland Plaintiffs. *Id.*, at *8. Nothing in Hyland's Answering Brief in Opposition to Dr. Blau's Motion for Consolidation and Stay ("Opp. Br.", D.I. 110[3]) requires a contrary result.[4]

Hyland argues against consolidation on the ground that the two Hyland Actions are "fundamentally different" (Opp. Br. at 1), despite having made a motion for centralization before the MDL Panel (the "Panel"), in which Hyland repeatedly argues that the two actions, as well as the Illinois Action, are so intertwined that they should be coordinated for pretrial proceedings. MDL Mem. (D.I. 101) at 3-4. In fact, the actions are substantively identical except that the complaint in the Second Hyland Action asserts what essentially are secondary liability claims against defendant J.P. Morgan's *subsidiary* for providing a misleading fairness opinion.

The Second Hyland Action is an effort to sidestep the Stay Order in order to proceed

---

[3] Unless otherwise specified, references to D.I. numbers refer to filings in Case No. 05-162.

[4] Defendants do not oppose Dr. Blau's motion but state that the "routine" practice is to abstain from ruling on a stay motion pending a decision from the MDL Panel on a motion for centralization. This is incorrect. When faced with a motion to stay while a motion for transfer is pending before the MDL Panel, courts generally consider three factors in deciding whether a stay is appropriate: (1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *Dix v. ICT Group, Inc.*, No. CS-03-0315, 2003 WL 22852135, at *7 (E.D. Wa. Oct. 20, 2003) (citing *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)). Here, the interests of judicial economy will best be served if this court rules on Dr. Blau's motion. With this reply, the motion is fully briefed and a favorable decision by this Court will obviate a ruling by the MDL Panel on Hyland's motion for centralization. Defendants, the parties requesting a stay pending the MDL Panel decision, will suffer no hardship if this Court rules on Dr. Blau's motion because a successful resolution of the motion will result in a stay pending resolution of the Illinois Action, which only works to their benefit. (Defendants have their own motive in requesting a stay pending the MDL's decision given the Illinois Court's denial of their motion to dismiss.) On the other hand, Dr. Blau will be greatly prejudiced if this Court stays the Second Hyland Action pending the MDL's decision without ruling on his motion. Among other things, if the Panel does not decide to transfer all three actions to the Northern District of Illinois or this forum, Dr. Blau may once again have to move to consolidate and/or stay the Second Hyland Action.

before the MDL Panel for the ultimately purpose of securing a leadership position in these litigations. Without bringing his second action in this District, Hyland could not argue to the Panel that the Illinois Action should be transferred to this Court, which has ruled that the Hyland Action should be stayed in favor of the Illinois Action.

A significant portion of Hyland's opposition brief consists of a repetition of arguments concerning the supposed inadequacy of Dr. Blau (Opp. Br. at 1-3) that have been squarely rejected in both Delaware and Illinois. Hyland thus betrays that his goal is not to prosecute "new" and "valuable" claims against J.P. Morgan Securities, but to secure another opportunity to argue for his appointment as lead plaintiff. This Court already denied the Hyland Plaintiff's motion for reconsideration of the Stay Order. (D.I. 108). Dr. Blau respectfully submits that Hyland should not be permitted to use the Second Hyland Action to evade the Stay Order, which this Court entered in deference to the Illinois District Court's Lead Plaintiff Order.

**ARGUMENT**

**I.    HYLAND'S ARGUMENTS HERE *AGAINST* CONSOLIDATION ARE DIRECTLY CONTRARY TO HIS ARGUMENTS *FOR* CENTRALIZATION IN HIS MDL MOTION**

Hyland's claim that the Second Hyland Action is "fundamentally different" from the stayed Hyland Action and the Illinois Action, such that consolidation will not "promote judicial economy," is contradicted by his own statements before the MDL Panel. One need look no further than Hyland's opposition brief to conclude that the factual basis of all three actions is *identical*. The central allegation in each action is that the proxy failed to disclose Dimon's no premium offer, which Harrison rejected in exchange for two more years as CEO of the post-merger entity, at a cost of $7 billion to J.P. Morgan shareholders. Opp. Br. at 4. Indeed, Hyland argues for centralization before the Panel on this very ground: "They [the "Related Actions"] all arise from an entrenchment scheme and misrepresentations connected with the merger" and *"the*

*related actions raise numerous common questions of fact."* MDL Mot. at ¶¶ 2-3 (emphasis added). Hyland's contrary argument here that "[d]ue to the *dissimilar issues in these matters and in the interest of judicial efficiency, the Court should not consolidate the [stayed Hyland Action] with the [Second Hyland Action]"* (Opp. Br. at 3; emphasis added) should not be countenanced.

Here Hyland argues that the Second Hyland Action and the Illinois Action are so different that "a second round of depositions" and "expanded discovery … would be necessary in the Delaware suit." Opp. Br. at 8. Hyland argued the opposite in his MDL Memorandum. He advocated there that centralization is necessary to avoid duplicative discovery and that discovery in each of the "Related Actions" will center on common issues. MDL Mem. at 3-4. Hyland urges the Panel to find that he has met the burden of showing that "centralization will promote the just and efficient conduct of" the three Related Actions, while simultaneously attacking Dr. Blau's motion on the grounds that he has not met his "burden to show that consolidation would promote judicial economy or reduce or delay costs."[5] Opp. Br. at 4.

Elsewhere in his opposition, Hyland, in yet another about-face, argues that consolidation of the Second Hyland Action with the stayed Hyland Action would be proper, but only if *both* cases are allowed to move forward. Opp. Br. at 6. This is another way of arguing that this Court should overturn its Stay Order, betraying Hyland's goal in bringing the Second Hyland Action, and simultaneously moving for centralization before the MDL Panel: is to upset the Lead Plaintiff Order in the Illinois Action. Hyland offers to agree to a temporary stay of the Second

---

[5] Under 28 U.S.C. § 1407, centralization may be directed "when civil actions involving *one or more common questions of fact* are pending in different districts." Fed. R. Civ. Pro. 42(a) provides that a court may order consolidation when actions "involving a common *question of law or fact* are pending before the court."

Hyland Action pending the MDL Panel's ruling on his centralization motion, so long as he is not precluded from moving for lead plaintiff in the new action. Opp. Br. at 11, n1.

## II.    HYLAND'S ARGUMENTS AGAINST CONSOLIDATION ARE UNAVAILING

The Second Hyland Action is designed to appear different from the stayed Hyland Action, despite being based on the same wrongdoing. *See* Blau Mem. at 9. The basis for the "new" action is that J.P. Morgan Securities allegedly provided a false fairness opinion to its parent, J.P. Morgan.[6]    The Hyland Plaintiffs already made these same allegations in their complaint in the stayed Hyland Action. (D.I. 51). They alleged, as Hyland does in the Second Hyland Action, that J.P. Morgan Securities was paid $40 million and that "[o]nly by retaining a conflicted financial advisor could Harrison control the process and justify paying more than necessary for Bank One." *Id.*, ¶ 83. Despite being aware of the role of J.P. Morgan Securities' role in the "scheme," Hyland did not sue J.P. Morgan Securities for over a year and then only *after* this Court issued the Stay Order and the Illinois District Court refused to dismiss Dr. Blau's claims under Section 14(a) and 20(a) of the Exchange Act.

Hyland's arguments against consolidation – that the different defendants, claims and class definitions in the two Delaware suits militate against consolidation – are belied by the express terms of Fed. R. Civ. Pro. 42(a), which provides that a court may order consolidation

---

[6] It bears noting here that Hyland's common claims against J.P. Morgan Securities in the Second Hyland Action – breach of fiduciary duty and aiding and abetting breach of fiduciary duty – have already been dismissed in the Delaware Chancery Court action against the primary wrongdoers, which ruling was affirmed on appeal. *In re J.P. Morgan Chase & Co. Shareholders Litig.*, No. 218, 2006 WL 585606 (Del. Mar. 8, 2006). The basis of the ruling was that such claims should have been brought derivatively, and not as direct claims, as Hyland purports to do in the Second Hyland Action.

when actions "involving a common question of law *or* fact are pending before the court."[7] (Emphasis added.)

Numerous courts have held that consolidation is proper where cases involve different parties, legal issues or class periods. *Pinkowitz v. Elan Corp., PLC*, Nos. 02 Civ. 865 (WK) et al., 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) ("[A]lthough certain class actions here name defendants not otherwise present in the other class actions, 'consolidation is not barred simply because the actions to be consolidated allege claims against different parties.'")(quoting *Skwortz v. Crayfish Co., Ltd.*, 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001)); *Weisz v. Calpine Corp.*, No. 4:02-cv-1200, 2002 WL 32818827, at *2 (N.D. Cal. Aug. 19, 2002) (consolidating actions despite plaintiff's opposition on the grounds that actions allege different claims, because such differences are outweighed by the fact that all claims are based on the same alleged course of conduct); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998) (consolidating cases alleging different class periods and slightly different facts; "the facts and legal issues need not be identical to warrant consolidation"), *adhered to in*, 181 F.R.D. 218 (E.D.N.Y. 1998); *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)("The fact that there are different parties in this action does not mean this case

---

[7] In his arguments against consolidation, Hyland relies on cases that are either inapposite as they involve situations where issues individual to each plaintiff were likely to overcome common issues, which is clearly not the case here, or actually did grant consolidation or affirm it. *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 81 (D.N.J. 1993) (Opp. Br. at 7), did not involve the consolidation of two securities actions and liability had to be determined on a plaintiff by plaintiff basis. In *In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (Opp. Br. at 6), the court denied consolidation in a products liability action noting that in such cases, individual issues may outnumber common issues. In *Rohm and Haas Co. v. Mobil Oil Corp.* 525 F. Supp. 1298 (D. Del. 1981) (Opp. Br. at 7), the Court granted the motion for consolidation even where the actions where at different stages. In *Consorti v. Armstrong World Indus., Inc.*, 72 F. 3d 1003 (2d Cir. 1995) (Opp. Br. at 6), the court found that consolidation was proper because plaintiffs and defendants had a trial by jury that fairly addressed the individual claims.

should not be consolidated.").

Moreover, it is widely recognized that "[i]n securities actions where the complaints are based on the same public statements and reports; consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Skwortz,* 2001 WL 1160745, at *2 (citation omitted); *Janovici v. DVI, Inc.,* Nos. Civ.A.2:03CV4795, et al., 2003 WL 22849604, at *3 (E.D. Pa. Nov. 25, 2003). That the two actions here involve different defendants and different class definitions is not determinative because the claims in both actions are premised on a proxy statement issued by a single issuer, J.P. Morgan. *See Werner,* 797 F. Supp. at 1211 (consolidating cases over plaintiffs' objections that the cases involve different causes of action, different parties and different facts where the complaints involved numerous common issues of law and fact and were based on the same public statements and reports); *Waldman v. Electrospace Corp.,* 68 F.R.D. 281, 283 (S.D.N.Y. 1975) (favoring consolidation of shareholders' suits especially where the wrongdoing at issue is that of a single issuer of securities and finding that the fact that plaintiffs in one case have raised a claim against defendants which plaintiffs in the other two actions have not does not militate against a consolidated trial).

Similarly unavailing is Hyland's argument that consolidation is unwarranted because issues like scienter and damages "are by no means identical." Opp. Br. at 9. In *Borenstein v. Finova Group Inc.,* No. 00-619, 2000 WL 34524743 (D. Ariz. Aug. 30, 2000), the district court consolidated an action with three others where issues of causation and damages differed between the cases. *Id.*, at *4-*5. In justifying its decision to consolidate, the Court found that "for the purposes of initial pre-trial proceedings and at least some of the discovery, consolidation of [the action with other cases] will avoid the unnecessary costs and delay inherent in maintaining two separate, parallel and duplicative actions." *Id.* at *3. This is particularly true where, as here, the

issue of J.P. Morgan Securities' "scienter" and Hyland's "damages" are secondary to the central issues in the case – whether the proxy materials were misleading, whether the omissions were material, and whether the primary wrongdoers engaged in actionable wrongdoing.

The only case Hyland cites in support of his argument that Dr. Blau does "not overcome the material differences" between the two actions, *Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733, 735 (D. Del. 1981) (Opp. Br. at 9), is inapposite. At issue in *Clopay* was a motion to consolidate an action involving one patent with another action involving two patents, an exceedingly complex determination. *See* Eunice A. Eichelberger, J.D., Annotation, *Propriety of Ordering Consolidation Under Rule 42(a) of Federal Rules of Civil Procedure in Actions Involving Patents, Copyrights, or Trademarks*, 82 A.L.R. Fed. 719, §2[a] ("A number of courts in actions involving patents, copyrights, or trademarks have considered whether consolidation under Rule 42(a) would be appropriate for this often complex litigation.") The issues in these litigations obviously are not nearly as complex and require consideration of only a limited number of issues, including the circumstances of Dimon's offer and its rejection, whether the Individual Defendants knew and negligently failed to disclose the offer in the proxy, and, if they did not know of the offer, whether they performed their duties negligently.

## III.    THERE WILL BE NO PREJUDICE FROM STAYING THE SECOND HYLAND ACTION IN FAVOR OF THE ILLINOIS ACTION

This Court has already rejected the Hyland Plaintiff's claims that they will be prejudiced if the Hyland Action were to be stayed. There is no reason to depart from that ruling in the context of the Second Hyland Action. Hyland's claim that he will be prejudiced by "delay" if the Second Hyland Action is stayed should not succeed given that his claims are secondary claims that necessarily must await the resolution of the primary issues. One such issue is whether the alleged omissions were material, which Hyland singles out in his MDL motion as one of the

key questions as to which it is crucial to avoid "inconsistent pre-trial rulings". MDL Mem. at 3. *See also Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 9 (D. Conn. 2002) (where actions overlap, consolidation is proper even if there is delay).[8]

Similarly, Hyland's claim that he will be prejudiced if the two Hyland actions are consolidated *for trial* is premature. If the Court grants this motion, it likely will issue as narrow a stay as it did in the first Hyland Action. There, the Court issued a stay set to expire at the conclusion of the Illinois Action. After the Illinois Action is resolved, the Court will be in a better position to determine how the two Hyland actions should proceed, including whether they should be tried together or separately, or whether liability and/or damages issues should be bifurcated for trial.

Importantly, defendants in the stayed Hyland Action and J.P. Morgan Securities, the defendant in the Second Hyland Action, do not argue against consolidation, nor do they claim they will be prejudiced by a stay. Defendants in both cases are represented by the same counsel and have submitted one brief in response to Dr. Blau's motion, demonstrating defendants' view of the two actions. As this Court noted in the Stay Opinion, defendants' position has been that the related actions should proceed in a single forum due to "the desirability of having a single determination and avoiding duplicative litigation." 2006 WL 288247, at *3. As this Court also noted in the Stay Opinion, that same concern has also been voiced by Judge Hibbler, who, in rejecting the Hyland Plaintiffs' improper *amicus curiae* submissions seeking vacatur of his Lead

---

[8]   Hyland cites *Borough of Olyphant v. PPL Corp.*, 153 Fed. Appx. 80 (3d Cir. 2005) to argue that a district court can deny a motion to consolidate if it would cause delay in one of the cases. That case, however, dealt with a situation, inapplicable here, where the actions were at very different stages of litigation. In *Borough*, the Third Circuit upheld the denial of a motion for consolidation where discovery had been closed in one action for nearly a year, but discovery had just begun in the other action.

Plaintiff Order, noted that Dr. Blau's intervention in the Hyland Action was the proper way to proceed "so that we have one forum where we know this case is going to go forward in and we don't have these ancillary actions all over the place." *Id.* at *2.

This Court granted Dr. Blau's motion to intervene and stayed the First Hyland Action, not only avoiding piecemeal litigation but protecting the sanctity of the Illinois District Court's Lead Plaintiff Order. Dr. Blau respectfully submits that there is no basis to deviate from that sound course.

**CONCLUSION**

For the foregoing reasons, Dr. Blau respectfully requests that this Court grant his motion to enforce the Stay Order, to consolidate the stayed Hyland Action and the Second Hyland Action, and, upon consolidation, to stay the Second Hyland Action pending resolution of the Illinois Action.

Dated: May 9, 2006

**CHIMICLES & TIKELLIS LLP**

Pamela S. Tikellis (#2172)
Daniel J. Brown (#4688)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500

OF COUNSEL:

Demet Basar
Aya Bouchedid
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

438642v6                                    10

Adam J. Levitt
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
(312) 984-0000

11

# TAB 1

Westlaw.

Slip Copy

Page 1

Slip Copy, 2000 WL 34524743 (D.Ariz.)
(Cite as: Slip Copy)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
Uri **BORENSTEIN**, on behalf of himself and all
others similarly situated, Plaintiff,
v.
THE **FINOVA** GROUP, INC., et al., Defendants.
Mark KASSIS, on behalf of himself and all others
similarly situated, Plaintiff,
v.
THE **FINOVA** GROUP, INC., et al., Defendants.
Jerry KRIM, on behalf of himself and all others
similarly situated, Plaintiff,
v.
THE **FINOVA** GROUP, INC., et al., Defendants.
LOUISIANA SCHOOL EMPLOYEES'
RETIREMENT SYSTEM, on behalf of itself and
all others similarly situated, Plaintiff,
v.
**FINOVA** GROUP, INC., et al., Defendants.
William K. STEINER, on behalf of himself and all
other similarly situated, Plaintiff,
v.
**FINOVA** GROUP, INC., et al., Defendants.
No. Civ. 00-619PHXSMM, Civ.
00-926PHXPGR, Civ. 00-978PHXSMM, Civ.
00-1010PHXEHC, Civ. 00-1100PHXROS.

Aug. 30, 2000.

Frederic S. Fox, Joel B. Strauss, Kaplan,
Kilsheimer & Fox, New York, NY, Tricia
McCormick, Milberg, Weiss, Bershad & Schulman
LLP, Darren J. Robbins, William Shannon Lerach,
Lerach, Coughlin, Stoia, Geller, Rudman &
Robbins LLP, San Diego, CA, for Uri Borenstein.
Brian S. Cohen, Fred T. Isquith, Wolf, Haldenstein,
Adler, Freeman & Herz LLP, New York, NY,
Charles J. Piven, Law Offices of Charles J. Piven
PA, Baltimore, MD, for Mark Kassis.
Aaron L. Brody, Jules Brody, Stull, Stull & Brody,
Harvey Greenfield, Law Firm of Harvey Greenfield,

New York, NY, David C. Tierney, Sacks Tierney
PA, Scottsdale, AZ, for Jerry Krim.
Alan Schulman, Blair A. Nicholas, Douglas M.
McKeige, Vernon Lee Nicholas, Mesa, AZ, for
Louisiana School Employees' Retirement System.
Frederick W. Gerkens, III, Robert Ira Harwood,
Samuel K. Rosen, Wechsler Harwood LLP, New
York, NY, for William K. Steiner.
Andrew S Friedman, Bonnett, Fairbourn, Friedman
& Balint PC, Phoenix, AZ, for Uri Borenstein and
Mark Kassis.
Robert S. Gans, Bernstein, Litowitz, Berger &
Grossman LLP, San Diego, CA, for Mark Kassis,
Louisiana School Employees' Retirement System
and Uri Borenstein.
James   Alexander   Grimsley,   Lawrence   G.D.
Scarborough, Bryan Cave LLP, Phoenix, AZ, Peter
J. Beshar, Robert F. Serio, Gibson, Dunn &
Crutcher LLP, New York, NY, for Finova Group
Inc.

MEMORANDUM OF DECISION AND ORDER

MCNAMEE, Chief J.
*1 Pending before the Court are a series of motions
regarding the administration of these related,
proposed class actions. After considering the
arguments of the parties, the Court has determined
that oral argument is unnecessary and now issues
the following ruling.

BACKGROUND

Defendant Finova Group, Inc. ("Finova") is a
commercial finance company headquartered in
Scottsdale, Arizona. On March 27, 2000, Finova
announced that it would be forced to write off a
loan receivable worth approximately $70 million.
Finova's stock price declined, and investors began
filing suit for securities fraud.

The first three actions filed in the District of
Arizona, by Plaintiffs Borenstein, Kassis, and Krim,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2

Slip Copy, 2000 WL 34524743 (D.Ariz.)
**(Cite as: Slip Copy)**

all involve purchasers of Finova's common stock. These Plaintiffs have brought suit pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a). The Borenstein and Kassis actions both propose a class consisting of all purchasers of Finova common stock between July 15, 1999 and March 26, 2000. The Krim action would extend the class period through May 8, 2000. The three actions all name Finova and its former Chief Executive Officer, Sam Eichenfield, as Defendants.

A fourth common stock action, the Steiner action, was originally filed in New York and has now been transferred to this Court. Like the Borenstein and Kassis actions, the Steiner action proposes a class consisting of purchasers of Finova stock between July 15, 1999 and March 26, 2000. In addition to Finova and Eichenfeld, the Steiner action also includes as Defendants: Finova Capital Corporation, a related business; Matthew M. Breyne, Finova's Chief Executive Officer and President and former Chief Operating Officer; Derek C. Bruns, Finova's Senior Vice President-Internal Audit; and Bruno A Marszowski, Finova's Senior Vice President-Controller and Chief Financial Officer of Finova and Finova Capital.

The Louisiana School Employees' Retirement System [LSERS] has filed a fifth proposed class action. Unlike the other Plaintiffs, LSERS is a purchaser of both common stock and of 7.25% notes issued by Finova Capital Corporation. As a result, the LSERS action includes claims under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (" Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2) and 77(o), as well as the same Exchange Act claims set forth in the other actions.

All of the actions rest on the same facts. Plaintiffs assert that Finova, Finova Capital, and one or more key employees misrepresented Finova's financial condition, beginning in the summer of 1999 and continuing through Finova's disclosure of the $70 million write-off. Plaintiffs further assert that these misrepresentations, particularly Finova's continuing inclusion of the $70 million loan as a legitimate account receivable, resulted in artificially high values for Finova securities.

Now pending before the Court are competing motions to consolidate and motions for appointment as lead Plaintiff, and motions for approval of lead Plaintiff's counsel. On May 30, 2000, Borenstein moved for consolidation of the Borenstein, Krim and Kassis actions. In its response, Finova proposed that all five actions should be consolidated. In reply, Borenstein acknowledged that the Steiner action should also be consolidated, but opposed the addition of the LSERS action.

**\*2** On the same day, LSERS also moved for the consolidation of its action with the Borenstein, Kassis, and Krim actions. Borenstein filed a response in opposition to LSERS' motion. Finova did not file a separate response, although its approval of the LSERS' motion is evident from its response to the Borenstein motion. In its reply, filed after the Steiner case was transferred to this District, LSERS proposes that the Steiner case be consolidated along with the others.

Also on May 30, 2000, Peng-Siu Mei and E.V. Belluomini, two purchasers of Finova common stock during the class period, filed a joint motion to be appointed lead Plaintiffs, with their chosen law firms to be appointed lead Plaintiffs' counsel. LSERS filed competing motions to be appointed lead Plaintiff, with its attorneys to be lead counsel, on the same day. Mei and Belluomini opposes LSERS' motions, and vice versa.

## I. CONSOLIDATION

### A. Standard of Review

Federal Rule of Civil Procedure 42(a) governs the consolidation of related actions:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceeding therein as may tend to avoid unnecessary costs or delay.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 3

Slip Copy, 2000 WL 34524743 (D.Ariz.)
**(Cite as: Slip Copy)**

Consolidation of actions in the District of Arizona is further governed by Rule 1.2(g) of the Rules of Practice of the United States District Courts for the District of Arizona ("Local Rule 1.2(g)"):

(1) Related Cases. Whenever two or more cases are pending before different District Judges and any party believes that such cases (A) arise from substantially the same transaction or event; (B) involve substantially the same parties or property; (C) involved the same patent, trademark, or copyright; (D) call for determination of substantially the same questions of law; or (E) for any other reason would entail substantial duplication of labor if heard by different District Judges, any party may file a motion to transfer the case or cases involved to a single District Judge. That motion shall be filed in each affected case, but shall contain the caption of the case with the lower number and shall be heard by the District Judge to whom that case is assigned.

(2) Consolidation. A motion to consolidate pursuant to Rule 42(a), Federal Rules of Civil Procedure, shall contain the captions of all the cases sought to be consolidated, be filed in each case and be heard by the District Judge assigned the lowest case number.

(3)....

(4) Assignment. In determining the District Judge to whom the case or cases will be assigned pursuant to subparagraphs (e)(1) or (e)(2) above, the following factors may be considered: (A) whether substantive matters have been considered in a case; (B) which District Judge has the most familiarity with the issues involved in the case; (C) whether a case is reasonably viewed as the lead or principal case; or (D) any other factor serving the interest of judicial economy.

**\*3** Consolidation under Rule 42(a) is left to the " broad discretion" of the district courts. *Investors Research Co. v. United States Dist. Court,* 877 F.2d 777 (9th Cir.1989). In securities litigation, a court may consolidate actions " 'when the complaints are based on the same public statements and reports ... [and] there are common questions of law and fact and the defendants will not be prejudiced." ' *Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 583 (N.D.Cal.1999) (quoting *Werner v. Satterlee,*

*Stephens, Burke & Burke,* 797 F.Supp. 1196, 1211 (S.D.N.Y.1992)). Consolidation is favored " 'so long as any confusion or prejudice does not outweigh efficiency concerns." ' *Id.* (quoting *Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 129 (S.D.N.Y.1997)). The Private Securities Litigation Reform Act of 1995 ("PSLRA") also contemplates consolidation, and requires that courts resolve consolidation issues before appointing lead plaintiffs. *See* 15 U.S.C. 78u-4(a)(3)(B)(ii).

### B. Discussion

All of the parties agree that, at the least, the Borenstein, Kassis, Krim and Steiner actions should be consolidated. The complaints in all four of these actions are essentially identical. They refer to the same alleged misrepresentations and rely on the same provisions of the Exchange Act. The Borenstein and Kassis actions are indistinguishable. The Krim action varies from the others only in proposing that the class period be extended through May 8, 2000. The Steiner action varies from the others only by the addition of several Finova officers as Defendants. The Court therefore finds that these actions are, for all practical purposes, identical, and concurs with the opinion of the parties that they should be consolidated.

The only disputed issue regarding consolidation concerns whether the LSERS action should be consolidated with the others. LSERS and Finova argue in favor of consolidation. Peng-Siu Mei and E.V. Belluomini, who like LSERS seek to be appointed lead Plaintiff, oppose consolidation of the LSERS action. The other parties have not responded.

The LSERS action differs from the other four cases in its addition of claims under the Securities Act and its explicit inclusion of note purchasers in the proposed class. LSERS argues that these differences should not prevent consolidation, as all the actions arise from the same actions by the same potential Defendants. Mei and Belluomini assert that the claims on behalf of the note purchasers have different elements, will require different discovery, and are subject to different defenses than the claims

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 4

Slip Copy, 2000 WL 34524743 (D.Ariz.)
**(Cite as: Slip Copy)**

of the common stock purchasers, thereby rendering consolidation inappropriate.

That the LSERS action arises from the same facts as the other actions cannot be disputed. All of the Complaints are based on the same public filings and the same alleged material misrepresentations and omissions by Finova and its officers. All of the claimants, regardless of whether they proceed under the Exchange Act or the Securities Act, will have to establish that Finova made materially false misrepresentations or omissions. The discovery and the argument on this predicate issue will be identical for all potential Plaintiffs. Only on the issues of causation and damages will the claims of the note purchasers begin to diverge from the claims of the stock purchasers. Therefore, for the purposes of initial pre-trial proceedings and at least some of the discovery, consolidation of the LSERS action with the others cases will avoid the unnecessary costs and delay inherent in maintaining two separate, parallel and duplicative actions.

*4 In their opposition to the consolidation of the LSERS action, Mei and Belluomini assert that the LSERS action raises different claims brought by purchasers of different securities issued by a different issuer. However, this is only partly true. First, the LSERS action includes all of the Exchange Act common stock claims clearly included in the other actions, although it also adds Securities Act claims. Second, the Borenstein and Krim Complaints do not limit those actions to purchasers of common stock. Although both Complaints begin by referring to a class consisting of purchasers of common stock, both later refer to a broader "class of persons who purchased Finova *securities,"* without limitation. (Borenstein Compl. ¶ 30; Krim Compl. ¶ 34; (emphasis added).) Third, Finova Capital, the issuer of the notes, will be deeply involved in this litigation whether or not the LSERS action is consolidated: Finova Capital is Finova's principal subsidiary and is already a Defendant in the Steiner action.

Mei and Belluomini are correct in asserting that the note claims will require some discovery and argument that will be irrelevant to the common stock claims. Mei and Belluomini fear that the

additional issues relating to the note claims will impose unnecessary costs and delay on the common stock claimants and may jeopardize class certification. The arguments of Mei and Belluomini appear to be based on the assumption that consolidation will result in one class and one unified action for the duration of this litigation.

Consolidation, however, is a flexible procedural device. Actions may be consolidated for initial proceedings and some discovery and severed if and when the risks of confusion or prejudice outweigh the benefits in efficiency. Indeed, "the effect of such pretrial consolidation is not and cannot be to ' merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." ' *In re Equity Funding Corp. Securities Litigation,* 416 F.Supp. 161, 176 (C.D.Cal.1976) (quoting *Johnson v. Manhattan Railway,* 289 U.S. 479, 496-497, 53 S.Ct. 721, 77 L.Ed. 1331 (1933).

The Court is confident that it can guard against any possible prejudice that the common stock purchasers might suffer from consolidation. While Mei and Belluomini are concerned about delay, the Court concludes from its familiarity with the pace and complexity of securities class action litigation that the addition or subtraction of a few claims or issues is not likely to affect the overall speed of the litigation. Nor will the addition of the note purchasers jeopardize the ability of the stock purchasers to certify a class. The Court may certify two classes, or one class with two sub-classes, or one class consisting only of the stock purchasers, if the note purchasers cannot meet the requisite standards for certification. *See* Fed.R.Civ.P. 23(c)(4)

.

> FN1. The Court expresses no opinion at this time regarding whether any class certification is appropriate in these actions, or about any aspect of the merits of these cases. Nothing in this Order should be construed as indicative of the Court's opinion on anything other than the issues of consolidation and the appointment of lead Plaintiff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 5

Slip Copy, 2000 WL 34524743 (D.Ariz.)
(Cite as: Slip Copy)

One issue raised by Mei and Belluomini does deserve additional consideration at this time. Mei and Belluomini argue that the stock purchasers should not be burdened with the costs associated with litigating issues unique to the note purchasers. The Court agrees. Attorneys' fees and costs in securities class actions typically come out of the recovery available to the class members. If issues unique to the note purchasers do add substantially to the costs of this litigation, and if Plaintiffs prevail, it would not be fair to take these expenses from the recovery available to the stock purchasers.

**\*5** The Court will therefore caution all counsel that their billing records for this litigation must indicate with specificity the nature of the work being performed at all times. The billing records should allow other counsel, class members, and the Court to determine whether any particular item concerns issues unique to the claims of the stock purchasers or the note purchasers, or matters common to both. If the Court determines that it must apportion the expenses associated with the claims of the note purchasers separately from the expenses associated with the balance of the litigation, and if the Court cannot clearly determine from the records into which category an expense falls, the Court may deny all recovery for that expense.

In summary, the Court concludes that, because all of these actions share a common factual basis, consolidation for pretrial proceedings and initial discovery will avoid unnecessary costs and delays and will not prejudice any party. The differences between the claims of the common stock and the note purchasers do not eliminate the benefits of consolidation at this time. *See, e.g., In re Orbital Sciences Corp. Securities Litigation,* 188 F.R.D. 237, 238-239 (E.D.Va.1999) (consolidating actions involving stock and option purchasers, while recognizing that damages aspect of claims might have to be treated separately); *Lloyd v. Industrial Bio-Test Labs.,* 454 F.Supp. 807, 812 (S.D.N.Y.1978) (consolidating actions based on same public statements and reports despite different stages of proceedings and possibility of some delay); *In re Equity Funding Corp.,* 416 F.Supp. at 175 (affirming order to file consolidated complaint stating a variety of securities claims when "[t]he

actions from which the Complaint was fashioned involve common questions of law and fact concerning the nature, scope and legal consequences of the fraud at EFCA. This core issue is central to all the proceedings before this Court in M.D.L. Docket No. 142"). *Cf. Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398, 405-407 (D.Minn.1998) (declining to consolidate claims of option purchasers and stock purchasers where court had serious concerns regarding whether option purchasers had standing to bring any claims).

## II. LEAD PLAINTIFF

### A. Standard of Review

The standard for appointing a lead plaintiff in a private, securities class action is set forth in 15 U.S.C. § 78u-4(a). Under § 78u-4(a)(3)(A), a plaintiff filing a private class action under federal securities law must publish a national notice within twenty days. Then, within sixty days after publication of that notice, any member of the purported class may move to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The court must then "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i).

**\*6** The statute goes on to create a rebuttable presumption:
that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that-
(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof "that the presumptively most adequate plaintiff-(aa) will not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 6

Slip Copy, 2000 WL 34524743 (D.Ariz.)
(Cite as: Slip Copy)

fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

## B. Discussion

Because the Court has now resolved the consolidation issues, it must turn to the appointment of lead Plaintiff. *See id.* § 78u-4(a)(3)(B)(ii) (requiring that motions to consolidate be resolved first). Here, the Court must resolve competing motions for appointment as lead Plaintiff filed jointly by Mei and Belluomini and by LSERS. Both motions were filed on May 30, 2000, exactly sixty days after the national notice published by Steiner on March 29, 2000.

Both movants fit the first of section 78u-4's three requirements: they either filed a complaint or made a motion in response to the Steiner notice.

The movants disagree regarding who has the largest financial interest in the relief sought by the class. LSERS asserts that it clearly has the greater interest, given its combined losses from the stock and the notes. LSERS further asserts that, even if its losses from the notes are ignored, its common stock losses exceed Mei and Belluomini's, both individually and combined. Mei and Belluomini respond that LSERS should not be allowed to include its losses from the notes. In addition, under their calculations, Mei and Belluomini assert that their combined common stock losses exceed those of LSERS.

Mei and Belluomini argue that the LSERS note losses must be disregarded because LSERS did not publish a national notice of its proposed action on behalf of note purchasers, pursuant to § 78u-4(a)(3)(A)(1). LSERS responds that such notice was unnecessary under § 78u-4(a)(3)(A)(ii), which states that only the first plaintiff (here, Steiner) need publish notice "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed."

FN2. In fact, Mei and Belluomini accuse LSERS, and more particularly its counsel, of taking "lawyer-driven litigation to new heights" and using "creative lawyering" to "ensure that it would gain control of this litigation. (M & B's Resp. to LSERS' Mot for App't. as Lead Pl. at 1.) LSERS, in turn, accuses Mei and Belluomini, and more particularly their counsel, of "exemplifying" the "tactic of assembling a ' group' of unaffiliated investors by lawyer-driven mass solicitations." (LSERS' Resp. to M & B's Mot. for App't as Lead Pl. at 13-14.)

These are only two examples of the numerous unhelpful and unnecessary attacks that counsel have directed at one another. The Court expects counsel to bring to its attention the relevant facts and law without directing inflammatory and unprofessional comments at one another.

Although the Court has found that the note and common stock claims share sufficient factual issues to warrant consolidation, it questions whether the Securities Act claims relating to the notes and the Exchange Act claims relating to the stock are " substantially the same" for purposes of the notice requirement. However, the Court need not resolve this issue at this time. LSERS is entitled to move for appointment as lead Plaintiff based on its interest in the stock alone, regardless of a potential failure of notice with respect to the notes.

*7 Ignoring, for the moment, LSERS' losses due to the notes, the parties have presented conflicting information regarding their financial interests. Both sides apparently agree that LSERS' losses amount to $351,915.80. Mei and Belluomini place their combined losses at $368,201.50, while LSERS calculates the competing Plaintiffs' losses at $347,732.75. (*See* LSERS' Resp. to M & B's Mot. for App't as Lead Pl. at 6 n. 7; M & B's Reply in Supp. of Mot for App't as Lead Pl. at 3.) LSERS further notes that it purchased more total and net shares during the relevant period and invested more total funds. (*See* LSERS' Resp. at 6 n. 7.) These factors may be considered in assessing the extent of a parties' financial interest. *See Aronson v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*McKesson HBOC, Inc.,* 79 F.Supp. 1146, 1157-1158 (N.D.Cal.1999). On the other hand, LSERS' losses amount to tiny fraction of a percent of its total holdings, while Mei and Belluomini lost a much more significant percentage of their personal portfolios. Common sense dictates that this comparison should be considered in determining a potential plaintiff's "financial interest."

LSERS further argues that Mei and Belluomini do not constitute a proper "group" under § 78u-4(a)(3)(B)(iii)(I), which refers to appointment of a "person or group of persons" as lead plaintiff. LSERS cites to a recent trend in the cases interpreting § 78u-4 to require that "group" Plaintiffs have some "meaningful relationship preceding the litigation, and [be] united by more than the mere happenstance of having bought the same securities." *Aronson,* 79 F.Supp.2d at 1153-1154. Courts have imposed this restriction in response to the expressed intent of the PSLRA to minimize lawyer-driven securities class actions. When an unrelated group, assembled by counsel, serves as lead plaintiff, the result is attorneys selecting clients rather than clients selecting attorneys. *See, e.g., In re Network Assocs.,* 76 F.Supp.2d at 1023 ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").

The reasons for limiting the types of "groups" that can qualify as lead plaintiffs under the PSLRA are generally persuasive. On the facts of this case, however, they carry little weight. The proposed "group" here consists of only two individual investors, both of whom had large individual holdings of Finova stock. Both have attested to their ability and willingness to take an active role in managing this litigation. Both are experienced and educated investors. Although their counsel may have initiated the joint motion of Mei and Belluomini, the Court concludes that the two movants would be capable of meaningful management of this litigation and could avoid being managed by their attorneys. Their combined interests may therefore be aggregated for purposes

of determining financial interest.

**\*8** Ultimately, however, the Court finds the evidence regarding the relative financial interests of the movants inconclusive. The actual dollar amounts lost from the decline of Finova's stock are nearly identical. Congress surely did not intend that a difference of a few thousand dollars, in either direction, in inherently speculative damages claims would be dispositive of the lead plaintiff determination. The Court is also reluctant to include LSERS' losses from the notes because other members of the note class may not have had the opportunity to apply for lead Plaintiff status due to the nature of the published notices. Inclusion of the note losses would, of course, substantially increase LSERS' financial interest. The remaining factors cut equally for and against both movants.

Despite these ambiguities, the Court will not permit discovery into the movants' financial interests. The statute provides an accelerated timeline for resolving lead Plaintiff issues in order to facilitate the efficient resolution of securities class actions. Permitting limited discovery now would only further delay the meaningful start of this lawsuit. In addition, the PSLRA apparently does not contemplate discovery on the subject of financial interests. Under § 78u-4(a)(3)(B)(iv), discovery relating to which class member "is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of inadequately representing the class." In other words, a court must determine which plaintiff is presumptively most adequate before the potential lead plaintiffs may take discovery of one another.

Finding the plaintiffs' relative financial interests inconclusive, and perhaps indeterminable, the Court will turn to the third element of the presumption: the requirements of Rule 23 of the Federal Rules of Civil Procedure. Rule 23 refers to lead plaintiffs as " representative parties," and authorizes a class action only if: "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2000 WL 34524743 (D.Ariz.)
(Cite as: Slip Copy)

interests of the class."

Both Mei and Belluomini and LSERS satisfy the
first of Rule 23's requirements: both have claims
that are typical of the claims of the class. LSERS'
claims may be slightly more typical than Mei and
Belluomini, as LSERS has claims relating to both
the common stock and the notes, while Mei and
Belluomini have no claims based on the notes.
Nevertheless, as to the common issues of law and
fact that justify consolidation, both proposed lead
plaintiffs are in essentially identical positions.

However, the Court is not confident that Mei and
Belluomini "will fairly and adequately protect the
interests" of the full class. Mei and Belluomini
have consistently objected to being burdened with
the claims of the note purchasers, and have openly
questioned whether the note holders will be able to
recover anything. (See, e.g., M & B's Opp. to
LSERS' Mot. to Cons.at 5 (expressing "substantial
doubt" that the note-holders will be able to prove an
essential element of their claims).) Mei and
Belluomini have opposed both consolidation and
appointment of LSERS as lead plaintiff because
they do not believe that the note claims have any
place in this litigation. (See, e.g., M & B's Opp. at 7
("The claims of Messrs. Belluomini and Mei and
the other purchasers of Finova common stock
should not be burdened with these potentially
case-dispositive issues which are wholly irrelevant
to the claims of person who purchased Finova
common stock.").) Consequently, the Court finds
that appointing Mei and Belluomini as lead
Plaintiffs would pose a significant risk that the
complete interests of all class members would not
be fairly and adequately protected. Mei and
Belluomini therefore cannot qualify as the
presumptively most adequate plaintiff.

> FN3. Proof that a plaintiff "will not fairly
> and adequately protect the interests of the
> class" is also grounds for opposing
> appointment of the presumptively most
> adequate plaintiff under §
> 78u-4(a)(3)(iii)(II)(aa). This provision
> appears to be unnecessary in light of the
> requirement that the presumptively most

adequate plaintiff satisfy the requirements
of Rule 23.

*9 LSERS, on the other hand, appears fully capable
of representing all the interests of all the class
members, because LSERS has substantial losses
attributable to both Finova common stock and the
Finova notes. Therefore, even if LSERS cannot
qualify as the presumptively most adequate plaintiff
because of uncertainties about the proper
calculation of its financial interest, the Court finds
that LSERS is more adequate than Mei and
Belluomini.

Finally, Mei and Belluomini argue that LSERS
cannot qualify as lead Plaintiff because, under §
78u-4(a)(3)(iii)(II)(bb), it "is subject to unique
defenses that render such plaintiff incapable of
adequately representing the class." The only "
unique defenses" Mei and Belluomini address,
however, are defenses that apply to the note
purchasers generally, rather than LSERS
specifically. LSERS is not subject to any unique
defenses on its common stock claims. On its note
claims, LSERS is subject only to defenses common
to all other note purchasers. Mei and Belluomini
have not argued that LSERS is subject to any
defenses on any claims that are unique to LSERS
itself, rather than unique to the particular types of
claims shared by all members of the various
potential subclasses. Such defenses do not render
LSERS incapable of adequately representing the
class.

The Court further notes that LSERS is an
institutional investor, and its appointment as lead
counsel will satisfy the Congressional goal of
increasing the role of institutional investors as the
managers of securities class actions. See, e.g., In re
Network Assocs., 76 F.Supp.2d at 1020 ("Congress
expected that the lead plaintiff would normally be
an institutional investor with a large stake in the
outcome."). LSERS has also demonstrated that it is
capable of and willing to take an active role in
guiding this litigation. (See LSERS' Mot. for App't
as Lead Pl., Exh. A.) The Court will therefore
appoint LSERS to serve as lead Plaintiff. With
appointment as lead Plaintiff comes the right to
select lead counsel: "The most adequate Plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 9

Slip Copy, 2000 WL 34524743 (D.Ariz.)
**(Cite as: Slip Copy)**

shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Although the Court has already noted its disapproval of some of counsels' tactics, the Court finds that Bernstein Litowitz Berger and Grossmann LLP is qualified to represent the class and proceed with this litigation, and so the Court approves LSERS' selection.

> FN4. The hostility between opposing movants' counsel revealed in the briefing also leads the Court to reject any proposal for appointment of joint lead Plaintiff or joint lead counsel. It seems unlikely that movants and their counsel would be able to work together to direct this litigation.

CONCLUSION

The Court finds that consolidation of all of these related actions is appropriate in order to avoid unnecessary costs and delay. The Court further finds that LSERS is the most adequate party to serve as lead Plaintiff, and ratifies LSERS' selection of lead counsel. However, the Court retains the right to revisit these issues if and when appropriate. If necessary in order to avoid prejudice to any party, the Court may sever some aspects of this litigation for separate proceedings. In addition, should the Court determine that two classes, or one general class with two sub-classes, should be certified, or should another, more adequate member of the class of note purchasers come forward, the Court may also reopen the issue of lead Plaintiff. Last, the Court would be remiss if it did not express concern over the limited amount of loss when compared to the cost of litigation. Accordingly,

**\*10** IT IS ORDERED that the Louisiana School Employees Retirement System's Motion to Consolidate Related Actions [Doc. No. 11, CIV 00-619; Doc. No. 10, CIV 00-926; Doc. No. 9, CIV 00-978; Doc. No. 2, CIV 00-1010] Note: This is including CIV 00-110C. is granted. The five actions set forth in the caption of this Order are consolidated for all purposes until otherwise ordered by the Court and are assigned to Chief Judge Stephen M. McNamee for adjudication;

IT IS FURTHER ORDERED that the Louisiana School Employees Retirement System's Motion to be Appointed Lead Plaintiff [Doc. No. 12-1, CIV 00-619; Doc. No. 9-1, CIV 00-926; Doc. No. 8-1, CIV 00-978; Doc. No. 3-1, CIV 00-1010] is granted. The Louisiana School Employees Retirement System is appointed lead Plaintiff for these consolidated actions;

IT IS FURTHER ORDERED that the Louisiana School Employees Retirement System's Motion to Approve Proposed Lead Plaintiff's Choice of Counsel [Doc. No. 12-2, CIV 00-619; Doc. No. 9-2, CIV 00-926; Doc. No. 8-2, CIV 00-978; Doc. No. 3-2, CIV 00-1010] is granted. Alan Schulman, Robert S. Gans, Blair A Nicholas and Douglas M. McKeige of Bernstein Litowitz Berger and Grossman LLP shall be lead counsel in these consolidated actions;

IT IS FURTHER ORDERED that Borenstein's Motion to Consolidate [Doc. No. 6, CIV 00-619; Doc. No. 4, CIV 00-926; Doc. No. 3, CIV 00-978] is denied as moot;

IT IS FURTHER ORDERED that the Motion to Appoint Peng-Siu Mei and E.V. Belluomini as Lead Plaintiffs [Doc. No. 8, CIV 00-619; Doc. No. 6-1, CIV 00-926; Doc. No. 5-1, CIV 00-978] is denied;

IT IS FURTHER ORDERED that Mei and Belluomini's Motion to Approve Lead Plaintiff's Choice of Lead Counsel [Doc. No. 8, CIV 00-619; Doc. No. 6-2, CIV 00-926; Doc. No. 5-2, CIV 00-978] is denied;

IT IS FURTHER ORDERED that these consolidated cases shall be identified as: *In re Finova Group Inc. Securities Litigation,* No. CIV 00-619, and the files of this action shall be maintained in one file under Master File No. CIV 00-619;

IT IS FURTHER ORDERED that every pleading filed in these consolidated actions, or in any separate action included herein, shall bear the following caption:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 10

Slip Copy, 2000 WL 34524743 (D.Ariz.)
**(Cite as: Slip Copy)**


UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


In re Finova Group Inc. Securities  )
Litigation.                         )
                                    )
                                    )        Master File No. CIV 00-619
                                    )        CLASS ACTION
This Document Relates To:           )
                                    )

IT IS FURTHER ORDERED that when a pleading is intended to be applicable to all of the consolidated actions, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable to some, but not all, of the consolidated actions, the case number for each individual action to which the paper is intended to be applicable and the last name of the first-named Plaintiff in said action shall appeared in place of the words "All Actions", *e.g.,* " This Document Relates To: *Krim v. Finova Group, Inc.,* No. CIV 00-978";

**\*11** IT IS FURTHER ORDERED that Defendants shall notify the Court of any other actions now or hereafter filed within or outside this District which may be related to these consolidated proceedings if and when Defendants become aware of such actions;

IT IS FURTHER ORDERED that all deadlines and scheduling orders previously entered in any of these consolidated actions are hereby vacated, with the exception of the Standard Track Initial Order [Doc. No. 47] and the Order Setting Rule 16 Preliminary Pretrial Conference [Doc. No. 46] filed in CIV 00-619;

IT IS FURTHER ORDERED that the Rule 16 Preliminary Pretrial Conference is continued to Wednesday, November 22, 2000, at 4:00 p.m.;

IT IS FURTHER ORDERED that Lead Plaintiff shall file a Consolidated Amended Class Action Complaint and serve the same on Defendants within 30 days of the date of this Order. The amended complaint shall be deemed the operative complaint, superseding all complaints previously filed in any of these consolidated actions;

IT IS FURTHER ORDERED that, upon filing the amended complaint, Lead Plaintiff shall cause to be published a new notice in accordance with the requirements of 15 U.S.C. § 78u-4(a)(3)(A)(i), except that the notice shall specify that only those members of the prospective class who were note purchasers during the class period may file an opposition to LSERS' appointment as Lead Plaintiff and a motion to be appointed in its place;

IT IS FURTHER ORDERED that Defendants shall answer the amended complaint within thirty days of its service. In the absence of an emergency, the Court will not look favorably upon requests for extensions of these preliminary deadlines;

IT IS FURTHER ORDERED that all counsel involved in these actions shall maintain billing records such that, for each entry, it may be determined whether the work referred to in that entry relates to the claims of the note purchasers, the common stock purchasers, or jointly to both.

D.Ariz.,2000.
Borenstein v. Finova Group Inc.
Slip Copy, 2000 WL 34524743 (D.Ariz.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2000 WL 34524743 (D.Ariz.)
**(Cite as: Slip Copy)**

- 2:00cv01100 (Docket) (Jun. 09, 2000)
- 2:00cv00978 (Docket) (May. 23, 2000)
- 2:00cv00926 (Docket) (May. 15, 2000)
- 2:00cv00619 (Docket) (Apr. 06, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2



Not Reported in F.Supp.2d                                                      Page 1

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Washington.
Suzy DIX and Jeffrey R. Smith, on behalf of
themselves and all others similarly situated,
Plaintiffs,
v.
ICT GROUP, INC., a Pennsylvania corporation;
and America Online, Inc., a Delaware corporation,
Defendants.
**No. CS-03-0315-LRS.**

Filed Sept. 26, 2003.
Oct. 20, 2003.

Richard Kuhling, David Broom, and William
Schroeder of Paine, Hamblen, Coffin, Brooke, &
Miller, LLP, Dennis Stewart of Hulett Harper
Stewart, LLP, and Michael D. Kinkley of Michael
D. Kinkley, P.S., represent the plaintiffs and all
others similarly situated.
James King, of Keefe, King, & Bowman and
Eugene F. Assaf, of Kirkland & Ellis, for
defendants.

ORDER GRANTING PLAINTIFFS' MOTION TO
REMAND
SUKO, J.
*1 Telephonic motion hearings were held on
October 6, 2003 and October 15, 2003. Richard
Kuhling participated on behalf of the Plaintiffs;
Daniel Donovan, James King and Eugene Assaf
participated on behalf of Defendants ICT Group,
Inc. [ICT] and Defendant America Online, Inc.
[AOL]. The Court heard oral argument on
Defendants' Motion to Transfer Pursuant to 28
U.S.C. § 1406(a) or, in the Alternative, 28 U.S.C. §
1404(a), and to Stay Proceedings Pending
Resolution of Motion to Transfer (Ct.Rec.4), filed
September 3, 2003; Plaintiffs' Motion To Remand
(Ct.Rec.8), filed September 9, 2003; and
Defendants' Motion To Stay Proceedings Pending

Order of the Judicial Panel on Multidistrict
Litigation Pursuant to 28 U.S.C. § 1407, filed
October 3, 2003 (Ct.Rec.36). Also pending before
the Court were the following motions without oral
argument: Plaintiffs' Request for Expedited Hearing
on Plaintiffs' Motion To Remand (Ct.Rec.9), filed
September 9, 2003; Request by Plaintiffs For Entry
of Default Against Defendants ICT Group, Inc. and
America Online, Inc. (Ct.Rec.17), filed September
10, 2003; Request by Defendants for Expedited
Hearing of Defendants' Motion to Transfer Pursuant
to 28 U.S.C. § 1406(a) or, in the Alternative, 28
U.S.C. § 1404(a), and to Stay Proceedings Pending
Resolution of Motion to Transfer (Ct.Rec.24), filed
September 11, 2003; and Motion by Plaintiff Suzy
Dix, Plaintiff Jeffrey R. Smith to Continue Hearing
of Defendants' Request for Transfer of Venue
(Ct.Rec.30), filed September 15, 2003.

> FN1. The Court heard this motion on an
> expedited basis due to its obvious interface
> with the other pending motions.

I. BACKGROUND

On July 29, 2003, Plaintiffs Suzy Dix and Jeffrey R.
Smith [Plaintiffs] commenced an action on behalf of
themselves and all others similarly situated in the
Superior Court of Spokane County, Washington,
Case No.2003-02-04952-7 alleging that ICT and
AOL converted their funds and violated the
Washington Consumer Protection Act by charging
them for "spun off" AOL accounts that they
allegedly did not agree to create. Plaintiffs'
complaint states that "[t]he amount of damages
suffered by each individual class member is
relatively small, generally ranging from $23.80 to
less than $250.00." Complaint, ¶ 47. Plaintiffs also
state in the complaint that "[n]o class members'
damages equal or exceed $75,000 ." Complaint, ¶
48.

Plaintiffs seek "recoupment by each member of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 2

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

class of all funds converted;" "restitution to the class of all funds converted;" "an award of actual damages suffered as a result of the defendants' violations of RCW 19.86.020;" "an award of treble damages in the amount of three times the actual damages awarded in accord with RCW 19.86.020;" "pre-judgment and post-judgment interest;" "an award of attorneys' fees and reimbursement of costs incurred under RCW 19.86.020 and other applicable law;" and "such other relief as this court may deem just and proper." Complaint, Prayer for Relief ¶¶ 1-8.

On August 27, 2003, Defendants filed a Notice of Petition for Removal (Ct.Rec.1) and removed the action based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants argue that venue is not proper here because a forum-selection clause mandates that this action proceed in the United States District Court for the Eastern District of Virginia. Plaintiffs, on the other hand, assert that this Court lacks jurisdiction, and, therefore, has no authority to hear or transfer this case, but instead must remand the action back to Superior Court of Spokane County.

## II. SUMMARY OF THE FACTS

**\*2** American Online, Inc., a Delaware corporation, is an Internet Service Provider. AOL uses a third-party Pennsylvania company, ICT Group, Inc., to answer customer service calls from AOL subscribers. Plaintiff Dix, a Spokane, Washington resident, became an AOL member on October 18, 2000, and is currently an AOL member. Plaintiff Smith, a Spokane, Washington resident, became an AOL member on March 15, 1995 and is also a current member. Davis Decl., ¶ 5. Before becoming an AOL member, and accessing AOL's online service, an individual must affirmatively choose to accept the terms of the Terms of Service Agreement [TOS] by clicking the "I AGREE" icon during the process of registering for membership. One provision of the TOS is a forum-selection clause which reads:
You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of the AOL

Services recides in the courts of Virginia.

Plaintiffs allege that sometime after they became AOL members, AOL charged them for additional AOL accounts that they did not request, and that AOL wrongfully refused to fully re-credit them. Specifically, Plaintiff Dix pays AOL $23.90 per month for an unlimited usage account. Dix Decl., ¶ 4. Dix states that AOL permits additional screen names to be used on her account, which some of her children did utilize. Dix Decl., ¶ 3. Dix alleges that she was double charged for three months in 2002 for a total of $71.70. Dix Decl., ¶ 5. Similarly, Plaintiff Smith pays AOL $23.90 per month. Smith states that he was double charged based upon his wife using a secondary screen name for a short period of time in the summer of 2002. Smith Decl., ¶¶ 5,7. Smith states AOL wrongfully overcharged $71.70 but only agreed to give him a credit of $47.80. Thus at the point of Smith's declaration, AOL allegedly owed Smith $23.90. Smith Decl., ¶ 12.

## III. DISCUSSION

### A. Legal Standard

When a case is removed from state court, a district court must remand the case if it determines that it lacks subject matter jurisdiction. See 28 U.S.C. § 1447(c). There is a "strong presumption" against removal, *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992), and any uncertainties are to be resolved in favor of remand, *see Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir.1988). Defendants bear the burden of proving, by a preponderance of evidence, actual facts sufficient to support jurisdiction. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir.1996). If the complaint does not already disclose a sufficient basis for jurisdiction, such facts must appear in the notice of removal. *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir.1983). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

1064 (9th Cir.1979).

### B. Jurisdiction

*3 To reach the forum-selection clause issue, the Court must first have subject matter jurisdiction. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States ..." 28 U.S.C. § 1441(a). Because § 1441 allows removal of actions only within the federal court's original jurisdiction, and because § 1404(a) allows a court to transfer actions only within its jurisdiction, the first question for consideration is whether this court has jurisdiction.

United States District Courts are courts of limited jurisdiction. Defendants base their removal of this action on 28 U.S.C. § 1332, which gives the court subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. In order for the court to have diversity jurisdiction over a case, the complaint must allege (1) the amount in controversy exceeds $75,000, exclusive of costs and interest and (2) there exists complete diversity of citizenship between the parties. Id.

The starting point for the Court's inquiry in this case is the principle that places the "burden of establishing federal jurisdiction ... on the party seeking removal." *Prize Frize, Inc. v. Matrix Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999). Because Defendants seek to remove this case to the federal forum based on diversity, it must show (1) the parties are in complete diversity and (2) the amount in controversy exceeds $75K. See 28 U.S .C. § 1332(a); *Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir.2003). There is no dispute that the first element is satisfied. At issue is whether the jurisdictional minimum is present. More precisely, the question is whether in a case where Plaintiffs' complaint does not specify damages in excess of the jurisdictional minimum, Defendants have made the showing necessary to establish that the amount in controversy exceeds $75,000.

On its face, Plaintiffs' Complaint expressly states that no class members' damages equal or exceed $75,000. Complaint, ¶ 48. In the Notice of Removal, Defendants recite allegations contained in Plaintiffs' prayer for relief section of the Complaint that they believe establish the jurisdictional minimum: "Plaintiffs Dix and Smith seek recoupment, restitution, an award of actual damages suffered as a result of the defendants' violations of RCW 19.86.020, an award of treble damages in the amount of three times the actual damages awarded in accord with RCW 19.86.020, pre-judgment and post-judgment interest, an award of attorneys' fees and reimbursement of costs incurred under RCW 19.86.020 and other applicable law, and such other relief as this court may deem just and proper. Moreover, plaintiffs Dix and Smith are likely to seek service awards as named representatives of the putative class." (Internal quotation marks omitted; Notice of Removal, ¶ 7).

*4 Defendants also state in their Notice of Removal that the Washington Consumer Protection Act [CPA] provides, in certain circumstances, the right to seek attorneys fees under the statute. Defendants further submit that the CPA is read so as to provide the award of attorneys fees to the named or representative party [in a class action]. Notice of Removal, ¶ 9. From this, Defendants conclude that "[b]ased on the allegations in the Complaint, the amount in controversy in this action exceeds the sum or value of $75,000 per plaintiff, and thus satisfies the jurisdictional minimum ." Notice of Removal, ¶ 8.

In diversity cases, where the amount in controversy is in doubt, the Supreme Court has drawn a sharp distinction between original jurisdiction and removal jurisdiction: [i]n case brought in the federal court ... [i]t must appear to a legal certainty that the [plaintiff's] claim is really for less than the jurisdictional amount to justify dismissal ... A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. See *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283,291, 288

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

58 S.Ct. 586, 82 L.Ed. 845 (1938). The "strong presumption" against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper. *Nishimoto v. Federman-Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988).

If it is unclear what amount of damages the plaintiff has sought, as is true here with regard to Plaintiffs' CPA claim, which is governed by a Washington statute RCW 19.86.020, then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir.1992) (citations omitted); *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 839 (9th Cir.2002).

Generally, the amount in controversy is determined from the face of the pleadings. See *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.,* 802 F.2d 362, 363 (9th Cir.1986). The sum claimed by the plaintiff controls so long as the claim is made in good faith. See *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288 58 S.Ct. 586, 82 L.Ed. 845 (1938). In the instant case, it is facially evident from the complaint that less than $75,000 is in controversy as Plaintiffs have expressly stated so in their complaint. Furthermore, the Court has no reason to doubt that such claim by Plaintiffs is in good faith as their claims are based on being owed extremely small amounts of $23.90 and $71.70 respectively by Defendants.

### C. Class Action Issues

Special considerations arise in determining jurisdictional amount for purposes of diversity jurisdiction in the class action context. Although the present case is not certified as yet, courts have held that a suit should be treated as a class action for purposes of federal jurisdiction regardless of the presence or lack of certification. *Eagle v. American Tel. & Tel. Co.,* 769 F.2d 541, 545 n. 1 (9th Cir.1985).

*5 In *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) involving

a class action brought under § 1332(a)(1), the Supreme Court reaffirmed the established rule that each plaintiff in the class must independently satisfy the amount-in-controversy requirement. *Id.* at 301-02, 94 S.Ct. at 512. Claims of class members may only be aggregated to satisfy the jurisdictional amount if they are "joint and common" rather than " separate and distinct ." *United States v. Southern Pac. Transp. Co.,* 543 F.2d 676, 682 (9th Cir.1976).

In *Gibson v. Chrysler Corp.,* 261 F.3d 927 (9th Cir.2001) the Ninth Circuit held that if a named plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdictional over claims of unnamed class members irrespective of the amount in controversy in those claims.

Additionally, the Ninth Circuit held in *Gibson* and *Kanter v.. Warner-Lambert Co.,* 265 F.3d 853 (9th Cir.2001) that any potential attorneys' fees award in a class action cannot be attributed solely to the named plaintiffs for purposes of the amount in controversy. The *Gibson* Court determined that for purposes of the jurisdictional amount, the attorney fee must be prorated over the entire class.

In the present case, it is Plaintiffs' position, and the Court agrees, that the claims of the class members are separate and distinct and therefore cannot be aggregated to arrive at the jurisdictional amount.

### D. Amount In Controversy Constituents

Defendants argue that the court should consider attorneys' fees and costs requested by Plaintiffs pursuant to their CPA claims and any service awards that may be awarded to the only named class members, Dix and Smith in determining the jurisdictional amount in controversy. Plaintiffs urge that any potential award of attorney's fees made pursuant to the CPA should be prorated over the entire class in this action. Further, Plaintiffs state that the court should only consider those attorney's fees necessary to file the initial complaint. Lastly, Plaintiffs assert that unclaimed, unrequested and unpled service awards should not contribute to the amount in controversy requirement.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

### 1. Attorney's Fees

Attorney's fees may be included in the amount in controversy "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language". *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir.1998). In support of their argument that attorney's fees should be included in the jurisdictional amount, Defendants cite Washington CPA language confirming statutory authority for attorney's fees:

Any person who is injured in his or her business or property by a violation of RCW 19.86.020 ... may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including reasonable attorney's fee .
..

**\*6 R.C.W. 19.86.090.**

Having found that a statute does authorize attorney's fees, requiring the Court to consider a potential attorney's fee award in this case, Defendants must do more than merely point to Plaintiffs' request for attorney's fees; upon removal they must demonstrate the probable amount of attorney's fees in this particular case. *See, e .g., Surber v. Reliance Nat'l Indemnity Co.,* 110 F.Supp.2d 1227, 1232 (N.D.Cal.2000). However, Defendants have not provided any evidence whatsoever to establish the approximate cost of Plaintiffs' attorney's fees in this case. Defendants have not estimated the amount of time that the case will require, nor have they revealed Plaintiffs' counsel's hourly billing rate.

> FN2. Defendants make a blanket statement that "there can be no doubt that an award of attorneys' fees and costs in this putative nationwide class action lawsuit-standing alone-necessarily will exceed $75,000 for each of the two named plaintiffs. (Ct. Rec. 34, page 7).

Rather than proffer any evidence on this issue, Defendants' joint brief summarily states that Plaintiffs' attorneys' fees "standing alone necessarily will exceed $75,000 for each of the two named

plaintiffs." This unsupported statement does not suffice to create subject matter jurisdiction. Where, as here, Defendants rely on the damages that might flow from Plaintiffs' causes of action, it must provide evidence that would permit a reasoned calculation of those damages. *See, e.g., Birkenbuel v. M.C.C. Construction Corp.,* 962 F.Supp. 1305, 1306 (D.Mont.1997) (stating that it is up to the defendant to present evidence that shows the damage computation exceeds $75,000 and finding without such evidence that "it is impossible to say whether the Complaint states a claim for the jurisdictional amount"); *see also Garza v. Bettcher Industries, Inc.,* 752 F.Supp. 753, 763 (E.D.Mich.1990) (discussing examples of specific facts sufficient to establish the jurisdictional minimum including where "plaintiff's medical records revealed he had undergone four separate surgical procedures for his injury"). Defendants can submit other evidence that may demonstrate the amount in controversy. *See, e.g., Cohn,* 281 F.3d at 840 (holding that a "settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"). But Defendants cannot carry their burden by relying on a bare record as appears in this case.

The parties also clash regarding the issue of attorneys' fees being applied to the named plaintiffs only or pro-rated over the entire class. The parties differ with respect to their statutory interpretations of the Washington CPA. However, a straight application of Ninth Circuit case law, i.e. *Gibson* and *Kanter,* informs that any potential attorneys' fees award in a class action cannot be attributed solely to the named plaintiffs for purposes of the amount in controversy. This interpretation drives the jurisdictional amount downward.

### 2. Service Awards

Defendants argue that "plaintiffs Dix and Smith are likely to seek service awards as named representatives of the putative class." Notice of Removal, ¶ 7. "Likely to seek" is wholly speculative and does not withstand the Ninth Circuit's restrictive view of jurisdictional amount in federal class actions. *See Kanter v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

*Warner-Lambert Co.,* 52 F.Supp.2d 1126, 1132
(N.D.Cal.1999).

### E. Stay of Proceedings Pending Order of JPML

**\*7** Defendants' final motion requests this Court to
exercise its inherent power to manage and control
its docket by staying proceedings in this action
pending a transfer ruling of the Judicial Panel on
Multidistrict Litigation [JPML]. Defendants argue
that the Court should stay consideration of
Plaintiffs' motion for remand until the JPML has
decided their motion to consolidate a few similar
actions. Presently before the Panel pursuant to 28
U.S.C. § 1407 is a motion to transfer this case and
two other California district court cases for
coordination or consolidation of all pre-trial
proceedings . Defendants contend that Plaintiffs
will still get a chance to seek remand, after the
JPML has made its decision. Defendants urge that a
stay of proceedings would be in the best interest of
judicial economy and without a stay, they will suffer
a hardship, which hardship outweighs any potential
prejudice to Plaintiffs.

> FN3. MDL-1581-In re America Online
> Spin-Off Accounts Litigation.

Plaintiffs respond that although the Court's power to
stay is discretionary, the Court should not delay its
ruling on their motion to remand. In support of their
position that this Court need not automatically
postpone rulings on pending motions based on a
pending MDL transfer motion, Plaintiffs cite Panel
Rule 1.5, 199 F.R.D. 425, 427 (2001) which
provides:
The pendency of a motion, order to show cause,
conditional transfer order or conditional remand
order before the Panel concerning transfer or
remand of an action pursuant to 28 U.S.C. § 1407
does not affect or suspend orders and pretrial
proceedings in the district court in which the action
is pending and does not in any way limit the pretrial
jurisdiction of that court.

Plaintiffs assert that there is no good reason to delay
resolution of the remand issue in this case because

the parties have fully briefed the matter and such
motion challenges the subject matter of the federal
court.

When confronted with a motion to stay pending a
JPML ruling, courts generally consider three factors
in deciding whether such a stay is appropriate: (1)
the interests of judicial economy; (2) hardship and
inequity to the moving party if the action is not
stayed; and (3) potential prejudice to the
non-moving party. *Rivers v. Walt Disney Co.,* 980
F.Supp. 1358, 1360 (C.D.Cal.1997) (citations
omitted).

The Court finds no reason to delay ruling on
Plaintiffs' motion to remand. The Court retains
jurisdiction to decide the remand issue, despite
Defendants' motion to the JPML. Both Defendants
and Plaintiffs cite numerous cases addressing the
jurisdictional issue which fall on their respective
sides of the fence. And while staying the
proceedings might allow a single district court to
rule on the jurisdictional issue in the various cases,
a stay would not affect the law, i.e. Washington
CPA, that applies to and may have a direct effect on
the existence of federal jurisdiction in the present
case. No great judicial economy will be realized
from a delay. The parties will not save time, for
they have already briefed the remand issue.

**\*8** Contrary to the Defendants' contention, for
purposes of judicial economy, the jurisdictional
issue should be resolved immediately. If federal
jurisdiction does not exist, the case can be
remanded before federal resources are further
expended. In the Court's view, judicial economy
dictates a present ruling on the remand issue. *See
generally Tortola Restaurants, L.P. v.
Kimberly-Clark Corp.,* 987 F.Supp. 1186, 1188
(N.D.Cal.1997). Under 28 U.S.C. § 1447(c), a
remand is mandatory if it appears, at any time
before final judgment, that the district court lacks
subject matter jurisdiction:
If at any time before final judgment it appears that
the district court lacks subject matter jurisdiction,
the case shall be remanded.

Defendants have not met their burden of showing
that Plaintiffs' claims exceed the minimum amount

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
(Cite as: Not Reported in F.Supp.2d)

in controversy of $75,000 as required for diversity. Therefore, the Court remands this case.

### F. Plaintiffs' Request For Fees

Plaintiffs seek an award of fees under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Such an award is therefore within the Court's discretion. Because the Court has found that removal was improper, it has the discretion to award fees. The Court declines, however, to award fees in this case. Defendants have made a good faith argument based on legal grounds which, if adopted by the Court, could have resulted in a stay of proceedings. While the Court finds that removal was improper in this case, it also finds that an award of fees would be inappropriate.

### CONCLUSION

To reach the contract clause issue argued by Defendants, this court had to have subject matter jurisdiction. Here, the diversity amount is not met. Therefore, the Court remands this case to Spokane County Superior Court. Accordingly,

IT IS ORDERED that:

1. Plaintiffs' Motion To Remand, filed September 9, 2003, Ct. Rec. 8, is GRANTED, and the above-entitled action is remanded to the Superior Court of Spokane County, Washington.

2. Plaintiffs' Request For Expedited Hearing on Plaintiffs' Motion to Remand, filed September 9, 2003, Ct. Rec. 9, is DENIED AS MOOT.

3. Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1406(a) or, in the Alternative, 28 U.S.C. § 1404(a), and to Stay Proceedings Pending Resolution of Motion to Transfer, filed September 3, 2003, Ct. Rec. 4, is DENIED.

4. Request by Plaintiffs For Entry of Default Against Defendants ICT Group, Inc. and America

Online, Inc., filed September 10, 2003, Ct. Rec. 17, is DENIED AS MOOT.

5. Request by Defendants for Expedited Hearing of Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1406(a) or, in the Alternative, 28 U.S.C. § 1404(a), and to Stay Proceedings Pending Resolution of Motion to Transfer, filed September 11, 2003, Ct. Rec. 24, is DENIED AS MOOT.

6. Motion by Plaintiff Suzy Dix and Plaintiff Jeffrey R. Smith to Continue Hearing of Defendants' Request for Transfer of Venue, filed September 15, 2003, Ct. Rec. 30, is DENIED AS MOOT.

*9 7. Defendants' Motion To Stay Proceedings Pending Order of the Judicial Panel on Multidistrict Litigation, filed October 3, 2003, Ct. Rec. 36, and heard on an expedited basis, is DENIED.

8. Each party shall bear its own fees and costs in connection with this removal.

The District Court Executive is directed to file this Order and provide copies to counsel of record.

E.D.Wash.,2003.
Dix v. ICT Group, Inc.
Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23980702 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendants Motion to Stay Pending Order of the Judicial Panel on Multidistrict Litigation (Oct. 14, 2003)
• 2003 WL 23980698 (Trial Motion, Memorandum and Affidavit) Memorandum in Response to Defendants' Motion to Stay Pending Order of the Judicial Panel on Multidistrict Litigation (Oct. 10, 2003)
• 2003 WL 23980704 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. l 1407 (Oct. 8, 2003)
• 2003 WL 23980690 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendants' Motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22852135 (E.D.Wash.)
(Cite as: Not Reported in F.Supp.2d)

Stay Pending Order of the Judicial Panel on Multidistrict Litigation (Oct. 3, 2003)
• 2003 WL 23980684 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to: -Defendants' Joint Opposition to Plaintiffs' Motion to Remand; -Defendants' Joint Reply in Support of Motion to Transfer and in Opposition to Plaintiffs Motion for Continuance (Sep. 24, 2003)
• 2003 WL 23980676 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Reply in Support of Motion to Transfer and Request for Expedited Hearing, and in Opposition to Plaintiffs' Motion for Continuance of Motion to Transfer (Sep. 22, 2003)
• 2003 WL 23980667 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Request for Default and in Response to Defendants' Joint Opposition (Sep. 17, 2003)
• 2003 WL 23980651 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Opposition to Plaintiffs' Request for Entry of Default (Sep. 15, 2003)
• 2003 WL 23980658 (Trial Motion, Memorandum and Affidavit) Memorandum in Response to Defendants' Request for Expedited Hearing and in Support of Plaintiffs' Motion for Continuance (Sep. 15, 2003)
• 2003 WL 23980643 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief Supporting Motion to Remand (Sep. 9, 2003)
• 2003 WL 23980635 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Points and Authorities in Support of Motion to Transfer Pursuant to 28 U.S.C. l 1406(a) or, in the Alternative, 28 U.S.C. l 1404(a), and to Stay Proceedings Pending Resolution of Motion to Transfer (Sep. 3, 2003)
• 2:03cv00315 (Docket) (Aug. 27, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Jeff JANOVICI, Individually and On Behalf of All
Others Similarly Situated
v.
DVI, INC., et al.
Mark B. WILLIAMS, Individually and On Behalf
of All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Allison B. RICE, Individually and On Behalf of All
Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Bharat PAREKH, Individually and On Behalf of
All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Stephen BENCE, IV, Individually and On Behalf of
All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Murari OJHA, Individually and On Behalf of All
Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Kenneth GROSSMAN, Individually and On Behalf
of All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Shirley H. KAREL, Individually and On Behalf of
All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
**No. Civ.A.2:03CV04795-LD,**
**Civ.A.2:03CV04963-LD,**
**Civ.A.2:03CV05000-LD,**
**Civ.A.2:03CV05111-LD,**
**Civ.A.2:03CV05141-LD,**
**Civ.A.2:03CV05244-LD,**
**Civ.A.2:03CV05336-LD,**
**Civ.A.2:03CV05674-LD.**

Filed Aug. 20, 2003.
Nov. 25, 2003.

represented by Marc A. Topaz, Schiffrin &
Barroway, LLP, Bala Cynwyd, PA, Lead Attorney,
Attorney to be Noticed, for Jeff Janovici,
Individually and on Behalf of all Others Similarly
Situated, Plaintiff.
represented by Gary M. Schildhorn, Adelman
Lavine Gold & Levin, Philadelphia, PA, Lead
Attorney, Attorney to be Noticed, for DVI, Inc.,
Defendant.
represented by Maura E. Fay, Dilworth Paxson
LLP, Philadelphia, PA, Lead Attorney, Attorney to
be Noticed, for Steven R. Garfinkel, Defendant.
represented by Andrew L. Barroway, Darren J.
Check, Schiffrin & Barroway, LLP, Bala Cynwyd,
PA, Lead Attorney, Attorney to be Noticed, Jeffrey
M. Norton, Wechsler Harwood, LLP, New York,
NY, Lead Attorney, Attorney to be Noticed, for
Stephen Bence, IV, Movant.
represented by Deborah R. Gross, Law Offices
Bernard M. Gross, PC, Philadelphia, PA, Lead
Attorney, Attorney to be Noticed, Susan R. Gross,
Law Offices Bernard Gross, PC, Philadelphia, PA,
Lead Attorney, Attorney to be Noticed, for Milton
Wolson, Movant.
represented by DeBorah R. Gross, Susan R. Gross,
(See above for address), Lead Attorney, Attorney to
be Noticed, for Bharat Parekh, Movant.
represented by Deborah R. Gross, Susan R. Gross,
(See above for address), Lead Attorney, Attorney to
be Noticed, for James Schwartz, Movant.
represented by Robert A. Kauffman, Berger and
Montague, Philadelphia, PA, Lead Attorney,
Attorney to be Noticed, for Gottlieb Family
Foundation Trust, Movant.
represented by Robert A. Kauffman, (See above for
address), Lead Attorney, Attorney to be Noticed,
for Richard Morrell, Movant.
represented by M. Richard Komins, Barrack Rodos
& Bacine, Philadelphia, PA, Lead Attorney,
Attorney to be Noticed, for Thomas Sciba, Movant.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

represented by Steven A. Schwartz, Chimicles & Tikellis LLP, Haverford, PA, Lead Attorney, Attorney to be Noticed, for Kenneth Grossman, Movant.

represented by Steven A. Schwartz, (See above for address), Lead Attorney, Attorney to be Noticed, for Cedar Street Funds, Movant.

represented by Steven A. Schwartz, (See above for address), Lead Attorney, Attorney to be Noticed, for Cedar Street Offshore Fund, Movant.

represented by Joanne G. Noble, Trujillo Rodriguez & Richards LLC, The Penthouse, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, R. Bruce McNew, Taylor & McNew, Greenville, DE, Lead Attorney, Attorney to be Noticed, for Shirley H. Karel, Movant.

### *MEMORANDUM*

DAVIS, J.

**\*1** Presently pending before the Court are eight securities fraud class action lawsuits against Michael A. O'Hanlon ("O'Hanlon"), former Chief Executive Officer and President of DVI and a former member of its Board of Directors, and Steven R. Garfinkel ("Garfinkel"), Chief Financial Officer and Executive Vice President of DVI and a member of its Board of Directors, and the underwriter of its securities, Merrill Lynch & Co., Inc. ("Merrill Lynch"), who was, at all relevant times, DVI's financial advisor and the lead underwriter in managing DVI's securitizations. (Garfinkel and O'Hanlon are collectively identified as the "DVI Defendants"; O'Hanlon, Garfinkel and Merrill Lynch are collectively identified as " Defendants".) These eight actions (the "DVI Actions ") allege claims under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Defendants are alleged to have violated Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b-5.

> FN1. On August 13, 2003, DVI placed Garfinkel on administrative leave.

> FN2. DVI is not named as a defendant in

the instant action because it filed for Chapter 11 Bankruptcy protection on August 25, 2003

Numerous plaintiffs request consolidation the DVI Actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Multiple plaintiffs also petition to be appointed as Lead Plaintiff as well as for approval of their selection of Lead Counsel. On November 21, 2003, this Court held oral argument with respect to these motions. Based on the parties' submissions and the oral arguments presented to the Court, we grant the Cedar Street Group's Motion to Consolidate, appoint the Cedar Street Group as Lead Plaintiff, and approve Krislov & Associates, Ltd. to serve as Lead Counsel and Chimicles & Tikellis LLP to serve as Liaison Counsel.

### I. BACKGROUND

On July 25, 2003, James T. Bennett filed a class action on behalf of purchasers of DVI stock during the period of November 7, 2001 through June 27, 2003, against DVI (the "Bennett Complaint"), an independent specialty finance company for healthcare providers worldwide with $2.8 billions of managed assets, and O'Hanlon and Garfinkel. The Bennett Complaint alleged that DVI and the DVI Defendants violated Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b-5. Specifically, the Bennett Complaint alleged that DVI and the DVI Defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of DVI common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The Bennett Complaint alleged that the scheme did in fact: (i) deceive the investing public regarding DVI's business and operations and the intrinsic value of DVI securities; (ii) enable DVI to sell $25 million of its subordinated convertible notes during the class period; (iii) enable DVI to secure credit facilities for $175 million on favorable terms; and (iv) cause Bennett and other members of the Class to purchase DVI securities at artificially inflated prices. (Bennett Compl. ¶ 56). On August 26, 2003, the Bennett Complaint was voluntarily dismissed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: Not Reported in F.Supp.2d)

**\*2** On August 20, 2003, Jeff Janovici ("Janovici") filed a class action against DVI, O'Hanlon and Garfinkel (DVI, O'Hanlon and Garfinkel collectively identified as the "Janovici Defendants") on behalf of purchasers of DVI stock during the period of November 7, 2001 through June 27, 2003, alleging violations of Section 10(b) and 20(a) and the Exchange Action and Rule 10b-5 (the "Janovici Complaint"). Specifically, the Janovici Complaint alleges that the Janovici Defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of DVI securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding DVI's business and operations and the intrinsic value of DVI securities; (ii) enabled DVI to sell $25 million of its subordinated convertible notes during the class period; (iii) enabled DVI to secure credit facilities for $175 million on favorable terms; and (iv) caused plaintiff and members of the Class to purchase DVI securities at artificially inflated prices. (Janovici Compl. ¶ 14). On September 15, 2003, the Court entered an Order, pursuant to 11 U.S.C. § 362, staying the Janovici action with respect to DVI because the company had filed for bankruptcy protection.

> FN3. The law firm of Schiffrin & Barroway filed the Janovici Complaint on behalf on Mr. Janovici. Schiffrin & Barroway also filed the Bennett Complaint on behalf of Mr. Bennett.

On September 3, 2003, Mark B. Williams (" Williams") filed a class action against on behalf of purchasers of DVI common stock and Senior Notes during the period of November 7, 2001 through August 13, 2003 (the "Class Period"), O'Hanlon and Garfinkel alleging violations of Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b-5 (the "Williams Complaint"). Specifically, the Williams Complaint alleges that the DVI Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (iii)

engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for DVI's securities. (Williams Compl. ¶ 73).

> FN4. Three of the complaints define the class period as November 7, 2001 through June 27, 2003, and four of the complaints extend the class period through August 13, 2003. Because four of the complaints allege that false and/or materially misleading statements were made through August 13, 2003, we find that Class Period should be extended through that date.
> One complaint, Civil Action No. 03-5674, however, defines the class period as September 1, 2001 through August 13, 2003. Because the complaint filed in this actions fails to allege that any false and/or materially misleading statements were made prior to November 7, 2001, we find that there is no basis for setting the Class Period prior to this date.

In accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(I), Williams published a notice of pendency of the action in *Business Wire* on September 3, 2003. Since the filing of the Williams Complaint, six other complaints arising out of similar, if not identical, facts alleging parallel claims have been filed in the Eastern District of Pennsylvania. In addition to these six complaints, six plaintiff and/or plaintiff "groups" filed motions requesting: (i) consolidation of the actions; (ii) appointment as lead plaintiff; and (ii) approval of selection of lead counsel.

> FN5. The following plaintiffs filed complaints did not move for appointment as Lead Plaintiff: (I) Mark B. Williams, (ii) Jeff Janovici, (iii) Murari P. Ojha, and (iv) Allison B. Rice.

### A. The Movants

### 1. Thomas Sciba

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: Not Reported in F.Supp.2d)

Mr. Sciba is an individual investor who allegedly suffered losses of approximately $30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements.

> FN6. Mr. Sciba did not pursue appoint as Lead Plaintiff beyond the filing of his motion for appointment as lead plaintiff.

### 2. Stephen Bence, IV

*3 Mr. Bence is an individual investor who allegedly suffered losses of nearly $60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements.

### 3. The Wolson Group

The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and James Schwartz. The Wolson Group asserts losses of approximately $60,656.30.

### 4. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual investor Richard W. Morrell. The Gottlieb/Morrell Group claims to have suffered losses of approximately $46,000.

### 5. The Cedar Street Group

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses in excess of $1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements.

### 6. The Karel Group

The Karel Group is comprised of seven individual investors who allege a preexisting investment relationship. The Karel Group claims to have suffered losses of approximately $333,000.

## II. DISCUSSION

### A. Motions to Consolidate

A court has broad discretion to consolidate actions involving common questions of law or fact ... if it will facilitate the administration of justice." *See Smithkline Beecham Corp. v. Geneva Pharmaceuticals, Inc.,* 2001 WL1249694, at *5 (E.D.Pa. Sept. 26, 2001) (citing Fed.R.Civ.P. 42(a) ). Rule 42(a) provides:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any of all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). "When considering consolidation the court 'must balance the benefits of judicial economy and expediting the litigation against the possibility of prejudice.' ' *Smithkline Beecham,* 2001 WL1249694, at *5 (quoting *Kerley v. Great Lakes Dredge & Dock Co.,* 1996 WL 131136, at *1 (E.D.Pa. March 20, 1996)); *see also Rosario v. SCM Group USA, Inc.,* 2003 WL 21982116, at *1 (E.D.Pa. July 2, 2003) (" Consolidation is at the discretion of the trial court and "should be permitted where the consolidation of separate actions presenting common questions of law or fact will promote convenience and economy in judicial administration.") Moreover, the PSLRA directs that cases should be consolidated where there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The actions at issue share significant common issues of law and fact. A review of each of the complaints reveals that each case involves claims against O'Hanlon and Garfinkel for violations of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: Not Reported in F.Supp.2d)

Page 5

Rule 10b-5 and Sections 10(b) and 20(a) of the Exchange Act. Indeed, the factual basis supporting the claims asserted in the DVI Actions are parallel. The Plaintiffs are all investors who purchased common stock and/or Notes during the Class Period. Additionally, each Plaintiff, in purchasing shares of DVI stock, relied upon statements contained in the same public filings, press releases and other publications. Although the Cedar Group is unique in the claims asserted against Merrill Lynch, this difference is not determinative because the Cedar Group's claims against Merrill Lynch are premised on the same facts and statutory provisions as the claims against O'Hanlon and Garfinkel. *See Skwortz v. Crayfish Co.,* 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) (granting consolidation of eleven complaints where each complaint was based on the same facts and statutory provision, despite the fact that all the complaints did not contain the same claims against the same defendants) (citations omitted). That the actions share common questions of law and fact and should be consolidation is further supported by the fact that each of the movants requested consolidation pursuant to Rule 42(a) and counsel for the moving plaintiffs expressly agreed on consolidation at oral argument. Because consolidation will facilitate the administration of justice and promote judicial economy without any foreseeable prejudice, the Motions to Consolidate filed by the Cedar Street Group in each of the DVI Actions are granted.

## B. Appointment of Lead Plaintiff

*4 The PSLRA instructs that, "as soon as practicable" after the resolution of the motions to consolidate, the Court shall appoint the most adequate plaintiff to serve as lead plaintiff of the class. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

In 1995, in response to perceived abuses in securities fraud class actions, Congress enacted the PSLRA. *See* S.Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. "The purpose behind the PSLRA is to prevent ' lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issues, whose interests

are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." ' *Crayfish Co.,* 2001 WL 1160745, *2 (citations omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs. *Id.* (citations omitted). Accordingly, the PSLRA regulates the procedures for bringing class actions under the Securities Act.

The PSLRA requires plaintiffs filing private securities class action complaints to publish a notice of pendency of the suit in a widely circulated business publication or wire service no later than twenty days after the complaint is filed. 15 U.S.C. § 78u-4(a)(3)(A)(I). No later than sixty days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). If a motion for consolidation has been made, the court shall not appoint a lead plaintiff until after it renders a decision on the motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The PSLRA instructs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). To this end, the statute creates a rebuttable presumption that the most adequate plaintiff is "the person or group of persons that-(aa) has either filed the complaint *or* made a motion in response to a notice ...; (bb) in the determination of the court, has the largest financial interests in the relief sought by the class; (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). This presumption may only be rebutted by a member of the purported plaintiff class upon proof that the presumptively most adequate plaintiff-"(aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cendant Corp. Lit.,* 264 F.3d 201, 266-8 (3d Cir.2001). The process of determining the "most adequate"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

plaintiff has been summarized by the Third Circuit: "The Reform Act establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class had rebutted the presumption." *In re Cendant Corp. Lit.,* 264 F.3d at 262 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) & (II)).

### 1. Adequacy of Notice and Filing a Timely Complaint and/or Motion

**\*5** The PSLRA instructs that, within 20 days of filing a complaint under the statute, plaintiff or plaintiffs shall "cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class ... (I) of pendency of the action, the claims asserted therein, and the purported class period; and (II) that not later than 60 days after the date on which the notice was published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(I). If more than one action on behalf of the class asserting substantially the same claims or claims is filed, only the plaintiff or plaintiffs in the "first filed action shall be required to cause notice to be published." 15 U.S.C. § 78u-4(a)(3)(A)(ii).

In deciding a motion for the appointment of lead plaintiff under the PSLRA, the Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation. *See Ravens v. Iftikar,* 174 F.R.D. 651, 654-55 (N . D.Cal.1997) (quoting *House Conf. Rep. No. 104-369,* 104th Cong., 1st Sess., 1996 U.S.C.C.A.N. 730, 731); *see also Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1309 (N.D.Ala.2000) ("A district court must exercise exceptional care to insure [sic] that in applying the lead plaintiff provisions of the statute, the concerns that motivated Congress are carefully heeded, as the determination of lead plaintiff by the district court

is, with probably little exception, not immediately subject to review."); *In re Oxford Health Plans, Inc. Securities Lit.,* 182 F.R.D. 42, 45 (S.D.N.Y.1998) ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation."). This means that in order for a notice of pendency to encourage the most adequate plaintiff to come forward and control the litigation, it must contain accurate information from which an interested class member may contact the Court and readily obtain a copy of the complaint in a *pending* action and/or file a motion to be appointed as lead counsel in that case. *See California Public Employees' Retirement System v. Chubb Corp.,* 127 F.Supp.2d 572, 576 (D.N.J.2001) (finding a notice inadequate where it failed to disclose the caption of the case, the docket number, the judge to whom the case was assigned, the vicinage in which the judge sits, or the address of the Court because "an interested class member would not even know to which courthouse to go to examine a copy of the complaint" or "would not know before which judge an appropriate motion should be filed."). Requiring the provision of such information comports with the objectives of the PSLRA by ensuring that "institutional plaintiffs with expertise in the securities markets and real financial interests in the integrity of the markets and outcome of the litigation would come forward and control the litigation, rather than the lawyers and their professional plaintiffs." *Id.* at 576. Most significantly, providing information from which a interested class member may contact the Court and readily obtain a copy of the complaint in a *pending* action and/or file a motion to be appointed as lead counsel in that case shields against lawyer -driven litigation because such class members are not forced to contact noticing counsel for additional information to aid in their decision of whether to move for lead plaintiff status.

**\*6** On July 25, 2003, the Bennett action was filed by the law firm of Schriffrin & Barroway. On July 31, 2003, within 20 days of filing his complaint, Mr. Bennett caused a notice to be published noticing the pendency of the Bennett action. On August 20, 2003, Schriffrin & Barroway filed a substantially similar action on behalf of Mr. Janovici. On August 26, 2003, the Bennett action

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: Not Reported in F.Supp.2d)

was voluntarily dismissed. On September 3, 2003, three notices of pendency were published in three different business-oriented publications and wire services. Two of the notices, one published by Schiffrin & Barroway in *PrimeZone Media Network*, and the other, published by the law firm of Caully Geller Bowman & Rudman, LLP in *PR Newswire*, noticed the pendency of the Bennett action despite the fact that the Bennett action had not been " pending" for over one week. Both of these notices stated that September 29, 2003 was the moving deadline. The third notice published on September 3, 2003 by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP in *Business Wire*, noticed the pendency of the Williams action, which was filed that very day. The Williams notice stated that November 3, 2003 was the moving deadline.

In the instant action, we find that the Janovici action was the first filed action in the DVI litigation because the Bennett was voluntarily dismissed prior to the consolidation. Consequently, for purposes of the PSLRA notice requirements, we find that the Bennett notice has no effect. More significantly, we find that the Mr. Janovici failed to comply with the notice requirements of the PSLRA because he did not notice the pendency of the Janovici action, which notice is required by the plain language of the PSLRA. Indeed, the September 3, 2003 notices filed by Schiffrin & Barroway and Caully Geller incorrectly noticed the pendency of the Bennett action, which notice was clearly inaccurate because the Bennett action was, in fact, no longer pending. Purported class members could not have relied on either of these notices for sufficient information from which they could contact the Court and readily obtain a copy of the complaint for an action filed on behalf of DVI securities holders on July 25, 2003 because no such complaint existed. Additionally, purported class members could not have filed a motion for appointment as lead plaintiff in an action that was no longer pending. We find that such misinformation in a notice of pendency does not encourage the most adequate plaintiff to come forward and take control of the litigation; therefore, it contravenes the very purpose of the PSLRA.

If the Janovici action had been properly noticed on September 3, 2003, that is, if it had noticed the

pendency of the Janovici action rather than the Bennett action, the PSLRA would have required that such notice inform purported class members that they may move the Court "not later than 60 days after the date on which the notice was published" to be appointed as lead plaintiff. Sixty days from September 3, 2003 was November 3, 2003. Because the plain language of the PSLRA requires that purported class members be given 60 days from the publication date of the notice of pendency in the first filed action, we hold that November 3, 2003 was the moving deadline, as the Williams notice accurately informs the class.

*7 After an independent review of the Williams notice, we find that it otherwise complies notice complies with the requirements of the PSLRA. The Williams notice states:
The law firm of Milberg Weiss Bershad Hynes & Lerach LLP announces that a class action lawsuit was filed on September 3, 2003, on behalf of purchasers of the securities of DVI, Inc ("DVI" or the "Company") (OTC: DVIX. PK) between November 7, 2001 and August 13, 2003, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the " Exchange Act"). A copy of the complaint filed in this action in available from the Court, or can be viewed on Milberg Weiss' website at: *http:// www.milberg.com/cases/dvi/.*
The action is pending in the United States District Court for the Eastern District of Pennsylvania, against Defendants Michael A. O'Hanlon, former President and Chief Executive Officer and Director of DVI, and Steven R. Garfinkel, DVI's former Chief Financial Officer.
The Complaint alleges that defendants violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10-b-5 promulgated thereunder, by issuing a series of material misrepresentations to the market between November 7, 2001 and August 12, 2003. According to the complaint, throughout the Class Period, Defendants engaged in a fraudulent scheme to deceive the public as to DVI's true financial condition. Defendants allegedly issued positive statements regarding DVI's business and operations, and overall growth in publicly disseminated press releases and SEC filings and claimed that they were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 8

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

a fair presentation of DVI business. According to the complaint, Defendants failed to disclose material adverse facts, including, but not limited to, the Company's failure to write down the value of certain impaired assets; its failure to properly account for and report non-recurring transactions; its failure to adopt adequate internal control; and its material overstatement of its assets and earnings. As a result of Defendants' fraudulent scheme, DVI stock became artificially inflated during the Class Period, trading as high as $20.99 per share on June 17, 2002, thereby causing damages to Class Period purchasers of DVI securities.

On August 13, 2003, after the market closed, Defendants issued a press release revealing DVI's intention to file for Chapter 11 Bankruptcy protection and that the Company had not yet secured debtor-in-possession financing. The Company blamed its dire situation on the "recent discovery of apparent improprieties in its prior dealings with lenders involving misrepresentations as to the amount and nature of collateral pledged to lenders." In the same release, Defendants announced that DVI's Chief Financial Officer, Defendant Steven Garfinkel, had been placed on administrative leave. This revelation came after Defendants announced that DVI's auditor, Deloitte & Touche LLP, had resigned over a dispute concerning the Company's accounting for certain transactions; that the Company had depleted all availability on its credit facilities; that DVI failed to make interest payments on it 9 7/8 percent Senior Notes due to severe liquidity constraints; and that the SEC had rejected the Company's filing of its quarterly report for the third quarter of 2003. Immediately following the [sic] the New York Stock Exchange suspended trading of DVI stock and Senior Notes, pending delisting. On the same day, DVI stock closed at $0.30 per share, representing a one-day decline of 62.50 percent.

*8 If you bought the securities of DVI between November 7, 2001 and August 13, 2003 and sustained damages, you may, no later than November 3, 2003, request that the Court appoint you as lead plaintiff. According to the Exchange Act, a notice must be published within 20 days after the date on which the first complaint is filed. A notice was previously published in connection with a related action against the same Defendants. That action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003, sixty days from the publication date of this notice. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class. Under certain circumstances, one or more class members may together serve as "lead plaintiff." Your ability to share in any recovery is not, however, affected by the decision whether or not to serve as lead plaintiff. You may retain Milberg Weiss Bershad Hynes & Lerach LLP, or other counsel of your choice, to serve as your counsel in this action.

Milberg Weiss Bershad Hynes & Lerach LLP ( *http://www.milberg.com*) is a 190-lawyer firm with offices in New York City, San Diego, San Francisco, Los Angeles, Boca Raton, Philadelphia and Seattle, and is active in major litigations pending in federal and state courts throughout the United States. Milberg Weiss has taken a leading role in many important actions on behalf of defrauded investors, consumers, and others, and has been responsible for more than $20 billion in aggregate recoveries. Please contact Milberg Weiss [sic] website for more information about the firm. If you wish to discuss this action with us, or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following attorneys....

Unlike the first three notices, the Williams notice lists the names of the defendants, providing purported class members with sufficient information from which they could contact the Court and obtain a copy of the complaint and/or file a motion for appointment as lead plaintiff. Moreover, the Williams notice advises the purported DVI Class of the pendency of the action, the claims asserted, and the purported Class Period. Significantly, the Williams notice advises the purported DVI Class that a member may move to serve as lead plaintiff, explains the significance of a lead plaintiff, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 9

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

specifies the date by which such a motion must be filed-November 3, 2003. The Williams notice also advises that potential class members may retain counsel of their choice. For the above-stated reasons, the Williams notice satisfies the notice requirements of the PSLRA.

### 2. The Most Adequate Plaintiff

**\*9** The PSLRA instructs the Court to appoint the presumptively "most adequate" plaintiff to serve as lead plaintiff. The presumptive "most adequate" plaintiff for the DVI Class is the plaintiff that satisfies the each of following: (1) has either filed a complaint *or* made a motion in response to a notice, (2) in the determination of the court, has the largest financial interests in the relief sought by the class, and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). For the reasons that follow, the Court finds that the Cedar Street Group is the most adequate plaintiff and appoints the Cedar Street Group to serve as lead plaintiff for the Class in the DVI Action.

First, pursuant to the PSLRA statutory framework, the "most adequate" plaintiff must have either filed a complaint in the consolidated actions or timely moved for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cephalon Securities Lit.,* 1998 WL 4700160, at \*5 (E .D. Pa. Aug. 12, 1998) (appointing as lead plaintiff an individual who, although he did not move for appointment, was a named plaintiff in one of the consolidated class action complaints); *In re Initial Public Offering Securities Lit.,* 214 F.R.D. 117, 120 n. 4 (S.D.N.Y.2002) (finding that where numerous complaints have been consolidated, the filing of any of the initially consolidated actions will suffice for purposes of the lead plaintiff selection because the PSLRA specifically instructs courts to rule on consolidation prior to approving lead plaintiff). A motion for appointment of lead plaintiff is timely when filed "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Generally the 60 day expiration period begins to run

from the publication date on which the first notice of pendency was filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiff in the first filed action shall be required to cause notice to be published ..." ) This rule does not apply, however, where the first notice of pendency fails to provide adequate information pursuant to the terms of the PSLRAthe statutory 60 day period beings to run from the date of the first notice that complies with the PSLRA. *See In re Lucent Technologies, Inc. Securities Lit.,* 221 F.Supp.2d 463, 466 (D.N.J.2001) (calculating the 60 day period for filing a motion to be appointed as lead plaintiff pursuant to the PSLRA from the date of publication of the second notice of pendency where the first notice of pendency did not contain adequate information). Additionally, where multiple notices are published informing class members of the pendency of litigation and the notices contain conflicting information regarding the expiration of the 60 day period, it would be inconsistent with basic notions of fairness and the purposes of the notification provisions of the PSLRA to mechanically enforce a strict time limit with respect to the 60 day expiration period. *See Steiner v. Frankino,* 1998 LEXIS 21804, at \*13 (N.D.Ohio July 16, 1998) (recognizing that it would be improper to enforce a strict time limit with respect to the 60 day expiration period where the publication of multiple notices could appear to expand the time period in the eyes of class members); *see also Schulman v. Lumenis, Ltd.,* 2003 WL 21415287, at \*4 (S.D.N.Y. June 18, 2003) (noting that courts have taken different approaches with respect to motions filed after the 60 day period has expired and citing to *Steiner v. Frankino* for this proposition).

**\*10** In the instant action, any plaintiff who either (a) filed a complaint in these consolidated actions, or (b) moved to be appointed lead plaintiff not later than November 3, 2003 satisfies the first requirement of the "most adequate" plaintiff test. With respect to motion for appointment as lead plaintiff, we hold that November 3, 2003, not September 29, 2003, was the expiration date for the 60 day period to move for several reasons. First, as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: Not Reported in F.Supp.2d)

previously noted, the first notice of pendency to comply with the requirements of the PSLRA stated that November 3, 2003 was the moving deadline. Additionally, eleven notices were published with three containing the November 3, 2003 deadline and two providing no specific deadline at all. Indeed, counsel for the Gottlieb/Morrell Group published two notices, one stating that September 29, 2003 was the moving deadline, and the other stating that November 3, 2003 was the moving deadline. More significantly, the second of the two Gottlieb/Morrell notices explicitly stated that the September 29, 2003 deadline was no longer effective: "A notice was previously published in connection with a related action against the same Defendants. That action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003." Based on a review of the notices in the DVI Action, the Court holds that, indeed, under these particular circumstances, multiple notices with differing deadlines certainly could have created confusion among potential class members with respect to the moving deadline. The potential for such confusion in the case further supports our conclusion that, under these circumstances, setting November 3, 2003 as moving deadline furthers the objectives of the PSLRA.

In the instant action, each of the movants meets the first requirement of the "most adequate" plaintiff test because they either filed an initially-filed complaint in the consolidated action or timely moved for appointment as lead plaintiff.

### 2. The Plaintiff with the Largest Financial Interest

The PSLRA instructs that the "most adequate," or lead plaintiff have the largest financial interest in the relief sought. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(2).

### a. Thomas Sciba

Mr. Sciba is an individual investor who allegedly

suffered losses of approximately $30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. At the time Mr. Sciba moved for appointment as lead plaintiff, he believed he had the largest financial interest in the relief sought by the DVI Class. Contrary to Mr. Sciba's belief, his financial interest is subordinate to the interests of others in the DVI Class. Therefore, Mr. Sciba is not the presumptive "most adequate" plaintiff.

### b. Stephen Bence, IV

Mr. Bence is an individual investor who allegedly suffered losses of nearly $60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. Mr. Bence asserts that he is the movant with the largest individual financial stake in this litigation and therefore is the presumptive lead plaintiff. Contrary to Mr. Bence's assertion, he does not have the largest individual financial stake in this litigation. Therefore, Mr. Bence is not the presumptive "most adequate" plaintiff.

### c. The Wolson Group

*11 The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and James Schwartz. The Wolson Group alleges it has the largest financial interest of any movant that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Specifically, the Wolson Group claims to have suffered losses of approximately $60,656.30. Indeed, the Wolson Group is not the movant with the largest financial interest that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Therefore, the Wolson Group is not the presumptive "most adequate" plaintiff.

### d. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: Not Reported in F.Supp.2d)

investor Richard W. Morrell. Upon information and belief, the Gottlieb/Morrell Group alleges that, of all the movants, they have the largest financial interest in this matter, claiming losses of approximately $46,000. Moreover, the Gottlieb/Morrell Group claims to be the only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Contrarily, the Gottlieb/Morrell Group neither suffered the largest financial losses in this matter nor is the only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Therefore, the Gottlieb/Morrell Group is not the presumptive " most adequate" plaintiff.

### e. The Cedar Street Group

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses in excess of $1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements. It follows then, that in the instant DVI Action the Cedar Street Group clearly has the largest financial interest in the relief sought. Indeed, none of the other movants dispute this fact and, as discussed below, the Karel Group expressly concedes this point. Accordingly, it is the Cedar Street Group that satisfies the second requirement of the "most adequate" plaintiff test.

### f. The Karel Group

The Karel Group is comprised of seven individual investors who allege a preexisting investment relationship. The Karel Group acknowledges that the losses of the Cedar Group surpass those of Plaintiff Karel individually and the Karel Group in the aggregate, and that the Cedar Street Group should be named a lead plaintiff. Accordingly, the Karel Group requests that the Court consider appointing the Karel Group as co-lead plaintiff and counsel for the Karel Group as co-lead counsel with

counsel for the Cedar Street Group. The Karel Group argues that its appointment as co-lead plaintiff would benefit the class because it would represent the unique perspective of individual investors. Although the Karel Group acknowledges that the Cedar Street Group also includes an individual investor, Kenneth Grossman, the Karel Group suggests that Mr. Grossman's position as a 50% shareholder of the General Partner of the Cedar Street Fund may undermine his capacity to represent the 'unique perspective' of the individual investor. The Karel Group, however, provides no support for this conclusory allegation. As the Karel Group concedes, it is not the presumptive "most adequate" plaintiff.

### 3. Adequately Represent the Interests of the Class

*12 In addition to having the largest financial interest in the relief sought, the presumptive "most adequate" plaintiff must also "otherwise satisf [y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as class representative if:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a) is "otherwise" satisfied if the movant " makes a *prima facie* showing that it satisfies the typicality and adequacy requirements." *Smith v. Suprema Specialties,* 206 F.Supp.2d 627, 632 (D.N.J.2001) (citing *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 924 (3d Cir.1992))

The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. *See Weiss v. York Hosp.,* 745 F.2d 786, 809 n. 36 (3d Cir.1984). That the claims of the class representative be typical of claims of the class does not require that they be identical. *See Gen. Tel. Co.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 12

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

*Of the Southwest v. Falcon,* 247 U.S. 147, 155 (1982).

The "fairly and adequately" representing the class requirement is satisfied "when both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of other class members." *Suprema Specialties,* 206 F.Supp.2d at 633 (citations omitted). The Third Circuit explained, that when assessing this requirement, courts should consider whether the proposed lead plaintiff "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig .,* 264 F.3d at 265 (quoting *Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988)).

The Cedar Street Group satisfies both the typicality and adequacy requirements of Rule 23(a). The Cedar Street Group represents the interests of the purchasers of both DVI common stock and DVI 9.875% Senior Notes. The Cedar Street Group's interests are typical because they, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. Specifically, the Cedar Street Group: (a) acquired DVI common stock and 9.875% Senior Notes during the Class Period; (b) at market prices allegedly artificially inflated as a result of the Defendants' false and/or misleading statements; (c) which statements were in violation of federal securities laws; and (d) suffered damages thereby. Additionally, the Cedar Street Group adequately represents the interests of the Class because: (a) its interests are clearly aligned with purchasers of both common stock and 9.875% Senior Notes; (b) it is comprised of both individual and institutional investors; and (c) there is no evidence of their interests conflicting with those of the other class members. Moreover, we find that the Cedar Group's selected counsel are capable of satisfying their obligations; evidence of conflict with the interests of other class members is lacking. Thus, the Cedar Street Group satisfies the last requirement of the presumptive "most adequate" plaintiff test.

### 4. Presumption Not Rebutted

**\*13** The presumption of the "most adequate" plaintiff, however, "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptive most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Although some of the movants suggest that it is *possible* that the Cedar Street Group *may* not be able to adequately represent the interest of the Class, such speculation is insufficient to overcome the presumption under the PSLRA. No member of the purported plaintiff Class has submitted proof or demonstrated a reasonable basis for finding that the Cedar Street Group will not fairly and adequately protect the interest of the Class, or that it is subject to unique defenses which render it incapable of adequately representing the Class. Therefore, we find that the presumption has not been rebutted and that the Cedar Street Group remains the presumptive "most adequate" plaintiff.

Additionally, the Court finds that the interests of the Class would not be enhanced by appointing the Karel Group as co-lead plaintiff. The Karel Group has not demonstrated the necessity or efficacy to the Class' benefit for such designation as co-lead plaintiff. The Cedar Street Group is comprised of individual and institutional investors and contains holders of both DVI common stock and Senior Notes. Moreover, there is no conflict of interest that prevents the Cedar Street Group from representing the interests of the Karel Group or the rest of the Class. Thus, we conclude that the Cedar Street Group alone will fairly and adequately represent the interests of the Class.

### III. Approval of Selection of Lead Counsel

Under the PSLRA, "[t]he most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Suprema Specialties,* 206 F.Supp.2d at 641 (quoting

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 13

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

§ 78u-4(a)(3)(B)(v)). The Third Circuit has commented on this issue: "We stress, however, that the question at this stage is not whether the court would 'approve' that movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." *In re Cendant Corp. Lit.,* 264 F.3d at 266. Stated differently, once the presumption is triggered, the question is "not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job" *Id.* at 268. Indeed, the Conference Committee Report and the Senate Report "indicate that the court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to 'protect the interest of the plaintiff class.' " *Suprema Specialties, Inc.,* 206 F.Supp.2d at 641 (quoting H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734; S.Rep. No. 104-98 at 11-12 (1995) *reprinted in* 1995 U.S.C.C.A.N. 679, 690).

**\*14** The Court does not find such intervention necessary to "protect the plaintiff class." Therefore, Krislov & Associates, Ltd. is approved to serve as Lead Counsel and Chimicles & Tikellis LLP is approved to serve as Liaison Counsel.

> FN7. To the extent that the Karel Group submitted a request for the appointment of its counsel as co-lead counsel regardless of the Karel Group being appointed as co-lead plaintiff, such request is also denied.

### CONCLUSION

For the foregoing reasons, the Court grants Cedar Street Group's Motion to Consolidate, appoints the Cedar Street Group as Lead Plaintiff, and approves Krislov & Associates, Ltd. to serve as Lead Counsel and Chimicles & Tikellis LLP to serve as Liaison Counsel. An appropriate order follows.

E.D.Pa.,2003.
Janovici v. DVI, Inc.
Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636

Briefs and Other Related Documents (Back to top)

• 2003 WL 23902652 (Trial Motion, Memorandum and Affidavit) The Karel Group's Memorandum of Law in Support of Motion to Consolidate, Appoint Lead Plaintiff, and Approve Co-Lead Counsel (Nov. 3, 2003)
• 2003 WL 23905548 (Trial Motion, Memorandum and Affidavit) Motion By the Karel Group to Consolidate, Appoint Lead Plaintiff, and Approve Co-Lead Counsel (Nov. 3, 2003)
• 2003 WL 23902167 (Trial Motion, Memorandum and Affidavit) The Wolson Group's Memorandum of Law in Further Support of Its Motion for Appointment as Lead Plaintiff and in Opposition to Competing Movants' Applications (Oct. 16, 2003)
• 2003 WL 23902172 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion of Stephen Bence, IV to Consolidate Actions, Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to Competing Motions (Oct. 16, 2003)
• 2003 WL 23902641 (Trial Motion, Memorandum and Affidavit) The Wolson Group's Memorandum of Law in Further Support of its Motion for Appointment as Lead Plaintiff and in Opposition to Competing Movants' Applications (Oct. 16, 2003)
• 2003 WL 23902646 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion of Stephen Bence, IV to Consolidate Actions, Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to Competing Motions (Oct. 16, 2003)
• 2003 WL 23902914 (Trial Motion, Memorandum and Affidavit) The Wolson Group's Memorandum of Law in Further Support of Its Motion for Appointment as Lead Plaintiff and in Opposition to Competing Movants' Applications (Oct. 16, 2003)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

• 2003 WL 23902920 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion of Stephen Bence, IV to Consolidate Actions, be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to Competing Motions (Oct. 16, 2003)

• 2003 WL 23903690 (Trial Motion, Memorandum and Affidavit) The Wolson Group's Memorandum of Law in Further Support of its Motion for Appointment as Lead Plaintiff and in Opposition to Competing Movants' Applications (Oct. 16, 2003)

• 2003 WL 23903699 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion of Stephen Bence, Iv to Consolidate Actions, be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to Competing Motions (Oct. 16, 2003)

• 2003 WL 23904083 (Trial Motion, Memorandum and Affidavit) The Wolson Group's Memorandum of Law in Further Support of its Motion for Appointment as Lead Plaintiff and in Opposition to Competing Movants' Applications (Oct. 16, 2003)

• 2003 WL 23904096 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion of Stephen Bence, IV to Consolidate Actions, Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to Competing Motions (Oct. 16, 2003)

• 2003 WL 23904845 (Trial Motion, Memorandum and Affidavit) The Wolson Group's Memorandum of Law in Further Support of its Motion for Appointment as Lead Plaintiff and in Opposition to Competing Movants' Applications (Oct. 16, 2003)

• 2003 WL 23904862 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion of Stephen Bence, IV to Consolidate Actions, Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to Competing Motions (Oct. 16, 2003)

• 2003 WL 23905925 (Trial Motion, Memorandum and Affidavit) The Wolson Group's Memorandum of Law in Further Support of Its Motion for Appointment as Lead Plaintiff and in Opposition to Competing Movants' Applications (Oct. 16, 2003)

• 2003 WL 23905939 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion of Stephen Bence, IV to Consolidate Actions, be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to Competing Motions (Oct. 16, 2003)

• 2003 WL 23905528 (Trial Pleading) Complaint - Class Action Class Action Complaint for Violations of Federal Securities Laws (Oct. 10, 2003)

• 2:03cv05674 (Docket) (Oct. 10, 2003)

• 2003 WL 23902160 (Trial Motion, Memorandum and Affidavit) Motion of the Cedar Street Group for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Oct. 8, 2003)

• 2003 WL 23902634 (Trial Motion, Memorandum and Affidavit) Motion of the Cedar Street Group for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Oct. 8, 2003)

• 2003 WL 23902910 (Trial Motion, Memorandum and Affidavit) Motion of the Cedar Street Group for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Oct. 8, 2003)

• 2003 WL 23903684 (Trial Motion, Memorandum and Affidavit) Motion of the Cedar Street Group for Consolidation, Appointment As Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Oct. 8, 2003)

• 2003 WL 23904066 (Trial Motion, Memorandum and Affidavit) Motion of the Cedar Street Group for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Oct. 8, 2003)

• 2003 WL 23904829 (Trial Motion, Memorandum and Affidavit) Motion of the Cedar Street Group for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Oct. 8, 2003)

• 2003 WL 23905911 (Trial Motion, Memorandum and Affidavit) Motion of the Cedar Street Group for Consolidation, Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Liaison Counsel (Oct. 8, 2003)

• 2003 WL 23902155 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Stephen Bence, IV to Consolidate Actions, to be Appointed Lead Plaintiff and for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 15

Not Reported in F.Supp.2d, 2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: Not Reported in F.Supp.2d)**

Approval of Lead Plaintiff's Selection of Lead Counsel (Sep. 29, 2003)
• 2003 WL 23902618 (Trial Motion, Memorandum and Affidavit) Motion of Thomas Sciba to Consolidate Pending Cases, for Appointment as Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of Counsel (Sep. 29, 2003)
• 2003 WL 23902628 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Stephen Bence, IV to Consolidate Actions, to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel (Sep. 29, 2003)
• 2003 WL 23902901 (Trial Motion, Memorandum and Affidavit) Thomas Sciba's Memorandum of Law in Support of His Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel (Sep. 29, 2003)
• 2003 WL 23902903 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Stephen Bence, IV to Consolidate Actions, to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel (Sep. 29, 2003)
• 2003 WL 23903662 (Trial Motion, Memorandum and Affidavit) Motion of Thomas Sciba to Consolidate Pending Cases, for Appointment As Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of Counsel (Sep. 29, 2003)
• 2003 WL 23903674 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Stephen Bence, IV to Consolidate Actions, to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel (Sep. 29, 2003)
• 2003 WL 23904035 (Trial Motion, Memorandum and Affidavit) Motion of Thomas Sciba to Consolidate Pending Cases, for Appointment as Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of Counsel (Sep. 29, 2003)
• 2003 WL 23904049 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Stephen Bence, IV to Consolidate Actions, to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel (Sep. 29, 2003)
• 2003 WL 23904797 (Trial Motion, Memorandum and Affidavit) Motion of Stephen Bence, IV to Consolidate Actions, to be Appointed Lead Plaintiff

and for Approval of Lead Plaintiff's Selection of Lead Counsel (Sep. 29, 2003)
• 2003 WL 23905875 (Trial Motion, Memorandum and Affidavit) Motion of Thomas Sciba to Consolidate Pending Cases, for Appointment as Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of Counsel (Sep. 29, 2003)
• 2003 WL 23905893 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Stephen Bence, IV to Consolidate Actions, to Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel (Sep. 29, 2003)
• 2:03cv05244 (Docket) (Sep. 17, 2003)
• 2003 WL 23902607 (Trial Pleading) Class Action Complaint for Violations of the Federal Securities Laws (Sep. 16, 2003)
• 2:03cv05141 (Docket) (Sep. 12, 2003)
• 2003 WL 23904003 (Trial Pleading) Class Action Complaint for Violations of the Federal Securities Laws (Sep. 11, 2003)
• 2003 WL 23903638 (Trial Pleading) Class Action Complaint for Violations of Federal Securities Laws (Sep. 10, 2003)
• 2:03cv05111 (Docket) (Sep. 10, 2003)
• 2003 WL 23902898 (Trial Pleading) Class Action Complaint for Violations of Federal Securities Laws (Sep. 4, 2003)
• 2:03cv05000 (Docket) (Sep. 04, 2003)
• 2:03cv04963 (Docket) (Sep. 03, 2003)
• 2003 WL 23905836 (Trial Pleading) Class Action Complaint for Violations of the Federal Securities Laws (Sep. 2, 2003)
• 2003 WL 23902152 (Trial Pleading) Class Action Complaint for Violations of Federal Securities Laws (Aug. 20, 2003)
• 2:03cv04795 (Docket) (Aug. 20, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **TAB 4**

Westlaw.

--- A.2d ----

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
(Cite as: --- A.2d ----)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL
RELEASED, IT IS SUBJECT TO REVISION OR
WITHDRAWAL.
Supreme Court of Delaware.
In re J.P. MORGAN CHASE & CO.
SHAREHOLDER LITIGATION,
Bruce T. Taylor, as custodian for Julia Ann Taylor,
Ronda Robins and George Ziegler, Plaintiffs
Below, Appellants,
v.
William B. Harrison, Jr., Hans W. Becherer, Riley
P. Bechtel, Frank A. Bennack, Jr., John H. Biggs,
Lawrence A. Bossidy, M. Anthony Burns, Ellen V.
Futter, William H. Gray, III, Helene L. Kaplan, Lee
R. Raymond, John R. Stafford, and J.P. Morgan
Chase & Co ., Defendants Below, Appellees.
No. 218,2005.

Submitted: Dec. 12, 2005.
Decided: March 8, 2006.

**Background:** Shareholders of acquiring
corporation brought breach of fiduciary duty action
against acquiring corporation's chief executive
officer (CEO) who also served as a director,
claiming that proxy statement issued in connection
with a merger was materially misleading because it
did not disclose that CEO of acquired corporation
would have not demanded a premium for acquired
corporation's shares if he had been made the CEO
of acquiring corporation. The Court of Chancery,
New Castle County, dismissed the claim, and
shareholders appealed.

**Holdings:** The Supreme Court, Jacobs, J., held that:

1(1) shareholders did not state a cognizable claim
of entitlement to compensatory damages, when the

compensatory damages they sought were equal to
the premium allegedly paid for acquired
corporation's shares, and

5(2) shareholders were not entitled to nominal
damages as a result of the alleged breach of
fiduciary duty.

Affirmed.

**[1] Corporations 101 $\Longleftrightarrow$ 320(4)**

101 Corporations
    101X Officers and Agents
        101X(C) Rights, Duties, and Liabilities as to
Corporation and Its Members
            101k320 Actions Between Shareholders
and Officers or Agents
                101k320(4) k. Right to Sue, and Parties
in General. Most Cited Cases
Shareholders who alleged that acquiring
corporation's chief executive officer (CEO) who
also served as a director violated his fiduciary duty
of disclosure by not disclosing, in proxy statement
issued in connection with proposed merger, that
CEO of acquired corporation would have not
demanded a premium for acquired corporation's
shares if he had been made the CEO of acquiring
corporation after the merger, did not state a
cognizable claim of entitlement to compensatory
damages, when the compensatory damages
shareholders were seeking equaled the premium that
was allegedly paid for acquired corporation's
shares; to the extent such damages arose from the
disclosure violation the harm from the overpayment
was to the acquiring corporation and thus
shareholders' damages were derivative, and the
damage to acquiring corporation had no logical or
reasonable relationship to the harm caused to
shareholders individually for being deprived of their
right to cast an informed vote.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
**(Cite as: --- A.2d ----)**

**[2] Corporations 101 ⟋320(4)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to
Corporation and Its Members
         101k320 Actions Between Shareholders
and Officers or Agents
            101k320(4) k. Right to Sue, and Parties
in General. Most Cited Cases
Where it is claimed that a duty of disclosure
violation by a corporate fiduciary in connection
with a merger impaired the stockholders' right to
cast an informed vote, that claim is direct.

**[3] Corporations 101 ⟋320(12)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to
Corporation and Its Members
         101k320 Actions Between Shareholders
and Officers or Agents
            101k320(12) k. Damages or Amount of
Recovery. Most Cited Cases
A duty of disclosure violation by a corporate
fiduciary in connection with a merger may entitle
injured shareholders to compensatory damages in
appropriate circumstances.

**[4] Damages 115 ⟋127.1**

115 Damages
   115VII Amount Awarded
      115VII(A) In General
         115k127.1 k. In General. Most Cited Cases
Damages must be logically and reasonably related
to the harm or injury for which compensation is
being awarded.

**[5] Corporations 101 ⟋320(12)**

101 Corporations
   101X Officers and Agents
      101X(C) Rights, Duties, and Liabilities as to
Corporation and Its Members
         101k320 Actions Between Shareholders
and Officers or Agents
            101k320(12) k. Damages or Amount of

Recovery. Most Cited Cases
Shareholders of acquiring corporation were not
entitled to nominal damages as a result of alleged
breach of fiduciary duty by acquiring corporation's
chief executive officer (CEO) who also served as a
director by not disclosing, in proxy statement issued
in connection with proposed merger, that CEO of
acquired corporation would have not demanded a
premium for acquired corporation's shares if he had
been made the CEO of acquiring corporation after
the merger, as the entity benefiting from the alleged
breach of fiduciary duty, the acquired corporation,
was not a significant or controlling shareholder of
acquiring corporation, and shareholders' voting
rights were not affected by the merger.

Court Below: Court of Chancery of the State of
Delaware, in and for New Castle County, C.A. No.
531 (Consolidated).
Upon appeal from the Court of Chancery.
AFFIRMED.

Seth D. Rigrodsky (argued), Ralph N. Sianni and
Brian D. Long, Esquires, of Milberg Weiss Bershad
& Schulman LLP, Wilmington, Delaware; Steven
G. Schulman, Richard Weiss and Laura
Gundersheim, Esquires, of Milberg Weiss Bershad
& Schulman LLP, New York, New York; Of
Counsel: Peter D. Bull, Esquire, of Bull & Lifshitz,
LLP, New York, New York; for Appellants.
Jesse A. Finkelstein, Michael R. Robinson and Lisa
Z. Brown, Esquires, of Richards, Layton & Finger,
Wilmington, Delaware; Of Counsel: Michael A.
Cooper (argued), Sharon L. Nelles and Keith
Levenberg, Esquires, of Sullivan & Cromwell LLP,
New York, New York; Nancy E. Schwarzkopf,
Esquire, of JPMorgan Chase, New York, New
York; for Appellee Harrison.

Before STEELE, Chief Justice, HOLLAND,
BERGER, JACOBS and RIDGELY, Justices,
constituting the Court en Banc.
JACOBS, Justice.
*1 The plaintiffs, who are stockholders of J.P.
Morgan Chase & Co. ("JPMC"), brought this
purported class action for money damages in the
Court of Chancery, challenging a merger in which
JPMC acquired Bank One Corporation ("Bank One"

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
(Cite as: --- A.2d ----)

) in July 2004. The plaintiffs claimed that the JPMC directors had breached their fiduciary duties by: (1) approving a merger exchange ratio that paid an unnecessary and excessive premium to Bank One stockholders, and (2) inducing JPMC shareholders to approve the merger with a proxy statement that contained materially inaccurate or incomplete disclosures. The Court of Chancery dismissed the overpayment claim under Rule 23.1, on the ground that the claim was derivative and the plaintiffs had not excused their failure make a pre-suit demand. The Court dismissed the proxy disclosure claim under Rule 12(b)(6), on the ground that the complaint did not state a cognizable claim for money damages, which was the only remedy being sought.

The plaintiffs have appealed from the judgment of dismissal, but only as to their proxy disclosure claim, and only against director defendant William B. Harrison, as the sole appellee. We conclude, for the reasons that follow, that in dismissing that claim the Court of Chancery correctly applied Delaware law. Accordingly, we affirm.

### FACTS

In January 2004, JPMC and Bank One jointly announced a stock-for-stock merger, which had been unanimously approved by their respective boards of directors. Under the merger agreement, JPMC would issue common shares to Bank One stockholders at a premium of 14% over the closing price of Bank One common stock on the date of the merger announcement.

The merger agreement also prescribed the post-merger succession plan for JPMC senior management. Following the merger, the CEO of JPMC, William B. Harrison, Jr., would continue as CEO for two years, after which James Dimon, the CEO of Bank One, would succeed Harrison. During the interim two-year period, Dimon would serve as President and Chief Operating Officer. After the two-year period, Harrison, who was Chairman of JPMC before the merger, would continue as Chairman.

The Joint Proxy Statement filed with the Securities and Exchange Commission in February 2004 listed various reasons for the merger, which was expected to create the second largest financial institution in the country, measured by total assets. In May 2004, the JPMC stockholders overwhelmingly approved the merger, with over 99% of the votes cast in favor. The merger closed on July 1, 2004.

What prompted this litigation was an article that described the preliminary negotiations between Harrison and Dimon. That article appeared in *The New York Times* on June 27, 2004, only days before the merger closed. According to the article, Dimon reportedly offered to sell Bank One to JPMC at no premium if he were appointed CEO of the merged entity immediately after the merger closed. The critical sentence in the article stated: "Mr. Dimon, always the tough deal maker, offered to do the deal for no premium if he could become the chief executive immediately, according to two people close to the deal."

*2 Based on that one sentence, the plaintiffs alleged in their complaint that JPMC could have purchased Bank One for no premium if JPMC agreed to appoint Dimon CEO. By allowing Harrison to keep the title of CEO for two more years (the plaintiffs alleged), the board of JPMC caused JPMC to overpay for Bank One to the extent of the 14% exchange ratio premium. The plaintiffs claimed that the shareholder class was entitled to recover money damages equal to the dollar value of that premium-approximately $7 billion. The plaintiffs' position was that by approving the premium and obtaining shareholder approval through a materially misleading proxy statement (that is, by not disclosing the information about Dimon's alleged offer to Harrison), the JPMC directors breached their fiduciary duties, including their duty of disclosure, owed to the shareholders of JPMC.

### THE COURT OF CHANCERY OPINION

As earlier noted, the Court of Chancery dismissed the complaint in its entirety. The Vice Chancellor dismissed the underlying claim-that the board had breached its fiduciary duty by approving the 14%

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
(Cite as: --- A.2d ----)

merger premium-because that claim was derivative, and the plaintiffs had not excused their failure to make a pre-derivative suit demand on the JPMC board under Court of Chancery Rule 23.1. Applying the test announced in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* the Vice Chancellor held that to plead a direct (non-derivative) injury, a "stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." The plaintiffs argued that the shareholder class was harmed individually and directly, because their stock interest in the merged entity had been diluted to the extent of the merger premium. Rejecting that argument, the Court of Chancery concluded that dilution always occurs in a stock-for-stock merger, and that stripped of embellishments, the plaintiffs' claim was simply that JPMC was caused to overpay for Bank One. That, the Vice Chancellor held, would be a classic derivative claim if JPMC had paid cash, and the result should be no different where, as occurred here, the merger consideration was stock.

The Court of Chancery also concluded that the plaintiffs' proxy disclosure claim for damages was not legally cognizable under Rule 12(b)(6). The Vice Chancellor observed that although the disclosure allegations could have supported a claim for injunctive or other equitable relief, no injunctive relief was ever sought and equitable remedies were no longer practicable. Nor did the complaint state a cognizable disclosure claim for money damages, the Court found, because the complaint did not allege any compensable harm to the class. As the Vice Chancellor stated, because "the damages allegedly flowing from the disclosure violation are exactly the same as those suffered by JPMC in the underlying claim[,] .... the injury alleged in the complaint is properly regarded as injury to the corporation, not to the class." Therefore, "the claim for actual damages, if there is one, belongs to the corporation and can only be pursued by the corporation, directly or derivatively."

**\*3** The plaintiffs argued that a violation of the duty of disclosure, without more, automatically entitles the affected shareholders to a damages recovery.

Rejecting that contention, the Court of Chancery held:

[T]he plaintiffs try to rely on *Tri-Star* for the rule that there is a "*per se* rule of damages for breach of the fiduciary duty of disclosure." This is no longer an accurate statement of Delaware law. *Loudon* limited *Tri-Star* to its facts, holding that "*Tri-Star* stands only for the narrow proposition that where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of nominal damages." [footnote omitted] For reasons already discussed, the complaint in this case does not properly allege any impairment to the economic or voting interests of the class of JPMC stockholders. The only economic injury the plaintiffs claim to have suffered is the loss of the opportunity for JPMC to have acquired Bank One on more favorable terms. That injury, if there is one, is to the corporation. Moreover, JPMC stockholders' voting rights were unaffected by the merger. Although there are now more JPMC shares outstanding and a greater number of stockholders, control of the corporation remains unchanged. Thus, the sort of "injury to voting interests" described in *Tri-Star* is absent.

### THE CONTENTIONS AND ISSUES ON APPEAL

As noted, the plaintiffs appeal only from the Court of Chancery's dismissal of their proxy disclosure claim, and only with respect to Mr. Harrison. They do not challenge the Vice Chancellor's determinations that plaintiffs' underlying breach of fiduciary duty claim was derivative, or that the majority of the JPMC board were independent and disinterested, or that the board's approval of the merger agreement, including its premium and succession provisions, was protected by the business judgment rule. The only claim presented to us is that the Court of Chancery reversibly erred by dismissing the proxy disclosure claim, because assuming the truth of plaintiffs' well-pled disclosure-related allegations, the plaintiffs were entitled to recover compensatory damages, or at the very least nominal damages, as a matter of law. In

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
(Cite as: --- A.2d ----)

response, the appellee contends that even if the directors were found to have violated their duty of disclosure, that violation does not give rise to any legally cognizable claim for damages, whether compensatory or nominal, based on the facts alleged in the complaint.

Thus, the issues we must decide are whether the Court of Chancery correctly determined that the alleged duty of disclosure violation fails to state a legally sufficient claim for either (1) compensatory or (2) nominal damages. Because those two types of damage claims rest on different theories that require separate analyses, we address each claim separately.

## THE PLAINTIFFS' CLAIMED ENTITLEMENT TO RECOVER COMPENSATORY DAMAGES

*4 To understand the plaintiffs' argument that their complaint states a cognizable claim of entitlement to compensatory damages, some background is helpful. In the Court of Chancery, the plaintiffs contended that the defendants' violation of their fiduciary duty of disclosure entitled the shareholder class to recover compensatory damages equal to the $7 billion premium that (plaintiffs allege) the defendants wrongfully caused JPMC to overpay for Bank One. The Vice Chancellor held that the alleged compensatory damages, as thus measured, flowed only from the underlying claim of waste-a claim that was derivative, not direct. Applying the *Tooley v. Donaldson* standard for determining whether a claim is direct or derivative, the Court of Chancery held that only the corporation (JPMC) would have suffered the alleged harm from the overpayment, and only the corporation would receive the benefit of any damages recovery. Because claims of waste are classically derivative, the Vice Chancellor's conclusion is correct.

[1] The plaintiffs do not challenge that determination on appeal. What they contend, however, is that the compensatory damages to which they are entitled as a consequence of the proxy disclosure violation are identical to the damages that would flow to JPMC as a consequence of JPMC's underlying derivative waste claim. That is, the $7 billion value of the premium paid by

JPMC is the measure of the damages for the separate harms occasioned both to the corporation and to the shareholder class, respectively, by the defendants' two distinct fiduciary violations. The Vice Chancellor was not persuaded by this argument, and neither are we. To the extent the plaintiffs' claim is that the compensatory damages worth $7 billion flow from the disclosure violation, that damages claim is derivative, not direct. Even if it were assumed that improper proxy disclosures induced JPMC's shareholders to approve the merger (including the $7 billion overpayment), the harm resulting from the overpayment was to JPMC. Therefore, any damages recovery would flow only to JPMC, not to the shareholder class.

The plaintiffs contend that their disclosure claim is direct, that their claim supports a compensatory damages recovery by the class, and that the Court of Chancery erred in holding otherwise. The plaintiffs argue that "Delaware decisions do not mandate that direct claims must have *damages* independent of those which would be sought in a derivative suit.... Instead, it is the *injury* suffered that must be distinct. " The plaintiffs urge that the issuance of $7 billion worth of JPMC shares to former Bank One stockholders resulted in a dilution of the proportionate economic value and voting power of the shares owned by all pre-merger JPMC shareholders. Therefore, plaintiffs argue, their proxy disclosure claim is a direct claim that would entitle the JPMC shareholder class to recover compensatory damages in the amount of $7 billion.

*5 [2][3] That argument conflates three different issues: (i) whether the proxy disclosure claim is direct, (ii) whether that disclosure claim, if valid, would entitle the plaintiffs to recover compensatory damages, and (iii) if so, how those compensatory damages should be measured. The first two of those "issues" do not involve matters that are in dispute. This Court has recognized, as did the Court of Chancery, that where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct. But that proposition leaves unanswered the second question: what relief flows from the disclosure violation? As to that issue, it is also undisputed, and the Court of Chancery recognized, that a duty of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
(Cite as: --- A.2d ----)

disclosure violation may entitle the injured party to compensatory damages in appropriate circumstances. But, that does not answer the third question, which is whether those circumstances are alleged in this specific complaint.

The plaintiffs argue that their complaint alleges circumstances that trigger their entitlement to a compensatory damages recovery. To construct that argument, however, plaintiffs must resort to conflating (i) their direct claim for liability for a disclosure violation, with (ii) the corporation's entitlement to recover compensatory damages as a consequence of the corporation's quite separate (underlying) claim for waste. To say it differently, what the plaintiffs are claiming-implicitly but not straightforwardly-is that where a disclosure violation arises from a corporate transaction in which the shareholders suffer a dilution of the economic and voting power of their shares, the shareholders automatically become entitled to recover the identical damages on their disclosure claim, that the corporation would be entitled to recover on its underlying (derivative) claim.

[4] That argument is flawed for two reasons. First, it ignores the fundamental principle governing entitlement to compensatory damages, which is that the damages must be logically and reasonably related to the harm or injury for which compensation is being awarded. Plaintiffs have pled no facts from which $7 billion-or for that matter any quantifiable amount-can be inferred from the claimed infringement of their right to be told the material facts relating to the merger on which they were asked to vote. Although the $7 billion damage figure would be a logical and reasonable consequence (and measure) of the harm caused to JPMC for being caused to overpay for Bank One, that $7 billion figure has no logical or reasonable relationship to the harm caused to the shareholders *individually* for being deprived of their right to cast an informed vote. Indeed, as the Vice Chancellor observed, if the plaintiffs' damages theory is valid, the directors of an acquiring corporation would be liable to pay both the corporation and its shareholders the same compensatory damages for the same injury. That simply cannot be.

*6 Second, the plaintiffs cite no authority that validates conflating their individual direct claim of liability for a duty of disclosure violation with the compensatory damages flowing from the corporation's separate and distinct underlying derivative claim for waste. The plaintiffs rely upon *In re Tri-Star Pictures, Inc.,* for the proposition that shareholders may recover compensatory damages where a corporate transaction that caused impairment to their economic or voting rights, is accomplished by means of the directors' breach of their duties of disclosure. But *Tri-Star* does not help the plaintiffs here. This Court has previously held, and the Vice Chancellor correctly observed, that " *Tri-Star* stands only for the narrow proposition that where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of *nominal* damages ." The claim being addressed at this point, however, is for compensatory, not nominal, damages. *Tri-Star* does not speak to the plaintiffs' claim for compensatory damages in this case.

We conclude, for these reasons, that the Court of Chancery did not err in dismissing the plaintiffs' proxy disclosure claim insofar as it is the predicate for their claim for compensatory damages.

### THE PLAINTIFFS' ALTERNATIVE CLAIM OF ENTITLEMENT TO NOMINAL DAMAGES

The plaintiffs also claim, in the alternative, that the Court of Chancery erred in dismissing their proxy disclosure claim, because if that claim were validated, it would entitle the shareholders to recover, at the very least, nominal damages. The plaintiffs rely on *Tri-Star* for the rule that there is "a *per se* rule of damages for breach of the fiduciary duty of disclosure." The Court of Chancery held, correctly in our view, that that is "no longer an accurate statement of Delaware law."

In *Loudon v. Archer-Daniels-Midland Company,* this Court stated:
We hold that under Delaware law there is no *per se* rule that would allow damages for all director

breaches of the fiduciary duty of disclosure. The dictum in *Tri-Star* is confined to the facts of that case. Damages will be available only in circumstances where disclosure violations are concomitant with deprivation to stockholders' economic interests or impairment of their voting rights.

[5] Thus, the plaintiffs' entitlement to seek nominal damages depends upon whether their complaint alleges the type of deprivation of the JPMC stockholders' economic interests or impairment of their voting rights, that would be cognizable under *Tri-Star*, as limited by *Loudon*. The Vice Chancellor concluded that the complaint alleged no such impairment or deprivation:

For reasons already discussed, the complaint in this case does not properly allege any impairment to the economic or voting interests of the class of JPMC stockholders. The only economic injury the plaintiffs claim to have suffered is the loss of the opportunity for JPMC to have acquired Bank One on more favorable terms. That injury, if there is one, is to the corporation. Moreover, JPMC stockholders' voting rights were unaffected by the merger. Although there are now more JPMC shares outstanding and a greater number of stockholders, control of the corporation remains unchanged. Thus, the sort of "injury to voting interests" described in *Tri-Star* is absent.

*7 That ruling is consistent with several post-*Loudon* Court of Chancery decisions that have interpreted *Tri-Star* to hold that dilution claims are individual in nature only where a significant stockholder's interest is increased at the sole expense of the minority. *A fortiori,* those decisions view *Tri-Star* as having "no application ... where the entity benefiting from the allegedly diluting transaction ... is a third party rather than an existing significant or controlling stockholder." Those decisions state accurately the narrow scope of *Tri-Star,* as limited by *Loudon.*

In this case, the merger between JPMC and Bank One was not a transaction between a corporation and its controlling (or even a significant)

stockholder. Rather, the merger was a transaction between two independent entities. Because the entity allegedly benefiting from the dilution (Bank One) was not a significant or controlling stockholder of JPMC, *Tri-Star* has no application to the facts alleged here.

The plaintiffs contend that even if *Tri-Star* 's nominal damages rule was limited by *Loudon,* the *Loudon* limitation itself was undone by this Court's later decision in *Malone v. Brincat.* For support, plaintiffs rely upon the following sentence from *Malone,* and also upon a footnote to that sentence:

An action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action does not include the elements of reliance, causation and actual quantifiable monetary damages.

In footnote 27 to the above-quoted sentence, the *Malone* Court cited *Loudon,* and summarized *Loudon's* relevant holding in a parenthetical, as follows:("where directors have breached their disclosure duties in a corporate transaction ... there must at least be an award of nominal damages.")

Plaintiffs argue that the above-quoted text and explanatory footnote from *Malone* establish there is no longer a *Loudon*-created limitation upon the scope of *Tri-Star's* rule of "virtual *per se* entitlement to nominal damages" for any violation of the duty of disclosure. As additional support, the plaintiffs point to *O'Reilly v. Transworld Healthcare, Inc.,* a decision in which the Court of Chancery interpreted *Malone* as having the effect of undoing the *Loudon* limitation .

The Vice Chancellor rejected the plaintiffs' reading of *Malone,* as do we. Footnote 27 of *Malone,* upon which the plaintiffs rely, quoted selectively from *Loudon,* but omitted language from the *Loudon* opinion that (with the benefit of perfect hindsight) should have been included. Had the quotation from *Loudon* in *Malone* been reproduced in full text, any arguable basis for plaintiffs' interpretation of *Malone* would disappear. In full text, footnote 27 would have read as follows:

Therefore, *Tri-Star* stands only for the *narrow*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                    Page 8

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
(Cite as: --- A.2d ----)

*proposition* that, where directors have breached their disclosure duties in a corporate transaction *that has in turn caused impairment to the economic or voting rights of stockholders,* there must at least be an award of nominal damages. *Tri-Star* should not be read to stand for any broader proposition.

**\*8** Nothing in our decision in *Malone v. Brincat* was intended, or should be read, to undo the limitation, articulated in *Loudon,* of the circumstances where nominal damages will be recoverable as a consequence of an adjudicated violation of the fiduciary duty of disclosure. Because the complaint does not plead facts that would make the nominal damages rule of *Tri-Star* applicable, it follows that nominal damages are not recoverable even if the plaintiffs were to prevail on their proxy disclosure claim. Because money damages were the only relief sought in the complaint, the proxy disclosure claim was properly dismissed.

## CONCLUSION

For the foregoing reasons, the Court of Chancery committed no error in dismissing the proxy disclosure claim alleged in the complaint. The judgment of the Court of Chancery dismissing this action is, therefore, affirmed.

FN1. *In re J.P. Morgan Chase & Co. S'holder Litig.,* 2005 WL 1076069 (Del.Ch. Apr.29, 2005); 2005 Del. Ch. LEXIS 51 (Del. Ch. Apr. 29, 2005).

FN2. Because this appeal is from the dismissal of a complaint, all facts herein are taken from the well-pleaded allegations of the complaint, except where otherwise noted. *In re Tri-Star Pictures, Inc.,* 634 A.2d 319, 326 (Del.1993).

FN3. The class is alleged to consist of all persons who owned JPMC stock on January 14, 2004 (the day the merger was announced) and who continued to own

such stock through July 1, 2004 (the date the merger closed).

FN4. The Court concluded that the plaintiffs had not excused their failure to make a pre-suit demand on the board because: (i) all eleven outside directors of JPMC's twelve member board were independent and disinterested; (ii) no facts were alleged that called into question those directors' honesty and good faith, or the adequacy of their information; and (iii) the decision of the board to approve the merger agreement was therefore entitled to the protection of the business judgment rule.

FN5. 845 A.2d 1031 (Del.2004).

FN6. *Id.* at 1039.

FN7. *In re J.P. Morgan Chase & Co.,* 2005 WL 1076069, at *6.

FN8. *Id.* at *12.

FN9. *Id.*

FN10. *In re Tri-Star Pictures, Inc.,* 634 A.2d 319 (Del.1983) [footnote in original].

FN11. *Loudon v. Archer-Daniels-Midland Co.,* 700 A.2d 135, 141 (Del.1997) [footnote in original].

FN12. *In re J.P. Morgan Chase & Co.,* 2005 WL 1076069, at *13 (citing *Tri-Star,* 634 A.2d at 332 ("[T]he power of Tri-Star's minority shareholders to oppose the [later] merger was diluted to the point of virtual oblivion.")).

FN13. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del.2004) (holding that the standard for assessing whether a claim is direct or derivative must turn "*solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
(Cite as: --- A.2d ----)

stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?").

FN14. *Tri-Star,* 634 A.2d at 330.

FN15. Appellant's Reply Br. at 1 [emphasis in original].

FN16. *Tri-Star,* 634 A.2d at 330, n. 12, and 332.

FN17. *Jardel Co. v. Hughes,* 523 A.2d 518, 528 (Del.1987) ("The object and purpose of an award of compensatory damages in a civil case is to impose satisfaction for an injury done ... with the size of award directly related to the harm caused by the defendant."); *Henne v. Balick,* 146 A.2d 394, 396 (Del.1958) (" There must be some reasonable basis upon which a jury may estimate with a fair degree of certainty the [plaintiff's loss] in order to enable [the jury] to make an intelligent determination of the extent of this loss. The burden is upon the plaintiff to furnish such proof.") [internal citation omitted]; *Strassburger v. Earley,* 752 A.2d 557, 579 (Del.Ch.2000) ("The traditional measure of damages is that which is utilized in connection with an award of compensatory damages, whose purpose is to compensate a plaintiff for its proven, actual loss caused by the defendant's wrongful conduct. To achieve that purpose, compensatory damages are measured by the plaintiff's 'out-of-pocket' actual loss.").

FN18. *In re J.P. Morgan Chase & Co.,* 2005 WL 1076069, at *12 ("[T]he court concludes that the injury alleged in the complaint is properly regarded as injury to the corporation, not to the class, and the damages, if any, flowing from that alleged breach of fiduciary duty belong to the corporation, not to the class. How then could the same directors ever be liable to

pay actual compensatory damages to both the corporation and the class for the same injury? The answer ... is that they could not. ") [footnote omitted].

FN19. *Id.* at *13 (quoting *Loudon v. Archer-Daniels-Midland Co.,* 700 A.2d 135, 141 (Del.1997)) [emphasis added].

FN20. *Id.* (citing *Tri-Star,* 634 A.2d at 333).

FN21. *Id.*

FN22. 700 A.2d 135 (Del.1997).

FN23. *Id.* at 146-47.

FN24. *In re J.P.Morgan Chase & Co.,* 2005 WL 1076069, at *13 (quoting *Tri-Star,* 634 A.2d at 332 (finding that "the power of *Tri-Star's* minority shareholders to oppose the [later] merger was diluted to the point of virtual oblivion")).

FN25. *In re Paxson Commc'n Corp. S'holders Litig.,* 2001 Del. Ch. LEXIS 95, at *15 (Del. Ch. Jul. 10, 2001); *In re Triarc Co. Inc., Class & Derivative Litig.,* 791 A.2d 872, 877 (Del.Ch.2001); *Turner v. Bernstein,* 1999 Del. Ch. LEXIS 18, at *44-45 (Del. Ch. Feb. 9, 1999).

FN26. *In re Paxson,* 2001 Del. Ch. LEXIS 95, at *15. In *Turner v. Bernstein,* quoted with approval by the Court in *Paxson,* the Court of Chancery interpreted *Tri-Star* as holding that a claim of stock dilution and a corresponding reduction in a stockholder's voting power states a direct claim:
... only in transactions where a significant stockholder sells its assets to the corporation in exchange for the corporation's stock, and influences the transaction terms so that the result is (i) a decrease (or 'dilution') of the asset value and voting power of the stock held by the public stockholders and (ii) a corresponding increase (or benefit) to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                          Page 10

--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue Sky L. Rep. P 74,562
**(Cite as: --- A.2d ----)**

shares held by the significant stockholder.
1999 Del. Ch. LEXIS 18, at *44-45.

FN27. 722 A.2d 5 (Del.1998).

FN28. *Id.* at 12 [footnote 27 in original
text].

FN29. *Id.* (quoting *Loudon,* 700 A.2d at
142).

FN30. 745 A.2d 902 (Del.Ch.1999)

FN31. *Id.* at 918 (expressing the view that:
*Malone's* statement that causation and
actual quantifiable damages are not
elements of a claim for breach of the
fiduciary duty of disclosure, and, more
significantly, its citations in support of that
statement, constitute a retreat to *Tri-Star's
per se* rule of damages for *all* violations of
the fiduciary duty of disclosure.
[emphasis in original] ).

FN32. *Loudon,* 700 A.2d at 142 [emphasis
added] [internal footnote omitted].

FN33. That conclusion is equally
applicable to *O'Reilly,* insofar as that
decision expresses a view that is
inconsistent with our clarification in this
Opinion of *Malone,* and of *Malone* 's
impact on the nominal damages rule
articulated in *Loudon.*

Del.Supr.,2006.
In re J.P. Morgan Chase & Co. Shareholder
Litigation
--- A.2d ----, 2006 WL 585606 (Del.Supr.), Blue
Sky L. Rep. P 74,562

Briefs and Other Related Documents (Back to top)

• 2005 WL 2739353 (Appellate Brief) Appellants'
Reply Brief (Sep. 07, 2005) Original Image of this
Document (PDF)
• 2005 WL 2739352 (Appellate Brief) Appellants'
Reply Brief (Aug. 29, 2005) Original Image of this
Document (PDF)
• 2005 WL 2397200 (Appellate Brief) Appellee's

Answering Brief (Aug. 12, 2005) Original Image of
this Document with Appendix (PDF)
• 2005 WL 2331614 (Appellate Brief) Appellants'
Opening Brief (Jul. 13, 2005) Original Image of this
Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 5

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Barry PINKOWITZ, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg LLP, Defendants.
Gan ISRAEL, Mercaz Chabad, individually and on
behalf of all others similarly situated, Plaintiffs,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
EZRA BIRNBAUM CHARITABLE TRUST, on
behalf of itself and all others similarly situated,
Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Shane M. Cooke, Thomas G. Lynch, Defendants.
Harold COHEN, individually and on behalf of all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Barbara MIRKEN, individually and on behalf of all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney,
William F. Daniel, Thomas Lynch, Defendants.
Henry HOUSMAN, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORP., PLC, Donal J. Geaney, Thomas G.
Lynch, Shane Cooke, Defendants.
Alan KAHN, on behalf of himself and all others
similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Mark WILEN, on behalf of himself and all others
similarly situated, Plaintiff,
v.

ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg LLP, Defendants.
Anthony MOY, on behalf of himself and all others
similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Steven C. SPRENGEL, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg, LLP, Defendants.
Eliot B. GERSTEN, individually and on behalf of
all others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Jonathan SIEGEL, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Shane M. Cooke, Thomas G. Lynch, Defendants.
Michael LERNER, Dr., individually and on behalf
of all others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Thomas Lynch, Shane Cooke, Defendants.
Mishel TEHRANI, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION PLC, Donal J. Geaney,
Shane M. Cooke, Thomas G. Lynch, Kpmg LLP,
Defendants.
Subhan LAKHANI, on behalf of himself and all
others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney,
John Groom, Thomas Lynch, Shane Cooke,
William Clark, Kmpg LLP, Defendants.
James EISDORFER, Dr., individually and on behalf
of all others similarly situated, Plaintiff,
v.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ELAN CORPORATION, PLC, Donal J. Geaney, William F. Daniel, Thomas Lynch, Shane Cooke, Defendants.
Joseph A. NOWAK, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg L.L.P., Defendants.
ABE SIEGEL TRUSTEE U/W/O BEATRICE CLAIRE ROSENBERG, On behalf of the trust and all other similarly situated; Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Gerald CHERNEKOFF, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg LLP, Defendants.
Jerry KRIM, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
James C. KRAUSE, Custodian, James C. Krause Retirement Account, On behalf of Itself and all others similarly situated, Plaintiffs,
v.
ELAN CORPORATION, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg L.L.P., Defendants.
James GALLAI, Individually and on behalf of all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, John Groom, Thomas Lynch, Shane Cooke, Defendants.
Lewis D. BAKER, Individually and on behalf of all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, Donal J. Geaney, William F. Daniel, Thomas Lynch, Defendants.
Judith WHEELOCK, on behalf of herself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.

Joel POMERANTZ, Individually and on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Thomas Lynch, Shane Cooke, Defendants.
Vanessa VAJDOS, on behalf of herself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donald Geaney, John Groom, Thomas Lynch, Shane Cooke, William Clark, Kmpg LLP, Defendants.
Daniel A. KLEIN, on behalf of himself and and all others similarly situated, Plaintiff,
v.
ELAN CORP., PLC, Donal J. Geaney, Thomas G. Lynch, Shane Cooke, Defendants.
Grace T. POPE, individually and as trustee of the trust Harry H. Pope Living Trust No. 1, Elizabeth A. Mueller, and all others similarly situated, Plaintiffs,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, William P. Daniel, Thomas Lynch, Defendants.
William M. CURTIS, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Dale M. DODD, Trustee of the Dale M. Dodd, D.O., Inc. Money Purchase Pension Plan, and all others similarly situated, Michael Pennock, Randy Spokane, Plaintiffs,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, William F. Daniel, Thomas G. Lynch, Defendants.
Eli FRUCHTER, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Michael SHENIAK, on behalf of himself and all others similarly situated, Plaintiff,
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
Stanley W. HARRIS, on behalf of himself and all others similarly situated, Plaintiff,
v.
ELAN CORPORATION, PLC, Donal J. Geaney, Shane M. Cooke, Thomas G. Lynch, Defendants.
**No. 02 CIV. 865(WK), 02 CIV. 871(WK), 02**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

CIV. 892(WK), 02 CIV. 907(WK), 02 CIV.
928(WK), 02 CIV. 930(WK), 02 CIV. 943(WK),
02 CIV. 949(WK), 02 CIV 4948(WK).

July 29, 2002.

Putative class actions were brought against
corporation, certain officers and directors, and, in
some actions, against corporation's auditor and
principal accountant, alleging securities fraud
claims. Putative class members moved to
consolidate the actions. The District Court, Knapp,
Senior District Judge, held that consolidation of the
actions would be proper.

Motion granted.

West Headnotes

**Federal Civil Procedure 170A ☞8.1**

170A Federal Civil Procedure
    170AI In General
        170AI(A) In General
            170Ak8 Consolidation of Actions
                170Ak8.1 k. In General. Most Cited
Cases
Consolidation of securities fraud putative class
actions against corporation, certain of corporation's
officers and directors, and, in some actions,
corporation's auditor and principal accountant
would be proper; no putative class members
opposed consolidation, common questions of fact
suffused the actions, and common questions of law
permeated the actions, although the actions did not
agree on precise confines of class period and some
actions asserted claims in addition to those raised in
common questions of law. Fed.Rules Civ.Proc.Rule
42(a), 28 U.S.C.A.

Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq.
, Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler,
Freeman & Herz, L.L.P., New York, for Plaintiff
Barry Pinkowitz.
Stephen D. Oestreich, Esq., Slotnick, Shapiro &
Crocker, L.L.P., Ira M. Press, Esq., Kirby,
McInerney & Squire, L.L.P., New York, Lionel Z.
Glancy, Esq., Michael M. Goldberg, Esq., Glancy

& Binkow LLP, Los Angeles, CA, Mark C. Grady,
Esq., Nancy Kaboolian, Esq., Abbey, Gardy,
L.L.P., New York, for Plaintiffs Gan Israel and
Mercaz Chabad.
Robert J. Berg, Esq., Mel E. Lifshitz, Esq., Gregory
M. Egleston, Esq., Bernstein, Liebhard, & Lifshitz,
L.L.P., New York, for Plaintiff Ezra Birnbaum
Charitable Trust.
Nadeem Faruqi, Esq., Faruqi & Faruqi, L.L.P, New
York, Marc A. Topaz, Esq., Schiffrin & Barroway,
L.L.P., Bala Cynwyd, PA, Nancy Kaboolian, Esq.,
Mark C. Gardy, Esq., Abbey, Gardy, L.L.P., New
York, for Plaintiff Harold Cohen.
Robert N. Kaplan, Esq., Joel B. Strauss, Esq.,
Frederic S. Fox, Esq., Kaplan, Fox & Kilsheimer,
L.L.P., New York, for Plaintiff Barbara Mirken.
Neil L. Selinger, Esq., Lowey, Dannenberg,
Bemporad & Selinger, P .C., White Plains, for
Plaintiff Henry Housman.
Marian P. Rosner, Esq., Robert C. Finkel, Esq.,
Wolf, Popper, L.L.P., New York, for Plaintiff Alan
Kahn.
Joseph H. Weiss, Esq., Weiss & Yourman, New
York, for Plaintiff Mark Wilen.
Samuel P. Sporn, Esq., Joel P. Laitman, Esq., Jay P.
Saltzman, Esq., Ashley Kim, Esq., Schoengold &
Sporn, P.C., New York, for Plaintiff Anthony Moy.
Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq.
, Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler,
Freeman & Herz, L.L.P., New York, Marvin A.
Miller, Esq., Miller, Faucher and Cafferty, L.L.P.,
Chicago, IL, for Plaintiff Steven C. Sprengel.
Ira M. Press, Esq., Pamela E. Kulsrud, Esq., Kirby,
McInerney & Squire, L.L.P., New York, Andrew
M. Schatz, Esq., Jeffrey S. Nobel, Esq., Patrick A.
Klingman, Esq., Wayne T. Boulton, Esq., Schatz &
Nobel, P.C., Hartford, CT, for Plaintiff Eliot B.
Gersten.
Marc I. Gross, Esq., Gregory B. Linkh, Esq.,
Pomerantz, Haudek, Block, Grossman & Gross,
L.L.P., David Jaroslawicz, Esq., Jaroslawicz and
Jaros, L.L.P., New York, for Plaintiff Jonathan
Siegel.
John Halebia, Esq., Robert I. Harwood, Esq.,
Samuel K. Rosen, Esq. , Wechsler, Harwood,
Halebian & Feffer, L.L.P., New York, for Plaintiff
Dr. Michael Lerner.
Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq.
, Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Freeman & Herz, L.L.P., New York, for Plaintiff Subhan Lakhani.

Jeffrey C. Zwerling, Esq., Richard A. Speirs, Esq., Zwerling, Schacter & Zwerling, L.L.P., New York, for Plaintiff Dr. James Eisdorfer.

Fred Taylor Isquith, Esq., Gregory M. Nespole, Esq. , Gustavo Bruckner, Esq., Wolf, Haldenstein, Adler, Freeman & Herz, L.L.P., New York, for Plaintiff Joseph A. Nowak.

Jules Brody, Stull, Stull & Brody, Joseph H. Weiss, Esq., Weiss & Yourman, New York, for Plaintiff Gerald Chernekoff.

Harvey Greenfield, Esq., New York, for Plaintiff Jerry Krim.

Jonathan M. Plasse, Esq., Goodkind, Labaton, Rudoff & Sucharow, L .L.P., New York, for Plaintiff James C. Krause and the James C. Krause Retirement Account.

Nancy Kaboolian, Esq., Mark C. Gardy, Esq., Abbey, Gardy, L.L.P., New York, for Plaintiff James Gallai.

Joel B. Strauss, Esq., Kaplan, Fox & Kilsheimer, L.L.P., New York, for Plaintiff Lewis D. Baker.

Christopher Lovell, Esq., Lovell & Stewart, L.L.P., New York, for Plaintiff Judith Wheelock.

Marc S. Hunzel, Esq., Law Office of Marc S. Hunzel, Lawrence, for Plaintiff Joel Pomerantz.

Jules Brody, Esq., Aaron Lee Brody, Esq., Tzivia Brody, Esq., Stull, Stull & Brody, Joseph H. Weiss, Esq., Weiss & Yourman, New York, for Plaintiff Vannessa Vajdos.

Joe D. Jacobson, Esq., Martin M. Green, Esq., Jonathan F. Andres, Esq., Green, Schaaf & Jacobson, Donald H. Clooney, Esq., Clooney & Anderson, St. Louis, MO, for Plaintiffs Grace T. Pope and Elizabeth Mueller.

William S. Lerach, Esq., Milberg, Weiss, Bershad, Hynes and Lerach, San Diego, CA, for Plaintiff William Curtis.

Kenneth J. Catanzarite, Esq., Catanzarite Law Corporation, Anaheim, CA, for Plaintiff Dale M. Dodd.

Tracy L. Thrower, Esq., Glancy & Binkow LLP, Los Angeles, CA, Kenneth J. Catanzarite, Esq., Catanzarite Law Corporation, Anaheim, CA, for Plaintiffs Michael Pennock and Randy Spokane.

William S. Lerach, Esq., Milberg, Weiss, Bershad, Hynes and Lerach, San Diego, CA, for Plaintiff Eli Fruchter.

William S. Lerach, Esq., Milberg, Weiss, Bershad, Hynes and Lerach, San Diego, CA, for Plaintiff Michael Sheniak.

Walter F. Spath, III, Esq., Jeffrey Krisnk, Esq., Finkelstein & Krinsk, San Diego, CA, for Plaintiff Stanley Harris.

Daniel A. Osborn, Esq., Beatie and Osborn, L.L.P., New York, for Plaintiff Mishel Tehrani.

Gregory B. Linkh, Esq., Marc I. Gross, Esq., Pomerantz Haudek Block Grossman & Gross LLP, New York, for Plaintiff Abe Siegel Trustee U/W/O BeatriceClaire Rosenberg.

William G. Caldes, Esq., Spector, Roseman & Kodroff, P.C., Philadelphia, PA, Steve G. Schulman, Esq., Samuel H. Rudman, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York, Carol V. Gilden, Esq., Michael E. Moskovitz, Esq., Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Chicago, IL, Daniel R. Karon, Esq., Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Plaintiff Daniel V. Klein.

William S. Lerach, Esq., Helen J. Hodges, Esq., Travid E. Downs, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Samuel H. Rudman, Esq., Andrei Rado, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York, for S & T Investment Company.

Frederic S. Fox, Esq., Kaplan Fox & Kilsheimer LLP, New York, for Gregory Van Kipnis.

Marc I. Gross, Esq., Murielle J. Stevens, Esq., Pomerantz Haudek Block Grossman & Gross LLP, New York, for Dr. Norman Lefkovtiz.

Rick Bemporad, Esq., Neil L. Selinger, Esq., Lowey Dannenberg Bemporad & Selinger, P.C., White Plains, Sherrie R. Savett, Esq., Barbara A. Podell, Esq., Douglas M. Risen, Esq., Berger & Montague, P.C., Philadelphia, PA, for William Browning and Christopher Tighe.

Ira M. Press, Esq., Pamela E. Kulsrud, Esq., Kirby McInerney & Squire, LLP, New York, Kenneth J. Catanzarite, Esq., Catanzarite Law Corporation, Anaheim, CA, Lionel Z. Glancy, Esq., Michael Goldberg, Esq., Glancy & Binkow, LLP, Los Angeles, CA, for The" Lipsome/Dura Plaintiffs Group".

Jules Brody, Esq., Aaron Brody, Esq., Stull, Stull & Brody, New York, for The" Schutt Lead Plaintiffs" Group.

Jaculin Aaron, Esq., Shearman & Sterling, New

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

York, for Defendant Elan Corporation.

## MEMORANDUM & ORDER

KNAPP, Senior District J.

*1 Before this Court are currently thirty-three securities fraud class actions against Elan Corporation, PLC (hereinafter "Elan") as well as certain of its officers and directors. A number of these class actions are also directed against KPMG LLP (hereinafter "KMPG"), which allegedly served as Elan's auditor and principal accountant during the relevant period addressed by the class actions.

Putative class members S & T Investment Company, First Winchester Investments Limited, Bank Gutmann, the City of Monroe Employees' Retirement System, Fox Asset Management, Gregory Van Kipnis, William Browning, Christopher Tighe, Ruth Bonholzer, Julian Davis, Judith Farah, Leonard Schutt, Vanessa Vajdos, Gary Zimmerman, and Norman Lefkovitz move this Court to consolidate these class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. For the reasons set forth below, we GRANT their motions for consolidation.

> FN1. Putative class members S & T Investment Company, First Winchester Investments Limited, Bank Gutmann, and the City of Monroe Employees' Retirement System initially moved the United States District Court for the Southern District of California to consolidate a number of the above-captioned class actions while those actions were still pending before that court. However, as those cases have since been transferred to this district and accepted as related, we treat their motion, filed with the district court in California, as a motion to consolidate the actions before this Court.

## BACKGROUND

On February 4, 2002, Barry Pinkowitz ("Pinkowitz") filed a class action in this Court against: (a) Elan, an Irish pharmaceutical company allegedly engaged in the discovery, development, and marketing of products in diverse therapeutic areas; (b) Donald

Geaney ("Geaney"), Elan's Chairman and Chief Executive Officer; (c) John Groom ("Groom"), Elan's President and Chief Operating Officer; (d) Thomas Lynch ("Lynch"), Elan's Vice-Chairman; (e) Shane Cooke ("Cooke"), Elan's Chief Financial Officer; (f) William Clark ("Clark"), the President of Elan's pharmaceutical operations; and (g) KPMG, Elan's auditor and principal accountant during the relevant period addressed by the class action. Pinkowitz alleges that these defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), as well as Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

> FN2. Although Pinkowitz refers to the Chairman of Elan as "Donald Geaney," the vast majority of the class actions refer to him "Donal Geaney." As Pinkowitz's lawsuit was the first-filed action in this district and would remain the Master File in the wake of any consolidation, we will continue to refer to the Chairman of Elan as "Donald Geaney" until the parties have an opportunity to provide his correct name.

After Pinkowitz filed his Complaint, the following class actions were filed in this district and accepted by this Court as related to the *Pinkowitz* action: *Birnbaum v. Elan Corp.,* No. 02 Civ. 892; *Mirken v. Elan Corp.,* No. 02 Civ. 928; *Kahn v. Elan Corp.,* No. 02 Civ. 943; *Wilen v. Elan Corp.,* No. 02 Civ. 949; *Moy v. Elan Corp.,* No. 02 Civ. 970; *Sprengel v. Elan Corp.,* No. 02 Civ. 986; *Siegel v. Elan Corp.,* No. 02 Civ. 1021; *Lerner v. Elan Corp.,* No. 02 Civ. 1042; *Lakhani v. Elan Corp.,* No. 02 Civ. 1107; *Eisdorfer v. Elan Corp.,* No. 02 Civ. 1144; *Nowak v. Elan Corp.,* No. 02 Civ. 1152; *Chernekoff v. Elan Corp.,* No. 02 Civ. 1358; *Krim v. Elan Corp.,* No. 02 Civ. 02 Civ. 1611; *Krause v. Elan Corp.,* No. 02 Civ. 1616; *Baker v. Elan Corp.,* No. 02 Civ. 1858; *Pomerantz v. Elan Corp.,* No. 02 Civ.1903; *Vajdos v. Elan Corp.,* No. 02 Civ.1911; *Pope v. Elan Corp.,* No. 02 Civ. 4231; *Dodd v. Elan Corp.,* No. 02 Civ. 4312; *Fruchter v. Elan Corp.,* No. 02 Civ. 4313; *Sheniak v. Elan Corp.,* No. 02 Civ. 4314; and *Harris v. Elan Corp.,* No. 02 Civ. 4948. The following related class actions were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

also filed in this district, initially assigned to either Judge Buchwald, Judge Cedarbaum, Judge Kaplan, or Judge Sweet, and have, upon our consent, since been transferred to this Court as related: *Israel v. Elan Corp.,* No. 02 Civ. 871(RWS); *Cohen v. Elan Corp.,* No. 02 Civ. 907(RWS); *Housman v. Elan Corp.,* No. 02 Civ. 930(RWS); *Gersten v. Elan Corp.,* No. 02 Civ. 1005(RWS); *Tehrani v. Elan Corp.,* No. 02 Civ. 1096(NRB); *Gallai v. Elan Corp.,* 02 Civ. 1655(RWS); *Wheelock v. Elan Corp.,* No. 02 Civ. 1890(LAK); and *Curtis v. Elan Corp.,* No. 02 Civ. 4310(MGC). In addition, Judge Koeltl's chambers have informed us that Judge Koeltl intends to transfer two related class actions, *Abe Siegel Trustee v. Elan Corp.,* No. 02 Civ. 1306(JGK), and *Klein v. Elan Corp.,* No. 02 Civ. 3746(JGK), to this Court shortly.

*2 In the interim, putative class members S & T Investment Company, First Winchester Investments Limited, Bank Gutmann, the City of Monroe Employees' Retirement System, Fox Asset Management, Gregory Van Kipnis, William Browning, Christopher Tighe, Ruth E. Bonholzer, Julian Davis, Judith F. Farah, Leonard D. Schutt, Vanessa Vajdos, Gary Zimmerman, and Norman Lefkovitz have moved this Court to consolidate the foregoing class actions. A number of these putative class members have also sought, in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, to be appointed Lead Plaintiff and to have their chosen law firms appointed Lead Counsel. At this time, the Court addresses only the various motions for consolidation.

> FN3. Where, as here, more than one action has been filed on behalf of a class asserting substantially the same claim or claims arising under the statutory provisions at issue in the class actions at bar and any party has sought to consolidate those actions for pretrial purposes or for trial, we may not make the determination under the PSLRA with respect to who should be appointed Lead Plaintiff and Lead Counsel "until after the decision on the motion to consolidate" is rendered. 15 U.S.C. §

78u-4(a)(3)(B)(ii).

## DISCUSSION

"Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions...when there are common questions of law or fact to avoid unnecessary costs or delay." *Johnson v. Celotex Corp.* (2d Cir.1990) 899 F.2d 1281, 1284, *cert. denied* (1990) 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250. Rule 42(a) provides:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED.R.CIV.P. 42(a). Pursuant to Rule 42(a), we have broad discretion to determine whether consolidation is appropriate. *See Johnson,* 899 F.2d at 1284. *See also Primavera Familienstiftung v. Askin* (S.D.N.Y.1997) 173 F.R.D. 115, 129 ("A district court has broad discretion to consolidate actions.")

"In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation." *Johnson,* 899 F.2d at 1285. Hence, " so long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate." *Primavera Familienstiftung,* 173 F.R.D. at 129. In fact, consolidation is common in federal securities class actions. *In re Cendant Corp. Litig.* (D.N.J.1998) 182 F.R.D. 476, 478.

In this instance, the companies and individuals moving for consolidation each assert that the actions sought to be consolidated share both factual as well as legal issues in common and that consolidation will prevent unnecessary expense and delay. No one has opposed consolidation.

Each of the class actions here is predicated on the defendants' purported misstatements and omissions (which allegedly resulted in inflated earnings and revenue) and the effect of such conduct on the price

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

of Elan's stock when the conduct came to light.
Given the substantially similar allegations in each of
the complaints which are the subject of the motions
for consolidation at bar, common questions of fact
clearly suffuse the class actions before this Court,
for, as noted in *Aronson v. McKesson HBOC, Inc.*
(N.D.Cal.1999) 79 F.Supp.2d 1146, 1150, "[i]t
seems obvious that...separate class actions
predicated on the same set of misstatements by
corporate officials, causing an artificial inflation
and then a corrective drop in share prices, present
common questions of fact."

**\*3** Common questions of law also permeate the
above-captioned class actions. All but one of the
foregoing class actions asserts that the defendants'
purportedly wrongful conduct violates Sections
10(b) and 20(a) of the Securities Exchange Act of
1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5,
17 C.F.R. § 240.10b-5, promulgated thereunder.
These claims alone will raise the same set of
questions in each such case. *See Switzenbaum v.
Orbital Sciences Corp.* (E.D.Va.1999) 187 F.R.D.
246, 248 ("the 10b-5 claims alone will raise the
same set of questions in each case, such as (1)
whether the Defendants made a false or misleading
statement of material fact, or failed to disclose a
material fact under circumstances giving rise to a
duty to disclose; (2) whether they did so with
scienter; (3) whether the Plaintiffs justifiably relied
on these material omissions; and (4) whether the
Defendants' acts or omissions and the Plaintiffs'
reliance thereon proximately caused them harm.")

> FN4. In *Dodd v. Elan Corp.,* No. 02 Civ.
> 4312, the plaintiff does not assert claims
> under Sections 10(b) and 20(a) of the
> Securities Exchange Act of 1934 or Rule
> 10b-5. Rather, the plaintiff in that case
> brings his claims under Sections 11, 12(2),
> and 15 of the Securities Act of 1933, 15
> U.S.C. §§ 77k, 77l(a)(2), 77o. Dodd
> Compl ., ¶¶ 34-48. Nonetheless, the
> misstatements and omissions on which the
> *Dodd* action is predicated implicate
> conduct substantially similar to that
> underlying the other class actions here and
> therefore also involve common questions

of fact. *See* FED.R.CIV.P. 42(a) (allowing
for consolidation "[w]hen actions
involving a common question of law *or fact*
are pending before the court...")
(emphasis added). Moreover, these claims
(and the conduct on which they are
premised) are similar to the additional
claims brought by the plaintiffs in *Pope v.
Elan Corp.,* No. 02 Civ. 4231, where the
plaintiffs asserted, *inter alia,* causes of
action under Sections 11, 12, and 15 of the
Securities Act of 1933 as well as under
Sections 10(b), 14(a), and 20(a) of the
Securities Exchange Act of 1934.
Accordingly, we conclude that it would be
proper to include the *Dodd* action among
the other class actions consolidated in our
order today.

Nevertheless, although common questions of fact
and law bind these class actions together, the
actions do diverge in a number of ways. Not every
complaint agrees on the precise confines of the
class period implicated by the class actions.
Moreover, although almost every plaintiff in the
above-captioned actions has alleged violations of
Sections 10(b) and 20(a) of the Securities Exchange
Act of 1934 ("the 1934 Act") as well as Rule 10b-5
promulgated thereunder, at least two plaintiffs have,
in addition to such claims, alleged, *inter alia,*
violations of Sections 11, 12(a)(2), and 15 of the
Securities Act of 1933 ("the 1933 Act"). Finally,
although each of the class actions implicates many
of the same defendants, a number of the lawsuits
assert claims against specific defendants who are
absent from the other class actions.

> FN5. *Compare, e.g., Pinkowitz v. Elan
> Corp.,* No. 02 Civ. 865 (class action
> brought "on behalf of all persons who
> purchased the securities of Elan during
> December 21, 2000, through and including
> February 1, 2000"), *with Moy v. Elan
> Corp.,* No. 02 Civ. 970 (class action
> brought "on behalf of all persons who
> purchased the securities of Elan...on the
> open market during the period April 23,
> 2001 through and including February 3,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 8

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

2002"), *and with Pomerantz v. Elan Corp.,* 02 Civ.1903 (class action brought on behalf of plaintiff and "all other persons who purchased the American Depository Shares...of Elan during the period from April 30, 1999 through February 4, 2002").

FN6. *See Pope v. Elan Corp.,* No. 02 Civ. 4231; *Dodd v. Elan Corp.,* No. 02 Civ. 4312.

FN7. *Compare, e.g., Pinkowitz v. Elan Corp.,* No. 02 Civ. 865 (asserting claims against Elan, Geaney, Groom, Lynch, Cooke, Clark, and KPMG), *with Israel v. Elan Corp.,* No. 02 Civ. 871 (asserting claims against Elan, Geaney, Lynch, and Cooke), *and with Eisdorfer v. Elan Corp.,* No. 02 Civ. 1144 (asserting claims against Elan, Geaney, Lynch, Cooke, and William Daniel, Elan's "Company Secretary").

However, none of these differences weigh against consolidation. "Neither Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated." *In re Cendant Corp. Litig.,* 182 F.R.D. at 478. Hence, although certain class actions here name defendants not otherwise present in the other class actions, "consolidation is not barred simply because the actions to be consolidated allege claims against different parties." *Skwortz v. Crayfish Co., Ltd.* (S.D.N.Y. Sept.28, 2001) 2001 WL 1160745, *2, *reconsideration granted in part on other grounds* (S.D.N.Y. June 6, 2002) 2002 WL 1268013. *See also Werner v. Satterlee, Stephens, Burke & Burke* (S.D.N.Y.1992) 797 F.Supp. 1196, 1211 ("The fact that there are different parties in this action does not mean this case should not be consolidated.") Moreover, while particular plaintiffs may disagree on the precise confines of the relevant class period, these differences also do not preclude consolidation. *Skwortz,* 2001 WL 1160745 at *2, n. 3. *See also Mitchell v. Complete Management, Inc.* (S.D.N.Y. Sept.17, 1999) 1999 WL 728678, *2; *In re Olsten Corp. Sec. Litig.* (E.D.N.Y.1998) 3 F.Supp.2d 286, 293, *adhered to on reconsideration* (E.D.N.Y.1998) 181 F.R.D. 218. Finally, since all but one of the class actions overlap in that they

include claims under Sections 10(b) and 20(a) of 1934 Act as well as under Rule 10b-5, the mere presence of additional claims under the 1933 Act does not weigh against consolidation. *See Aronson,* 79 F.Supp.2d at 1150-1151 (consolidating various federal securities class actions despite the fact that some involved claims under the 1934 Act while others involved claims under the 1933 Act and even though certain actions were premised on transactions involving securities other than common stock); *Lax v. First Merchants Acceptance Corp.* (N.D.Ill. Aug.11, 1997) 1997 WL 461036, *1-*2 (noting that the district court had consolidated the various complaints asserting claims under the 1934 Act even though a number of them had included claims arising under the 1933 Act not found in every implicated complaint); *Werner,* 797 F.Supp. at 1210-1212 (recognizing that consolidation should not be denied merely because one complaint contains a number of different causes of action not included in another where there is at lease some measure of overlap).

FN8. We note that although the plaintiffs in *Pope v. Elan Corp.,* No. 02 Civ. 4231, have vigorously argued that the differences between their lawsuit and the other class actions should influence the choice of lead plaintiff and lead counsel, they have not argued that these differences should bar consolidation. In fact, on July 24, 2002, they submitted a proposed order which pressed for the consolidation of the *Pope* action with the other thirty-two class actions against Elan before this Court. As such, these plaintiffs themselves recognize that their additional claims under the 1933 Act do not preclude the consolidation of their action with the other class actions at bar.

**\*4** Accordingly, although the various class actions which are the subject of this motion for consolidation do exhibit certain differences, they involve many common questions of fact and law and the differences which do exist do not outweigh the interests of judicial economy which would be served by consolidation. As such, we agree with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 9

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

both the movants and Elan that consolidation would be appropriate and grant the motions for consolidation.

## CONCLUSION

Having considered the motions for consolidation submitted to this Court by S & T Investment Company, First Winchester Investments Limited, Bank Gutmann, the City of Monroe Employees' Retirement System, Fox Asset Management, Gregory Van Kipnis, William Browning, Christopher Tighe, Ruth Bonholzer, Julian Davis, Judith Farah, Leonard Schutt, Vanessa Vajdos, Gary Zimmerman, and Norman Lefkovitz, IT IS HEREBY ORDERED THAT:

1. The motions for consolidation are granted;

2. The following actions are hereby consolidated for all purposes, including pretrial proceedings, trial, and appeal, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

3. The caption of these consolidated actions shall be *"In re Elan Corporation Securities Litigation "* and the files of these consolidated actions shall be maintained in one file under Master File No. 02 Civ. 865(WK). Any other actions now pending or later filed in this district which arise out of or are related to the same facts as alleged in the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention.

*5 4. Every pleading in the consolidation actions, or in any separate action included herein, shall bear the following caption:

5. When a pleading is intended to be applicable to all actions governed by this Order, the words "All Actions" shall appear immediately after the words " This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable to only some, but not all, of the consolidated actions, this Court's docket number for each individual action to which the pleading is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption described above. *E.g.,* 02 Civ. 871(WK) (Israel).

6. A Master Docket and a Master File hereby are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 11

Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

established for the above-consolidated proceedings a nd for all other related cases filed in or transferred to this Court. Separate dockets shall continue to be maintained for each of the individual actions hereby consolidated, and entries shall be made in the docket of each individual case in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

7. When a pleading is filed and the caption shows that it is applicable to "All Actions," the Clerk of the Court shall file such pleadings on the Master File. No further copies need to be filed, and no other docket entries need be made.

8. When a pleading is filed and the caption shows that it is applicable to fewer than all of the consolidated actions, the Clerk of the Court will file such a pleading in the Master File only but shall docket such filing on the Master Docket and the docket of each applicable action.

9. When a case which properly belongs as part of *In re Elan Corporation Securities Litigation* is filed in this Court or transferred to this Court from another court and assigned to Judge Knapp, the Clerk of this Court shall:
(a) Place a copy of this Order in the separate file for such action;
(b) Mail to the attorneys for the plaintiffs in the newly-filed or transferred case a copy of this Order and direct that this Order be served upon or mailed to any new defendant(s) or their counsel in the newly-filed or transferred case; and
(c) Make an appropriate entry on the Master Docket.

This Court requests the assistance of counsel in calling o the attention of the Clerk of the Court the filing or transfer of any case which might be consolidated as part of *In re Elan Corporation Securities Litigation.*

10. A separate order will refer these consolidated actions to a Magistrate Judge for general pre-trial management as well as for reports and recommendations in accordance with 28 U.S.C. § 636(b)(1)(A) and 28 U.S.C. § 636(b)(1)(B). The various motions for the appointment of a Lead Plaintiff and a Lead Counsel will be among the

matters referred to the Magistrate Judge. However, no report and recommendation will be required for any resolution of those motions. *See generally In re First Union Corp. Sec. Litig.* (W.D.N.C.2000) 157 F.Supp.2d 638; *Chill v. Green Tree Financial Corp.* (D.Minn.1998) 181 F.R.D. 398; *In re Olsten Corp. Sec. Litig.* (E.D.N.Y.1998) 3 F.Supp.2d 286, *adhered to on reconsideration* (E.D.N.Y.1998) 181 F.R.D. 218.

**\*6** 11. The Clerk of the Court is directed to serve a copy of this Oder on all parties of record in the consolidated actions.

SO ORDERED.

S.D.N.Y.,2002.
Pinkowitz v. Elan Corp., PLC
Not Reported in F.Supp.2d, 2002 WL 1822118 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:02cv00930 (Docket) (Feb. 06, 2002)
• 1:02cv00943 (Docket) (Feb. 06, 2002)
• 1:02cv00949 (Docket) (Feb. 06, 2002)
• 1:02cv00907 (Docket) (Feb. 05, 2002)
• 1:02cv00928 (Docket) (Feb. 05, 2002)
• 1:02cv00892 (Docket) (Feb. 05, 2002)
• 1:02cv00871 (Docket) (Feb. 04, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 6

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

▷

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Thomas R. SKWORTZ, Individually and on behalf
of all others similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD.; Isao Matsushima; Morgan
Stanley Dean Witter; Nomura Securities
International, Inc.; Merrill Lynch & Co.; and Hikari
Tsushin, Inc., Defendants.
Joshua HERSH, Individually and on behalf of all
others similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
David MILLER, on behalf of himself and all others
similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Loretta GOLDSTEIN, Individually, and on Behalf
of and All Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Samuel COHEN, on behalf of himself and all others
similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Brian CHENG, On Behalf Of Himself and All
Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Michael A. BERNSTEIN and Manickam Ganesh,
M.D., On Behalf Of Themselves and All Others
Similarly Situated, Plaintiffs,
v.
CRAYFISH CO., LTD., et al., Defendants.
Dennis AARONS, On Behalf Of Himself and All
Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Jalal PASHANDI and Naveed Shams, Individually
and On Behalf of All Others Similarly Situated,
Plaintiffs,
v.

CRAYFISH CO., LTD., et al., Defendants.
Alan LAZARUS, On behalf Of Himself and All
Others Similarly Situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
Boban JOSE, on behalf of himself and all others
similarly situated, Plaintiff,
v.
CRAYFISH CO., LTD., et al., Defendants.
**No. 00 CIV. 6766(DAB), 00 CIV. 6978(DAB), 00
CIV. 6998(DAB), 00 CIV. 7009(DAB), 00 CIV.
7141(DAB), 00 CIV. 7250(DAB), 00 CIV.
7263(DAB), 00 CIV. 7489(DAB), 00 CIV.
7682(DAB), 00 CIV. 7939(DAB), 00 CIV.
8214(DAB).**

Sept. 28, 2001.

Ralph M. Stone, Shalov Stone & Bonner, New
York, for Thomas R. Skwortz, Plaintiff.
Lee S. Shalov, Shalov Stone & Bonner, New York,
for Josh Hersh, Plaintiff.
Steven G. Schulman, Samuel H. Rudman, Milberg
Weiss Bershad Hynes & Lerach LLP, New York,
for David Miller, Plaintiff.
Robert I. Harwood, Frederick W. Gerkens, III,
Wechsler Harwood Halebian & Feffer LLP, New
York, for Loretta Goldstein, Plaintiff.
James P. Bonner, Shalov Stone & Bonner, New
York, for Samuel Cohen, Plaintiff.
Fred Taylor Isquith, Gregory M. Nespole, Wolf
Haldenstein Adler Freeman & Herz LLP, New
York, for Brian Cheng, Plaintiff.
Jules Brody, Howard T. Longman, Stull, Stull &
Brody, New York, for Michael A. Bernstein and
Manickam Ganesh, M.D., Plaintiffs.
Fred Taylor Isquith, Gregory M. Nespole, Wolf
Haldenstein Adler Freeman & Herz LLP, New
York, for Dennis Aarons, Plaintiff.
Brian Murray, Rabin & Peckel LLP, New York, for
Jalal Pashandi and Naveed Shams, Plaintiffs.
Ira M. Press, Kirby McInerney & Squire, LLP, New
York, for Alan Lazarus, Plaintiff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 2

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Stanley M. Grossman, Marc I. Gross, Patrick V. Dahlstrom, Pomerantz Haudek Block Grossman & Gross LLP, New York, for Boban Jose, Plaintiff.

Arthur M. Handler, Handler & Goodman LLP, New York, for Crayfish Co. Ltd., Defendant.

Kenneth M. Kramer, Mark McNeill, Shearman & Sterling, New York, for Morgan Stanley Dean Witter; Nomura Securities Int'l, Inc.; Merrill Lynch & Co. Defendants.

Cyrus Benson III, White & Case, New York, for Hikari Tsushin, Inc. Defendant.

## MEMORANDUM AND ORDER

BATTS, District J.

*1 Pending before this Court are eleven securities fraud class action lawsuits against Crayfish Co., Ltd., ("Crayfish"), certain of its officers and directors, underwriters of its common stock, and Hikari Tsushin, Inc., an alleged corporate affiliate and control person of Crayfish within the meaning of Section 15 of the Securities Act of 1933 (the "Act "). These eleven actions (the "Crayfish Actions") allege claims under Sections 11, 12(a)(2), and 15 of the Act.

> FN1. The Court has accepted the following eleven actions as related: *Skwortz v. Crayfish Co., Ltd.,* No. 00 Civ. 6766; *Hersh v. Crayfish Co., Ltd.,* No. 00 Civ. 6978; *Miller v. Crayfish Co., Ltd.,* No. 00 Civ. 6998; *Goldstein v. Crayfish Co., Ltd.,* No. 00 Civ. 7009; *Cohen v. Crayfish Co., Ltd.,* No. 00 Civ. 7141; *Cheng v. Crayfish Co., Ltd.,* No. 00 Civ. 7250; *Bernstein v. Crayfish Co., Ltd.,* No. 00 Civ. 7263; *Aarons v. Crayfish Co., Ltd.,* No. 00 Civ. 7489; *Pashandi v. Crayfish Co., Ltd.,* No. 00 Civ. 7682; *Lazarus v. Crayfish Co., Ltd.,* No. 00 Civ. 7939; and *Jose v. Crayfish Co., Ltd.,* No. 00 Civ. 8214.

Jenny Chang, Toshinko Hagawara, Toru Nakamichi, Meng Lin Sun, Leslie Helm, Dennis A. Varga, and Esther Wilhelm (collectively "Chang Plaintiffs Group," or "Group") move this Court to consolidate the Crayfish Actions, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. The Chang Plaintiffs Group also moves this Court to be appointed Lead Plaintiff and to approve the Group's selection of Lead Counsel. For the following reasons, the Court GRANTS the motion to consolidate, DENIES the Chang Plaintiffs Group's motion to be appointed Lead Plaintiff, and to approve its selection for Lead Counsel. Instead, this Court appoints Alan Lazarus as Lead Plaintiff, and approves his selection of Kirby McInerney & Squire, LLP., as Lead Counsel.

## I. BACKGROUND

On September 8, 2000, Thomas R. Skwortz (" Plaintiff") filed a class action against Crayfish, a Japanese internet electronic mail services provider; Isao Matsushima, Crayfish's Chief Executive Officer, President, and Representative Director; Morgan Stanley Dean Witter, Nomura Securities International Inc., and Merrill Lynch & Co ., underwriters of the common stock offering; and Hikari Tsushin Inc., a exclusive distributor of Crayfish services (collectively the "Defendants"). (Skwortz Compl. ¶¶ 5-8.) Plaintiff alleges violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933. Specifically, the Complaint alleges that the Defendants provided materially false and misleading information in the Crayfish Prospectus and Registration Statement. (Chang Plaintiffs Group Mem. Law at 4.)

In accordance with the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA" ), 15 U.S.C. § 77z-1(a)(3)(A)(i), Plaintiff published a notice of the pendency of this action over the PRNewswire on September 8, 2000. (*See* Stone Aff., Ex. 2.) Since the filing of the *Skwortz* Complaint, ten other Complaints arising out of the same facts and alleging similar, if not identical, claims were filed in the Southern District of New York. The Chang Plaintiffs Group filed its Motion for Consolidation and Appointment of Lead Plaintiff and Lead Counsel on November 8, 2000. No other class members in this or any of the related actions have filed a motion for Lead Plaintiff or Lead Counsel. The Defendants do not oppose consolidation and take no position on the appointment of Lead Plaintiff and Lead Counsel. (Defs.' Mem. Law at 2.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

FN2. The *Miller, Cheng, Bernstein, Aarons, Pashandi, Lazarus,* and *Jose* Complaints, also name as Defendants Atsuhiro Kumagai and Hiroshi Miyazawa, respectively the Chief Operating Officer and Chief Technology Officer of Crayfish.

## II. DISCUSSION

### A. Motion to Consolidate

The Chang Plaintiffs Group moves to consolidate the eleven related actions, and any subsequently filed related actions, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Rule 42(a) provides:

*2 When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). "A district court has broad discretion to consolidate actions." *Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 129 (S.D.N.Y.1997). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1285 (2d Cir.1990). "In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Mitchell v. Complete Management, Inc. Sec. Litig.,* No. 99 Civ. 1454, 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999); *see also Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1211 (S.D.N.Y.1992) (same). As long as common questions of law and fact exist, consolidation is not barred simply because the actions to be consolidated allege claims against different parties. *See Werner,* 797 F.Supp. at 1211; *see, e.g., Lax v. First Merchants Acceptance Corp.,* Nos. 97 C 2715, 97 C 2716, 97 C 2737, 97 C 2791, 97 C 3767, 97 C 4237, 97 C 4013, 97 C 4236, 1997 WL 461036, at *1-2 (N.D.Ill. Aug. 11, 1997)

(mentioning that in prior proceeding complaints were consolidated despite differences in named defendants and claims alleged).

The eleven Crayfish Actions pending before this Court involve common questions of both law and fact. Indeed, the factual basis supporting the claims asserted in the Crayfish Actions are identical. The Plaintiffs are all investors who purchased shares of Crayfish common stock during the Class Period. In addition, each Plaintiff, in purchasing the shares of Crayfish stock, allegedly relied upon statements contained in the same Prospectus and Registration Statement. To be sure, not all of the Complaints contain claims against the same Defendants. However, since all the Complaints are premised on the same facts and statutory provisions consolidation is appropriate. *See, e.g., Borenstein v. Finova Group, Inc.,* No. CIV 00-619, No. CIV 00-926, No. CIV 00-978, No. CIV 00-1010, No. CIV 00-1100, 2000 U.S. Dist. LEXIS 14732, at *10, *15 (D.Ariz. Aug. 28, 2000) (consolidating securities complaints despite differences in class period and named defendants). Since the Court finds that the Crayfish Actions involve common questions of law and fact, in the interests of judicial economy, these actions are hereby consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

FN3. Plaintiffs in the Crayfish Actions disagree on the precise confines of the Class Period. However, these differences do not prevent consolidation. *See In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 293 (E.D.N.Y.1998) (finding that differing class periods did not bar consolidation).

### B. Appointment of Lead Plaintiff

In 1995, Congress enacted the PSLRA in response to perceived abuses in securities fraud class actions. *See* S.Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. The purpose behind the PSLRA is to prevent " lawyer-driven" litigation, and to ensure that " ' parties with significant holdings in issuers, whose

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." ' *In re Oxford Health Plans, Inc., Sec. Litig.,* 182 F.R.D. 42, 43-44 (S.D.N.Y.1998) (quoting H.R. Conf. Rep. No. 104-369); *see also In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157-58 (S.D .N.Y.1997). Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs. *See In re Oxford Health Plans,* 182 F.R.D. at 46 (citing H.R. Conf. Rep. No. 104-369). Before the PSLRA was enacted, "professional plaintiffs" with securities fraud claims "tended to profit irrespective of the culpability of the defendants, most of whom chose settlement over prolonged and expensive litigation." *In re Party City Sec. Litig.,* 189 F.R.D. 91, 103 (D.N.J.1999). These professional plaintiffs tended to benefit disproportionately and at the expense of shareholders with larger stakes. *Id.*

> FN4. Although the claims in the Crayfish Actions are brought under the Securities Act of 1933, the PSLRA amended both the Securities Act of 1933 and the Securities Exchange Act of 1934. *See Lax,* 1997 WL 461036, at *2 n. 2 ("[T]he lead-plaintiff provisions of the 1933 and 1934 acts are identical"). Therefore, regarding interpretation and application of the PSLRA, cases cited herein are based on decisions under both statutes. *See, e.g., Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838, 843 (2d Cir.1971) (stating that the Securities Act of 1933 and the Securities and Exchange Act of 1934 " are *in pari materia* and should be construed together as one body of law").

**\*3** Accordingly, the PSLRA amended the Securities Act by altering the procedures for bringing such class actions. The PSLRA requires plaintiffs filing a private securities class action complaint to publish notice of the pendency of the suit in a widely circulated business publication or wire service no later than twenty days after the complaint is filed. 15 U.S.C. § 77z-1(a)(3)(A)(i). No later than sixty

days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. 15 U.S .C. § 77z-1(a)(3)(A)(i)(II). If a motion for consolidation has been made, the Court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 77z-1(a)(3)(B)(ii).

In addition, the PSLRA provides that:
[T]he court ... shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") ....

15 U.S.C. § 77z-1(a)(3)(B)(i).

A rebuttable presumption directs the court's inquiry when appointing lead plaintiff under the PSLRA. The PSLRA provides that the most adequate plaintiff is "the person or group of persons that-
(aa) has either filed the complaint or made a motion in response to a notice ...;
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

This presumption, however, may be rebutted only upon proof offered by another member of the purported class "that the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

The Chang Plaintiffs Group moves to be appointed Lead Plaintiff. In support of its motion, the Chang Plaintiffs Group argues that it satisfies all of the most adequate plaintiff presumption requirements, i.e., that its motion is timely, the group has the greatest financial interest of any plaintiff or plaintiff group, and that it satisfies the typicality and adequacy requirements of Rule 23. (Chang

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiffs Group Mem. Law at 8).

### 1. Notification Requirement and Filing a Timely Motion

The PSLRA requires plaintiffs filing securities class actions to publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class-(I) of the pendency of the action, the claims asserted therein, and the purported class period ...." 15 U.S.C. § 77z-1(a)(3)(A)(i). In addition, the notice must also advise members of the purported class that "not later than 60 days after the date on which the notice is published, any member ... may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). However, if more than one action alleging " substantially the same claim or claims" is filed only the party bringing the first action "shall be required to cause notice to be published ...." 15 U.S.C. § 77z-1(a)(3)(A)(ii).

*4 In this case, the *Skwortz* Complaint was the first of the Crayfish Actions filed. On September 8, 2000, the Plaintiff in *Skwortz* caused to be published a notice of pendency in the PRNewswire, pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i). (Stone Aff., Ex. 2.) This notice informed members of the class that they had sixty days after publication to move for appointment as lead plaintiff. The sixty day period elapsed on Tuesday, November 7, 2000 .

On November 8, 2000, the Chang Plaintiffs Group filed its motion for the Appointment of Lead Plaintiff and Lead Counsel. Although the Chang Plaintiffs Group filed the instant motion in response to the notice published September 8, 2000, it has filed its motion later than sixty days after the date on which the notice was published.

> FN5. The PSLRA does not further define what type of publication is required by 15 U.S.C. § 77z-1(a)(3)(A)(i). However, the PRNewswire has been accepted as a proper publication. *See e.g., In re Party City,* 189 F.R.D. at 105 (publication over PRNewswire satisfies PSLRA).

> FN6. In an announcement dated September 18, 2000, one of the proposed lead counsel firms, Milberg Weiss Bershad Hynes & Lerach LLP., advised purchasers of Crayfish stock that "you may, no later than November 7, 2000, request that the Court appoint you as lead plaintiff." (Stone Aff., Ex. 2.)

The issue becomes then, whether the tardy filing of the Group's motion denies it further consideration by this Court. To be sure, courts have taken different approaches with respect to motions filed in excess of the sixty day period provided for under the PSLRA. *Compare Steiner v. Frankino,* Nos. 98 Civ. 0264, 98 Civ. 0295, 98 Civ. 0301, 98 Civ. 0356, 98 Civ. 0375, 98 Civ. 0406, 98 Civ. 0419, 98 Civ. 0431, 98 Civ. 0457, 98 Civ. 0462, 98 Civ. 0714, 1998 U.S. Dist. LEXIS 21804, at *13 (N.D.Ohio July 16, 1998) (recognizing that "it would be improper to enforce a strict time limit" where the publication of multiple notices could appear to expand the time period in the eyes of the class members) *with In re Microstrategy Inc., Sec. Litig.,* 110 F.Supp.2d 427, 433 n. 12 (E.D.Va.2000) ("[M]otions filed after the 60 day period are untimely when made by a class member who has not filed a complaint."); *In re Telxon Corp., Sec. Litig.,* 67 F.Supp.2d 803, 818 (N.D.Ohio 1999) (" The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.") (emphasis in original); *Switzenbaum v. Orbital Sciences Corp.,* 187 F.R.D. 246, 249-50 (E.D.Va.1999) (stating that to be considered for Lead Plaintiff a person must either file a complaint or make a timely motion, and concluding that since the interested plaintiff "never filed a complaint himself or moved for appointment within the time that the PSLRA requires of those who hope to become the Lead Plaintiff" he could not be considered individually or as part of a group who had filed a timely motion). However, this Court has found no case that addresses the particular timeliness issue raised here, i.e., where

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

the only motion for lead counsel is untimely, and thus necessitates a review of the complaints filed in order to determine the lead plaintiff. Further, this Circuit has not ruled whether the requirements of the most adequate plaintiff presumption are to be applied serially in order, or whether each requirement is applied to the motion or complaint despite its inability to satisfy all of the presumption's requirements.

**\*5** This Court reads the statute to require a complaint or a timely filed motion. The 60 day period the statute provides for the submission of lead counsel motions is mandatory. The tardiness of the Chang Plaintiffs Group motion precludes this Court from appointing the Group as Lead Plaintiff in this case. *See, e.g., In re Microstrategy,* 110 F.Supp.2d at 439 (stating that the most adequate plaintiff factors are to be considered separately, and that an untimely motion "may not, except perhaps in rare circumstances, be considered by a court" and subsequently barring further consideration of a motion for lead plaintiff where the applicant did not satisfy the first requirement of the statutory presumption).

> FN7. However, even if the 60 day requirement was not mandatory, the Chang Plaintiffs Group has provided this Court with no good cause for tolling the statutory requirement in this case.

The mandatory nature of the 60 day requirement follows from the structure of the PSLRA itself. The PSLRA explicitly provides that the court "shall adopt" the most adequate plaintiff presumption. To satisfy the presumption's first prong one must " either file[ ] the complaint or [make] a motion in response to a notice under subparagraph (A)(i)." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa). Thus, an untimely motion has the effect of preventing the proposed Group from satisfying the first requirement of the most adequate plaintiff presumption.

The fact that no other motions for lead plaintiff have been filed does not mean that the Chang Plaintiffs Group is automatically appointed lead

plaintiff. Where there is not a timely motion before the Court, the PSLRA directs this Court's attention to the plaintiffs that have "filed [a] complaint." 15 U.S.C. § 77z-1(a)(B)(iii)(I)(aa). Accordingly, the Chang Plaintiffs Group's motion is barred from further consideration by the first prong of the most adequate plaintiff presumption. The Plaintiffs who have filed the various Crayfish Actions before this Court shall now be considered for appointment as Lead Plaintiff.

### 2. Largest Financial Interest Requirement

The PSLRA does not explicitly explain how the greatest financial interest should be calculated. However, courts have considered four factors when evaluating this requirement: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period. *See, e.g., In re Olsten Corp.,* 3 F.Supp.2d at 296 (citing *Lax,* 1997 WL 461036, at \*5).

Applying the above factors, this Court finds that of the Plaintiffs who filed Complaints against Crayfish, Plaintiff Lazarus possesses the largest financial interest in the relief sought by the class.

### 3. Rule 23 Requirement

The Rule 23 inquiry under § 77z-1(a)(3)(B)(iii)(I)(cc) is less stringent than the inquiry the rule otherwise requires. *See In re Party City,* 189 F.R.D. at 106 (" '[a] wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification" ' (quoting *Fischler v. Amsouth Bancorporation,* No. 96-1567-Civ-T-17A, 1997 WL 118429, at \*2 (M.D.Fla. Feb. 6, 1997))); *In re Advanced Tissue Sciences Sec. Litig.,* 184 F.R.D. 346, 349 (S.D.Cal.1998) (same). At this stage in the litigation, one need only make a "preliminary showing" that the Rule's typicality and adequacy requirements have been satisfied. *In re Olsten Corp.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3 F.Supp.2d at 296; *see also Weltz v. Lee,* Nos. 00 Civ. 3863, 00 Civ. 4021, 00 Civ. 4117, 00 Civ. 4557, 00 Civ. 5224, 2001 WL 228412, at \*5 (S.D.N.Y. March 7, 2001). Any preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party from contesting the ultimate class certification. *See Weltz,* 2001 WL 228412, at \*5; *see also Koppel v. 4987 Corp.,* Nos. 96 Civ. 7570, 97 Civ. 1754, 1999 WL 608783, at \*8 (S.D.N.Y. Aug. 9, 1999) (appointment as lead plaintiff "does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification").

### i. Typicality

**\*6** The typicality requirement is satisfied when the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans,* 182 F.R.D. at 50 (citing *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992)). The claims of the proposed lead plaintiff need not be identical to the claims alleged by other class members. *In re Party City,* 189 F.R.D. at 107; *see also In re Nice Systems Sec. Litig.,* 188 F.R.D. 206, 218 (D.N.J.1999) (same).

The claims in the Lazarus Complaint satisfy the Rule 23 typicality requirement as it is incorporated into the PSLRA. All of the Crayfish Actions allege substantially the same claims and these claims arise from the same factual predicate. Accordingly, the Court finds that the Lazarus claims satisfy the typicality requirement. The differences that exist between the various Crayfish Actions do not bar Lazarus from being appointed Lead Plaintiff.

### ii. Adequacy

The adequacy requirement is satisfied if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class members are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy. *In re Olsten Corp.,* 3 F.Supp.2d at 296

(citing *In re Drexel,* 960 F.2d at 291; *Lax,* 1997 WL 461036, at \*6).

The Lazarus Action also satisfies the adequacy requirement. The Complaint filed in the Lazarus action suggests to this Court that the Counsel for Lazarus is generally able to conduct the litigation. This conclusion is supported by the firm's on-line resume. *See* Kirby McInerney & Squire, LLP., at *http:// www.kmslaw.com* (Apr. 13, 2001) (indicating the firm has significant experience in prosecuting securities class actions). Further, it does not appear that any antagonism exists between class members. To be sure, antagonism may exist where certain class members own shares and others do not. *See, e.g., In re Party City,* 189 F.R.D. 107-112 (finding that plaintiffs who continued to hold shares had a continued interested in the financial strength of the defendant company whereas plaintiffs who sold their shares did not). However, nothing in the record before this Court suggests that Lazarus seeks anything other than "the greatest recovery for the class consistent with the merits of the claims." *In re Oxford Health Plans,* 182 F.R.D. at 49. As a final matter, Lazarus also satisfies the vigorous representation requirement. While he is not an institutional investor, Lazarus did invest more money than any other of the Plaintiffs who filed actions against the Defendants.

This Court finds that Lazarus is the most adequate plaintiff.

### 4. Presumption of Adequacy Not Rebutted

The most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(a)(B)(iii)(II). Here, no member of the purported class has sought to rebut the presumption. Accordingly, Lazarus is appointed Lead Plaintiff for the consolidated Crayfish Actions currently pending before this Court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### C. Appointment of Lead Counsel

\*7 Lazarus has selected the law firm of Kirby McInerney & Squire, LLP., to serve as Lead Counsel. The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). "Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors." *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 550 (N.D.Tex.1997). Courts, however, may decline to approve Lead Plaintiff's suggested counsel "to protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Lazarus has selected Kirby McInerney & Squire, LLP., to serve as Lead Counsel. As stated earlier, the Court finds Lazarus' choice of counsel is qualified to prosecute this securities class action. Accordingly, this Court approves the selection of Kirby McInerney & Squire, LLP., as Lead Counsel.

### III. CONCLUSION

Having considered the motion for Consolidation of the Crayfish Actions Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and for Appointment of Lead Plaintiff and Lead Counsel pursuant to the Securities Act of 1933, IT IS HEREBY ORDERED THAT:

1. The motion to Consolidate the Crayfish Actions for All Purposes is GRANTED;

2. The following actions are hereby consolidated for all purposes, including pretrial proceedings, trial and appeal, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure:
*Skwortz v. Crayfish Co., Ltd.,* No. 00 Civ. 6766(DAB)
*Hersh v. Crayfish Co., Ltd.,* No. 00 Civ. 6978(DAB)
*Miller v. Crayfish Co., Ltd.,* No. 00 Civ. 6998(DAB)
*Goldstein v. Crayfish Co., Ltd.,* No. 00 Civ. 7009(DAB)
*Cohen v. Crayfish Co., Ltd.,* No. 00 Civ. 7141(DAB)

*Cheng v. Crayfish Co., Ltd.,* No. 00 Civ. 7250(DAB)
*Bernstein, v. Crayfish Co., Ltd.,* No. 00 Civ. 7263(DAB)
*Aarons v. Crayfish Co., Ltd.,* No. 00 Civ. 7489(DAB)
*Pashandi, v. Crayfish Co., Ltd.,* No. 00 Civ. 7682(DAB)
*Lazarus v. Crayfish Co., Ltd.,* No. 00 Civ. 7939(DAB)
*Jose v. Crayfish Co., Ltd.,* No. 00 Civ. 8214(DAB)

3. The caption of these consolidated actions shall be *"In re Crayfish Company Securities Litigation "* and the files of these consolidated actions shall be maintained in one file under Master File No. 00 Civ. 6766(DAB). Any other actions now pending or later filed in this district which arise out of or are related to the same facts as alleged in the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention.

4. Every pleading filed in the consolidated actions or in any separate action included herein, shall bear the following caption:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 9

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*8 5. When a pleading is intended to be applicable to all actions governed by this Order, the words " All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable to only some, but not all of the consolidated actions, this Court's docket number for each individual action to which the pleading is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption described above.

6. When a pleading is filed and the caption shows that it is applicable to "All Actions," the clerk shall file such pleading in the Master File and note such filing on the Master Docket. No further copies need to be filed, and no other docket entries need be made.

7. When a pleading is filed and the caption shows that it is to be applicable to fewer than all of the consolidated actions, the Clerk will file such pleading in the Master File only, but shall docket such filing on the Master Docket and the docket of each applicable action.

8. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case which might be consolidated as part of *In re Crayfish Company Securities Litigation.*

9. The Chang Plaintiffs Group's motion for appointment as Lead Plaintiff is DENIED.

10. The Chang Plaintiffs Group's motion for appointment of Shalov Stone & Bonner and Milberg Weiss Bershad Hynes & Lerach LLP as Co-Lead Counsel is DENIED.

11. Alan Lazarus is appointed by this Court to serve as Lead Plaintiff.

12. Kirby McInerney & Squire, LLP., is appointed Lead Counsel.

13. Plaintiffs shall file a Consolidated Complaint within 45 days of the date of this Order.

14. The Defendants shall move or answer within 30 days after filing of the Consolidated Complaint.

15. The Clerk is directed to serve a copy of this Order on all parties of record in the consolidated actions.

SO ORDERED.

S.D.N.Y.,2001.
Skwortz v. Crayfish Co., Ltd.
Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:00cv07939 (Docket) (Oct. 18, 2000)
• 1:00cv07682 (Docket) (Oct. 11, 2000)
• 1:00cv07489 (Docket) (Oct. 04, 2000)
• 1:00cv07250 (Docket) (Sep. 26, 2000)
• 1:00cv07263 (Docket) (Sep. 26, 2000)
• 1:00cv07141 (Docket) (Sep. 21, 2000)
• 1:00cv07009 (Docket) (Sep. 19, 2000)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10

Not Reported in F.Supp.2d, 2001 WL 1160745 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


• 1:00cv06978 (Docket) (Sep. 18, 2000)
• 1:00cv06998 (Docket) (Sep. 18, 2000)
• 1:00CV06766 (Docket) (Sep. 08, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 7

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Caroline WEISZ, on behalf of herself and all others
similarly situated, Plaintiffs,
v.
CALPINE CORPORATION, Peter C. Cartright,
Ann B. Curtis and Charles B. Clark, Defendants.
**No. 4:02-CV-1200.**

Aug. 19, 2002.

Lionel Z. Glancy, Peter A. Binkow, Los Angeles,
CA, Brian Murray, Gregory M. Egleston, Jeffrey
M. Haber, Joseph R. Seidman, Jr., Howard T.
Longman, Ashley Kim, Christopher Lometti, Jay P.
Salzman, Jeffrey H. Konis, Jay P. Saltzman, New
York, NY, Dennis J. Herman, Lesley E. Weaver,
Randi D. Bandman, Christopher T. Heffelfinger,
Joseph J. Tabacco, Jr., J. Thomas Bowen, Esq.,
Robert S. Green, Robert A. Jigarjian, San
Francisco, CA, Thomas E. Bilek, Houston, TX,
William S. Lerach, Francis A. Bottini, Jr., Francis
M. Gregorek, San Diego, CA, Denis F. Sheils,
Joseph C. Kohn, Philadelphia, PA, Gary S.
Graifman, Chestnut Ridge, NY, Edward Chang,
Edward W. Ciolko, Joseph H. Meltzer, Bala
Cynwyd, PA, Charles J. Piven, Baltimore, MD, for
Plaintiffs.
Paul H. Dawes, Jay L. Pomerantz, Menlo Park, CA,
Robert L. McKague, Palo Alto, CA, Christopher A.
Patz, Jordan David Eth, Melvin R. Goldman, Tracy
M. Clements, Stan G. Roman, San Francisco, CA,
for Defendants.

ORDER RE MOTIONS FOR APPOINTMENT OF
LEAD PLAINTIFF AND FOR CONSOLIDATION
ARMSTRONG, J.

>Docket Nos. 15, 22, 23, 26, and 28]

*INTRODUCTION*

*1 This is a securities fraud class action brought
against defendant Calpine Corporation ("Calpine")
and certain of its officers and/or directors ("the
Individual Defendants") for violations of Section
10(b) of the Securities Exchange Act of 1934 ("
1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5
promulgated thereunder. Presently, there are a total
of fourteen separate class action lawsuits pending in
this Court filed against Calpine and the Individual
Defendants which allege that they made false and
misleading statements to artificially inflate the price
of Calpine stock. The lawsuits were filed on behalf
of a putative class composed of purchasers of
Calpine publically-traded securities during the Class
Period from January 5, 2001, through December 13,
2001.

In addition to the above-discussed actions, there is a
separate action brought by Julius Ser on behalf of a
putative class of bondholders; namely, purchasers
of 8.5% Senior Notes issued by Calpine during the
period encompassing October 15, 2001 through
December 13, 2001. That action, now styled as *Ser
v. Calpine Corp.,* Case No. C 02-2316 SBA, was
filed on May 13, 2002. Like the other fourteen
related actions, the *Ser* complaint alleges that
Calpine made materially misleading statements
concerning its 2001 financial results. The
defendants in *Ser* are the same as in the other
actions, except that the underwriters for the initial
public offering are also included as
party-defendants. Unlike the other class actions, the
claims in *Ser* arise under Sections 11 and 15 of the
Securities Act of 1933 ("1933 Act"), 15 U.S.C. §
77K, 15 U.S.C. § 77o, respectively.

The parties are presently before the Court on a
variety of motions filed by four groups of plaintiffs:
(1) Northern Oak Capital Management, Inc. ("
Northern Oak") and Vincent H. Tomei ("Tomei"),
collectively referred to as "Northern Oak-Tomei";
(2) Andre W.L. Hickam ("Hickam") and Mansukh
B. Makadia ("Makadia"), collectively referred to as
"Hickam-Makadia"; (3) Laborers Local 1298

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Pension Fund ("Local 1298"); and the (4) Policemen and Firemen Retirement System of the City of Detroit ("Detroit"). Each of the four groups seeks appointment as lead plaintiff in accordance with the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and the opportunity to select counsel of its choosing.

In addition, Northern Oak-Tomei and Hickam-Makadia seek the consolidation of the fourteen class action lawsuits pending against Calpine and the Individual defendants. All parties agree to the consolidation; however, Calpine, the Individual Defendants, and Local 1298 request that the Court include the *Ser* action in the consolidation order. Ser opposes that request. In accordance with the PSLRA, the Court first resolves the matter of consolidation, and then addresses the various requests for appointment as lead plaintiff.

> FN1. The motions specifically presented for adjudication are: (1) Motion of the Policemen and Firemen Retirement System of the City of Detroit to Appoint It as Lead Plaintiff and for Approval of Its Selection of Lead Counsel; (2) Andre W.L. Hickam and Mansukh B. Makadia's Motion to Consolidate Related Cases, Appoint Lead Plaintiffs, and for Approval of Lead Counsel; (3) Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Appoint Northern Oak Capital Management, Inc. and Vincent H. Tomei as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel; (4) Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Consolidate Related Actions and Preserve Documents; and (5) Laborers Local 1298 Pension Fund's Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel.

### DISCUSSION

### A. *CONSOLIDATION*

#### 1. *Legal Standard*

**\*2** Federal Rule of Civil Procedure 42(a) provides that "when actions involving common questions of law or fact are pending before the court, it ... may order all the actions consolidated...." The district court has "broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. United States Dist. Ct.,* 877 F.2d 777 (9th Cir.1989). The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact. *EEOC v. HBE Corp.,* 135 F.3d 543, 550 (8th Cir.1998).

The PSLRA "directs that cases should be consolidated where ... there is 'more than one action on behalf of a class asserting substantially the same claim or claims.' " *In re Cendant Corp.Litig.,* 182 F.R.D. 476, 478 (D.N.J.1998) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Where, as here, there is more than one action on behalf of the proposed class asserting substantially the same claim, Section § 78u-4(a)(3)(B)(ii) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(ii), requires that any motions for consolidation be decided first, and that "as soon as practicable" thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

#### 2. *Scope of the Consolidation*

Northern Oak-Tomei and Hickam-Makadia move for consolidation of the fourteen securities class actions filed against Calpine and others in this Court. There is no dispute by any of the parties that all of the securities class actions present substantially similar factual and legal claims against the same defendants, and as such, consolidation is appropriate. However, Calpine and the Individual Defendants request that the Court also include *Ser* in the consolidation order on the ground that allegations forming Ser's claims are virtually identical to those presented in the other securities actions.

> FN2. At the hearing, the underwriter defendants in *Ser* also concurred in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

> request to consolidate the *Ser* action with
> the other Calpine actions.

Ser contends that consolidation of his complaint with the remaining actions is inappropriate in light of the different claims alleged. Specifically, whereas bondholder claims are based on violations of Sections 11 and 15 of the 1933 Act, the stockholder claims are predicated on Rule 10b-5 and Section 10b of the 1934 Act. Since different pleading requirements and standards of proof apply to these claims, Ser asserts that the better course of action is to keep these claims separate. This Court recently considered and rejected virtually identical arguments in another large securities fraud class action in *Miller v. Ventro Corp.,* Case No. C 01-1287 SBA. As explained in *Miller,* the differences inherent in bondholder versus shareholder claims are outweighed by the fact that the claims alleged in *Ser* and the remaining actions are based on the same alleged course of conduct. *See Miller v. Ventro Corp.,* Case No. C 01-1287 SBA, slip. op. at 8-9 (N.D.Cal. Nov. 28, 2001). As such, the Court is not convinced by Ser's contention that differences in the pleading and evidentiary burdens associated with the 1933 Act and 1934 Act claims are sufficient to avoid consolidation.

**\*3** Next, Ser contends that a stockholder alleging Section 10(b) and Rule 10b-5 claims has no standing to bring claims on behalf of a bondholder bringing Section 11 and 15 1993 Act claims. However, whether a stockholder has standing to assert Section 11 and 15 claims is inapposite to the question of whether bondholder and stockholder actions premised on the same factual events should be consolidated. *See In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 445-46 (S.D.Tex.2002) (finding that conflict between claims of preferred shareholders and common shareholder did not preclude consolidation, as such issues could be addressed later in the litigation).

> FN3. During oral argument, Ser requested
> that in the event his action is consolidated
> with the others, he be appointed as co-lead
> plaintiff, or alternatively, that a subclass be
> established for the bondholders. Since

Ser's losses are negligible in comparison to most of the proposed lead plaintiffs, the Court finds no need to appoint Ser as a co-lead plaintiff. The matter of a subclass may be dealt at the time of class certification.

The Court is also unconvinced by Ser's remaining contentions. First, Ser asserts that the Class Period in the *Ser* action (October 15, 2001 through December 13, 2001) is different than the Class Period defined for the related shareholder actions (January 5, 2001, through December 13, 2001). This distinction is inconsequential, as the Class Period in the *Ser* action is subsumed by the Class Period alleged in the related stockholder actions. *See Miller,* Case No. C 01-1287 SBA, slip op. at 9 (finding differences in class periods inapposite where the "class periods [in the bondholder action] are equal to or less than that in the [stockholder] action.").

Second, Ser complains that "the notices published for the 10(b) Actions do not effectively notify purchasers of the Calpine 2011 Bonds of their claims or rights under the PSLRA." (Ser's Opp'n at 5.) Again, it is unclear how the adequacy of such notices has any bearing on whether the *Ser* and related actions share "common questions of law or fact" sufficient to warrant consolidation under Rule 42(a).

Finally, Ser contends that his action includes the bond underwriters as defendants, who are not joined in the other actions. As above, this fact is not a persuasive basis for preventing consolidation. *See id.* at 8 ("the fact that other parties are included does not preclude consolidation.") (citing cases).

At bottom, the Court concludes that the fourteen related stockholder class actions, along with the *Ser* action, should be consolidated. The factual allegations underlying these lawsuits are essentially identical with respect to the underlying alleged misconduct. Despite some differences and unique issues presented in the *Ser* action, the Court finds that such distinctions are far outweighed by the benefits of consolidation. The Court further finds that given the common questions of law or fact, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

in light of the interests of avoiding unnecessary costs or delays, consolidation is proper. Therefore, the Court GRANTS the motions for consolidation, and all related stockholder class action lawsuits and the *Ser* action shall be consolidated, pursuant to Federal Rule of Civil Procedure 42(a).

> FN4. Ser's alternative suggestion to create a subclass for the bondholders may be addressed at the time of class certification.

### 3. *Form of the Consolidation Order*

The Northern District of California has adopted a Model Stipulation and Proposed Consolidation Order ("Model Order") for use in securities class actions. While the parties do not dispute the propriety of using this Model Order, they disagree on two key issues: (1) whether the consolidation should be for "all purposes" or "for pretrial proceedings" only; and (2) whether the Order should contain language affirmatively directing the defendants to comply with their legal obligation to preserve documents. The Court discusses these issues in turn.

\*4 First, Calpine contends that the consolidation should be limited to "pretrial proceedings" consistent with the Model Order, as "[a] better assessment of the need to consolidate these actions for trial can be made at the pre-trial conference." (Calpine's Corrected Resp. at 3.) Unfortunately, Calpine neglects to explain why this is so or to cite any authority in support of its position. Moreover, given the underlying purpose of consolidation, namely, to promote efficiency and avoid delay, the Court finds that consolidating the related actions for *all purposes* best serves these goals.

Second, Calpine and the Individual Defendants oppose the inclusion of language proposed by Northern Oak-Tomei concerning the preservation of documents. As pointed out by defendants, Northern Oak-Tomei's four-page proposed order for consolidation contains a ten-page attachment which spells out the specific documents which defendants should be ordered to preserve. Defendants contend that such level of particularity is excessive and

unnecessary in light of the fact that the PSLRA already affords plaintiffs with statutory protection concerning the preservation of documents. The Court agrees.

The PSLRA requires parties to treat evidence in their custody or control as if it were the subject of a continuing discovery request during the pendency of any stay imposed by the PSLRA. 15 U.S.C. § 78u-4(b)(3)(C)(i). This obligation is automatic and self-executing. *See In re Grand Casinos, Inc. Secs. Lit.,* 988 F.Supp. 1270, 1273 (D.Minn.1997) ("the preservation of evidence in the possession of the parties is statutorily automatic"). In light of this protection, it would appear to be somewhat superfluous for this Court to order the defendants to comply with that to which they are already obligated to follow. Nevertheless, the Court is cognizant that, despite the existence of statutes designed to prevent the destruction of evidence, there are instances where such obligations are disregarded, resulting in the irreparable loss of key evidence. Therefore, the Court will employ the language of the Model Order, supplemented by the highlighted text:

Counsel for the parties shall notify their clients of their document preservation obligations pursuant to the federal securities laws and local rules, *and the possible legal consequences of their failure to comply as such. Upon completion of such notification, counsel shall certify to the Court, in writing, the date of such notification.*

(Model Order ¶ 18, as modified.)

### B. *APPOINTMENT OF LEAD PLAINTIFF*

#### 1. *Legal Standard*

The PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff ') in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Act creates a rebuttable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 5

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

presumption that the most adequate plaintiff should be the plaintiff which: (1) has brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

> FN5. Federal Rule 23 generally requires that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative class are typical of the claims and defenses of the class, and (4) the representatives of the parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

*5 The above presumption may be rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. *Id.* § 78u-4(a)(3)(B)(v).

### 2. *Largest Financial Interest*

The PSLRA provides that the financial interest in the outcome of the litigation is reasonably representative of the ability of a party or parties to function as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This comports with the overall focus of the PSLRA to place securities litigation in the hands of investors, not lawyers. *See Armour v. Network Assocs., Inc.,* 171 F.Supp.2d 1044, 1048 (N.D.Cal.2001) ("The legislative history of the PSLRA reveals that the above provisions were motivated by Congressional concerns about the prevalence of 'lawyer-driven' securities class actions.") (citing Statement of

Managers-The "Private Securities Reform Act of 1995," H.R. Conf. Report No. 104-369, 104th Cong. 1st Ses. (1995), *reprinted in* U.S.C.C.A.N. 730). As such, institutional lead plaintiffs are preferred, though not required. *Id.*

The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Nonetheless, district courts, including two judges from this District, have equated "largest financial interest" with the amount of potential recovery. *See In re Critical Path, Inc. Sec. Litig.,* 156 F.Supp.2d 1102, 1107-08 (N.D.Cal.2001) (Orrick, J.); *see also In re Network Assocs., Inc., Sec. Litig.,* 76 F.Supp.2d 1017, 1030 (N.D.Cal.1999) (Alsup, J.). Under this approach, the Court considers the "number of net shares purchased during the class period" coupled with the "losses suffered by selling shares during the class period." *Critical Path,* 156 F.Supp. at 1108. Applying this framework to the record presented, the Court now assesses each of the four groups of putative lead plaintiffs.

> FN6. Other courts have employed a similar approach which advocates the consideration of four factors: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period. *In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d. 286, 296 (E.D.N.Y.1998).

#### a. *Northern Oak-Tomei*

Northern Oak-Tomei allege that they collectively purchased 598,570 shares of Calpine stock during the Class Period and suffered losses in excess of $11 million. These figures far exceed the amounts proffered by any of the other proposed lead plaintiffs. At first blush, it would appear that Northern Oak-Tomei are the logical choice for the appointment of lead counsel. Upon closer examination, however, the Court is not convinced

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

that either Northern Oak or Tomei, collectively or individually, is the most adequate plaintiff.

The Supreme Court has held that Rule 10b-5 plaintiffs must be actual purchasers or sellers of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730-31, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Harmsen v. Smith,* 693 F.2d 932, 941 (9th Cir.1982). Northern Oak is an "investment manager" which merely makes investments on its individual clients' behalf. "While some courts have permitted 'investment managers' to serve as lead plaintiffs, those courts generally have required showings that such money managers qualify as a ' single person' under the Reform Act." *Smith v. Suprema Specialties, Inc.,*-206 F.Supp.2d 627, 634 (D.N.J.2002) (citing cases). In *Smith,* the court declined to appoint an investment manager as lead plaintiff, notwithstanding the fact that it ostensibly suffered the greatest loss. *Id.* The court reasoned that the investment manager merely provided separate account services for diverse, unaffiliated investors. *Id.* Given the absence of evidence establishing that its investors otherwise acted as a " single person", the court concluded that the investment manager was not a suitable lead plaintiff. *Id.; see also In re Bank One Shareholders Class Actions,* 96 F.Supp.2d 780, 784 (N.D.Ill.2000) (finding that an institutional investment manager was not the "most adequate" plaintiff in part because it was "not a buyer for its own account, standing instead in the place of whatever number of investors are participants in the managed fund.").

**\*6** Like the investment manager in *Smith,* Northern Oak similarly fails to present any evidence or information concerning whether its investment in Calpine was for its own account or the account of its clients. (*See* Northern Oak-Tomei Reply at 4-5.) In addition, Northern Oak provides no information concerning the nature and circumstances under which Northern Oak purchased Calpine stock during the Class Period. Nor is there any evidence demonstrating that Northern Oak coordinated and selected the investments of its clients, as opposed to merely executing its clients' requests. Although Hickam-Makadia clearly discusses the evidentiary infirmity of Northern Oak-Tomei's motion for appointment as lead plaintiff, the latter makes no

attempt to present any evidence on these points.

At the hearing on the instant motions, the Court queried Northern Oak whether there was any evidence in the record to support the proposition that Northern Oak has complete discretion and control over its clients' account and that it has the authority to litigate this action. In response, Northern Oak directed the Court's attention to a document styled as the "Uniform Application for Investment Advisor Registration" which is attached as Exhibit B to the Declaration of J. Thomas Bowen. Specifically, Northern Oak points out that Item 8 of the Application specifies that "or any related person" has "discretionary authority" to select securities for purchase or sale on behalf of its clients' accounts. (Bowen Decl. Ex. B at 31/54.) The Court is not convinced. While the document states the conclusion that Northern Oak has " discretionary authority" with respect to its clients' accounts, no information is provided regarding the nature and extent of such discretion.

> FN7. This declaration was submitted by Local 1298, not Northern Oak-Tomei. Counsel for Local 1298 obtained this document from the United States Securities and Exchange Commission's Investment Advisor Public Disclosure website located at http://www.advisorinfo.sec.gov. (Bowen Decl. ¶ 2.)

The Court also has serious concerns regarding Northern Oak's authority to bring this action on behalf of its clients. An asset manager seeking appointment as lead plaintiff is generally required to provide evidence that it acts as an attorney-in-fact for its clients and is authorized to seek recovery for investment losses. *Smith,* 206 F.Supp.2d at 634. In this respect, Northern Oak contends that its authority to bring this action is implicit in the Certification of Named Plaintiff Pursuant to Federal Securities Laws. (Weaver Decl. Ex. A.) This contention lacks merit. Nothing in that document suggests that Northern Oak has been authorized by its clients to bring securities law claims on their behalf. In the absence of such evidentiary support,

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

the Court finds that Northern Oak has not demonstrated itself to be an adequate plaintiff within the meaning of the PSLRA. *Id.* ("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf.").

Finally, Northern Oak contends that case law supports the notion that an investment manager may be appointed as a lead plaintiff, notwithstanding the lack of evidence to support such a showing. (Northern Oak-Tomei Reply at 4-5.) However, in the majority of cases cited by Northern Oak, the courts specifically relied on evidence proffered by the investment advisor. *See The Ezra Charitable Trust v. Rent-Way, Inc.,* 136 F.Supp.2d 435, 440-442 (W.D.Penn.2001) (noting that the investment advisor plaintiff had submitted undisputed declarations that it had "complete investment discretion" to purchase and sell securities for its clients and to institute a legal action to seek recovery for investment losses); *Alfaro v. Caprock Communications Corp.,* No. 00-CV-1613-R, 2000 U.S. Dist. LEXIS 21743 at \*7 (N.D.Tex. Dec. 8, 2000) (noting that the money manager plaintiff "has presented a sworn affidavit ... [that it] has 'full and complete discretion and authority to manage the securities of its clients....'"); *Local 144 Nursing Home Pension Fund v. v. Honeywell Int'l Inc.,* No. 00-3605 DRD, 2000 U.S. Dist. LEXIS 16712 at \*13-14 (D.N.J. Nov. 16, 2000) (citing declarations submitted by plaintiff which establish that it is a "group" within the meaning of the PSLRA). In sum, the Court concludes that Northern Oak is not an adequate plaintiff.

> FN8. In *Takeda v. Turbodyne Techs., Inc.,* 67 F.Supp. 1129 (C.D.Cal.1999), another case cited by Northern Oak-Tomei, a competing proposed lead plaintiff argued that some of the losses incurred by the investment advisor were on behalf of his clients, as opposed to his company. *Id.* at 1136 n. 18. The court rejected this contention, stating that it "fails to see how this detracts from [the investment advisor's] suitability as a lead plaintiff." *Id.*

However, the *Takeda* court provides no legal analysis nor cites any case law to support these observations. As such, the court's observations are of dubious value to the Court in analyzing the instant action.

\*7 With Northern Oak now excluded from consideration, the next question is whether Tomei is an adequate plaintiff. (Weaver Decl. Ex. B.) There is no dispute that Tomei, with $8 million in claimed losses, has a larger financial stake than compared to any of the remaining plaintiffs. However, the vast majority of these losses were not incurred by Tomei personally, but rather, by "certain family trusts" of which he is the trustee. (Tomei Decl. ¶ 1; Northern Oak-Tomei Reply at 6.) While there is no dispute that a trustee has standing to bring a securities fraud action, the problem here is that Tomei is seeking appointment as lead counsel in his *individual* capacity, *not* as a "trustee" of his family trusts. (Hickam-Makadia Opp'n at 6.)) This fact is readily apparent from both the Notice of Motion and the Proposed Order submitted by Northern Oak-Tomei, which make no mention of appointing Tomei in the capacity of the trustee of his family trusts. Notably, Tomei was unable to sufficiently explain this omission at the hearing on the instant motion. Therefore, for purposes of the instant motions, the Court finds that Tomei's losses are limited to $88,629.80 for the purpose of assessing his financial interest in the litigation. In addition, for reasons discussed below, the Court does not consider Tomei to be an adequate plaintiff.

### b. *Detroit*

Aside from Northern Oak and Tomei, the plaintiff claiming the next largest financial stake is Detroit, an institutional investor, with an alleged loss of $1,447,435.00. (Sheils Decl. ¶ 2.) As an initial matter, the Court has serious concerns regarding the accuracy of this figure. In their opposition papers, Hickam-Makadia expressly argues that Detroit's claimed loss of $1,447,435.00 and the method of calculating this figure are "patently wrong." (Hickam-Makadia Opp'n at 2.) Tellingly, Detroit makes no attempt to address this issue in its Reply brief. When questioned by the Court at the hearing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

regarding this matter, Detroit summarily affirmed the accuracy of its stated loss and explained that it used the first-in first-out ("FIFO") method of accounting in which specific sales are matched to specific purchases. However, because such an approach encompasses purchases made outside the class period, courts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases. *See See In re Comdisco Secs. Litig.,* 150 F.Supp. 943, 945-46 (N.D.Ill.2001) (citing cases); *see also In re Clearly Canadian Secs. Litig.,* No. C 93-1037 VRW, 1999 WL 707737 at *4 (N.D.Cal. Sept.3, 1999) ("use of the ' first in, first out' method of pairing purchases and sales of shares will identify damages where in reality there may be none; the 'FIFO' assumption is in no way based on actual trading practices in general, let alone the trades of actual claimants.").

Aside from the infirmity of Detroit's loss calculation, the Court notes that Detroit purchased 64,100 shares of Calpine stock, *but sold almost twice that amount*-152,000 shares-during the Class Period. (*Id.* Ex. 1.) This fact undermines Detroit's contention that it has the largest financial interest in this case aside from Northern Oak-Tomei. *See Critical Path,* 156 F.Supp. at 1108 ("the number of net shares purchased during the class period is determinative" of which party has the "largest financial interest"). Indeed, it is apparent that Detroit may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price. *See Comdisco,* 150 F.Supp. at 945-46 (finding that plaintiff which sold more shares than it purchased during the class period was "totally out of the running for designation as lead plaintiff"). Therefore, the Court removes Detroit from consideration for appointment as lead plaintiff.

#### c. *Hickam-Makadia*

\*8 Hickam-Makadia collectively purchased 71,000 shares during the Class Period and suffered losses of \$435,216.60 (Seidman Decl. Ex. B), which suggests that they are the plaintiffs with the next largest financial interest in this case. However, Hickam is disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold

Calpine stock "short" during the Class Period. *See Critical Path,* 156 F.Supp.2d at 1111 (finding that history of short selling stock in issue disqualified investor from appointment as lead plaintiff in securities fraud class action because "[s]hort sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."). Since Hickam is not a suitable lead plaintiff, the Court must consider which of the remaining plaintiffs should be appointed in this action.

#### d. *The Remaining Plaintiffs*

The plaintiffs remaining for consideration are Makadia and Local 1298. As an institutional entity, Local 1298 is preferable to an individual plaintiff such as Makadia. *See In re Conseco, Inc. Sec. Litig.,* 120 F.Supp.2d 729, 734 (S.D.Ind.2000) ( "Congress has expressed a preference for institutional investors to be appointed lead plaintiff" ). However, there is no evidence establishing that Local 1298 is a large institutional investor nor that it has any greater incentive to litigate this case than Makadia. In addition, Local 1298's financial interest is significantly less than compared to Makadia. Local 1298 purchased 1,100 shares during the Class Period, for a loss of \$43,827.00 compared to Makadia, who purchased 16,000 shares and suffered losses of \$163,108.00.

> FN9. Tomei, in his individual capacity, is also available for appointment as lead plaintiff. Between the individual plaintiffs, Makadia and Tomei, Makadia is preferable since he purchased the greater number of Calpine shares and sustained a much larger monetary loss.

Neither party, standing alone, is a particularly ideal lead plaintiff. As such, subject to the Rule 23 analysis set forth below, the Court exercises its discretion and appoints Local 1298 and Makadia as co-lead plaintiffs. The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

members will adequately be represented in the prosecution of this action. *See In re Oxford Health Plans, Inc. Secs. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y.1998) (appointing individual investors with an institutional investor as co-lead plaintiffs).

### 2. *Rule 23 Qualifications*

Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a)(3) requires that the claims or defenses of the representative parties be " typical" of those of the class. "[A] named plaintiff's claim is typical if it stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based on the same legal or remedial theory." *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1321 (9th Cir.1982). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508. The test for assessing typicality is "whether other members have the *same or similar injury,* whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (emphasis added).

\*9 The claims of Makadia and Local 1298 are typical of the unnamed plaintiff class. Both acquired securities during the Class Period, at prices allegedly inflated by the defendants' misconduct, and sustained damages as a result. Finally, as with all of the actions filed, Makadia and Local 1298 allege that the defendants violated federal securities law by publicly disseminating materially false and misleading statements about Calpine during the Class Period. Their claims can be said to be co-extensive with those of the class in that they arise from the alleged misconduct and seek relief under the same legal theories. Therefore, their claims are typical of the class.

Rule 23(a) also requires that the person representing the class be able "fairly and adequately to protect the interests" of all members of the class. *See* Fed.R.Civ.P. 23(a)(4). "The Ninth Circuit has held

that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." *Takeda,* 67 F.Supp.2d at 1137 (citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 855 (9th Cir.1982)). "In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.*

Makadia and Local 1298 collectively have a significant financial stake in the action, and therefore, they may be assumed to have a strong interest in fully prosecuting this action. *See Cendant Corp.,* 182 F.R.D. at 148 (public pension fund had " significant holdings in each type of security held by the putative plaintiff class and have suffered enormous losses. It is unrealistic to assume that they would not travel every avenue that could potentially enhance their potential recovery."). They have also submitted sworn declarations confirming it is willing to serve as class representative and to assume the responsibilities which adhere. The Court is satisfied that Makadia and Local 1298 will fairly and adequately represent the best interests of the class.

For all of the foregoing reasons, the Court finds that it is appropriate to appoint Makadia and Local 1298 as co-lead plaintiffs.

### 3. *Appointment of Counsel*

The PSLRA grants the lead plaintiff the discretion to select lead counsel of its choosing. 15 U.S.C. § § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). Makadia and Local 1298 have chosen Bernstein Liebhard & Lifshitz, LLP and Schoengold & Sporn, P.C., respectively, as their lead counsel. Based on the record presented, the Court is satisfied that both firms, serving in a co-lead counsel capacity, are sufficiently competent and experienced to warrant their appointment in this case. "This is done with the understanding that *there shall be no duplication*

Not Reported in F.Supp.2d                                                                        Page 10

Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*of attorney's services and that the use of co-lead counsel will not in any way increase attorney's fees and expenses." In re Oxford Health Plans,* 182 F.R.D. at 50 (emphasis added). In addition, all expenses shall be financed equally by both firms. *Id.*

### CONCLUSION

*10 For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Laborers Local 1298 Pension Fund's Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Lead Counsel [Docket No. 28] is GRANTED;

2. The Motion of the Policemen and Firemen Retirement System of the City of Detroit to Appoint It as Lead Plaintiff and for Approval of Its Selection of Lead Counsel [Docket No. 15] is DENIED;

3. Andre W.L. Hickam and Mansukh B. Makadia's Motion to Consolidate Related Cases, Appoint Lead Plaintiffs, and for Approval of Lead Counsel [Docket No. 23] is GRANTED IN PART AND DENIED IN PART;

4. Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Appoint Northern Oak Capital Management, Inc. and Vincent H. Tomei as Lead Plaintiff and to Approve Lead Plaintiff's Choice of Lead Counsel [Docket No. 22] is DENIED;

5. Northern Oak Capital Management, Inc. and Vincent H. Tomei's Motion to Consolidate Related Actions and Preserve Documents [Docket No. 26] is GRANTED IN PART AND DENIED IN PART;

6. Laborers Local 1298 Pension Fund and Mansukh B. Makadia are appointed as co-lead plaintiffs in this action, and Bernstein Liebhard & Lifshitz, LLP, and Schoengold & Sporn, P.C. are appointed as co-lead counsel; and

7. The Court will separately issue an Order Consolidating Related Actions concurrent with the

instant Order.

IT IS SO ORDERED.

N.D.Cal.,2002.
Weisz v. Calpine Corp.
Not Reported in F.Supp.2d, 2002 WL 32818827 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 4:02cv01200 (Docket) (Mar. 11, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Daniel J. Brown, do hereby certify that on this 9th day of May, 2006, I caused copies of the foregoing Reply Brief and Exhibits to be served in the manner indicated below.

### BY E-FILING:

Joseph N. Gielata, Esq.
501 Silverside Road
Suite 90
Wilmington, DE 19809

Michael Ray Robinson
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


_____
Daniel J. Brown (#4688)