**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SAMUEL I. HYLAND,<br>        individually and on behalf of all<br>                others similarly situated,<br><br>        *Plaintiff*,<br>                        v.<br><br>J.P. MORGAN SECURITIES, INC.,<br>        a Delaware corporation,<br><br>        *Defendant*. | Civil Action No. 06-224 JJF<br><br><br><br><br><br>**CLASS ACTION** |

**OPENING BRIEF IN SUPPORT OF THE**
**MOTION BY PLAINTIFF SAMUEL HYLAND**
**FOR APPOINTMENT AS LEAD PLAINTIFF**
**AND APPOINTMENT OF LEAD COUNSEL**

Dated: June 12, 2006

JOSEPH N. GIELATA (# 4338)
Attorney at Law
501 Silverside Road, No. 90
Wilmington, Delaware 19809
(302) 798-1096

*Attorney for Plaintiff Samuel Hyland*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

NATURE AND STAGE OF THE PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      Movant Satisfies The Statutory Criteria
        For Appointment As Lead Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        A.      Adequate Notice of the Pendency of
                the Action Was Properly Published. . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        B.      Movant Believes That He Has The Most
                Substantial Financial Interest In This Case. . . . . . . . . . . . . . . . . . . . . 9

        C.      Movant Satisfies The Requirements of Rule 23. . . . . . . . . . . . . . . . . . 10

                1.      Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

                2.      Movant Will Adequately Represent
                        The Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.     Movant's Chosen Counsel Should Be Appointed Lead Counsel. . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Cases:**                                                                                **Page(s)**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Burke v. Ruttenberg,*
    102 F. Supp. 2d 1280 (N.D. Ala. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*In re Cendant Corp. Sec. Litig.,*
    404 F.3d 173 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re DaimlerChrysler AG Sec. Litig.,*
    216 F.R.D. 291 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*East Texas Motor Freight System, Inc. v. Rodriguez,*
    431 U.S. 395 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gluck v. CellStar Corp.,*
    976 F. Supp. 542 (N.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Janovici v. DVI, Inc.,*
    Nos. Civ. A. 2:03CV04795-LD et al., 2003 WL 22849604
    (E.D. Pa. Nov. 25, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 13

*In re Lucent Technologies, Inc., Sec. Litig.,*
    194 F.R.D. 137 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Marsden v. Select Medical Corp.,*
    No. 04-4020, 2005 WL 113128 (E.D. Pa. Jan. 18, 2005) . . . . . . . . . . . . . . . . . 8, 9

*In re Milestone Scientific Sec. Litig.,*
    183 F.R.D. 404 (D.N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Nice Sys. Sec. Litig.,*
    188 F.R.D. 206 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*In re Oxford Health Plans, Inc., Sec. Litig.,*
    182 F.R.D. 42 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ravens v. Iftikar,*
    174 F.R.D. 651 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sosna v. Iowa*,
    419 U.S. 393 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes and Rules:**

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 78u-4(a)(3)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

15 U.S.C. § 78u-4(a)(3)(B)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 78u-4(a)(3)(B)(v). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

15 U.S.C. §78u-4(a)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other Authority:**

1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) . . . . . . . . . . . . . . . . . . 11

Plaintiff Samuel I. Hyland ("Movant") submits this Opening Brief in Support of his Motion For Appointment as Lead Plaintiff and Appointment of Lead Counsel.

## <u>PRELIMINARY STATEMENT</u>

Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), establishes the procedure for the selection of a lead plaintiff to oversee class actions brought under the federal securities laws. Specifically, § 21D(a)(3)(A)(i) provides that, within 20 days after the date on which a class action is filed under the PSLRA,

> [T]he plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

Additionally, § 21D(a)(3)(B)(i) of the Exchange Act directs this Court to consider any motions brought by a plaintiff or purported class member(s) to appoint lead plaintiff filed in response to any such notice no later than 90 days after the date of publication, or as soon as practicable after this Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.

Under this provision of the Exchange Act, this Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person, or group of persons, that

> (aa) has either filed the complaint or made a motion in response to a notice ...;

> (bb) in the determination of the court, has the largest
> financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the
> Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movant believes that he has the largest financial interest of any lead plaintiff movant in the relief sought by the class in this case. Movant also seeks Court approval of his selection of counsel as provided by the statute.

As is further discussed below, Movant is qualified to serve as lead plaintiff in this litigation under the relevant provisions of the PSLRA. Accordingly, this Court should appoint Movant as lead plaintiff and approve his chosen counsel as lead counsel.

## NATURE AND STAGE OF THE PROCEEDINGS

This is a securities class action arising from the 2004 merger (the "Merger") of the Bank One Corporation ("Bank One") and JPMorgan Chase & Co. ("JPMC" or the "Company"). The defendant in this case, J.P. Morgan Securities, Inc. ("JPMSI") acted as JPMC's financial advisor in connection with the Merger.

This is the second securities class action concerning the Merger that has been filed in this Court. On March 17, 2005, Movant filed a comprehensive class action complaint in this Court against JPMC and certain of its present and former directors asserting purchaser and holder claims under Sections 10(b), 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78n(a) and 78t(a)), Rules 10b-5 and 14a-9 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. §§ 240.10b-5 and 240.14a-9), Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(a)(2) and 77o), and pendent common law claims for breach of fiduciary duty. That suit has been stayed pending the resolution of a related action filed in Illinois. *See Hyland v. Harrison*, Civ. A. 05-162 (D.I. 90, 91) (D. Del. Feb. 7, 2006).

On April 6, 2006, Movant filed the instant suit against JPMSI, asserting seller claims under Section 10(b) of the Exchange Act and pendent common law claims for civil conspiracy and aiding and abetting breach of fiduciary duty.

## SUMMARY OF ARGUMENTS

1.    Movant is presumptively entitled to serve as lead plaintiff because, based on available information and after having published adequate notice, he has a greater financial interest in the outcome of this case than any other known putative class member seeking appointment as lead plaintiff.

2.    Movant's claims are typical of the proposed class and he will adequately represent the class within the purview of Fed. R. Civ. P. 23.

3.    Movant's chosen counsel is experienced in prosecuting securities class action claims under the PLSRA, has demonstrated the willingness and ability to vigorously adequately represent the interests of the class, and should be appointed lead counsel.

## STATEMENT OF FACTS

JPMC is a global financial services firm involved in investment banking, financial services for consumers and businesses, financial transaction processing, investment management, private banking, and private equity. In 2003, William B. Harrison, Jr. was Chief Executive Officer ("CEO") and Chairman of the Board of Directors of JPMC. However, by late 2003, after years of poor business decisions, costly acquisitions, and financial scandals, numerous public reports denounced Harrison's leadership and predicted that he would soon lose his job. This situation forced Harrison to conjure yet another massive deal to protect his lucrative and prestigious CEO title. Thus, Harrison commenced discussions with James Dimon, Chairman and CEO of Bank One, concerning the possibility of a business combination between JPMC and Bank One.

As a result of these discussions, JPMC and Bank One issued a joint press release on January 14, 2004 announcing their agreement to merge. When the Merger was announced, the acquisition premium for Bank One shares amounted to approximately 14 percent, based on that day's closing prices. In other words, to merge with Bank One, JPMC shareholders funded an acquisition premium of more than $7 billion in stock, which substantially diluted their individual holdings. The total value of the deal was approximately $57 billion.

JPMC and Bank One issued a Joint Proxy Statement-Prospectus, dated April 19, 2004 (the "Proxy Statement"), to gain shareholder approval of the Merger. Unaware that the Proxy Statement contained materially false and misleading statements and failed to disclose material facts, JPMC shareholders approved the Merger.

However, several weeks later, it was revealed that, in the course of the highly secretive negotiations between Dimon and Harrison, Dimon had been willing to agree to

a *zero-premium deal* if he could be CEO of the combined company immediately.  The

Proxy Statement omitted this valuable opportunity.  Ultimately, Harrison and Dimon

agreed that Harrison would retain the CEO title for two more years in exchange for

paying a substantial premium.  However, a June 27, 2004 article in the *New York Times*

entitled "The Yin, the Yang and the Deal" revealed the entrenchment scheme:

> During the negotiations with Mr. Dimon, [Harrison] fought
> hard to give himself the two extra years, to secure a smooth
> transition, although he may have cost J.P. Morgan
> shareholders extra money in doing so.  Mr. Dimon, always
> the tough deal maker, offered to do the deal for no premium
> if he could become chief executive immediately, according
> to two people close to the deal.
>
> When Mr. Harrison resisted, Mr. Dimon insisted on a
> premium, which Mr. Harrison was able to push down to 14
> percent. The two men declined to comment on the specifics
> of their negotiations.

This article revealed that the Proxy Statement was incomplete and materially

misleading and that several persons and entities, including JPMSI, had violated federal

securities laws by omitting any reference to the zero-premium opportunity rejected by

Harrison.  In particular, JPMSI's "fairness" opinion was a false and misleading artifice

designed to cloak the entrenchment scheme and fraudulently induce JPMC shareholders

to vote for the Merger even though, in reality, the $7 billion premium in the Merger was

completely unnecessary.  Moreover, the Merger's enormous acquisition premium was a

betrayal of the interests of JPMC shareholders, as it served only to entrench Harrison in

the CEO position for two more years, even though under his leadership JPMC's stock

price had fallen significantly and JPMC's value and reputation had suffered.

## ARGUMENT

**I.    Movant Satisfies The Statutory Criteria
For Appointment As Lead Plaintiff**

Under the PSLRA, any member(s) of the purported class may move for

appointment as lead plaintiff within 60 days of the publication of notice that the action

has been filed.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Subsequently, the court "shall appoint

as lead plaintiff the member or members of the purported plaintiff class that the court

determines to be most capable of adequately representing the interests of class members .

. . ."  15 U.S.C. § 78u-4(a)(3)(B)(i).  *See also In re Cendant Corp. Litig.*, 264 F.3d 201,

222 (3d Cir. 2001).  Consistent with its legislative history, the PSLRA provides that the

court shall make a significant presumption when determining the "most capable"

plaintiff:

> [T]he court shall adopt a presumption that the most
> adequate plaintiff in any private action arising under this
> title is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a
>         motion in response to a notice under
>         subparagraph (A)(i);
>
> (bb)    in the determination of the court, has the
>         largest financial interest in the relief sought
>         by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule
>         23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

**A.    Adequate Notice Of the Pendency of
the Action Was Properly Published**

The PSLRA mandates that after filing a putative class action complaint, a plaintiff

seeking to represent the proposed class must publish a notice that sets forth (i) the

pendency of the action, including a description of the claims asserted and the proposed

class period, and (ii) a statement that any party seeking to serve as lead plaintiff for the action referenced in the notice must move the applicable court within sixty (60) days of the date of the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). *See Janovici v. DVI, Inc.*, Nos. Civ.A.2:03CV04795-LD et al., 2003 WL 22849604, at *5 (E.D. Pa. Nov. 25, 2003) (in considering motions for appointment of lead plaintiff, court has an independent duty to scrutinize the published notice for compliance with PSLRA requirements).

For notice to be adequate under the PSLRA, it must include such information as the names of the defendants, the claims asserted, and the Court before which the action is pending. *See, e.g., Marsden v. Select Medical Corp.*, No. 04-4020, 2005 WL 113128, at *6 (E.D. Pa. Jan. 18, 2005) (accepting notice which "adequately informs class members of 'the pendency of the action,' as it identifies the caption of the case, its civil action number, the Court before which the action was brought, and the names of all five Defendants."); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1311 (N.D. Ala. 2000) ("notice must, at a minimum, provide information about…who has filed the suit, who is being sued, the court in which the suit is taking place, and the civil action number of the case"). *Cf. Ravens v. Iftikar*, 174 F.R.D. 651, 655 (N.D. Cal. 1997) (finding notice inadequate because "[t]here is no explanation of the legal theory underlying plaintiffs' suit; no discussion of who violated the Securities Exchange Act of 1934; and no description of the alleged wrongdoing that forms the basis of the complaint."); *Burke*, 102 F. Supp. 2d at 1316 ("the notice published by [one] plaintiff and his counsel fails to indicate who is seeking relief and against whom relief is sought, facts that would be revealed were the entire name of the action included in the notice").

The notice must also advise class members of their right to retain counsel of their choice. *See, e.g., Burke*, 102 F. Supp. 2d at 1311 n.39 ("giving only information

directing putative class members to contact counsel would not comport with the purposes of the subsection"); *id.* at 1314 ("the notice published appears to have been drafted with the aim of directing clients to the law firms listed in it, thereby permitting the Burke plaintiffs and counsel associated therewith to avoid any lead plaintiff challenge.").

On April 11, 2006, Movant's counsel caused to be published a national notice of the pendency of this action in the *Investor's Business Daily* (Decl. Ex. A)[1] which (1) advised class members of their right to retain counsel of their own choice in considering or seeking the lead plaintiff appointment and (2) included the name of the defendant, the civil action number, the class definition, and the claims asserted on behalf of the class. *See Marsden*, 2005 WL 113128, at *5 (finding publication in *Investor's Business Daily* to satisfy the PSLRA notice requirement); *Janovici*, 2003 WL 22849604, at *8 (finding notice adequate which "[u]nlike the first three notices, …lists the names of the Defendants…[,] advises the purported…Class of the pendency of the action, the claims asserted, and the purported Class Period…[and] also advises that potential class members may retain counsel of their choice.").

Accordingly, the aforementioned notice triggered the 60-day period for all lead plaintiff motions. This motion is timely filed within 60 days of the date of publication.

**B.    Movant Believes That He Has The Most
Substantial Financial Interest In This Case**

As described above, damages in this action are sought on behalf of sellers of JPMC common stock who sustained monetary damages in connection with the Merger. As a result of his holding and sale of JPMC common stock during the relevant time period, Movant believes he is presumptively the most adequate plaintiff to lead this case.

---

[1] This exhibit and unreported decisions referenced herein are attached to the Declaration of Joseph N. Gielata, filed contemporaneously herewith and cited as "Decl. ¶ _" or "Decl. Ex. _."

*See In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 216-217 (D.N.J. 1999) (appointing investors with largest financial interest in the case).

### C.    <u>Movant Satisfies The Requirements of Rule 23</u>

The PSLRA's presumption that the plaintiff with the largest financial interest in the case is best qualified to serve as lead plaintiff may be overcome only by proof that the lead plaintiff will not adequately represent the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc) (providing that the lead plaintiff or plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure"). Rule 23(a) provides that a party may serve as a class representative so long as the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy of representation – directly address the characteristics of the lead plaintiff under the PSLRA which must be satisfied. *See In re Lucent Technologies, Inc., Sec. Litig.*, 194 F.R.D. 137, 149-50 (D.N.J. 2000) ("This inquiry 'focus[es] on the qualities of the class representatives enumerated in Rule 23(a)(3) and 23(a)(4), that is typicality and adequacy.'") (quoting *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)). *See also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its selection of a lead plaintiff.

### 1.      Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class."  "To satisfy the typicality requirement of Rule 23(a)(3), the plaintiffs must show that the class representatives are part of the class and possess the same injury as the class members." *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 298 (D. Del. 2003) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotes omitted).  *See also* 1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims"). The Rule 23(a)(3) typicality requirement "helps ensure alignment of the interests of the Proposed Class with those of the class representatives 'so that the [class representatives] will work to benefit the entire class through the pursuit of their own goals.'" *Lucent*, 194 F.R.D. at 150 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3d Cir. 1998)).

Here, Movant's claims arise from the same course of conduct from which the claims of all other class members arise.  As a JPMC shareholder who lost a valuable opportunity, Movant, like other putative class members, was an innocent victim of JPMSI's fraudulent conduct.  The injuries alleged by Movant, like the injuries suffered by other members of the class, arise from JPMSI's misleading fairness opinion and its role in concealing the zero-premium opportunity in the Proxy Statement and other communications.  Thus, Movant's claims are in all respects "typical" of the claims of the class.  *See DaimlerChrysler*, 216 F.R.D. at 298 (finding claims typical which were based

on the same allegedly false and misleading statements made by defendants in connection with corporate merger).

### 2. Movant Will Adequately Represent The Interests Of The Class

Rule 23(a)(4)'s requirement of adequate representation is satisfied where it appears that (1) the named plaintiff's interests are not antagonistic to other members of the class, and (2) plaintiff's counsel is qualified, experienced and generally able to conduct the litigation. *See DaimlerChrysler*, 216 F.R.D. at 299 (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)). *See also Sosna v. Iowa*, 419 U.S. 393, 403 (1975). The Rule 23(a)(4) requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests among the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *Lucent*, 194 F.R.D. at 151. "The adequacy of representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Movant easily meets the adequacy requirements.

As noted above, given that his stake in the outcome of this action, Movant will vigorously prosecute the claims asserted. *See Nice Sys.*, 188 F.R.D. at 219 (observing that, where proposed lead plaintiff purchased securities at issue at a cost of $93,633.88, "[t]his financial stake in the litigation provides an adequate incentive for the Proposed Lead Plaintiffs to vigorously prosecute the action."). Movant has duly signed and filed a certification stating his willingness to serve as a representative party on behalf of the class. (D.I. 1, Certification of Samuel I. Hyland in Support of Securities Class Action Complaint ¶ 9.) Movant has also chosen counsel with extensive experience in the prosecution of securities class actions and corporate fiduciary litigation. (Decl. ¶¶ 5-7.)

Finally, there are no facts which indicate any conflict of interest between Movant and other class members. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998). Accordingly, Movant will adequately represent the interests of the class.

## II.      **Movant's Chosen Counsel Should Be Appointed Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). *See also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 186 (3d Cir. 2005) ("The PSLRA is explicit that the power to select counsel resides in the lead plaintiff") (*Cendant II*). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Movant has selected counsel with experience in prosecuting securities class action claims under the PLSRA. (Aff. ¶ 5-6.) *See also Cendant II*, 404 F.3d at 192 ("The power to select counsel lets clients choose lawyers with whom they are comfortable and in whose ability and integrity they have confidence." (quoting *Cendant*, 264 F.3d at 254)).

Movant's counsel has also certified that he does not directly own or otherwise have a beneficial interest in JPMC common stock. (Decl. ¶ 4.) Such disclosure is necessary for the Court to make the following determination mandated by the PSLRA:

> **Attorney conflict of interest**
>
> If a plaintiff class is represented by an attorney who directly owns or otherwise has a beneficial interest in the securities that are the subject of the litigation, the court shall make a determination of whether such ownership or other interest constitutes a conflict of interest sufficient to disqualify the attorney from representing the plaintiff class.

15 U.S.C. § 78u-4(a)(9). *See also Janovici*, 2003 WL 22849604, at *12 (observing that lead plaintiff movant's "selected counsel are capable of satisfying their obligations; evidence of conflict with the interests of other class members is lacking.").

Movant's attorney has already vigorously protected the interests of the class by thoroughly investigating and filing a comprehensive complaint in this case. Thus, Movant's selected counsel can be trusted to continue protecting the interests of the class fairly and adequately in this lawsuit and should be appointed lead counsel.

Accordingly, Movant's choice of counsel should be upheld, and the undersigned appointed lead counsel.

## CONCLUSION

For all of the foregoing reasons, Movant should be appointed lead plaintiff in this matter on behalf of the class and his choice of counsel should be approved.

DATED:        June 12, 2006                Respectfully submitted,

                                           /s/ *Joseph N. Gielata*
                                           JOSEPH N. GIELATA (#4338)
                                           Attorney at Law
                                           501 Silverside Road, No. 90
                                           Wilmington, Delaware 19809
                                           (302) 798-1096

                                           *Attorney for Plaintiff Samuel Hyland*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 12, 2006, I electronically filed the *OPENING BRIEF IN SUPPORT OF THE MOTION BY PLAINTIFF SAMUEL HYLAND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPOINTMENT OF LEAD COUNSEL* with the Clerk of Court using CM/ECF which will send notification of such filing to:

> Michael R. Robinson, Esq.
> **RICHARDS LAYTON & FINGER, P.A.**
> One Rodney Square
> Wilmington, DE 19801
>
> *Counsel for Defendant*

　　　　　　　　　　　　　　　　　 /s/ *Joseph N. Gielata*
　　　　　　　　　　　　　　　　　Joseph N. Gielata (# 4338)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SAMUEL I. HYLAND,
    individually and on behalf of all
        others similarly situated,

    *Plaintiff*,

        v.

J.P. MORGAN SECURITIES, INC.,
    a Delaware corporation,

    *Defendant*.

Civil Action No. 06-224 JJF

**CLASS ACTION**

### DECLARATION OF JOSEPH N. GIELATA IN SUPPORT OF
### THE MOTION BY PLAINTIFF SAMUEL HYLAND
### FOR APPOINTMENT AS LEAD PLAINTIFF
### AND APPOINTMENT OF LEAD COUNSEL

JOSEPH N. GIELATA, a member of the Bar of the Supreme Court of Delaware,

for this Declaration states:

1.     I represent Samuel I. Hyland, the plaintiff in the above-captioned matter.

2.     I make this Declaration in support of Mr. Hyland's Motion For

Appointment As Lead Plaintiff And Appointment Of Lead Counsel.  Except as otherwise

stated, I have personal knowledge of the facts stated in this declaration and, if called as a

witness, could and would competently testify to them.

3.     I have been retained by Mr. Hyland and have agreed to a fee structure

which I believe is far more favorable to my client and the class than the fee arrangements

generally prevailing in the field of class action securities litigation.  I have prepared a

memorandum setting forth the basis for this fee structure, to be submitted *ex parte* and

under seal at the Court's request.[1]  The purpose of this memorandum is to assist the Court

in reviewing the reasonableness of the requested fee in the event that a recovery for the

class is obtained.  It is suggested that the Court may, in its discretion, unseal the

memorandum for review in camera if and when a recovery for the class is obtained.

4.    In accepting this engagement, I have determined that I do not have any

conflict of interest.  In particular, I do not own any JPMC common stock and I do not

own any mutual fund or similar investment which holds JPMC common stock.  If I am

appointed lead counsel in this action, I will, throughout the pendency of the action, (a)

refrain from becoming involved in any other litigation in which JPMC is a defendant, and

(b) refrain from purchasing JPMC common stock or otherwise owning any interest, direct

or indirect, in JPMC common stock.

5.    My law practice is confined to the representation of investors.  I am

knowledgeable and experienced in securities law and litigation, and have represented

both individual and institutional investors in complex class actions.  I am also

knowledgeable and experienced in Delaware corporate law and shareholder litigation

involving breach of fiduciary duty.  I previously represented investors with the prominent

plaintiffs' firms of Grant & Eisenhofer, P.A. and Milberg Weiss Bershad & Schulman

LLP, both of which specialize in shareholder litigation, including securities class actions.

6.    During my tenure with Grant & Eisenhofer, the firm prosecuted the

following noteworthy cases:

---

[1] The inspiration for this memorandum comes from a decision by Judge Vaughn Walker.  *See In re HPL Technologies, Inc. Sec. Litig.*, 366 F. Supp. 2d 912 (N.D. Cal. 2005) ("[C]ounsel's ex ante assessment…that laid out in detail the factors that went into the evaluation [of a potential case] and presented data to back it up would carry a good deal of weight even if the predicted outcome, length of proceedings and costs differed from what actually occurred.").

A.  *In re DaimlerChrysler AG Securities Litig.*, D. Del., Master File No. 00-0993 (JJF) (co-lead for class, on behalf of Florida State Board of Administration) (achieved $300 million settlement);

B.  *In re Global Crossing, Ltd. Securities Litig.*, S.D.N.Y., Case No. 02 Civ. 910 (GEL) (sole lead counsel for class, on behalf of the Public Employees' Retirement System of Ohio and State Teachers' Retirement System of Ohio) (recovered in excess of $300 million);

C.  *In re Oxford Health Plans, Inc., Securities Litig.*, S.D.N.Y., MDL Docket No. 1222 (CLB) (co-lead counsel, on behalf of Public Employees' Retirement Association of Colorado) (recovered $300 million from the company and its auditors);

D.  *In re Telxon Corp., Securities Litig.*, N.D. Ohio (represented hedge fund in opt-out securities suit, obtained substantial recovery);

E.  *In re Safety-Kleen Corp. Bondholders Litig.*, D. S. Carolina, Consol. Case No. 3-00-1145 17 (sole lead counsel, on behalf of American High-Income Trust and USAA Research Income Trust) (Grant & Eisenhofer eventually took this case through trial and obtained $284 million in judgments and settlements).

7.     I received my law degree from the University of Chicago Law School, where I was a Yee Scholar.  As an undergraduate, I studied economics, politics and philosophy at the University of Pittsburgh, where I was a Chancellor's Scholar, graduated *magna cum laude*, and was named to Phi Beta Kappa.  In addition to my work

experience, my undergraduate and graduate coursework substantially enhanced my competence in the fields of corporate finance and accounting, both of which are relevant to my representation of investors.

      8.     Attached to this Declaration are true and correct copies of the following:

      A.   The affidavit of Charles Brown attesting to the publication of the notice of the pendency of this action (attached thereto), as published in the *Investor's Business Daily* on April 11, 2006;

      B.   *Janovici v. DVI, Inc.*, Nos. Civ.A.2:03CV04795-LD, Civ.A.2:03CV04963-LD, Civ.A.2:03CV05000-LD, Civ.A.2:03CV05111-LD, Civ.A.2:03CV05141-LD, Civ.A.2:03CV05244-LD, Civ.A.2:03CV05336-LD, Civ.A.2:03CV05674-LD, 2003 WL 22849604 (E.D. Pa. Nov. 25, 2003); and

      C.   *Marsden v. Select Medical Corp.*, No. 04-4020, 2005 WL 113128 (E.D. Pa. Jan. 18, 2005).

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed: June 12, 2006         /s/ *Joseph N. Gielata*
                          JOSEPH N. GIELATA (# 4338)

# Exhibit

# A

## Affidavit of Publication

| | |
|---|---|
| Name of Publication: | Investor's Business Daily |
| Address: | 12655 Beatrice Street |
| City, State, Zip: | Los Angeles, CA 90066 |
| Phone #: | 310.448.6747 |
| State of: | California |
| County of: | Los Angeles |

I Charles Brown, for the publisher of <u>Investor's Business Daily</u>, published in the city of <u>Los Angeles</u>, state of <u>California</u>, county of <u>Los Angeles</u> hereby certify that the attached legal notice for <u>Joseph Gielata</u> regarding Hyland v. J.P. Morgan Securities, Inc. was printed in said publication on the following date:

April 11th, 2006

Given under my hand, this 11th day of April, 2006

Signature: _____

Sworn to and subscribed before me this 11th day of April,

2006, by Charles Brown at Investor's Business Daily,

state of California,

county of Los Angeles.

Notary Public: _____

My commission expires: 4/28/08

Seal:



HEATHER O'CONNOR
Commission # 1480041
Notary Public - California
Los Angeles County
My Comm. Expires Apr 28, 2008

Notice is hereby given that, on April 6, 2006, Joseph Gielata filed in the United States District Court for the District of Delaware a class action lawsuit on behalf of shareholders of JPMorgan Chase & Co. (the "Company") (NYSE:JPM) who held such stock on January 14, 2004 and thereafter sold any or all such stock. The lawsuit, captioned Hyland v. J.P. Morgan Securities, Inc., No. 1:06cv224, arises out of the merger between the Company and Bank One Corporation ("One") and seeks to pursue remedies under the Securities Exchange Act of 1934 and common law against defendant J.P. Morgan Securities, Inc., the Company's financial advisor in the merger. The complaint alleges that the Company's CEO rejected a valuable opportunity to merge One into the Company without paying any premium solely because One's CEO sought to be CEO of the combined Company immediately. Instead, unbeknownst to investors, the Company's CEO agreed to a multi-billion dollar premium to guarantee his CEO title for two more years. The complaint further alleges that the defendant participated in this entrenchment scheme, including intentionally omitting the superior opportunity from the fairness opinion and solicitations disseminated to shareholders in connection with the merger. The truth emerged on June 27, 2004, when The New York Times published an article revealing the backroom deal. If you are a member of the class described above, and sustained damages, you may, no later than 60 days after the date of this notice, request that the Court appoint you as lead plaintiff. To be lead plaintiff, you must meet certain legal standards. Your ability to share in any recovery is not, however, affected by the decision of whether or not to serve as a lead plaintiff. You may retain Joseph Gielata, or other counsel of your choice, to serve as your counsel in this action. If you wish to discuss this action, or have any questions concerning this notice or your rights and interests with regard to the case, you may contact Joe Gielata via email at attorney@gielatalaw.com or at (302) 798-1096.

# Business Marketplace

## LEGAL NOTICES

N OVER
TRADES
STRATEGY
ly Effective–
At
ble.Com

ING

de.com
my
des!

Trading
ebsite for
io CD...

STING

ocks.com
r Prime

Notice is hereby given that, on April 6, 2006, Joseph Gielata filed in the United States District Court for the District of Delaware a class action lawsuit on behalf of shareholders of JPMorgan Chase & Co. (the "Company") (NYSE:JPM) who held such stock on January 14, 2004 and thereafter sold any or all such stock. The lawsuit, captioned Hyland v. J.P. Morgan Securities, Inc., No. 1:06cv224, arises out of the merger between the Company and Bank One Corporation ("One") and seeks to pursue remedies under the Securities Exchange Act of 1934 and common law against defendant J.P. Morgan Securities, Inc., the Company's financial advisor in the merger. The complaint alleges that the Company's CEO rejected a valuable opportunity to merge One into the Company without paying any premium solely because One's CEO sought to be CEO of the combined Company immediately. Instead, unbeknownst to investors, the Company's CEO agreed to a multi-billion dollar premium to guarantee his CEO title for two more years. The complaint further alleges that the defendant participated in this entrenchment scheme, including intentionally omitting the superior opportunity from the fairness opinion and solicitations disseminated to shareholders in connection with the merger. The truth emerged on June 27, 2004, when The New York Times published an article revealing the backroom deal. If you are a member of the class described above, and sustained damages, you may, no later than 60 days after the date of this notice, request that the Court appoint you as lead plaintiff. To be lead plaintiff, you must meet certain legal standards. Your ability to share in any recovery is not, however, affected by the decision of whether or not to serve as a lead plaintiff. You may retain Joseph Gielata, or other counsel of your choice, to serve as your counsel in this action. If you wish to discuss this action, or have any questions concerning this notice or your rights and interests with regard to the case, you may contact Joe Gielata via email at attorney@gielata.com or (302) 798-1096.

## Inform the Public with Legal Notices

# Exhibit

# B

Westlaw.

Not Reported in F.Supp.2d
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: 2003 WL 22849604 (E.D.Pa.))**

Page 1

C

**Motions, Pleadings and Filings**

United States District Court,
E.D. Pennsylvania.
Jeff JANOVICI, Individually and On Behalf of All
Others Similarly Situated
v.
DVI, INC., et al.
Mark B. WILLIAMS, Individually and On Behalf of
All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Allison B. RICE, Individually and On Behalf of All
Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Bharat PAREKH, Individually and On Behalf of All
Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Stephen BENCE, IV, Individually and On Behalf of
All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Murari OJHA, Individually and On Behalf of All
Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Kenneth GROSSMAN, Individually and On Behalf
of All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
Shirley H. KAREL, Individually and On Behalf of
All Others Similarly Situated
v.
Michael A. O'HANLON, et al.
**No. Civ.A.2:03CV04795-LD, Civ.A.2:03CV04963-
LD, Civ.A.2:03CV05000-LD,
Civ.A.2:03CV05111-LD, Civ.A.2:03CV05141-LD,
Civ.A.2:03CV05244-LD,
Civ.A.2:03CV05336-LD, Civ.A.2:03CV05674-LD.**

Filed Aug. 20, 2003.
Nov. 25, 2003.
represented by Marc A. Topaz, Schiffrin &
Barroway, LLP, Bala Cynwyd, PA, Lead Attorney,
Attorney to be Noticed, for Jeff Janovici, Individually
and on Behalf of all Others Similarly Situated,

Plaintiff.

represented by Gary M. Schildhorn, Adelman Lavine
Gold & Levin, Philadelphia, PA, Lead Attorney,
Attorney to be Noticed, for DVI, Inc., Defendant.

represented by Maura E. Fay, Dilworth Paxson LLP,
Philadelphia, PA, Lead Attorney, Attorney to be
Noticed, for Steven R. Garfinkel, Defendant.

represented by Andrew L. Barroway, Darren J.
Check, Schiffrin & Barroway, LLP, Bala Cynwyd,
PA, Lead Attorney, Attorney to be Noticed, Jeffrey
M. Norton, Wechsler Harwood, LLP, New York,
NY, Lead Attorney, Attorney to be Noticed, for
Stephen Bence, IV, Movant.

represented by Deborah R. Gross, Law Offices
Bernard M. Gross, PC, Philadelphia, PA, Lead
Attorney, Attorney to be Noticed, Susan R. Gross,
Law Offices Bernard Gross, PC, Philadelphia, PA,
Lead Attorney, Attorney to be Noticed, for Milton
Wolson, Movant.

represented by DeBorah R. Gross, Susan R. Gross,
(See above for address), Lead Attorney, Attorney to
be Noticed, for Bharat Parekh, Movant.

represented by Deborah R. Gross, Susan R. Gross,
(See above for address), Lead Attorney, Attorney to
be Noticed, for James Schwartz, Movant.

represented by Robert A. Kauffman, Berger and
Montague, Philadelphia, PA, Lead Attorney,
Attorney to be Noticed, for Gottlieb Family
Foundation Trust, Movant.

represented by Robert A. Kauffman, (See above for
address), Lead Attorney, Attorney to be Noticed, for
Richard Morrell, Movant.

represented by M. Richard Komins, Barrack Rodos
& Bacine, Philadelphia, PA, Lead Attorney, Attorney
to be Noticed, for Thomas Sciba, Movant.

represented by Steven A. Schwartz, Chimicles &
Tikellis LLP, Haverford, PA, Lead Attorney,
Attorney to be Noticed, for Kenneth Grossman,
Movant.

represented by Steven A. Schwartz, (See above for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

address), Lead Attorney, Attorney to be Noticed, for
Cedar Street Funds, Movant.

  represented by Steven A. Schwartz, (See above for
address), Lead Attorney, Attorney to be Noticed, for
Cedar Street Offshore Fund, Movant.

  represented by Joanne G. Noble, Trujillo Rodriguez
& Richards LLC,  The Penthouse, Philadelphia, PA,
Lead Attorney, Attorney to be Noticed, R. Bruce
McNew, Taylor & McNew, Greenville, DE, Lead
Attorney, Attorney to be Noticed, for Shirley H.
Karel, Movant.

*MEMORANDUM*

DAVIS, J.

  **\*1** Presently pending before the Court are eight
securities fraud class action lawsuits against Michael
A. O'Hanlon ("O'Hanlon"), former Chief Executive
Officer and President of DVI and a former member
of its Board of Directors, and Steven R. Garfinkel
[FN1] ("Garfinkel"), Chief Financial Officer and
Executive Vice President of DVI   [FN2] and a
member of its Board of Directors, and the
underwriter of its securities, Merrill Lynch & Co.,
Inc. ("Merrill Lynch"), who was, at all relevant times,
DVI's financial advisor and the lead underwriter in
managing DVI's securitizations. (Garfinkel and
O'Hanlon are collectively identified as the "DVI
Defendants"; O'Hanlon, Garfinkel and Merrill Lynch
are collectively identified as "Defendants".) These
eight actions (the "DVI Actions") allege claims under
Section 21D(a)(3)(B) of the Securities Exchange Act
of 1934 (the "Exchange Act"), as amended by the
Private Securities Litigation Reform Act of 1995 (the
"PSLRA"). Defendants are alleged to have violated
Sections 10(b) and 20(a) of the Exchange Acts, and
Rule 10b-5.

> FN1. On August 13, 2003, DVI placed
> Garfinkel on administrative leave.

> FN2. DVI is not named as a defendant in the
> instant action because it filed for Chapter 11
> Bankruptcy protection on August 25, 2003

  Numerous plaintiffs request consolidation the DVI
Actions pursuant to Rule 42(a) of the Federal Rules
of Civil Procedure. Multiple plaintiffs also petition to
be appointed as Lead Plaintiff as well as for approval
of their selection of Lead Counsel. On November 21,
2003, this Court held oral argument with respect to
these motions. Based on the parties' submissions and

the oral arguments presented to the Court, we grant
the Cedar Street Group's Motion to Consolidate,
appoint the Cedar Street Group as Lead Plaintiff, and
approve Krislov & Associates, Ltd. to serve as Lead
Counsel and Chimicles & Tikellis LLP to serve as
Liaison Counsel.

I. BACKGROUND

  On July 25, 2003, James T. Bennett filed a class
action on behalf of purchasers of DVI stock during
the period of November 7, 2001 through June 27,
2003, against DVI (the "Bennett Complaint"), an
independent specialty finance company for healthcare
providers worldwide with $2.8 billions of managed
assets, and O'Hanlon and Garfinkel. The Bennett
Complaint alleged that DVI and the DVI Defendants
violated Sections 10(b) and 20(a) of the Exchange
Acts, and Rule 10b-5. Specifically, the Bennett
Complaint alleged that DVI and the DVI Defendants
participated in a fraudulent scheme and course of
business that operated as a fraud or deceit on
purchasers of DVI common stock by disseminating
materially false and misleading statements and/or
concealing material adverse facts. The Bennett
Complaint alleged that the scheme did in fact: (i)
deceive the investing public regarding DVI's business
and operations and the intrinsic value of DVI
securities; (ii) enable DVI to sell $25 million of its
subordinated convertible notes during the class
period; (iii) enable DVI to secure credit facilities for
$175 million on favorable terms; and (iv) cause
Bennett and other members of the Class to purchase
DVI securities at artificially inflated prices. (Bennett
Compl. ¶   56). On August 26, 2003, the Bennett
Complaint was voluntarily dismissed.

  **\*2** On August 20, 2003, Jeff Janovici ("Janovici")
filed a class action against DVI, O'Hanlon and
Garfinkel (DVI, O'Hanlon and Garfinkel collectively
identified as the "Janovici Defendants") on behalf of
purchasers of DVI stock during the period of
November 7, 2001 through June 27, 2003, alleging
violations of Section 10(b) and 20(a) and the
Exchange Action and Rule 10b-5 (the "Janovici
Complaint").   [FN3] Specifically, the Janovici
Complaint alleges that the Janovici Defendants
participated in a fraudulent scheme and course of
business that operated as a fraud or deceit on
purchasers of DVI securities by disseminating
materially false and misleading statements and/or
concealing material adverse facts. The scheme: (i)
deceived the investing public regarding DVI's
business and operations and the intrinsic value of
DVI securities; (ii) enabled DVI to sell $25 million of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: 2003 WL 22849604 (E.D.Pa.))

its subordinated convertible notes during the class period; (iii) enabled DVI to secure credit facilities for $175 million on favorable terms; and (iv) caused plaintiff and members of the Class to purchase DVI securities at artificially inflated prices. (Janovici Compl. ¶ 14). On September 15, 2003, the Court entered an Order, pursuant to 11 U.S.C. § 362, staying the Janovici action with respect to DVI because the company had filed for bankruptcy protection.

> FN3. The law firm of Schiffrin & Barroway filed the Janovici Complaint on behalf on Mr. Janovici. Schiffrin & Barroway also filed the Bennett Complaint on behalf of Mr. Bennett.

On September 3, 2003, Mark B. Williams ("Williams") filed a class action against on behalf of purchasers of DVI common stock and Senior Notes during the period of November 7, 2001 through August 13, 2003 (the "Class Period"),   [FN4] O'Hanlon and Garfinkel alleging violations of Sections 10(b) and 20(a) of the Exchange Acts, and Rule 10b-5 (the "Williams Complaint"). Specifically, the Williams Complaint alleges that the DVI Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for DVI's securities. (Williams Compl. ¶ 73).

> FN4. Three of the complaints define the class period as November 7, 2001 through June 27, 2003, and four of the complaints extend the class period through August 13, 2003. Because four of the complaints allege that false and/or materially misleading statements were made through August 13, 2003, we find that Class Period should be extended through that date.
> One complaint, Civil Action No. 03-5674, however, defines the class period as September 1, 2001 through August 13, 2003. Because the complaint filed in this actions fails to allege that any false and/or materially misleading statements were made prior to November 7, 2001, we find that there is no basis for setting the Class Period prior to this date.

In accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(I), Williams published a notice of pendency of the action in *Business Wire* on September 3, 2003. Since the filing of the Williams Complaint, six other complaints arising out of similar, if not identical, facts alleging parallel claims have been filed in the Eastern District of Pennsylvania. In addition to these six complaints, six plaintiff and/or plaintiff "groups" filed motions requesting: (i) consolidation of the actions; (ii) appointment as lead plaintiff; and (ii) approval of selection of lead counsel. [FN5]

> FN5. The following plaintiffs filed complaints did not move for appointment as Lead Plaintiff: (I) Mark B. Williams, (ii) Jeff Janovici, (iii) Murari P. Ojha, and (iv) Allison B. Rice.

A. The Movants

1. Thomas Sciba

Mr. Sciba is an individual investor who allegedly suffered losses of approximately $30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. [FN6]

> FN6. Mr. Sciba did not pursue appoint as Lead Plaintiff beyond the filing of his motion for appointment as lead plaintiff.

2. Stephen Bence, IV

**\*3** Mr. Bence is an individual investor who allegedly suffered losses of approximately $60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements.

3. The Wolson Group

The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and James Schwartz. The Wolson Group asserts losses of approximately $60,656.30.

4. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual investor Richard W. Morrell. The Gottlieb/Morrell Group claims to have suffered losses of approximately $46,000.

5. The Cedar Street Group

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: 2003 WL 22849604 (E.D.Pa.))

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses in excess of $1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements.

6. The Karel Group

The Karel Group is comprised of seven individual investors who allege a preexisting investment relationship. The Karel Group claims to have suffered losses of approximately $333,000.

II. DISCUSSION

A. Motions to Consolidate

A court has broad discretion to consolidate actions involving common questions of law or fact ... if it will facilitate the administration of justice." *See Smithkline Beecham Corp. v. Geneva Pharmaceuticals, Inc.,* 2001 WL1249694, at * 5 (E.D.Pa. Sept. 26, 2001) (citing Fed.R.Civ.P. 42(a)). Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any of all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). "When considering consolidation the court 'must balance the benefits of judicial economy and expediting the litigation against the possibility of prejudice." ' *Smithkline Beecham,* 2001 WL1249694, at *5 (quoting *Kerley v. Great Lakes Dredge & Dock Co.,* 1996 WL 131136, at *1 (E.D.Pa. March 20, 1996)); *see also Rosario v. SCM Group USA, Inc.,* 2003 WL 21982116, at *1 (E.D.Pa. July 2, 2003) ("Consolidation is at the discretion of the trial court and "should be permitted where the consolidation of separate actions presenting common questions of law or fact will promote convenience and economy in judicial administration.") Moreover, the PSLRA directs that cases should be consolidated where there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The actions at issue share significant common issues of law and fact. A review of each of the complaints reveals that each case involves claims against O'Hanlon and Garfinkel for violations of Rule 10b-5 and Sections 10(b) and 20(a) of the Exchange Act. Indeed, the factual basis supporting the claims asserted in the DVI Actions are parallel. The Plaintiffs are all investors who purchased common stock and/or Notes during the Class Period. Additionally, each Plaintiff, in purchasing shares of DVI stock, relied upon statements contained in the same public filings, press releases and other publications. Although the Cedar Group is unique in the claims asserted against Merrill Lynch, this difference is not determinative because the Cedar Group's claims against Merrill Lynch are premised on the same facts and statutory provisions as the claims against O'Hanlon and Garfinkel. *See Skwortz v. Crayfish Co.,* 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) (granting consolidation of eleven complaints where each complaint was based on the same facts and statutory provision, despite the fact that all the complaints did not contain the same claims against the same defendants) (citations omitted). That the actions share common questions of law and fact and should be consolidation is further supported by the fact that each of the movants requested consolidation pursuant to Rule 42(a) and counsel for the moving plaintiffs expressly agreed on consolidation at oral argument. Because consolidation will facilitate the administration of justice and promote judicial economy without any foreseeable prejudice, the Motions to Consolidate filed by the Cedar Street Group in each of the DVI Actions are granted.

B. Appointment of Lead Plaintiff

**\*4** The PSLRA instructs that, "as soon as practicable" after the resolution of the motions to consolidate, the Court shall appoint the most adequate plaintiff to serve as lead plaintiff of the class. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

In 1995, in response to perceived abuses in securities fraud class actions, Congress enacted the PSLRA. *See* S.Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. "The purpose behind the PSLRA is to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issues, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." ' *Crayfish Co.,* 2001 WL 1160745, *2 (citations omitted). "Congress believed that this could best be

achieved by encouraging institutional investors to serve as lead plaintiffs. *Id.* (citations omitted). Accordingly, the PSLRA regulates the procedures for bringing class actions under the Securities Act.

The PSLRA requires plaintiffs filing private securities class action complaints to publish a notice of pendency of the suit in a widely circulated business publication or wire service no later than twenty days after the complaint is filed. 15 U.S.C. § 78u-4(a)(3)(A)(I). No later than sixty days after the publication of notice, any member of the purported class may file a motion to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). If a motion for consolidation has been made, the court shall not appoint a lead plaintiff until after it renders a decision on the motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The PSLRA instructs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). To this end, the statute creates a rebuttable presumption that the most adequate plaintiff is "the person or group of persons that--(aa) has either filed the complaint *or* made a motion in response to a notice ...; (bb) in the determination of the court, has the largest financial interests in the relief sought by the class; (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). This presumption may only be rebutted by a member of the purported plaintiff class upon proof that the presumptively most adequate plaintiff--"(aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cendant Corp. Lit.,* 264 F.3d 201, 266-8 (3d Cir.2001). The process of determining the "most adequate" plaintiff has been summarized by the Third Circuit: "The Reform Act establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class had rebutted the presumption." *In re Cendant Corp. Lit.,* 264 F.3d at 262 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) & (II)).

1. Adequacy of Notice and Filing a Timely Complaint and/or Motion

**\*5** The PSLRA instructs that, within 20 days of filing a complaint under the statute, plaintiff or plaintiffs shall "cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class ... (I) of pendency of the action, the claims asserted therein, and the purported class period; and (II) that not later than 60 days after the date on which the notice was published, any member of the purported plaintiff class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(I). If more than one action on behalf of the class asserting substantially the same claims or claims is filed, only the plaintiff or plaintiffs in the "first filed action shall be required to cause notice to be published." 15 U.S.C. § 78u-4(a)(3)(A)(ii).

In deciding a motion for the appointment of lead plaintiff under the PSLRA, the Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation. *See Ravens v. Iftikar,* 174 F.R.D. 651, 654-55 (N . D.Cal.1997) (quoting *House Conf. Rep. No. 104-369,* 104th Cong., 1st Sess., 1996 U.S.C.C.A.N. 730, 731); *see also Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1309 (N.D.Ala.2000) ("A district court must exercise exceptional care to insure [sic] that in applying the lead plaintiff provisions of the statute, the concerns that motivated Congress are carefully heeded, as the determination of lead plaintiff by the district court is, with probably little exception, not immediately subject to review."); *In re Oxford Health Plans, Inc. Securities Lit.,* 182 F.R.D. 42, 45 (S.D.N.Y.1998) ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation."). This means that in order for a notice of pendency to encourage the most adequate plaintiff to come forward and control the litigation, it must contain accurate information from which an interested class member may contact the Court and readily obtain a copy of the complaint in a *pending* action and/or file a motion to be appointed as lead counsel in that case. *See California Public Employees' Retirement System v. Chubb Corp.,* 127 F.Supp.2d 572, 576 (D.N.J.2001) (finding a notice inadequate where it failed to disclose the caption of the case, the docket number, the judge to whom the case was assigned, the vicinage in which the judge sits, or the address of the Court because "an interested class member would not even know to which courthouse to go to examine a copy of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

complaint" or "would not know before which judge an appropriate motion should be filed."). Requiring the provision of such information comports with the objectives of the PSLRA by ensuring that "institutional plaintiffs with expertise in the securities markets and real financial interests in the integrity of the markets and outcome of the litigation would come forward and control the litigation, rather than the lawyers and their professional plaintiffs." *Id.* at 576. Most significantly, providing information from which a interested class member may contact the Court and readily obtain a copy of the complaint in a *pending* action and/or file a motion to be appointed as lead counsel in that case shields against lawyer - driven litigation because such class members are not forced to contact noticing counsel for additional information to aid in their decision of whether to move for lead plaintiff status.

**\*6** On July 25, 2003, the Bennett action was filed by the law firm of Schriffrin & Barroway. On July 31, 2003, within 20 days of filing his complaint, Mr. Bennett caused a notice to be published noticing the pendency of the Bennett action. On August 20, 2003, Schriffrin & Barroway filed a substantially similar action on behalf of Mr. Janovici. On August 26, 2003, the Bennett action was voluntarily dismissed. On September 3, 2003, three notices of pendency were published in three different business-oriented publications and wire services. Two of the notices, one published by Schiffrin & Barroway in *PrimeZone Media Network,* and the other, published by the law firm of Caully Geller Bowman & Rudman, LLP in *PR Newswire,* noticed the pendency of the Bennett action despite the fact that the Bennett action had not been "pending" for over one week. Both of these notices stated that September 29, 2003 was the moving deadline. The third notice published on September 3, 2003 by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP in *Business Wire,* noticed the pendency of the Williams action, which was filed that very day. The Williams notice stated that November 3, 2003 was the moving deadline.

In the instant action, we find that the Janovici action was the first filed action in the DVI litigation because the Bennett was voluntarily dismissed prior to the consolidation. Consequently, for purposes of the PSLRA notice requirements, we find that the Bennett notice has no effect. More significantly, we find that the Mr. Janovici failed to comply with the notice requirements of the PSLRA because he did not notice the pendency of the Janovici action, which notice is required by the plain language of the PSLRA. Indeed, the September 3, 2003 notices filed by Schiffrin &

Barroway and Caully Geller incorrectly noticed the pendency of the Bennett action, which notice was clearly inaccurate because the Bennett action was, in fact, no longer pending. Purported class members could not have relied on either of these notices for sufficient information from which they could contact the Court and readily obtain a copy of the complaint for an action filed on behalf of DVI securities holders on July 25, 2003 because no such complaint existed. Additionally, purported class members could not have filed a motion for appointment as lead plaintiff in an action that was no longer pending. We find that such misinformation in a notice of pendency does not encourage the most adequate plaintiff to come forward and take control of the litigation; therefore, it contravenes the very purpose of the PSLRA.

If the Janovici action had been properly noticed on September 3, 2003, that is, if it had noticed the pendency of the Janovici action rather than the Bennett action, the PSLRA would have required that such notice inform purported class members that they may move the Court "not later than 60 days after the date on which the notice was published" to be appointed as lead plaintiff. Sixty days from September 3, 2003 was November 3, 2003. Because the plain language of the PSLRA requires that purported class members be given 60 days from the publication date of the notice of pendency in the first filed action, we hold that November 3, 2003 was the moving deadline, as the Williams notice accurately informs the class.

**\*7** After an independent review of the Williams notice, we find that it otherwise complies notice complies with the requirements of the PSLRA. The Williams notice states:

The law firm of Milberg Weiss Bershad Hynes & Lerach LLP announces that a class action lawsuit was filed on September 3, 2003, on behalf of purchasers of the securities of DVI, Inc ("DVI" or the "Company") (OTC: DVIX. PK) between November 7, 2001 and August 13, 2003, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). A copy of the complaint filed in this action in available from the Court, or can be viewed on Milberg Weiss' website at: *http://www.milberg.com/cases/dvi/.*

The action is pending in the United States District Court for the Eastern District of Pennsylvania, against Defendants Michael A. O'Hanlon, former President and Chief Executive Officer and Director of DVI, and Steven R. Garfinkel, DVI's former Chief Financial Officer.

Not Reported in F.Supp.2d                                                                                    Page 7
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: 2003 WL 22849604 (E.D.Pa.))

The Complaint alleges that defendants violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10-b-5 promulgated thereunder, by issuing a series of material misrepresentations to the market between November 7, 2001 and August 12, 2003. According to the complaint, throughout the Class Period, Defendants engaged in a fraudulent scheme to deceive the public as to DVI's true financial condition. Defendants allegedly issued positive statements regarding DVI's business and operations, and overall growth in publicly disseminated press releases and SEC filings and claimed that they were a fair presentation of DVI business. According to the complaint, Defendants failed to disclose material adverse facts, including, but not limited to, the Company's failure to write down the value of certain impaired assets; its failure to properly account for and report non-recurring transactions; its failure to adopt adequate internal control; and its material overstatement of its assets and earnings. As a result of Defendants' fraudulent scheme, DVI stock became artificially inflated during the Class Period, trading as high as $20.99 per share on June 17, 2002, thereby causing damages to Class Period purchasers of DVI securities.

On August 13, 2003, after the market closed, Defendants issued a press release revealing DVI's intention to file for Chapter 11 Bankruptcy protection and that the Company had not yet secured debtor-in-possession financing. The Company blamed its dire situation on the "recent discovery of apparent improprieties in its prior dealings with lenders involving misrepresentations as to the amount and nature of collateral pledged to lenders." In the same release, Defendants announced that DVI's Chief Financial Officer, Defendant Steven Garfinkel, had been placed on administrative leave. This revelation came after Defendants announced that DVI's auditor, Deloitte & Touche LLP, had resigned over a dispute concerning the Company's accounting for certain transactions; that the Company had depleted all availability on its credit facilities; that DVI failed to make interest payments on it 9 7/8 percent Senior Notes due to severe liquidity constraints; and that the SEC had rejected the Company's filing of its quarterly report for the third quarter of 2003. Immediately following the [sic] New York Stock Exchange suspended trading of DVI stock and Senior Notes, pending delisting. On the same day, DVI stock closed at $0.30 per share, representing a one-day decline of 62.50 percent.

**\*8** If you bought the securities of DVI between November 7, 2001 and August 13, 2003 and sustained damages, you may, no later than November 3, 2003, request that the Court appoint you as lead plaintiff. According to the Exchange Act, a notice must be published within 20 days after the date on which the first complaint is filed. A notice was previously published in connection with a related action against the same Defendants. That action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003, sixty days from the publication date of this notice. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class. Under certain circumstances, one or more class members may together serve as "lead plaintiff." Your ability to share in any recovery is not, however, affected by the decision whether or not to serve as lead plaintiff. You may retain Milberg Weiss Bershad Hynes & Lerach LLP, or other counsel of your choice, to serve as your counsel in this action.

Milberg Weiss Bershad Hynes & Lerach LLP (*http://www.milberg.com*) is a 190- lawyer firm with offices in New York City, San Diego, San Francisco, Los Angeles, Boca Raton, Philadelphia and Seattle, and is active in major litigations pending in federal and state courts throughout the United States. Milberg Weiss has taken a leading role in many important actions on behalf of defrauded investors, consumers, and others, and has been responsible for more than $20 billion in aggregate recoveries. Please contact Milberg Weiss [sic] website for more information about the firm. If you wish to discuss this action with us, or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following attorneys....

Unlike the first three notices, the Williams notice lists the names of the defendants, providing purported class members with sufficient information from which they could contact the Court and obtain a copy of the complaint and/or file a motion for appointment as lead plaintiff. Moreover, the Williams notice advises the purported DVI Class of the pendency of the action, the claims asserted, and the purported Class Period. Significantly, the Williams notice advises the purported DVI Class that a member may

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
(Cite as: 2003 WL 22849604 (E.D.Pa.))

move to serve as lead plaintiff, explains the significance of a lead plaintiff, and specifies the date by which such a motion must be filed--November 3, 2003. The Williams notice also advises that potential class members may retain counsel of their choice. For the above-stated reasons, the Williams notice satisfies the notice requirements of the PSLRA.

2. The Most Adequate Plaintiff

**\*9** The PSLRA instructs the Court to appoint the presumptively "most adequate" plaintiff to serve as lead plaintiff. The presumptive "most adequate" plaintiff for the DVI Class is the plaintiff that satisfies the each of following: (1) has either filed a complaint *or* made a motion in response to a notice, (2) in the determination of the court, has the largest financial interests in the relief sought by the class, and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). For the reasons that follow, the Court finds that the Cedar Street Group is the most adequate plaintiff and appoints the Cedar Street Group to serve as lead plaintiff for the Class in the DVI Action.

First, pursuant to the PSLRA statutory framework, the "most adequate" plaintiff must have either filed a complaint in the consolidated actions or timely moved for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also* In re Cephalon Securities Lit., 1998 WL 4700160, at \*5 (E.D. Pa. Aug. 12, 1998) (appointing as lead plaintiff an individual who, although he did not move for appointment, was a named plaintiff in one of the consolidated class action complaints); *In re Initial Public Offering Securities Lit.,* 214 F.R.D. 117, 120 n. 4 (S.D.N.Y.2002) (finding that where numerous complaints have been consolidated, the filing of any of the initially consolidated actions will suffice for purposes of the lead plaintiff selection because the PSLRA specifically instructs courts to rule on consolidation prior to approving lead plaintiff). A motion for appointment of lead plaintiff is timely when filed "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Generally the 60 day expiration period begins to run from the publication date on which the first notice of pendency was filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiff in the first filed action shall be required to

cause notice to be published ...") This rule does not apply, however, where the first notice of pendency fails to provide adequate information pursuant to the terms of the PSLRAthe statutory 60 day period beings to run from the date of the first notice that complies with the PSLRA. *See* In re Lucent Technologies, Inc. Securities Lit., 221 F.Supp.2d 463, 466 (D.N.J.2001) (calculating the 60 day period for filing a motion to be appointed as lead plaintiff pursuant to the PSLRA from the date of publication of the second notice of pendency where the first notice of pendency did not contain adequate information). Additionally, where multiple notices are published informing class members of the pendency of litigation and the notices contain conflicting information regarding the expiration of the 60 day period, it would be inconsistent with basic notions of fairness and the purposes of the notification provisions of the PSLRA to mechanically enforce a strict time limit with respect to the 60 day expiration period. *See Steiner v. Frankino,* 1998 LEXIS 21804, at \*13 (N.D.Ohio July 16, 1998) (recognizing that it would be improper to enforce a strict time limit with respect to the 60 day expiration period where the publication of multiple notices could appear to expand the time period in the eyes of class members); *see also* Schulman v. Lumenis, Ltd., 2003 WL 21415287, at \*4 (S.D.N.Y. June 18, 2003) (noting that courts have taken different approaches with respect to motions filed after the 60 day period has expired and citing to *Steiner v. Frankino* for this proposition).

**\*10** In the instant action, any plaintiff who either (a) filed a complaint in these consolidated actions, or (b) moved to be appointed lead plaintiff not later than November 3, 2003 satisfies the first requirement of the "most adequate" plaintiff test. With respect to motion for appointment as lead plaintiff, we hold that November 3, 2003, not September 29, 2003, was the expiration date for the 60 day period to move for several reasons. First, as previously noted, the first notice of pendency to comply with the requirements of the PSLRA stated that November 3, 2003 was the moving deadline. Additionally, eleven notices were published with three containing the November 3, 2003 deadline and two providing no specific deadline at all. Indeed, counsel for the Gottlieb/Morrell Group published two notices, one stating that September 29, 2003 was the moving deadline, and the other stating that November 3, 2003 was the moving deadline. More significantly, the second of the two Gottlieb/Morrell notices explicitly stated that the September 29, 2003 deadline was no longer effective: "A notice was previously published in connection

Not Reported in F.Supp.2d                                                                                                  Page 9
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: 2003 WL 22849604 (E.D.Pa.))**

with a related action against the same Defendants. That action was withdrawn and consequently the notice filed in connection with that action has no effect. Rather, the deadline for the filing of a motion for appointment as lead plaintiff is, as stated herein, on November 3, 2003." Based on a review of the notices in the DVI Action, the Court holds that, indeed, under these particular circumstances, multiple notices with differing deadlines certainly could have created confusion among potential class members with respect to the moving deadline. The potential for such confusion in the case further supports our conclusion that, under these circumstances, setting November 3, 2003 as moving deadline furthers the objectives of the PSLRA.

In the instant action, each of the movants meets the first requirement of the "most adequate" plaintiff test because they either filed an initially-filed complaint in the consolidated action or timely moved for appointment as lead plaintiff.

2. The Plaintiff with the Largest Financial Interest

The PSLRA instructs that the "most adequate," or lead plaintiff have the largest financial interest in the relief sought. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(2).

a. Thomas Sciba

Mr. Sciba is an individual investor who allegedly suffered losses of approximately $30,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. At the time Mr. Sciba moved for appointment as lead plaintiff, he believed he had the largest financial interest in the relief sought by the DVI Class. Contrary to Mr. Sciba's belief, his financial interest is subordinate to the interests of others in the DVI Class. Therefore, Mr. Sciba is not the presumptive "most adequate" plaintiff.

b. Stephen Bence, IV

Mr. Bence is an individual investor who allegedly suffered losses of nearly $60,000 as a result of purchasing DVI stock at prices inflated by the DVI Defendants' false and misleading statements. Mr. Bence asserts that he is the movant with the largest individual financial stake in this litigation and therefore is the presumptive lead plaintiff. Contrary to Mr. Bence's assertion, he does not have the largest individual financial stake in this litigation. Therefore, Mr. Bence is not the presumptive "most adequate" plaintiff.

c. The Wolson Group

**\*11** The Wolson Group is comprised of three individual investors, Milton Wolson, Bharat Parekh, and James Schwartz. The Wolson Group alleges it has the largest financial interest of any movant that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Specifically, the Wolson Group claims to have suffered losses of approximately $60,656.30. Indeed, the Wolson Group is not the movant with the largest financial interest that timely applied to the Court to be a lead plaintiff in accordance with the provisions of the PSLRA. Therefore, the Wolson Group is not the presumptive "most adequate" plaintiff.

d. The Gottlieb/Morrell Group

The Gottlieb/Morrell Group is comprised of the Gottlieb Family Foundation Trust and individual investor Richard W. Morrell. Upon information and belief, the Gottlieb/Morrell Group alleges that, of all the movants, they have the largest financial interest in this matter, claiming losses of approximately $46,000. Moreover, the Gottlieb/Morrell Group claims to be the only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Contrarily, the Gottlieb/Morrell Group neither suffered the largest financial losses in this matter nor is the only timely movant in compliance with the PSLRA's certification requirements to have sustained losses in both DVI's common stock and notes. Therefore, the Gottlieb/Morrell Group is not the presumptive "most adequate" plaintiff.

e. The Cedar Street Group

The Cedar Street Group is comprised of two institutional investors, the Cedar Street Fund and the Cedar Street Offshore Fund, and an individual investor, Kenneth Grossman. The Cedar Street Group alleges that it suffered losses in excess of $1.6 million as result of purchasing DVI securities at prices inflated by the DVI Defendants' false and misleading statements. It follows then, that in the instant DVI Action the Cedar Street Group clearly has the largest financial interest in the relief sought. Indeed, none of the other movants dispute this fact and, as discussed below, the Karel Group expressly concedes this point. Accordingly, it is the Cedar Street Group that satisfies the second requirement of the "most adequate" plaintiff test.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 10
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: 2003 WL 22849604 (E.D.Pa.))**

f. The Karel Group

The Karel Group is comprised of seven individual investors who allege a preexisting investment relationship. The Karel Group acknowledges that the losses of the Cedar Street Group surpass those of Plaintiff Karel individually and the Karel Group in the aggregate, and that the Cedar Street Group should be named a lead plaintiff. Accordingly, the Karel Group requests that the Court consider appointing the Karel Group as co-lead plaintiff and counsel for the Karel Group as co-lead counsel with counsel for the Cedar Street Group. The Karel Group argues that its appointment as co-lead plaintiff would benefit the class because it would represent the unique perspective of individual investors. Although the Karel Group acknowledges that the Cedar Street Group also includes an individual investor, Kenneth Grossman, the Karel Group suggests that Mr. Grossman's position as a 50% shareholder of the General Partner of the Cedar Street Fund may undermine his capacity to represent the 'unique perspective' of the individual investor. The Karel Group, however, provides no support for this conclusory allegation. As the Karel Group concedes, it is not the presumptive "most adequate" plaintiff.

3. Adequately Represent the Interests of the Class

**\*12** In addition to having the largest financial interest in the relief sought, the presumptive "most adequate" plaintiff must also "otherwise satisf [y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as class representative if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a) is "otherwise" satisfied if the movant "makes a *prima facie* showing that it satisfies the typicality and adequacy requirements." *Smith v. Suprema Specialties,* 206 F.Supp.2d 627, 632 (D.N.J.2001) (citing *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 924 (3d Cir.1992))

The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. *See Weiss v. York Hosp.,* 745 F.2d 786, 809 n. 36 (3d Cir.1984).

That the claims of the class representative be typical of claims of the class does not require that they be identical. *See Gen. Tel. Co. Of the Southwest v. Falcon,* 247 U.S. 147, 155 (1982).

The "fairly and adequately" representing the class requirement is satisfied "when both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of other class members." *Suprema Specialties,* 206 F.Supp.2d at 633 (citations omitted). The Third Circuit explained, that when assessing this requirement, courts should consider whether the proposed lead plaintiff "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig .,* 264 F.3d at 265 (quoting *Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988)).

The Cedar Street Group satisfies both the typicality and adequacy requirements of Rule 23(a). The Cedar Street Group represents the interests of the purchasers of both DVI common stock and DVI 9.875% Senior Notes. The Cedar Street Group's interests are typical because they, as a result of the same course of conduct, suffered the same injuries as the absent class members, and their claims are based on the same legal issues. Specifically, the Cedar Street Group: (a) acquired DVI common stock and 9.875% Senior Notes during the Class Period; (b) at market prices allegedly artificially inflated as a result of the Defendants' false and/or misleading statements; (c) which statements were in violation of federal securities laws; and (d) suffered damages thereby. Additionally, the Cedar Street Group adequately represents the interests of the Class because: (a) its interests are clearly aligned with purchasers of both common stock and 9.875% Senior Notes; (b) it is comprised of both individual and institutional investors; and (c) there is no evidence of their interests conflicting with those of the other class members. Moreover, we find that the Cedar Street's selected counsel are capable of satisfying their obligations; evidence of conflict with the interests of other class members is lacking. Thus, the Cedar Street Group satisfies the last requirement of the presumptive "most adequate" plaintiff test.

4. Presumption Not Rebutted

**\*13** The presumption of the "most adequate" plaintiff, however, "may be rebutted only upon proof

Not Reported in F.Supp.2d                                                                                        Page 11
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: 2003 WL 22849604 (E.D.Pa.))**

by a member of the purported plaintiff class that the presumptive most adequate plaintiff--(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Although some of the movants suggest that it is *possible* that the Cedar Street Group *may* not be able to adequately represent the interest of the Class, such speculation is insufficient to overcome the presumption under the PSLRA. No member of the purported plaintiff Class has submitted proof or demonstrated a reasonable basis for finding that the Cedar Street Group will not fairly and adequately protect the interest of the Class, or that it is subject to unique defenses which render it incapable of adequately representing the Class. Therefore, we find that the presumption has not been rebutted and that the Cedar Street Group remains the presumptive "most adequate" plaintiff.

Additionally, the Court finds that the interests of the Class would not be enhanced by appointing the Karel Group as co-lead plaintiff. The Karel Group has not demonstrated the necessity or efficacy to the Class' benefit for such designation as co-lead plaintiff. The Cedar Street Group is comprised of individual and institutional investors and contains holders of both DVI common stock and Senior Notes. Moreover, there is no conflict of interest that prevents the Cedar Street Group from representing the interests of the Karel Group or the rest of the Class. Thus, we conclude that the Cedar Street Group alone will fairly and adequately represent the interests of the Class.

III. Approval of Selection of Lead Counsel

Under the PSLRA, "[t]he most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Suprema Specialties,* 206 F.Supp.2d at 641 (quoting § 78u-4(a)(3)(B)(v)). The Third Circuit has commented on this issue: "We stress, however, that the question at this stage is not whether the court would 'approve' that movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." *In re Cendant Corp. Lit.,* 264 F.3d at 266. Stated differently, once the presumption is

triggered, the question is "not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job" *Id.* at 268. Indeed, the Conference Committee Report and the Senate Report "indicate that the court should not interfere with lead plaintiff's choice of counsel, unless such intervention is necessary to 'protect the interest of the plaintiff class." ' *Suprema Specialties, Inc.,* 206 F.Supp.2d at 641 (quoting H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734; S.Rep. No. 104-98 at 11-12 (1995) *reprinted in* 1995 U.S.C.C.A.N. 679, 690).

**\*14** The Court does not find such intervention necessary to "protect the plaintiff class." Therefore, Krislov & Associates, Ltd. is approved to serve as Lead Counsel and Chimicles & Tikellis LLP is approved to serve as Liaison Counsel. [FN7]

> FN7. To the extent that the Karel Group submitted a request for the appointment of its counsel as co-lead counsel regardless of the Karel Group being appointed as co-lead plaintiff, such request is also denied.

CONCLUSION

For the foregoing reasons, the Court grants Cedar Street Group's Motion to Consolidate, appoints the Cedar Street Group as Lead Plaintiff, and approves Krislov & Associates, Ltd. to serve as Lead Counsel and Chimicles & Tikellis LLP to serve as Liaison Counsel. An appropriate order follows.

2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636

**Motions, Pleadings and Filings (Back to top)**

• 2:03CV05674 (Docket) (Oct. 10, 2003)

• 2003 WL 23903662 (Trial Motion, Memorandum and Affidavit) Motion of Thomas Sciba to Consolidate Pending Cases, for Appointment As Lead Plaintiff, and for Approval of Lead Plaintiff's Choice of Counsel (Sep. 29, 2003)

• 2:03CV05244 (Docket) (Sep. 17, 2003)

• 2:03CV05141 (Docket) (Sep. 12, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22849604 (E.D.Pa.), Fed. Sec. L. Rep. P 92,636
**(Cite as: 2003 WL 22849604 (E.D.Pa.))**

- [2:03CV05111](#)(Docket)
(Sep. 10, 2003)

- [2:03CV05000](#)(Docket)
(Sep. 04, 2003)

- [2:03CV04963](#)(Docket)
(Sep. 03, 2003)

- [2:03CV04795](#)(Docket)
(Aug. 20, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit

# C

Westlaw.

Slip Copy                                                                                         Page 1
2005 WL 113128 (E.D.Pa.), Fed. Sec. L. Rep. P 93,079
**(Cite as: 2005 WL 113128 (E.D.Pa.))**

**Motions, Pleadings and Filings**

United States District Court,
E.D. Pennsylvania.
Clifford C. MARSDEN and Ming XU, Individually
and on Behalf of All Others
Similarly Situated, Plaintiffs,
v.
SELECT MEDICAL CORP., Martin Jackson, Robert
A. Ortenzio, Rocco Ortenzio, and
Patricia Rice, Defendants.
**No. Civ.A.04-4020.**

Jan. 18, 2005.

Eric L. Young, Kenney Lennon & Egan, Plymouth, PA, Peter E. Seidman, Milberg Weiss Bershad & Schulman LLP, New York, NY, Stuart T. Steinberg, Dechert Price and Rhoads, Philadelphia, PA, for Plaintiffs.

David M. Howard, Dechert LLP, Michael L. Kichline, Dechert, Price & Rhoads, Philadelphia, PA, for Defendant.

*MEMORANDUM AND ORDER*

JOYNER, J.

**\*1** Via the motion now pending before this court, Defendants move to deem inadequate Plaintiffs' notice of September 10, 2004 pursuant to the Private Securities Litigation Reform Act of 1995. For the reasons which follow, this motion shall denied.

*Factual Background*

Plaintiffs Clifford C. Mardsen and Ming Xu filed this class action complaint on August 24, 2004 on behalf of all injured investors who purchased Select Medical stock between July 29, 2003 and May 11, 2004 (the "Class Period"). The Complaint alleges that Defendants artificially inflated Select Medical stock prices by means of material misstatements and omissions. Specifically, Plaintiffs contend that Defendants misled investors during the Class Period by emphasizing Select Medical's strong financial performance while failing to disclose the imminent possibility of changes to Medicare reimbursement regulations which would negatively impact the company's financial success.

In accordance with § 78u-4(a)(3)(A)(i) of the Private Securities Litigation Reform Act (PSLRA), Plaintiffs' counsel published the following notice (the "Milberg Notice") in the September 10, 2004 edition of Investor's Business Daily:

The law firm of Milberg Weiss Bershad & Schulman LLP announces that a class action lawsuit was filed on August 24, 2004 on behalf of purchasers of the securities of Select Medical Corp. ("Select Medical" or the "Company") (N.Y.SE:SEM) between July 29, 2003 and May 11, 2004, inclusive, (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

The action, captioned Marsden v. Select Medical Corp., No. 04cv4020, is pending in the United States District Court for the Eastern District of Pennsylvania against defendants Select Medical, Martin Jackson, Robert A. Ortenzio, Rocco Ortenzio, and Patricia Rice.

The complaint alleges that Select Medical, at all relevant times, was an operator of specialty hospitals, including long-term acute care facilities, whose financial performance was heavily dependent on Medicare reimbursements. The complaint further alleges that: (a) throughout the Class Period Select Medical touted its strong operations and financial performance, reported remarkable quarterly increases in revenues, income and earnings per share, and represented that the Company was operating pursuant to a business model that would enable it to grow organically and through acquisitions; (b) unbeknownst to investors, Select Medical at all relevant times operated under the shadow of an imminent regulatory crackdown that could have a devastating effect on the Company's operations and financial performance; (c) defendants knew of or recklessly disregarded this danger but failed to disclose it to investors; and (d) defendants engaged in this conduct so that they and other Select Medical insiders could sell more than 11 million of their personally-held Select Medical shares at artificially inflated prices to unsuspecting shareholders for proceeds in excess of $270 million.

**\*2** The truth began to emerge on May 11, 2004. On that date, defendants issued a press release in which they announced that a proposed Medicare reimbursement rate rule change, if adopted, would have a "material adverse effect on Select's results

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 2
2005 WL 113128 (E.D.Pa.), Fed. Sec. L. Rep. P 93,079
**(Cite as: 2005 WL 113128 (E.D.Pa.))**

of operations for the periods after the rule becomes effective." On this news, Select Medical shares, which had opened on May 11, 2004 at $18.55, closed the day at $13.68, their low for the day. On May 12, 2004 the shares opened at $11.80 and fell to a low of $10.25 before rebounding slightly to close the dat at $11.20--for a total two-day decline of 40%. Subsequently, on August 2, 2004, the Centers for Medicare and Medicaid Services announced the phase-in of reduced Medicare reimbursement rates for long-term acute care facilities accepting admissions from host hospitals, such as those operated by Select Medical, and, on August 23, 2004 Select Medical announced that it was scaling back its expansion plans to compensate for the anticipated Medicare cuts.

If you bought the securities of Select Medical between July 29, 2003 and May 11, 2004, and sustained damages, you may, no later than November 9, 2004, request that the Court appoint you as lead plaintiff. A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation. In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class. Under certain circumstances, one or more class members may serve together as "lead plaintiff." Your ability to share in any recovery is not, however, affected by the decision of whether or not to serve as a lead plaintiff. You may retain Milberg Weiss Bershad & Schulman LLP, or other counsel of your choice, to serve as your counsel in this action.

Milberg Weiss Bershad & Schulman LLP (http://www.milbergweiss.com) is a firm with over 100 lawyers with offices in New York City, Los Angeles, Boca Raton, Delaware, Seattle and Washington, D.C. and is active in major litigations pending in federal and state courts throughout the United States. Milberg Weiss has taken a leading role in many important actions on behalf of defrauded investors, consumers, and others for nearly 40 years. Please contact the Milberg Weiss website for more information about the firm. If you wish to discuss this action with us, or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following attorneys ...

On November 9, 2004, class members Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH (for account of its funds C 43 and GF 5), James Shaver, and Frank C.

Bagatta (the "Capital Group") moved to be appointed lead plaintiff. That motion is currently pending before this Court.

*Discussion*
I. The PSLRA Notice Requirement

 The Private Securities Litigation Reform Act (PSLRA) of 1995 was enacted to empower investors so that they, not their lawyers, would retain primary control over private securities class action litigation. S.Rep. No. 104-98 at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683; H.R.Rep. No. 104-369 at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731. To this end, PSLRA imposes procedural protections intended to encourage investors with substantial security holdings, whose interests are likely to be strongly aligned with the interests of the shareholder class, to participate in litigation as lead plaintiffs. S.Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; H.R.Rep. No. 104-369 at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731; *see also* 15 U.S.C. 78u-4(a)(3)(B)(iii) (establishing a rebuttable presumption that the most adequate plaintiff is the party who "has the largest financial interest in the relief sought by the class"). Specifically, the PSLRA instructs that plaintiffs, within 20 days of filing a complaint, "shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class-- (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. 78u-4(a)(3)(A)(i). The PSLRA notice provisions are not intended, however, to replace or supersede other notice provisions provided in the Federal Rules of Civil Procedure. H.R.Rep. No. 104-369 at 49, FN 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730.

 **\*3** In deciding a motion for the appointment of lead plaintiff under PSLRA, courts have an independent duty to "scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation." *Janovici,* 2003 U.S. Dist. LEXIS 22315 at 17. In this action, Defendants have petitioned the Court to examine the sufficiency of Plaintiffs' notice in advance of a decision on the outstanding motion for appointment of lead plaintiff.

Slip Copy                                                                                                      Page 3
2005 WL 113128 (E.D.Pa.), Fed. Sec. L. Rep. P 93,079
**(Cite as: 2005 WL 113128 (E.D.Pa.))**

For the most part, courts reviewing the sufficiency of PSLRA notice in the context of motions for lead plaintiff status have taken the minimal requirements of § 78u-4(a)(3)(A)(i) at face value, summarily finding that the notice requirement is satisfied by timely publication setting forth the 60- day period for moving the court. *See, e.g., Bobrow v. Mobilmedia, Inc.,* 1997 U.S. Dist. LEXIS 23806 at 4 (D.N.J.1997); *Greater Pa. Carpenters Pension Fund v. Adolor Corp.,* No. 04-1728, 2004 U.S. Dist. LEXIS 26205 at 6, 2004 WL 3019235 (E.D.Pa.2004); *A.F.I.K. Holding SPRL v. Fass,* 216 F.R.D. 567, 570 (D.N.J.2003). However, the few courts that have addressed this issue in greater detail have typically found that the full extent of a noticing plaintiff's obligations must be informed by the underlying goals of the PSLRA notice provision. *See Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1311 (N.D.Ala.2000); *Janovici,* 2003 U.S. Dist. LEXIS 22315 at 17-18; *Ravens v. Iftikar,* 174 F.R.D. 651, 658 (N.D.Cal.1997). We agree. Any analysis of the sufficiency of notice under the PSLRA must be guided by the fundamental purpose of the notice requirement, which is to provide class members with sufficient information about the suit and the requirements for lead plaintiff appointment so that they can make an informed judgment about whether they wish to seek lead plaintiff status. *Calif. Pub. Employees' Ret. Sys. v. The Chubb Corp.,* 127 F.Supp.2d 572, 576 (D.N.J.2001); *Burke,* 102 F.Supp.2d at 1312. Furthermore, the notice requirement is intended to give potential plaintiffs an opportunity to make this decision without being forced to contact noticing counsel for additional information, further protecting against "lawyer-driven litigation." *Janovici,* 2003 U.S. Dist. LEXIS 22315 at 19.

In determining the extent to which these general goals should inform our analysis of the sufficiency of the Milberg Notice, we are guided by the United States District Court for the Northern District of Alabama's thoughtful discussion in *Burke v. Ruttenberg,* 102 F.Supp.2d at 1311-12. In that case, the court identified three methods of interpreting the reach of the PSLRA notice requirement. Under the first method, § 78u-4(a)(3)(A)(i) could be construed broadly, requiring "full disclosure of all of the information relevant to the pendency of the action." *Id.* at 1311. While such robust notice certainly satisfies the aims of the PSLRA, it imposes significant costs on the noticing plaintiffs and appears to be "more than is required by the language" of the statute. *Id.* At the other end of the spectrum, notice

under the PSLRA could require only minimal information, namely, that the suit is pending, that it asserts securities claims, and that the class period extends between two dates. This method is inadequate because it does not provide sufficient information from which potential lead plaintiffs could evaluate the action without turning to counsel or "fruitlessly" expending time and money searching out and reviewing the complaint. *Id.* at 1312. The court finally settled on an intermediate method, requiring that notice provide merely enough information to permit reasonable investors to decide whether they wish to perform further investigation and to direct them to further sources of information. *Id.* at 1311. The court held that such an interpretation accords with the purposes of the notice requirement, "in that it gives members of the putative class sufficient information from which to make basic decisions about deciding whether to act as lead plaintiff while not requiring the named plaintiff, who may not be chosen lead plaintiff, to expend too many of his [ ] resources in publishing a notice that is wastefully extensive." *Id.* at 1311-12.

**\*4** We find the reasoning in *Burke* highly persuasive. A class member reading notice published pursuant to the PSLRA should be able to (1) determine whether she is eligible for lead plaintiff status based on the class period; (2) learn enough about the asserted claims to make an initial judgment as to whether to obtain a copy of the full Complaint (which will in turn inform her final judgment about whether to pursue lead plaintiff status); and (3) contact the clerk's office to obtain a copy of the Complaint and discover the procedures for filing a motion. Furthermore, the reader should be able to achieve these three objectives independently, without being forced to contact noticing plaintiff's counsel for additional information or detail.

II. Timeliness of the Instant Motion

Plaintiffs first object to Defendants' November 30, 2004 Motion to Deem Notice Inadequate on the grounds that, while not styled as such, it is essentially an untimely response to the Capital Group's Motion for Appointment as Lead Plaintiff. Pursuant to Local Rule of Civil Procedure 7.1(c), any response to the Capital Group's motion should have been filed with this Court by November 23, 2004.

It is unnecessary for this Court to determine whether the instant motion should be treated as a response to the Capital Group's Motion for Appointment as Lead Plaintiff. Even accepting Plaintiffs' argument to this

Slip Copy                                                                                           Page 4
2005 WL 113128 (E.D.Pa.), Fed. Sec. L. Rep. P 93,079
**(Cite as: 2005 WL 113128 (E.D.Pa.))**

effect, a court may, pursuant to Rule 7.1(c), consider an untimely response where there is sound rationale for doing so, and where so doing does not unfairly prejudice the moving party. *United States v. Eleven Vehicles,* 200 F.3d 203, 215 (3rd Cir.2000). As the instant motion raises significant legal questions regarding the scope of the PSLRA, and as this Court would have an independent duty, upon consideration of the Capital Group's motion, to challenge the sufficiency of the Milberg Notice, there is a sound rationale for addressing the merits of this Motion to Deem Notice Inadequate. *See Avellino v. Herron,* 181 F.R.D. 294, 295 n. 4 (E.D.Pa.1998) (where motion raises important issues of public concern, court may consider merits of a motion despite lack of response); *Janovici v. DVI, Inc.,* 2003 U.S. Dist. LEXIS 22315 at 17, 2003 WL 22849604 (E.D.Pa.2003) (in considering motions for appointment of lead plaintiff, court has an independent duty to scrutinize the published notice for compliance with PSLRA requirements). Furthermore, Plaintiffs will not be prejudiced by our consideration of the instant motion, as they have had ample opportunity to present their concerns in both a response and surreply.

III. Sufficiency of the Milberg Notice under the PSLRA

Defendants contend that the notice in this action was inadequate because it omitted (i) information about the named plaintiffs and their holdings in Select Medical, (ii) the legal standards governing lead plaintiff motions, (iii) the location of the courthouse and the name of the judge to whom the case is assigned, and (iv) the specific misstatements and omissions underlying Plaintiffs' claims. Defendants further contend that the notice was an "impermissible advertisement" for Milberg Weiss which undermined the objectives of the PSLRA by focusing on self-promotion rather than empowerment of potential lead plaintiffs.

**\*5** In support of their arguments, Defendants rely primarily on two cases from the United States District Court of New Jersey in which District Judges Alfred J. Lechner and Garrett E. Brown rejected PSLRA notices as inadequate for want of information not explicitly required by § 78u-4(a)(3)(A)(i), including the address of the court and name of the presiding judge, the release dates and content of alleged misstatements or omissions, the differing effects of each alleged misstatement or omission, the names of the plaintiffs and a description of their holdings, and an explanation of the possibility of intra-class conflicts. *In re Lucent,* 194 F.R.D. 137 at

147-48; *Calif. Pub. Employees' Ret. Sys.,* 127 F.Supp.2d at 579-80. However, this Court is not bound by those decisions, and, indeed, finds much of their reasoning unpersuasive in light of the intermediate approach to PSLRA notice which this Court has adopted above.

More significantly, one case within the Eastern District of Pennsylvania has addressed the PSLRA notice requirements as applied to a notice also published by Milberg Weis and similar to the instant Milberg motion in language and level of detail, and upheld its sufficiency under the PSLRA. *Janovici,* 2003 U.S. Dist. LEXIS 22315 at 26-27. This Court likewise finds that the extra-statutory requirements relied on by Defendants are not necessary to satisfy the objectives of the PSLRA. The Milberg Notice, while lacking in some of the details considered essential in *In re Lucent,* satisfies both the explicit requirements of § 78u-4(a)(3)(A)(i) and the more general statutory goals. A class member reading the Milberg Notice would learn enough about the nature of the claims to determine his eligibility for lead plaintiff status and make a preliminary decision of whether to seek additional information, and would be able to obtain a copy of the Complaint from the clerk's office if he were so inclined.

A. Timely Publication

The Milberg Notice was published in Investor's Business Daily on September 10, 2004, within 20 days of the date the Complaint in this action was filed. Defendants repeatedly suggest, in their motion and reply, that the notice was of a "stealth character" because it was published "a random 17 days after the case was filed," and was "bur[ied]" in Investor's Business Daily rather than disseminated by a national wire service. Defendants' position on this issue is utterly without merit. Investor's Business Daily is a nationally-circulated business-oriented publication catering to investors, and, as such, satisfies the publication requirement of § 78u-4(a)(3)(A)(i). *Seamans v. Aid Auto Stores, Inc.,* No. 98-7395, 2000 U.S. Dist. LEXIS 1749 at 11-12, 2000 WL 33769023 (E.D.N.Y.2000); *Lax v. First Merchants Acceptance Corp.,* 1997 U.S. Dist. LEXIS 11866 at 15, 1996 WL 461036 (N.D.Ill.1997). [FN1] Furthermore, this Court cannot conceive of any legitimate argument in support of Defendants' suggestion that a notice published "a random 17 days" after the filing of a complaint somehow fails to satisfy the requirements of § 78u-4(a)(3)(A)(i).

FN1. Defendants further suggest that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

publication of the Milberg Notice in Investor's Business Daily was inadequate because it was a departure from Milberg Weiss' "usual practice" of serving notice by news wire. *See* Defendants' Reply, p. 2. It should be beyond question, however, that the sufficiency of notice under the PSLRA must be judged against the statutory requirements of § 78u-4(a)(3)(A)(i), rather than any particular law firm's typical practice.

B. The "Pendency of the Action" Requirement

**\*6** The Milberg Notice adequately informs class members of "the pendency of the action," as it identifies the caption of the case, its civil action number, the Court before which the action was brought, and the names of all five Defendants. The purpose of the "pendency of the action" requirement is to provide interested class members with "accurate information from which [they] may contact the Court and readily obtain a copy of the complaint in a pending action and/or file a motion to be appointed as lead counsel in that case." *Janovici,* 2003 U.S. Dist. LEXIS 22315 at 18. In *Janovici,* this Court upheld the sufficiency of a notice, also published by Milberg Weiss, which included only the names of the defendants and the Court, holding that these two identifying facts were sufficient to inform class members of the pendency of the action. *Id.* at 26-27. [FN2] We find that a PSLRA notice which includes the court name, case caption, and docket number provides all the information an interested class member needs to contact the Court and obtain a copy of the complaint. In so holding, we reject the United States District Court of New Jersey's requirement that PSLRA notice include the address of the Court and the name of the judge to whom the case is assigned. *See Calif. Pub. Employees' Ret. Sys.,* 127 F.Supp.2d at 579; *In re Lucent,* 194 F.R.D. 137 at 147. Surely an investor who reads the Investor's Business Daily on a regular basis and is interested in being lead plaintiff in a class action securities suit is competent enough to consult a telephone directory to find the Court's address and phone number. This Court is not convinced that investors will be discouraged from participating if "force[d] ... to figure it out for themselves." *See* Defendants' Brief, p. 8. And while it might be helpful for a PSLRA notice to include the name of the assigned judge, a class member need not provide that information to get a copy of the complaint, and can readily discover the judge's name by contacting the clerk's office. Because an interested class member reading the Milberg Notice would find

enough information therein to contact the Court and obtain a copy of the Complaint, the notice satisfies the "pendency of the action" requirement of § 78u-4(a)(3)(A)(i).

> FN2. While Defendants make much of the fact that the notice in *Janovici* provided a web link to a copy of the complaint on the Milberg Weiss website, the Court's decision made no mention of that fact, explicitly holding that "list[ing] the names of the defendants ... provid [ed] purported class members with sufficient information from which they could contact the Court and obtain a copy of the complaint and/or file a motion for appointment as lead plaintiff." *Janovici,* 2003 U.S. Dist. LEXIS at 26-27. Furthermore, this Court fails to see how encouraging class members to visit a law firm's website to view the complaint serves the PSLRA's purpose of protecting investors from lawyer-driven lawsuits. *See, e.g., Janovici,* 2003 U.S. Dist. LEXIS 22315 at 19 (providing information from which interested class members may contact the Court shields against lawyer-driven litigation because class members "are not forced to contact noticing counsel for additional information"); *Calif. Pub. Employees' Ret. Sys.,* 127 F.Supp.2d at 580 (where action is not identified by caption or docket number, directing class members to an attorney website to view the complaint does not cure deficiencies of notice and undermines PSLRA goals); *Burke,* 102 F.Supp.2d at 1312 (notice directing class members to contact counsel for a copy of the complaint does not comport with the purposes of the PSLRA).

C. The Claims Asserted and Class Period

The Milberg Notice satisfies the requirements of § 78u-4(a)(3)(A)(i) relating to information about the claims asserted and the class period. The notice identifies the period between July 29, 2003 and May 11, 2004 as the relevant Class Period. It summarizes the claims asserted in the Complaint, highlighting the allegations that Select Medical, throughout the Class Period, touted its strong financial performance, misrepresented the nature of its business model, and failed to disclose the danger of an imminent regulatory crackdown. The notice further describes the drop in share prices which occurred after Defendants issued a May 11, 2004 press release

Slip Copy                                                                                                       Page 6
2005 WL 113128 (E.D.Pa.), Fed. Sec. L. Rep. P 93,079
**(Cite as: 2005 WL 113128 (E.D.Pa.))**

announcing that the proposed regulatory change would have a material adverse effect on Select Medical's operations.

 **\*7** In support of their contention that the Milberg Notice is deficient because it does not identify the content or dates of the alleged misrepresentations, Defendants cite *In re Lucent,* 194 F.R.D. 137 at 147-48. In that case, the United States District Court for the District of New Jersey relied on *Ravens v. Iftikar,* 174 F.R.D. 651, to hold that a PSLRA notice should describe, in detail, the alleged misstatements or omissions, their release dates, and, if multiple disclosures are at issue, the differing effects of each. *In re Lucent,* 194 F.R.D. 137 at 148. However, it would be a misreading of *Ravens* to impose such strict requirements on all PSLRA notices. *Ravens* addressed a "skeletal" one-paragraph notice which provided no detail about the claims asserted beyond an identification of the statutory grounds (§ 10(b) and 20(a) of the Securities Exchange Act), and no information about the named plaintiffs, who appeared, even on the face of the complaint, "incapable of prosecuting" the action. *Ravens,* 174 F.R.D. at 658. Far from setting forth a firm rule imposing the requirements considered in *In re Lucent,* the United States District Court for the Northern District of California held that "the adequacy of notice published under the Reform Act cannot be evaluated standing alone. The notice must be assessed in light of the pleading to which the notice is designed to alert investors." *Id.* Among the reasons the court gave for finding the notice inadequate were that "the lengthy and detailed allegations of the complaint [were] not summarized," and that "[a]ctual and potential obstacles to plaintiff's representation of the entire class" were not disclosed. *Id.*

 In contrast, the Milberg Notice adequately summarizes the allegations in the Complaint, without overwhelming readers with a flood of detail. The Complaint in this action identifies twelve dates on which Defendants allegedly misrepresented the strength of their operations while failing to disclose the possibility of a financial downturn if proposed Medicare rate changes were to be adopted. We believe that requiring named Plaintiffs, who may not ultimately be chosen as lead plaintiffs, to expend the resources required to publish a "wastefully extensive" notice containing the exact date, content, and individualized impact of each of twelve or more misrepresentations and omissions is beyond the contemplation of the PSLRA. *See Burke,* 102 F.Supp.2d at 1311-12. [FN3] The Milberg Notice

provides a summary of the legal and factual basis of the claims, adequately informing investors of the nature and character of the claims asserted in accordance with the requirements of § 78u-4(a)(3)(A)(i). *See Janovici,* 2003 U.S. Dist. LEXIS 22315 at 27 (finding that a Milberg Weiss notice summarizing misrepresentations generally, but not providing dates or other details, adequately informs investors of the "claims asserted").

> FN3. This is particularly so where, as here, it is clear from both the notice and the Complaint that there were no corrective statements made during the Class Period, and that a single disclosure event occurred at the end of the Class Period. *See Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 582 (N.D.Ca.1999).

 Furthermore, while Defendants contend that a PSLRA notice must identify the named plaintiffs and describe their holdings, we are not persuaded that the reasoning of the two cases cited in support of that proposition is applicable in this action. In *Calif. Pub. Employees' Ret. Sys.,* the named plaintiff clearly lacked standing to sue because he held no shares during the class period, a fact obvious on the face of the complaint. *Calif. Pub. Employees' Ret. Sys.,* 127 F.Supp.2d at 580-81. Likewise, in *Ravens,* there were numerous obstacles to representation by the named plaintiffs, including unique defenses, concerns regarding their qualifications, and the possibility of intra-class conflicts. *Ravens,* 174 F.R.D. at 657. We note, initially, that this Court is not currently in a position to investigate the sufficiency of the Complaint or the named Plaintiffs' qualifications, and Defendants have identified no conspicuous obstacles to Plaintiffs' representation. Furthermore, where issues of standing or qualification are not obvious on the face of a complaint, we cannot imagine that the drafters of the PSLRA expected named plaintiffs to make inquiries as to these issues and present their findings in notice form. Neither the explicit requirements of § 78u-4(a)(3)(A)(i) nor the general goals of the PSLRA demand the imposition of such an obligation.

 D. Moving for Lead Plaintiff Status

 **\*8** The Milberg Notice advises class members who have sustained damages that they may, within 60 days, move the court to be appointed lead plaintiff. The notice briefly explains the significance of the lead plaintiff, summarizes the typicality and adequacy of representation requirements, specifies

2005 WL 113128 (E.D.Pa.), Fed. Sec. L. Rep. P 93,079
**(Cite as: 2005 WL 113128 (E.D.Pa.))**

that multiple class members may serve together as lead plaintiffs, and notes that class members who do not attain lead plaintiff status are nonetheless entitled to share in any recovery. This information clearly satisfies the § 78u-4(a)(3)(A)(i)(II) requirement that notice published pursuant to the PSLRA advise class members of their right to move for lead plaintiff status within 60 days.

Defendant's citation to *In re Lucent* is inapposite. In that case, the notice in question informed class members of their right to move the court within 60 days, and indicated only that they "must meet certain legal requirements" to serve as lead plaintiff. *See In re Lucent,* 194 F.R.D. 137 at 147. The court found such notice inadequate because it did not "even summarily describe the legal requirements" for lead plaintiff status. *Id.* In contrast, the Milberg Notice in this action does "summarily describe" the requirements for lead plaintiff status.

Nonetheless, Defendants object to the fact that the Milberg Notice does not mention the PSLRA's rebuttable presumption that the most adequate plaintiff is the one with the "largest financial interest." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). We note initially that, while the PSLRA was drafted to encourage plaintiffs with the greatest financial interest to take control of the litigation, the statute by no means requires that lead plaintiffs have the largest financial interest, and explicitly allows for rebuttal of this presumption. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Furthermore, this Court has upheld the adequacy of a similar notice published by Milberg Weiss which described the requirements for lead plaintiff status in language identical to the language at issue in this case. *Janovici,* 2003 U.S. Dist. LEXIS 22315 at 26-27 (finding that the notice was sufficient because it advised the class that a member may move to serve as lead plaintiff, explained the significance of a lead plaintiff, and specified the date by which such a motion must be filed). The Milberg Notice is not rendered inadequate by its failure to include information concerning the significance of a lead plaintiff's financial stake in the litigation.

An appropriate Order follows.

*ORDER*

AND NOW, this 18th day of January, 2005, upon consideration of Defendants' Motion to Deem Notice Inadequate (Doc. No. 8), and all responses thereto (Docs. No. 9, 10, 11), it is hereby ORDERED that the motion is DENIED.

2005 WL 113128 (E.D.Pa.), Fed. Sec. L. Rep. P 93,079

**Motions, Pleadings and Filings** (Back to top)

•         2:04CV04020        (Docket) (Aug. 24, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.